UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ) | |
| PIPEFITTERS LOCAL NO. 636 DEFINED ) | Civil Action No.  1:11-cv-00733-WHP |
| BENEFIT PLAN, Individually and on ) | |
| Behalf of All Others Similarly Situated, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | CLASS ACTION |
| BANK OF AMERICA CORPORATION, ) | |
| BRIAN T. MOYNIHAN and CHARLES ) | |
| H. NOSKI, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| PATRICIA GROSSBERG LIVING ) | Civil Action No.  1:11-cv-01982-AKH |
| TRUST, individually and on behalf of all ) | |
| other similarly situated stockholders, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | CLASS ACTION |
| BANK OF AMERICA CORPORATION, ) | |
| BRIAN T. MOYNIHAN and CHARLES ) | |
| H. NOSKI, KENNETH D. LEWIS, ) | |
| JOSEPH L. PRICE, and COUNTRYWIDE ) | |
| FINANCIAL CORPORATION, ) | |
| ) | |
| Defendants. ) | |
| ) | |

(Captions continued on following page)

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE
INSTITUTIONAL INVESTOR GROUP FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF AND
<u>APPROVAL OF LEAD PLAINTIFF'S CHOICE OF LEAD COUNSEL</u>**

|  |  |  |
|---|---|---|
| ANCHORAGE POLICE & FIRE RETIREMENT SYSTEM, Individually and On Behalf of all Others Similarly Situated, | ) ) ) ) | Civil Action No.  1:11-cv-02216 |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| BANK OF AMERICA CORPORATION, BRIAN T. MOYNIHAN, CHARLES H. NOSKI, KENNETH D. LEWIS, and JOSEPH L. PRICE, | ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) ) | |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ................................................................................................4

    A.   Statement of Facts................................................................................4

    B.   Procedural History .................................................................................6

III.  ARGUMENT ......................................................................................................6

    A.   This Court Should Consolidate the Related Actions ............................6

    B.   The Institutional Investor Group Should Be Appointed Lead Plaintiff.................7

        1.   The Institutional Investor Group Believes That It Has the Largest Financial Interest in the Relief Sought by the Class ..................................7

        2.   The Institutional Investor Group is Qualified Under Rule 23 ................11

            a.   The Claims of the Institutional Investor Group Are Typical of the Claims of the Class...........................................................12

            b.   The Institutional Investor Group Will Fairly and Adequately Represent the Interests of the Class .............................................13

        3.   The Institutional Investor Group Is the Prototypical Lead Plaintiff Envisioned by the PSLRA .......................................................14

    C.   This Court Should Approve the Institutional Investor Group's Choice of Lead Counsel ..................................................................................15

IV.   CONCLUSION .................................................................................................16

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Albert Fadem Trust v. Citigroup Inc.*,
  239 F. Supp. 2d 344 (S.D.N.Y. 2002) ......................................................................6, 11

*Baydale v. Am. Express Co.*,
  No. 09 Civ. 3016 (WHP), 2009 U.S. Dist. LEXIS 71668
  (S.D.N.Y. Aug. 14, 2009) ......................................................................................9, 12

*Ferrari v. Impath, Inc.*,
  Consol. No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898
  (S.D.N.Y. July 20, 2004) ......................................................................................3, 14

*Gluck v. CellStar Corp.*,
  976 F.Supp. 542 (N.D. Tex. 1997) .................................................................................3

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)......................................................................................14

*In re Cendant Corp. Sec. Litig.*,
  109 F.Supp.2d 235 (D.N.J. 2000)..............................................................................15

*In re Drexel Burnham Lambert Group*,
  960 F.2d 285 (2d Cir. 1992), *cert. dismissed,* 506 U.S. 1088 (1993)..............................12

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010)......................................................................................11

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998)......................................................................7, 11, 14

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998).........................................................................3, 11, 14

*In re Smith Barney Transfer Agent Litig.*,
  No. 05 Civ. 7583 (WHP), 2006 U.S. Dist. LEXIS 19728
  (S.D.N.Y. Apr. 17, 2006)....................................................................................8, 12, 15

*In re Symbol Techs., Inc. Sec. Litig.*, No. 05-CV-3923 (DRH)(JO),
  2006 U.S. Dist. LEXIS 24776 (E.D.N.Y. April 26, 2006) ...............................................11

ii

*In re WorldCom, Inc. Sec. Litig.*,
 Master File No. 02 Civ. 3288 (DLC), 2004 U.S. Dist. LEXIS 22992
 (S.D.N.Y. November 12, 2004) ....................................................................................16

*Johnson v. Celotex Corp.*,
 899 F.2d 1281 (2d Cir. 1990).................................................................................6, 7

*Lintz v. Agria Corp.*,
 08 Civ. 3536 (WHP), 08 Civ. 3886 (WHP), 08 Civ. 4456 (WHP),
 2008 U.S. Dist. LEXIS 99846 (S.D.N.Y. Dec. 3, 2008) .........................................7, 9, 13

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
 256 F.R.D. 620 (E.D. Wis. 2009)...............................................................................1

*Sczesny Trust v. KPMG LLP*,
 223 F.R.D. 319 (S.D.N.Y. 2004).......................................................................6, 12, 13


<u>Other Authorities</u>

15 U.S.C. § 78u-4(a)(3)...........................................................................................3, 7

15 U.S.C. § 78u-4(a)(3)(A) ......................................................................................3, 8

15 U.S.C. § 78u-4(a)(3)(B)........................................................................4, 8, 9, 11, 13, 15

Fed. R. Civ. P. 23(a)................................................................................................11

Fed. R. Civ. P. 42(a)................................................................................................6

The Institutional Investor Group, comprised of the Pennsylvania Public School Employees' Retirement System ("PSERS") and Första AP-Fonden ("AP1"), respectfully submits this memorandum of law in support of consolidation of the above-captioned actions and all other related securities law class actions pending against Bank of America Corporation ("BoA" or the "Company") and certain other defendants, appointment of the Institutional Investor Group as lead plaintiff, and approval of its selection of counsel as lead counsel for the Class.

## I.   <u>INTRODUCTION</u>

PSERS and AP1, which are both large institutional investors, seek to represent in this securities class action all investors who purchased BoA securities during the period from July 23, 2009 to October 19, 2010 (the "Class Period"),[1] and who were damaged thereby as a result of the alleged misrepresentations and/or the failure to disclose material facts by defendants BoA, Brian T. Moynihan (BoA's current chief executive officer), Charles H. Noski (BoA's current chief financial officer), Kenneth D. Lewis (BoA's former chief executive officer), Joseph L. Price (BoA's former chief financial officer), and Countrywide Financial Corporation ("Countrywide").

The complaints filed in these actions allege violations of the federal securities laws arising out of the defendants' allegedly false or misleading statements about BoA's business and operations, including its mortgage servicing operations, and the company's financial statements,

---

[1]     Of the three actions filed in this district, two allege this class period.  The complaint filed by the Pipefitters Local No. 636 Defined Benefit Plan alleges a shortened class period of January 20, 2010 to October 19, 2010.  Courts have traditionally determined which movant should be appointed lead plaintiff based on the most expansive class period alleged.  *See, e.g., Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624-25 (E.D. Wis. 2009).  However, in the event that the Court determines that the shorter class period should be used for the purposes of ruling upon this motion, the Institutional Investor Group remains eligible for appointment as lead plaintiff.

and their purported failure to disclose material facts necessary to make such statements, in light

of the circumstances in which they were made, not false or misleading.  In brief, the complaints

allege that defendants issued false and misleading statements concerning BoA's financial

exposure to faulty mortgages, especially those originated by Countrywide and assumed by BoA

through its acquisition of Countrywide, and including those originated by BoA's mortgage

servicing operations, in order to artificially inflate the price of BoA securities during the Class

Period.

In enacting the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L.

104-67, Congress expressly intended to encourage institutional investors like PSERS and AP1 to

serve as lead plaintiffs in securities class actions.[2]  H.R. Conf. Rep. No. 104-369 (1995), S. Rep.

No. 104-98 (1995).  The PSLRA was intended "to increase the likelihood that institutional

investors will serve as lead plaintiffs" because, among other reasons, institutional investors and

other class members with large amounts at stake "will represent the interests of the plaintiff class

more effectively than class members with small amounts at stake."  H.R. Conf. Rep. No. 104-

369, at 33, 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733.  Similarly, the Senate Report on

the PSLRA states:

> The Committee believes that increasing the role of institutional investors in class
> actions will ultimately benefit the class and the courts  Institutions with large

---

[2]     Prior to making this motion, representatives of both PSERS and AP1 have spoken with
each other about jointly seeking appointment as a lead plaintiff group in this litigation.  This is
not the first time that they communicated with each other, as they have moved together in the
past to serve as lead plaintiff.  They have provided a joint declaration confirming that they "have
communicated with each other to discuss strategy and procedures for directing this litigation and
monitoring counsel."  They further attest that they have ample resources and members with
common interests and they "are committed to working closely with one another as well as with
class counsel to obtain the best possible recovery for the class."  *See* Joint Declaration of Gerald
Gornish and Jan Matej at ¶¶ 4-8 (attached as Ex. F to the Rosen Declaration).

> stakes in class actions have much the same interests as the plaintiff class generally.

S. Rep. No. 104-98 at 12, 13, *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (citations omitted).  *See also Gluck v. CellStar Corp.*, 976 F.Supp. 542, 548 (N.D. Tex. 1997) ("through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors"); *Ferrari v. Impath, Inc.*, Consol. No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *10 (S.D.N.Y. July 20, 2004) (stating that institutional investors are the type of lead plaintiff that Congress wanted to encourage to participate in the litigation of these actions and exercise control over the selection and actions of plaintiffs' counsel); *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998) (noting the PSLRA encourages institutional investors to take a role in securities class actions).

The Institutional Investor Group satisfies all of the PSLRA's requirements for appointment as lead plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3).  This motion is being filed within sixty days of the publication of the first notice, as required by the statute.  15 U.S.C. § 78u-4(a)(3)(A).  The Institutional Investor Group believes that it has the largest financial interest in the outcome of the litigation, having sustained losses on its purchases of BoA common stock during the Class Period of approximately $11,497,715 on a last-in, first-out ("LIFO") basis.[3]  In addition, the Institutional Investor Group qualifies as the "most adequate plaintiff" to serve as lead plaintiff in this action because it satisfies the requirements of Rule 23 of the Federal

---

[3]     PSERS and AP1 have each filed herewith lead plaintiff certifications that, among other things, set forth their transactions in BoA common stock during the Class Period.  *See* Rosen Decl., Exs. B (PSERS) and C (AP1).  A chart of the estimated losses for the Institutional Investor Group in BoA common stock during the Class Period is attached as Exhibit D to the Rosen Declaration.

Rules of Civil Procedure, as required by the PSLRA.  15 U.S.C. § 78u-4(a)(3)(B).  Thus, the Court should appoint the Institutional Investor Group as lead plaintiff in this and all related securities class actions.  In addition, under 15 U.S.C. § 78u-4(a)(3)(B)(v), the Court should approve the Institutional Investor Group's selection of Barrack, Rodos & Bacine as Lead Counsel to represent the class.

## II.     BACKGROUND

### A.     Statement of Facts

BoA is one of the world's largest financial institutions, serving individual consumers, small- and middle-market businesses and large corporations with a full range of banking, investing, asset management, and other financial and risk management products and services.  On July 1, 2008, BoA acquired Countrywide, transforming BoA from a small player in the mortgage business into one of the largest mortgage lenders in the United States.

After the acquisition, however, Defendants discovered serious deficiencies in the origination and servicing practices in place at legacy Countrywide and BoA mortgage servicing operations.  These deficiencies exposed BoA to tens of billions of dollars of repurchase demands from investors who had purchased loans.  Further, BoA also learned of numerous deficiencies in Countrywide's loan servicing procedures, including lost or misplaced documents, predatory lending and servicing practices, and improper foreclosures.

Rather than fix these deficiencies, defendants engaged in a scheme to hide them from investors.  Throughout the Class Period, in an effort to reassure investors, defendants repeatedly issued false and misleading statements concerning BoA's exposure to repurchase demands, stating that the level of demand for such repurchases was manageable and that BoA had

4

adequately reserved for the exposure.  Defendants later indicated that repurchase demands were unjustified, and that such demands would be contested.

While misrepresenting BoA's exposure to repurchase demands, defendants also made numerous false and misleading statements about the Company's commitment to being a "leader in responsible home lending practices" and claimed that BoA's acquisition of Countrywide "significantly improved" BoA's origination and servicing practices.  Behind the scenes, however, defendants engaged in a scheme to conceal BoA's lack of proper documentation for mortgages by employing "robo-signers" who, in foreclosure proceedings, would falsely certify that BoA owned the mortgages in question.

Defendants' scheme began to unravel in September 2010, when reports began to surface about the predatory servicing practices of mortgage lenders and, even more troubling for BoA, the use of "robo-signers" to fraudulently push through foreclosures on the banks' behalf.  By October 2010, banks, including BoA, were forced to suspend foreclosures as state and federal government agencies began investigations.  Despite defendants' attempts to downplay the foreclosure suspension, on October 13, 2010, the Attorneys General of all 50 states opened investigations into bank lending and servicing practices.  Shortly thereafter, BoA investors who had purchased bad mortgages invoked their right to have BoA buy back billions in faulty mortgage loans.  Finally, on October 19, 2010, BoA was forced to admit that there were, in fact, issues with its mortgage lending and servicing practices.

As a result of defendants' alleged wrongful acts and omissions, and the decline in the market value of BoA securities, the Institutional Investor Group and the members of the class have suffered significant losses and damages.

B.    **Procedural History**

Pending in this District are three related securities class action lawsuits:

| CASE NUMBER | ABBREVIATED CAPTION | FILING DATE |
|---|---|---|
| 1:11-cv-00733 | *Pipefitters Local 636 Defined Benefit Plan v. Bank of America Corp., et al.* | 02/02/2011 |
| 1:11-cv-01982 | *Patricia Grossberg Living Trust v. Bank of America Corp., et al.* | 03/22/2011 |
| 1:11-cv-02216 | *Anchorage Police & Fire Retirement System v. Bank of America Corp., et al.* | 03/30/2011 |

Plaintiffs in these actions allege that defendants, in violation of §§ 10(b) and 20(a) of the

Securities Exchange Act of 1934 and SEC Rule 10b-5, disseminated false and misleading

material information to the investing public concerning BoA's business operations and prospects,

thereby artificially inflating the price of the Company's securities.

## III.   ARGUMENT

A.    **This Court Should Consolidate the Related Actions**

Rule 42(a) of the Federal Rules of Civil Procedure permits the consolidation of actions

that pose common questions of law or fact.  *See* Fed. R. Civ. P. 42(a); *Johnson v. Celotex Corp.*,

899 F.2d 1281, 1284 (2d Cir. 1990); *Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 322

(S.D.N.Y. 2004); *Albert Fadem Trust v. Citigroup Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y.

2002).  Judicial economy generally favors consolidation and requires the court to conduct a

careful inquiry that balances the prejudice and possible confusion that consolidation might entail

against the waste of resources, the burden on the parties, and the risk of inconsistent judgments

that separate proceedings would engender.  *See Celotex*, 899 F.2d at 1285; *Albert Fadem Trust*,

239 F. Supp. 2d at 347.  Under Rule 42(a), this Court has broad discretion to consolidate cases

pending within its district.  *See Celotex*, 899 F.2d at 1284-85.  Consolidation is generally ordered

so long as any confusion or prejudice does not outweigh efficiency concerns.  *Id.*

It is also well recognized that consolidating shareholder class action suits often benefits

*both* the court and the parties by expediting pretrial proceedings, reducing case duplication and

minimizing the expenditure of time and money by all persons concerned.  *In re Olsten Corp. Sec.

Litig.*, 3 F. Supp. 2d 286, 294 (E.D.N.Y. 1998); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (providing

that the court shall not make the lead plaintiff determination until it rules on whether to

consolidate).

Consolidation is appropriate here.  Plaintiffs in the related actions have alleged that

defendants failed to disclose and misrepresented material facts.  In each of the complaints,

plaintiffs seek to hold similar defendants responsible for the consequences of their course of

conduct and seek relief under claims arising under the federal securities laws.  Plaintiffs in each

of the cases share a mutual interest in having this Court resolve questions concerning whether

defendants made material misstatements and/or omitted material facts, and whether the price of

BoA securities became artificially inflated as a result.

Because all of the actions pending before this Court present related factual and legal

issues, consolidation is appropriate.  *See Lintz v. Agria Corp.*, 08 Civ. 3536 (WHP), 08 Civ. 3886

(WHP), 08 Civ. 4456 (WHP), 2008 U.S. Dist. LEXIS 99846, at *4 (S.D.N.Y. Dec. 3, 2008).

**B.      The Institutional Investor Group Should Be Appointed Lead Plaintiff**

**1.      The Institutional Investor Group Believes That It Has
                  the Largest Financial Interest in the Relief Sought by the Class**

The PSLRA sets forth the procedure for the selection of lead plaintiff in õeach private

action arising under [the securities laws] that is brought as a plaintiff class action pursuant to the

Federal Rules of Civil Procedure.ö  Section 21D(a)(3)(A)(i) provides that within twenty days after the date on which a class action is filed:

> the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class -
>
> (I)      of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)      that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the Court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i); *see also In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583 (WHP), 2006 U.S. Dist. LEXIS 19728, at *5 (S.D.N.Y. Apr. 17, 2006).

Further, Section 21D(a)(3)(B) directs the Court to consider any motions by a plaintiff or purported class member to serve as lead plaintiff in response to any such notice within 90 days after the date of publication of the notice pursuant to Section 21D(a), or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims.

Under these sections of the Exchange Act, the court is directed to adopt a presumption that the most adequate plaintiff is the applicant that:

> (aa)      has either filed the complaint or made a motion in response to a noticeí  ;
>
> (bb)      in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)      otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Smith Barney*, 2006 U.S. Dist. LEXIS 19728, at *6.

Thus, the statutory language explicitly provides that the movant with õthe largest financial interestö is presumptively entitled to appointment as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  In determining which plaintiff has the greatest financial interest, this Court has considered the following four factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  *See Baydale v. Am. Express Co.*, No. 09 Civ. 3016 (WHP), 2009 U.S. Dist. LEXIS 71668, at *4-5 (S.D.N.Y. Aug. 14, 2009); *Lintz*, 2008 U.S. Dist. LEXIS 99846, at *5.  In noting that the magnitude of the loss is the most significant factor, this Court has expressly adopted the LIFO method, in which sales are offset against the movantøs inventory of stock acquisitions, starting with the latest and moving chronologically backward, õas the proper accounting method for measuring losses.ö *Baydale*, 2009 U.S. Dist. LEXIS 71668, at *2 n.1, *4-5. Under each of these factors, the Institutional Investor Group believes that it has the largest financial interest in this litigation.  First, PSERS purchased 2,989,928 shares of BoA common stock during the Class Period, with net purchases of 1,906,396 shares and net expenditures of $33,496,973, and suffered a LIFO loss of $9,843,774.  Second, AP1 purchased 1,121,446 shares of BoA common stock during the Class Period, with net purchases of 421,984 shares and net expenditures of $6,920,491, and suffered a $1,653,941 LIFO loss.  Collectively, the Institutional Investor Group purchased 4,111,374 shares of BoA common stock during the Class Period, with net purchases of 2,328,380 shares, net expenditures of $40,417,465, and suffered a LIFO loss of approximately $11,497,715.  *See* Rosen Decl., Exs. B-D.  As such, the Institutional Investor Group believes that it has the largest

financial interest of any lead plaintiff movant and is presumptively entitled to appointment as lead plaintiff.

Further, movant is particularly well situated to ensure the effective prosecution of an important portion of the claims of the potential class. BoA sold 1.286 billion of what the Company referred to as Common Equivalent Securities[4] pursuant to a prospectus supplement dated December 3, 2009, raising $19.3 billion, to allow the company to repay the U.S. Treasury the federal Troubled Assets Relief Program money that it had received. On February 23, 2010, BoA announced the automatic conversion in full of all outstanding shares of the company's Common Equivalent Securities into BoA common stock, effective February 24, 2010. At the time of this offering, BoA allegedly concealed the material financial risks associated with the bank's interests in real estate assets and residential mortgage backed securities ("RMBS") assets and otherwise made false or misleading statements or omissions in the December 3, 2009 prospectus supplement. With billions of dollars of assets on the company's balance sheet at risk at the time the December 3 prospectus supplement was issued, and with significant potential liabilities in connection with its RMBS transactions looming, BoA and certain other defendants may be subject to claims pursuant to the Securities Act of 1933 ("1933 Act") in connection with the December 3, 2009, prospectus supplement. The assertion of claims under the 1933 Act is important because such claims are not subject to all of the requirements, including scienter and causation, for pleading and proof applicable to claims brought under the Securities Exchange Act

---

[4]    Each unit consisted of Common Equivalent Junior Preferred Stock, Series S and warrants. Because the conditions for the conversion were met, *i.e.*, the company's shareholders voted an increase in the number of authorized common shares that they would have issued on December 3, 2009, the preferred stock automatically converted and the warrants expired as worthless.

of 1934.  *See, e.g., In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359-60 (2d Cir.

2010).  Because PSERS purchased 1,013,538 Common Equivalent Securities in BoA's

December 3, 2009 offering, which included certain preferred stock that was automatically

converted into common shares on February 24, 2010, movant has the largest stake in that $19.3

billion public offering and is best situated to prosecute that claim on behalf of all others similarly

situated.

### 2.   The Institutional Investor Group is Qualified Under Rule 23

The PSLRA provides that, in addition to possessing the largest financial interest, the lead

plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil

Procedure."  See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *Albert Fadem Trust*, 239 F. Supp. 2d at

347; *Olsten*, 3 F. Supp. 2d at  294.  Rule 23(a) provides that a party may serve as a class

representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is
> impracticable, (2) there are questions of law or fact common to the
> class, (3) the claims or defenses of the representative parties are
> typical of the claims or defenses of the class, and (4) the
> representative parties will fairly and adequately protect the
> interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy –

directly address the personal characteristics of the class representative.  Consequently, in

deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and

adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the

court-appointed lead plaintiff moves for class certification. *See In re Symbol Techs., Inc. Sec.

Litig.*, No. 05-CV-3923 (DRH)(JO), 2006 U.S. Dist. LEXIS 24776, at *6 (E.D.N.Y. April 26,

2006); *Oxford*, 182 F.R.D. at 49. As detailed below, the Institutional Investor Group satisfies the typicality and adequacy requirements of Rule 23(a) and is qualified to be appointed as lead plaintiff.

**a.     The Claims of the Institutional Investor Group
Are Typical of the Claims of the Class**

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992), *cert. dismissed,* 506 U.S. 1088 (1993); *Baydale*, 2009 U.S. Dist. LEXIS 71668, at *5. However, the claims of the lead plaintiff need not be identical to the claims of the class to satisfy typicality. *See Smith Barney*, 2006 U.S. Dist. LEXIS 19728, at *9.

The claims of the Institutional Investor Group are typical of the claims of the members of the proposed class of those who purchased or otherwise acquired the securities of BoA during the Class Period. The Institutional Investor Group seeks to represent a class of investors who, during the Class Period, purchased or otherwise acquired BoA securities. The Institutional Investor Group and all class members therefore have identical, non-competing and non-conflicting interests in establishing defendants' liability. In sum, the Institutional Investor Group satisfies the typicality requirement because, just like all other class members, its members: (1) purchased or otherwise acquired BoA securities during the applicable period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages thereby. Thus, the claims of the Institutional

12

Investor Group are typical of those of other class members because its claims and the claims of other class members arise out of the same course of events.  *Sczesny Trust*, 223 F.R.D. at 324.

> **b.     The Institutional Investor Group Will Fairly
> and Adequately Represent the Interests of the Class**

Rule 23(a)(4) requires that the representative party will õfairly and adequately protect the interests of the Class.ö  The PSLRA directs the Court to limit its inquiry regarding adequacy to: (1) whether there are any conflicts between the interests of the movant and the members of the class; (2) whether the movant is an adequate representative of the class; (3) whether the interests of the movant are aligned with the members of the class; and (4) whether there is evidence of any antagonism between the interests of the movant and the class.  15 U.S.C. § 78u-4(a)(3)(B) (iii)(I)(cc).  Adequate representation will be found if the representative is represented by able and experienced counsel, and the representative has no fundamental conflicts of interest with the interests of the class as a whole.  *Lintz*, 2008 U.S. Dist. LEXIS 99846, at *6; *Sczesny Trust*, 223 F.R.D. at 324.

Here, the Institutional Investor Groupøs interests are clearly aligned with the members of the class, and there is no evidence of any antagonism between the Institutional Investor Group and the class.  The Institutional Investor Group shares numerous common questions of law and fact with the members of the class in establishing defendantsø liability and damages, and its claims are typical of the class.  Additionally, the Institutional Investor Group has retained competent and experienced counsel who are able to conduct this complex litigation in a professional manner.  Thus, the close alignment of interests between the members of the Institutional Investor Group, combined with their strong desire to prosecute the consolidated action on behalf of the class, also militates in favor of granting the instant motion.

### 3.     The Institutional Investor Group Is the Prototypical Lead Plaintiff Envisioned by the PSLRA

In addition to satisfying the preliminary requirements of Rule 23, the appointment of the Institutional Investor Group as lead plaintiff also satisfies a critical legislative goal behind enacting the PSLRA ó to encourage sophisticated institutions with large financial interests to serve as lead plaintiffs in securities class actions.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001) (noting that the legislative intent of the PSLRA is to encourage large institutional investors to serve as lead plaintiff); *see also Olsten*, 3 F. Supp. 2d at 296 (same).

PSERS is a public pension fund system organized for the benefit of the current and retired public school employees of the Commonwealth of Pennsylvania.  As of year-end 2010, PSERS had plan assets of $49.3 billion and had more than 578,000 members, including active, vested/inactive and annuitants.

AP1 is a global retirement pension fund with net assets at year-end 2010 worth approximately $34.5 billion.  AP1ós assets are allocated among a wide spread of investments around the world, with approximately 30% of those assets invested in U.S. equities and fixed income assets.

As large public investment funds, PSERS and AP1 can zealously litigate this action and actively supervise class counsel.  As such, the members of the Institutional Investor Group are precisely the type of institutional investors that Congress sought to summon and empower when it enacted the PSLRA.  *See Ferrari*, 2004 U.S. Dist. LEXIS 13898, at *10; *see also Oxford*, 182 F.R.D. at 46.  Moreover, the Institutional Investor Group is prepared to vigorously represent the Class in prosecuting this litigation.

C. **This Court Should Approve the Institutional Investor Group's Choice of Lead Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, this Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Smith Barney*, 2006 U.S. Dist. LEXIS 19728, at *16. In these related actions, the Institutional Investor Group has selected and retained the law firm of Barrack, Rodos & Bacine to serve as lead counsel for the class.

Barrack, Rodos & Bacine has extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. *See* Rosen Decl., Ex. E. Barrack, Rodos & Bacine has been appointed as lead counsel in dozens of securities class actions, including more than 40 filed since passage of the PSLRA. Barrack, Rodos & Bacine served as co-lead counsel in the *In re Cendant Corp. Sec. Litig.*, 109 F.Supp.2d 235 (D.N.J. 2000), before the Honorable William H. Walls. In *Cendant*, Barrack, Rodos & Bacine obtained settlements for defendants totaling more than $3.1 billion, the second largest recovery ever achieved in class action securities litigation.

Barrack, Rodos & Bacine also served as co-lead counsel in the *In re WorldCom, Inc. Securities Litigation*, in which settlements totaling over $6 billion were approved by the Honorable Denise Cote. Judge Cote described the services provided by Barrack, Rodos & Bacine as one of the Lead Counsel as follows:

> The quality of representation given by Lead Counsel is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation. Lead Counsel has been energetic and creative. Its skill has matched that of able and well-funded defense counsel. It has behaved professionally and has taken care not to burden the Court or other parties with needless disputes. Its negotiations

15

with the Citigroup Defendants have resulted in a settlement of historic proportions.  It has cooperated with other counsel in ways that redound to the benefit of the class and those investors who have opted out of the class.  The submissions of Lead Counsel to the Court have been written with care and have repeatedly been of great assistance.

In sum, the quality of representation that Lead Counsel has provided to the class has been superb .í   Lead Counsel has performed a valuable public service in prosecuting this action with vigor and skill.

*In re WorldCom, Inc. Sec. Litig.*, Master File No. 02 Civ. 3288 (DLC), 2004 U.S. Dist. LEXIS 22992, *67-68, *72-73 (S.D.N.Y. November 12, 2004).  Thus, there can be no question that the Institutional Investor Group has selected counsel that is highly qualified to vigorously prosecute the litigation.

## IV.   <u>CONCLUSION</u>

For the above reasons, the Institutional Investor Group respectfully requests that the Court: (1) consolidate the related actions; (2) appoint the Institutional Investor Group as the lead plaintiff for the consolidated action; and (3) approve its choice of lead counsel.

Dated:  April 4, 2011

Respectfully submitted,

A. Arnold Gershon
Regina M. Calcaterra
William J. Ban
**BARRACK, RODOS & BACINE**
425 Park Avenue, 31st Floor
New York, NY 10022
Telephone: (212) 688-0782
Facsimile:  (212) 688-0783

-and -

16

**BARRACK, RODOS & BACINE**

By:＿＿＿/s/ Jeffrey A. Barrack＿＿＿＿＿＿
Leonard Barrack
Daniel E. Bacine
Mark R. Rosen
Jeffrey A. Barrack
Chad A. Carder
Two Commerce Square
2001 Market Street
Suite 3300
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile:  (212) 963-0838

*Counsel for the Pennsylvania Public School
Employees' Retirement System and Första AP-
Fonden*

17