**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PIPEFITTERS LOCAL NO. 636 DEFINED BENEFIT PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>BANK OF AMERICA CORPORATION, BRIAN T. MOYNIHAN and CHARLES H. NOSKI,<br><br>    Defendants. | Civil Action No. 11 cv 0733 (WHP)<br><br>ECF Case |

| | |
|---|---|
| DAVID P. SMITH, APLC, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>BANK OF AMERICA CORPORATION, BRIAN T. MOYNIHAN, KENNETH D. LEWIS, NEIL A. COTTY, JOE L. PRICE and CRAIG ROSATO,<br><br>    Defendants. | Civil Action No. 11 cv 1280 (WHP)<br><br>ECF Case |

**(Additional Captions Listed on Next Page)**

**DECLARATION OF GEOFFREY C. JARVIS IN SUPPORT OF**
**THE INSTITUTIONAL INVESTOR GROUP'S MOTION**
**FOR CONSOLIDATION, APPOINTMENT AS LEAD**
**PLAINTIFF, AND FOR APPROVAL OF SELECTION OF CO-LEAD COUNSEL**

1

| | |
|---|---|
| PATRICIA GROSSBERG LIVING TRUST, individually and on behalf of all other similarly situated stockholders, | Civil Action No. 11 cv 1982 (AKH) |
| Plaintiff, | ECF Case |
| v. | |
| BANK OF AMERICA CORPORATION, BRIAN T. MOYNIHAN, CHARLES H. NOSKI, KENNETH D. LEWIS, JOSEPH L. PRICE and COUNTRYWIDE FINANCIAL CORPORATION, | |
| Defendants. | |

| | |
|---|---|
| ANCHORAGE POLICE & FIRE RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 11 cv 2216 |
| Plaintiff, | ECF Case |
| v. | |
| BANK OF AMERICA CORPORATION, BRIAN T. MOYNIHAN, CHARLES H. NOSKI, KENNETH D. LEWIS, and JOSEPH L. PRICE, | |
| Defendants. | |

I, Geoffrey C. Jarvis, declare as follows:

1.     I am a director of the law firm Grant & Eisenhofer P.A., counsel to Sjunde AP-Fonden, Arkansas Teacher Retirement System, and KBC Asset Management NV (collectively the "Institutional Investor Group"). I submit this declaration in support of the Institutional Investor Group's Motion for Consolidation, Appointment as Lead Plaintiff, and for Approval of Selection of Co-Lead Counsel.

2

2.      Attached are true and correct copies of the following documents:

Exhibit A:     Certifications of the members of the Institutional Investor Group..

Exhibit B:     Firm Biography for Grant & Eisenhofer P.A.

Exhibit C:     Firm Biography for Labaton Sucharow LLP.

Exhibit D:     Notice published on February 2, 2011 on *Business Wire*.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Executed this 4th day of April 2011

:   */s/ Geoffrey C. Jarvis*_____

Geoffrey C. Jarvis

3

# Exhibit A

## CERTIFICATION ON BEHALF OF SJUNDE AP-FONDEN

I, Richard Grottheim, as the authorized signatory of Sjunde AP-Fonden ("AP7"), make this Certification pursuant to 28 U.S.C. § 1746 and 15 U.S.C. § 78u-4, and states as follows:

1.      I am authorized to make legal decisions on behalf of AP7.

2.      I have reviewed the Complaint against Bank of America Corporation ("BAC"), . I am duly authorized to make this Certification on behalf of AP7 and have authorized the filing of a motion seeking appointment of AP7 as a lead plaintiff.

3.      I have reviewed the records of AP7's transactions in the securities of BAC for the proposed class period of July 23, 2009 through October 19, 20100 ("Class Period").  Attached as **Schedule A** to this Certification is a list of AP7's transactions in the securities of BAC during the Class Period.

4.      AP7 did not purchase the securities of BAC at the direction of counsel nor in order to participate in any private action arising under the U.S. federal securities laws.  AP7 invested in BAC securities solely for its own business purposes.

5.      AP7 is willing to serve as a lead plaintiff in a representative capacity on behalf of the proposed class of persons who purchased BAC securities during the Class Period, including providing testimony at deposition and trial, if necessary.

6.      During the three-year period preceding the date of this Certification, AP7 sought to serve and was appointed as a representative party for a class in the following class action under the federal securities laws: *Monk v. Johnson & Johnson* (D.N.J. 2010). No. 10-4841.

7.      AP7 will not accept any payment for serving as a representative party on behalf of the class beyond its *pro rata* share of any recovery, except as ordered and approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: April 02 , 2011

**Sjunde AP-Fonden**

**Richard Grottheim**
**Vice-Executive Director**

2

# SCHEDULE A

## AP7 (Sjunde AP-Fonden)

**ISIN:** US0605051046
**Ticker:** BAC
**Class Period:** July 23, 2009 through October 19, 2010
**Pre-Class Period Holdings:** 1,621,509

| Class Period Purchases | | | | Class Period Sales | | |
|---|---|---|---|---|---|---|
| **Date** | **Shares** | **Price** | | **Date** | **Shares** | **Price** |
| 08/13/09 | 1,087 | $17.00 | | 01/29/10 | 800 | $15.18 |
| 08/13/09 | 2,200 | $16.88 | | 01/29/10 | 800 | $15.18 |
| 08/13/09 | 60,300 | $16.88 | | 01/29/10 | 17,200 | $15.18 |
| 08/13/09 | 108,059 | $17.00 | | 01/29/10 | 49,600 | $15.18 |
| 12/08/09 | 10,500 | $15.41 | | 05/14/10 | 3,301 | $16.34 |
| 12/08/09 | 384,300 | $15.41 | | 07/30/10 | 8,600 | $14.04 |
| 02/26/10 | 1,400 | $16.65 | | | | |
| 02/26/10 | 1,500 | $16.66 | | | | |
| 02/26/10 | 3,089 | $16.64 | | | | |
| 02/26/10 | 46,800 | $16.65 | | | | |
| 02/26/10 | 46,800 | $16.66 | | | | |
| 02/26/10 | 217,847 | $16.64 | | | | |
| 03/19/10 | 300 | $16.82 | | | | |
| 03/19/10 | 17,193 | $16.82 | | | | |
| 04/21/10 | 7,521 | $18.28 | | | | |
| 04/21/10 | 94,273 | $18.28 | | | | |
| 04/22/10 | 13,400 | $18.54 | | | | |
| 04/22/10 | 60,500 | $18.54 | | | | |
| 04/22/10 | 171,200 | $18.54 | | | | |
| 04/23/10 | 96,100 | $18.43 | | | | |
| 04/26/10 | 61,575 | $18.27 | | | | |
| 04/26/10 | 75,800 | $18.05 | | | | |
| 04/27/10 | 22,650 | $17.97 | | | | |
| 04/27/10 | 187,893 | $18.05 | | | | |
| 04/27/10 | 564,666 | $17.97 | | | | |
| 04/28/10 | 125,673 | $17.77 | | | | |
| 05/05/10 | 95,172 | $17.35 | | | | |
| 05/06/10 | 127,306 | $17.28 | | | | |
| 05/06/10 | 133,400 | $16.28 | | | | |
| 05/07/10 | 19,019 | $16.34 | | | | |
| 05/07/10 | 107,128 | $16.33 | | | | |
| 05/10/10 | 97,174 | $17.23 | | | | |
| 05/11/10 | 58,480 | $17.16 | | | | |
| 07/08/10 | 68,900 | $14.86 | | | | |
| 10/06/10 | 95,800 | $13.39 | | | | |



3

**PLAINTIFF'S CERTIFICATION**
**PURSUANT TO FEDERAL SECURITIES LAWS**

The undersigned, Wouter Vanden Eynde and Peter Buelens, on behalf of KBC Asset Management NV ("KBC"), for account of the funds listed in Schedule A (the "Funds"), declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.      We have reviewed a complaint against Bank of America Corporation ("BAC") and designate Motley Rice LLC as proposed lead counsel for KBC in this action for all purposes.

2.      We are duly authorized to institute legal action on KBC's and the Funds' behalf, including litigation against BAC and the other defendants. KBC has received assignments of the claims from the funds on whose behalf it is moving.

3.      KBC did not acquire BAC securities at the direction of plaintiff's counsel or in order to participate in any private action under the federal securities laws.

4.      KBC is willing to serve as a lead plaintiff and understands that a lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial. KBC also understands that, if appointed lead Plaintiff in this action, it will be subject to the jurisdiction of the Court and will be bound by all rulings by the Court, including rulings regarding any judgments.

5.      KBC will not accept any payment for serving as a representative party beyond its pro rata share of any recovery, except reasonable costs and expenses, such as lost wages and travel expenses, directly related to the class representation, as ordered or approved by the court pursuant to law.

6.      Within the past three years, KBC has sought to serve as a representative party for a class in an action under the federal securities laws in the following cases:

*John Martin, LLC v. Constellation Energy Group, et al.*, 08-cv-08185 (WHP) (S.D.N.Y. 2008), (transferred to D. Md. 09-cv-00408 (CCB));

*Jacksonville Police and Fire Pension Fund, et al. v. American International Group, Inc., et al.*, 08-cv-4772 (RJS) (S.D.N.Y. 2008);

*In re Arthrocare Corporation Securities Litigation*, 08-cv-00574 (SS) (W.D. Tex. 2008);

*In re Sequenom, Inc. Securities Litigation*, No. 09-cv-00921 (LAB) (S.D. Cal. 2009);

*Garden City Employees' Retirement System, et al. v. Psychiatric Solutions, Inc., et al.*, 09-cv-00882 (M.D. Tenn. 2009);

and    *In re Boston Scientific Corp. Securities Litigation*, 10-cv-10593 (PBS) (D. Mass. 2010);

*Jimmy Elias Karam v. Corinthian Colleges, Inc. et al.*, 10-cv-06523 (GHK) (C.D. Cal.).

7.    Within the past three years, KBC has served as a representative party for a class in an action under the federal securities laws in the following case:

*In re Boston Scientific Corp. Securities Litigation*, 10-cv-10593 (PBS) (D. Mass. 2010).

8.    KBC understands that this is not a claim form, and that its ability to share in any recovery as a member of the class is unaffected by its decision to serve as a representative party.

9.    Attached hereto as Schedule A is a complete listing of all transactions KBC made on behalf of the Funds during the Class Period in the security that is the subject of the complaint. KBC will provide records of those transactions upon request.

10.    KBC is also represented and counseled in this matter by its attorney, Deborah M. Sturman of Sturman LLC.

**We declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.**

Executed this 1st day of April 2011

KBC Asset Management NV

By: _____
Wouter Vanden Eynde
Managing Director
KBC Asset Management NV

By: _____
Peter Buelens
Managing Director
KBC Asset Management NV

**Bank of America Corp. (NYSE: BAC)**
Class Period: 07/23/09 - 10/19/10

**Schedule A**

| KBC | | Date | Shares | Price |
|---|---|---|---|---|
| **PLATO INST.I.F. NORTH AMERICAN EQ.** | | | | |
| | Purchases: | 09/14/2009 | 13,297 | 16.9900 |
| | | 09/16/2009 | 2,589 | 17.2500 |
| | | 11/30/2009 | 22,877 | 15.8500 |
| | | 12/04/2009 | 3,751 | 16.2800 |
| | | 02/02/2010 | 11,774 | 15.6000 |
| | | 02/25/2010 | 53,323 | 16.5500 |
| | | 03/19/2010 | 16,587 | 16.8200 |
| | | 03/24/2010 | 7,865 | 17.5700 |
| | | 07/15/2010 | 30,767 | 15.3900 |
| | | 08/02/2010 | 4,994 | 14.4400 |
| | | 08/31/2010 | 7,379 | 12.4500 |
| | | 09/16/2010 | 14,203 | 13.5500 |
| | | 10/01/2010 | 3,984 | 13.3000 |
| | Sales: | 09/30/2009 | 13,271 | 16.9200 |
| | | 12/22/2009 | 17,774 | 15.3300 |
| | | 12/23/2009 | 2,997 | 15.1900 |
| | | 03/03/2010 | 5,671 | 16.3700 |
| | | 03/31/2010 | 21,440 | 17.8500 |
| | | 04/19/2010 | 2,714 | 18.3900 |
| | | 05/04/2010 | 2,889 | 17.5600 |
| | | 05/17/2010 | 25,093 | 16.3500 |
| **SIVEK - GLOBAL HIGH** | | | | |
| | Purchases: | 07/31/2009 | 3,051 | 14.6104 |
| | | 09/04/2009 | 1,997 | 17.0575 |
| | | 09/16/2009 | 697 | 17.1659 |
| | | 10/22/2009 | 406 | 16.5200 |
| | | 10/22/2009 | 493 | 16.5144 |
| | | 10/30/2009 | 2,681 | 14.6509 |
| | | 01/05/2010 | 2,002 | 15.8170 |
| | | 03/04/2010 | 3,573 | 16.4090 |
| | | 04/06/2010 | 556 | 18.3851 |
| | | 06/11/2010 | 719 | 15.5264 |
| | | 08/19/2010 | 788 | 13.0496 |
| | Sales: | 08/03/2009 | 523 | 15.3200 |
| | | 10/05/2009 | 640 | 16.9205 |
| | | 01/29/2010 | 2,555 | 15.2269 |
| | | 03/26/2010 | 958 | 17.8313 |
| | | 05/06/2010 | 695 | 16.2763 |
| | | 05/11/2010 | 609 | 17.2025 |
| | | 06/03/2010 | 311 | 15.7790 |
| | | 06/17/2010 | 1,494 | 15.7117 |
| | | 07/09/2010 | 684 | 15.0895 |
| | | 07/14/2010 | 440 | 15.6251 |
| | | 07/23/2010 | 593 | 13.7170 |
| | | 09/23/2010 | 1,078 | 13.1689 |

**SIVEK - GLOBAL MEDIUM**

| | | | | |
|---|---|---|---:|---:|
| | Purchases: | 07/31/2009 | 11,738 | 14.6104 |
| | | 08/19/2009 | 338 | 16.7594 |
| | | 08/19/2009 | 367 | 16.7500 |
| | | 09/04/2009 | 6,241 | 17.0575 |
| | | 09/16/2009 | 1,024 | 17.1659 |
| | | 09/16/2009 | 386 | 17.2500 |
| | | 10/22/2009 | 2,254 | 16.5144 |
| | | 10/30/2009 | 10,979 | 14.6509 |
| | | 01/05/2010 | 7,055 | 15.8170 |
| | | 03/04/2010 | 13,961 | 16.4090 |
| | | 04/06/2010 | 2,143 | 18.3851 |
| | | 06/11/2010 | 2,827 | 15.5264 |
| | | 08/19/2010 | 2,028 | 13.0496 |
| | Sales: | 10/05/2009 | 1,589 | 16.9205 |
| | | 12/14/2009 | 951 | 15.5945 |
| | | 01/29/2010 | 9,273 | 15.2269 |
| | | 03/09/2010 | 2,304 | 16.8114 |
| | | 03/26/2010 | 4,439 | 17.8313 |
| | | 05/06/2010 | 3,671 | 16.2763 |
| | | 05/11/2010 | 2,051 | 17.2025 |
| | | 06/03/2010 | 1,256 | 15.7790 |
| | | 06/17/2010 | 4,715 | 15.7117 |
| | | 07/09/2010 | 2,265 | 15.0895 |
| | | 07/14/2010 | 1,532 | 15.6251 |
| | | 07/23/2010 | 2,082 | 13.7170 |
| | | 09/23/2010 | 2,972 | 13.1689 |

**SIVEK - GLOBAL LOW**

| | | | | |
|---|---|---|---:|---:|
| | Purchases: | 07/31/2009 | 2,397 | 14.6104 |
| | | 09/04/2009 | 1,505 | 17.0575 |
| | | 10/22/2009 | 287 | 16.5200 |
| | | 10/30/2009 | 1,570 | 14.6509 |
| | | 01/05/2010 | 1,305 | 15.8170 |
| | | 03/04/2010 | 2,021 | 16.4090 |
| | | 06/11/2010 | 519 | 15.5264 |
| | Sales: | 08/19/2009 | 367 | 16.7500 |
| | | 09/16/2009 | 386 | 17.2500 |
| | | 12/14/2009 | 410 | 15.5984 |
| | | 01/29/2010 | 1,810 | 15.2269 |
| | | 03/26/2010 | 887 | 17.8313 |
| | | 04/21/2010 | 394 | 18.2800 |
| | | 05/11/2010 | 565 | 17.2025 |
| | | 06/17/2010 | 1,150 | 15.7117 |
| | | 07/14/2010 | 501 | 15.6251 |
| | | 07/23/2010 | 327 | 13.7170 |
| | | 09/23/2010 | 588 | 13.1700 |
| | | 09/23/2010 | 197 | 13.1689 |

**PRIVILEGED PORTFOLIO EQUITY**

| | | | | |
|---|---|---|---:|---:|
| | Purchases: | 07/31/2009 | 163,106 | 14.6104 |
| | | 08/07/2009 | 51,000 | 16.4841 |
| | | 08/19/2009 | 11,725 | 16.7594 |

|         |            |         |         |
|---------|------------|---------|---------|
|         | 09/08/2009 | 36,841  | 17.0818 |
|         | 09/16/2009 | 53,292  | 17.1696 |
|         | 10/09/2009 | 44,876  | 17.4993 |
|         | 11/18/2009 | 53,039  | 16.3377 |
|         | 12/22/2009 | 10,111  | 15.3697 |
|         | 01/06/2010 | 180,730 | 16.4564 |
|         | 01/21/2010 | 15,017  | 15.5285 |
|         | 02/17/2010 | 5,631   | 15.6438 |
|         | 03/09/2010 | 88,597  | 16.8163 |
|         | 03/18/2010 | 903     | 17.0800 |
|         | 03/18/2010 | 33,718  | 17.0732 |
|         | 04/08/2010 | 76,422  | 18.7585 |
|         | 04/21/2010 | 394     | 18.2800 |
|         | 04/21/2010 | 65,700  | 18.2546 |
|         | 06/04/2010 | 48,189  | 15.3655 |
|         | 08/19/2010 | 3,599   | 13.0496 |
|         | 09/24/2010 | 7,012   | 13.5507 |
|         | 09/28/2010 | 43,140  | 13.2550 |
|         | 09/30/2010 | 42,395  | 13.1113 |
| Sales:  | 10/22/2009 | 406     | 16.5200 |
|         | 10/22/2009 | 4,598   | 16.5200 |
|         | 01/25/2010 | 86,616  | 15.0806 |
|         | 01/29/2010 | 40,785  | 15.2335 |
|         | 02/08/2010 | 52,244  | 14.5118 |
|         | 04/30/2010 | 140,220 | 17.7042 |
|         | 05/07/2010 | 76,276  | 16.1641 |
|         | 05/20/2010 | 32,127  | 15.6350 |
|         | 05/25/2010 | 97,863  | 15.3895 |
|         | 05/26/2010 | 54,569  | 15.5384 |
|         | 06/17/2010 | 69,224  | 15.7117 |
|         | 06/25/2010 | 5,163   | 15.5170 |
|         | 06/29/2010 | 52,662  | 14.5328 |
|         | 07/01/2010 | 38,202  | 14.0106 |
|         | 07/23/2010 | 8,610   | 13.7073 |

**KBC EQUITY FUND - AMERICA**

|            |            |         |         |
|------------|------------|---------|---------|
| Purchases: | 07/27/2009 | 5,000   | 13.0489 |
|            | 07/31/2009 | 109,210 | 14.6104 |
|            | 08/14/2009 | 21,053  | 17.3630 |
|            | 08/21/2009 | 23,000  | 17.5040 |
|            | 09/04/2009 | 23,822  | 17.0575 |
|            | 10/05/2009 | 2,186   | 16.9600 |
|            | 10/05/2009 | 12,564  | 16.8371 |
|            | 10/08/2009 | 29,000  | 17.3571 |
|            | 10/30/2009 | 39,058  | 15.0376 |
|            | 11/12/2009 | 20,000  | 16.0573 |
|            | 11/27/2009 | 11,598  | 15.5934 |
|            | 11/27/2009 | 445     | 15.4700 |
|            | 01/04/2010 | 110,665 | 15.6449 |
|            | 03/04/2010 | 100,000 | 16.4140 |
|            | 04/06/2010 | 110,000 | 18.3410 |
| Sales:     | 12/24/2009 | 10,000  | 15.2265 |
|            | 01/29/2010 | 113,330 | 15.2335 |
|            | 04/30/2010 | 68,038  | 17.7033 |
|            | 05/06/2010 | 24,971  | 16.2763 |

|  |  | 05/21/2010 | 48,000 | 15.7314 |
|--|--|--|--|--|
|  |  | 05/25/2010 | 43,693 | 15.1374 |
|  |  | 06/25/2010 | 21,569 | 15.5170 |
|  |  | 06/29/2010 | 23,306 | 14.5328 |
|  |  | 06/30/2010 | 12,000 | 14.4112 |
|  |  | 07/01/2010 | 9,542 | 14.0106 |
|  |  | 07/02/2010 | 5,000 | 13.8751 |
|  |  | 08/17/2010 | 7,744 | 13.2162 |

**KBC EQUITY FUND - TOP 30**

| Purchases: | 10/06/2009 | 2,963 | 16.9534 |
|--|--|--|--|
|  | 10/30/2009 | 1,789 | 14.6509 |
|  | 01/05/2010 | 1,974 | 15.8170 |
|  | 04/07/2010 | 3,131 | 18.6099 |
|  | 07/23/2010 | 1,492 | 13.7208 |
|  | 09/23/2010 | 588 | 13.1700 |

| Sales: | 11/27/2009 | 445 | 15.4700 |
|--|--|--|--|
|  | 01/21/2010 | 675 | 15.5352 |
|  | 01/29/2010 | 1,391 | 15.2335 |
|  | 02/18/2010 | 368 | 15.9035 |
|  | 03/18/2010 | 654 | 17.0800 |
|  | 05/06/2010 | 1,089 | 16.9594 |
|  | 06/11/2010 | 323 | 15.5940 |
|  | 07/09/2010 | 807 | 15.0895 |
|  | 08/17/2010 | 427 | 13.2162 |

**KBC EQUITY FUND - FINANCE**

| Purchases: | 07/27/2009 | 80,000 | 13.0489 |
|--|--|--|--|
|  | 07/31/2009 | 57,356 | 14.6104 |
|  | 08/06/2009 | 15,485 | 16.6598 |
|  | 08/07/2009 | 10,700 | 16.4775 |
|  | 08/14/2009 | 19,828 | 17.3579 |
|  | 09/16/2009 | 6,264 | 17.1619 |
|  | 10/22/2009 | 60,367 | 16.4177 |
|  | 01/21/2010 | 60,000 | 15.5145 |
|  | 04/09/2010 | 20,000 | 18.6141 |
|  | 04/21/2010 | 64,448 | 18.2800 |
|  | 09/07/2010 | 50,000 | 13.2840 |

| Sales: | 05/17/2010 | 64,448 | 16.1188 |
|--|--|--|--|
|  | 05/21/2010 | 25,000 | 15.9900 |
|  | 05/25/2010 | 15,000 | 15.3895 |
|  | 05/26/2010 | 30,000 | 15.5454 |
|  | 06/28/2010 | 10,000 | 15.5000 |
|  | 06/29/2010 | 10,000 | 14.5328 |
|  | 06/30/2010 | 10,000 | 14.4110 |

**KBC EQUITY FUND - HI.DIV.NO-AMERICA**

| Purchases: | 07/27/2009 | 3,602 | 13.0489 |
|--|--|--|--|
|  | 08/25/2009 | 7,150 | 17.7500 |
|  | 09/08/2009 | 6,995 | 17.0200 |

| Sales: | 07/23/2009 | 118 | 12.6900 |
|--|--|--|--|
|  | 09/03/2009 | 7,927 | 16.7213 |

|  |  | 10/14/2009 | 29,237 | 18.5411 |
|---|---|---|---|---|

**KBC EQUITY FUND - QUANT GLOBAL 1**

| | | | | |
|---|---|---|---|---|
| Purchases: | 07/31/2009 | 8,131 | 14.7900 |
| | 08/31/2009 | 4,263 | 17.5900 |
| | 09/08/2009 | 1,741 | 17.5000 |
| | 09/11/2009 | 2,424 | 17.1175 |
| | 09/15/2009 | 2,956 | 17.0100 |
| | 09/17/2009 | 3,821 | 17.4300 |
| | 06/09/2010 | 2,479 | 15.0337 |
| | | | |
| Sales: | 09/02/2009 | 7,821 | 16.2200 |
| | 09/14/2009 | 2,927 | 16.5603 |
| | 09/21/2009 | 5,027 | 17.2408 |
| | 09/25/2009 | 2,764 | 16.8988 |
| | 09/30/2009 | 6,274 | 16.9200 |

**KBC EQUITY FUND - HIGH DIVIDEND**

| | | | | |
|---|---|---|---|---|
| Purchases: | 07/24/2009 | 1,171 | 12.5463 |
| | 07/27/2009 | 4,110 | 13.0489 |
| | 07/31/2009 | 2,024 | 14.6104 |
| | 08/20/2009 | 1,762 | 17.0936 |
| | 08/24/2009 | 1,395 | 17.4336 |
| | 08/25/2009 | 3,956 | 17.7377 |
| | 08/31/2009 | 2,062 | 17.6387 |
| | 09/08/2009 | 4,475 | 17.0867 |
| | | | |
| Sales: | 09/03/2009 | 2,514 | 16.7083 |
| | 09/18/2009 | 53,355 | 17.6267 |

**KBC IF - US EQUITY**

| | | | | |
|---|---|---|---|---|
| Purchases: | 07/31/2009 | 7,552 | 14.6104 |
| | 08/21/2009 | 3,000 | 17.5040 |
| | 10/30/2009 | 2,907 | 15.0376 |
| | 12/08/2009 | 701 | 15.4479 |
| | 01/04/2010 | 4,565 | 15.6449 |
| | 03/04/2010 | 4,956 | 16.4136 |
| | 04/06/2010 | 2,000 | 18.3851 |
| | 05/20/2010 | 7,715 | 15.6437 |
| | 07/09/2010 | 4,299 | 14.9988 |
| | | | |
| Sales: | 10/05/2009 | 2,186 | 16.9600 |
| | 12/14/2009 | 1,383 | 15.5961 |
| | 01/29/2010 | 3,907 | 15.2335 |
| | 05/06/2010 | 2,921 | 16.2763 |
| | 05/25/2010 | 5,458 | 15.3895 |
| | 06/11/2010 | 4,500 | 15.5302 |
| | 06/25/2010 | 1,500 | 15.5170 |
| | 07/01/2010 | 3,000 | 14.0106 |
| | 07/02/2010 | 1,000 | 13.8751 |
| | 08/17/2010 | 1,502 | 13.2162 |
| | 10/01/2010 | 1,500 | 13.3230 |

**KBC IF - GLOBAL SRI DEFENSIVE 1**

| | | | |
|---|---|---|---|
| Purchases: | 01/04/2010 | 409 | 15.6900 |
| | 06/01/2010 | 2,722 | 15.4400 |
| | 07/06/2010 | 3,063 | 14.0600 |
| Sales: | 09/03/2009 | 815 | 16.8400 |
| | 12/23/2009 | 1,066 | 15.1900 |

**KBC INDEX FUND - WORLD**

| | | | |
|---|---|---|---|
| Purchases: | 08/04/2009 | 3,711 | 15.6400 |
| | 08/05/2009 | 3,869 | 16.6600 |
| | 11/16/2009 | 2,169 | 15.8700 |
| | 07/30/2010 | 3,015 | 14.0400 |
| | 10/11/2010 | 4,854 | 13.1500 |
| Sales: | 08/03/2010 | 2,141 | 14.3500 |
| | 09/23/2010 | 2,332 | 13.1700 |

**KBC INDEX FUND - UNITED STATES**

| | | | |
|---|---|---|---|
| Purchases: | 08/04/2009 | 2,755 | 15.6400 |
| | 09/04/2009 | 1,952 | 17.0900 |
| | 10/22/2009 | 4,183 | 16.5200 |
| | 01/19/2010 | 8,097 | 16.3200 |
| | 04/14/2010 | 6,614 | 19.4000 |
| Sales: | 02/02/2010 | 17,395 | 15.6000 |
| | 08/03/2010 | 2,716 | 14.3400 |

## CERTIFICATION

I, George Hopkins, as Executive Director of Arkansas Teacher Retirement System, hereby certify as follows:

1.      I am fully authorized to enter into and execute this Certification on behalf of the Arkansas Teacher Retirement System ("Arkansas Teacher"). I have reviewed the Complaint filed against Bank of America Corporation ("Bank of America") alleging violations of the federal securities laws;

2.      Arkansas Teacher did not purchase securities of Bank of America at the direction of counsel or in order to participate in any private action under the federal securities laws;

3.      Arkansas Teacher is willing to serve as a lead plaintiff in this matter, including providing testimony at deposition and trial, if necessary;

4.      Arkansas Teacher's transactions in Bank of America during the class period are reflected in Exhibit A, attached hereto;

5.      Arkansas Teacher sought to serve as a lead plaintiff in the following class actions under the federal securities laws during the last three years:

*In re Colonial Bancgroup, Inc. Securities Litigation*, No. 2:09-cv-00104-MHT-WC (M.D. Ala.)

*In re MGM Mirage Securities Litigation*, No. 2:09-cv-01558-RCJ-LRL (D. Nev.)

*Plichta v. Sunpower Corporation et al*, No. 3:09-cv-05473-RS (N.D. Cal.)

*City of Monroe Employees' Retirement System v. The Hartford Financial Services Group, Inc. et al*, No. 1:10-cv-02835-NRB (S.D.N.Y.)

*Richman v. Goldman Sachs Group, Inc. et al*, No. 1:10-cv-03461-PAC (S.D.N.Y.)

*Rochester Laborers Pension Fund v. Monsanto Company et al*, No. 4:10-cv-01380-CDP (E.D. Mo.)

*Jimmy Elias Karam v. Corinthian Colleges, Inc. et al*, No. 2:10-cv-06523-GHK –RC (C.D. Cal.)

*In re Beckman Coulter, Inc. Securities Litigation*, No. 8:10-cv-01327-JST –RNB (C.D. Cal.)

6.      Beyond its pro rata share of any recovery, Arkansas Teacher will not accept payment for serving as a lead plaintiff on behalf of the class, except the reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this 24th day of March, 2011.

George Hopkins
*Executive Director of Arkansas Teacher Retirement System*

## EXHIBIT A

## TRANSACTIONS IN
## BANK OF AMERICA CORPORATION

| Transaction Type | Trade Date | Shares | Price Per Share | Cost/Proceeds |
|---|---|---|---|---|
| Sale | 07/27/09 | -31,200.00 | $14.79 | $461,448.00 |
| Sale | 07/29/09 | -193,200.00 | $13.56 | $2,620,410.24 |
| Purchase | 01/25/10 | 11,600.00 | $15.08 | ($174,940.76) |
| Purchase | 02/08/10 | 114,100.00 | $14.62 | ($1,667,833.93) |
| Sale | 02/18/10 | -125,700.00 | $15.84 | $1,991,641.08 |
| Purchase*** | 02/24/10 | 74,359.00 | $16.33 | ($1,214,282.47) |
| Purchase*** | 02/24/10 | 626,600.00 | $16.33 | ($10,232,378.00) |
| Sale | 02/24/10 | -36,400.00 | $16.22 | $590,342.48 |
| Sale | 02/24/10 | -7,300.00 | $16.22 | $118,392.86 |
| Sale | 02/25/10 | -56,900.00 | $16.14 | $918,491.18 |
| Sale | 02/26/10 | -41,500.00 | $16.64 | $690,755.05 |
| Sale | 03/01/10 | -10,500.00 | $16.78 | $176,149.05 |
| Sale | 03/02/10 | -28,700.00 | $16.79 | $481,944.75 |
| Sale | 03/12/10 | -104,100.00 | $17.06 | $1,775,852.31 |
| Sale | 03/24/10 | -9,600.00 | $17.53 | $168,307.20 |
| Sale | 04/12/10 | -5,900.00 | $18.70 | $110,348.88 |
| Sale | 04/15/10 | -9,200.00 | $19.65 | $180,777.24 |
| Sale | 04/16/10 | -9,900.00 | $19.16 | $189,639.45 |
| Sale | 04/16/10 | -5,700.00 | $19.66 | $112,089.36 |
| Purchase | 04/20/10 | 19,300.00 | $18.71 | ($361,079.84) |
| Purchase | 04/22/10 | 5,500.00 | $18.05 | ($99,290.40) |
| Purchase | 04/22/10 | 7,400.00 | $18.19 | ($134,611.18) |
| Purchase | 05/07/10 | 24,600.00 | $16.54 | ($406,876.62) |
| Purchase | 06/01/10 | 15,900.00 | $15.64 | ($248,677.59) |
| Purchase | 06/08/10 | 10,900.00 | $14.96 | ($163,026.94) |
| Purchase | 07/06/10 | 15,700.00 | $14.19 | ($222,735.90) |
| Purchase | 09/15/10 | 13,000.00 | $13.75 | ($178,763.00) |
| Sale | 09/27/10 | -24,900.00 | $13.50 | $336,032.97 |
| Sale | 09/29/10 | -65,500.00 | $13.12 | $859,569.60 |
| Sale | 09/30/10 | -60,600.00 | $13.27 | $804,083.22 |
| Sale | 10/12/10 | -3,700.00 | $13.34 | $49,360.59 |
| Sale | 10/18/10 | -17,400.00 | $11.92 | $207,409.74 |
| Sale | 10/19/10 | -11,100.00 | $12.26 | $136,135.95 |

***Shares received through exchange of preferred securities to common stock.

# Exhibit B

**GRANT & EISENHOFER P.A.**
**FIRM BIOGRAPHY**

Grant & Eisenhofer P.A. ("G&E") is a national litigation boutique with more than 50 attorneys that concentrates on federal securities and corporate governance litigation and other complex class actions.  G&E primarily represents domestic and foreign institutional investors, both public and private, who have been damaged by corporate fraud, greed and mismanagement. The firm was named to the National Law Journal's Plaintiffs' Hot List for the last three years and is listed as one of America's Leading Business Lawyers by Chambers and Partners, who reported that G&E "commanded respect for its representation of institutional investors in shareholder and derivative actions, and in federal securities fraud litigation."  Based in Delaware, New York and Washington, D.C., G&E routinely represents clients in federal and state courts throughout the country.  G&E's clients include the California Public Employees' Retirement System, New York State Common Retirement Fund, Ohio Public Employees' Retirement System, State of Wisconsin Investment Board, Teachers' Retirement System of Louisiana, PIMCO, Franklin Templeton, Trust Company of the West, The Capital Guardian Group and many other public and private domestic and foreign institutions.

G&E was founded in 1997 by Jay W. Eisenhofer and Stuart M. Grant, formerly litigators in the Wilmington office of the nationally prominent firm of Skadden, Arps, Slate, Meagher & Flom LLP.  Over the years, the firm's partners have gained national reputations in securities and corporate litigation.  G&E has recovered over $12 billion dollars for its clients in the last five years, and has repeatedly been named one of the nation's "Top Ten Plaintiff's Firms" by the National Law Journal. In 2008 and 2009, RiskMetrics Group recognized G&E for winning the highest average investor recovery in securities class actions of any law firm in the U.S.

G&E has been lead counsel in some of the largest securities class action recoveries in U.S. history, including:

> $3.2 billion settlement from Tyco International Ltd.
> $895 million from United Healthcare
> $450 million Pan-European settlement from Royal Dutch Shell
> $448 million settlement from Global Crossing Ltd.
> $420 million from Digex
> $325 million from Delphi Corp
> $303 million settlement from General Motors
> $300 million settlement from DaimlerChrysler Corporation
> $300 million recovery from Oxford Health Plans
> $400 million recovery from Marsh & McLennan
> $276 million judgment & settlement from Safety-Kleen

G&E currently serves as lead counsel in securities class actions involving, among others, Pfizer, Merck, Alstom, Parmalat, Satyam and Refco.

G&E has also achieved landmark results in corporate governance litigation, including:

*In re UnitedHealth Group Inc. Shareholder Derivative Litigation*: G&E represents the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, and Connecticut Retirement Plans and Trust Funds as lead plaintiffs in a derivative breach of fiduciary duty action against William W. McGuire, the former CEO of UnitedHealth Group. The case relates to the improper backdating of over 55.4 million (split-adjusted) stock options issued by UnitedHealth from 1996 through 2002, and the issuance of an additional 12.31 million (split adjusted) stock options post-2002 that violated the terms of the applicable shareholder-approved stock option plans. G&E achieved a settlement that has resulted in significant governance reforms and payments in excess of $900 million, the largest settlement in the history of derivative litigation in any jurisdiction.

*In re Digex, Inc. Shareholders Litigation* – G&E initiated litigation alleging that the directors and majority stockholder of Digex, Inc. breached fiduciary duties to the company and its public shareholders by permitting the majority shareholder to usurp a corporate opportunity that belonged to Digex. G&E's efforts in this litigation resulted in an unprecedented settlement of $420 million, the largest settlement in the history of the Delaware Chancery Court.

*Caremark / CVS Merger* - G&E represented institutional shareholders challenging the conduct of the Caremark board in connection with the merger agreement with CVS, and its rejection of a competing proposal. G&E was able to force Caremark to provide additional disclosures to public shareholders and to renegotiate the merger agreement with CVS to provide Caremark shareholders with an additional $3.19 billion in cash consideration and statutory appraisal rights.

*Teachers' Retirement System of Louisiana v. Greenberg, et al. and American International Group, Inc.*: In the largest settlement of shareholder derivative litigation in the history of the Delaware Chancery Court, G&E reached a $115 million settlement in a lawsuit against former executives of AIG for breach of fiduciary duty. The case challenged hundreds of millions of dollars in commissions paid by AIG to C.V. Starr & Co., a privately held affiliate controlled by former AIG Chairman Maurice "Hank" Greenberg and other AIG directors. The suit alleged that AIG could have done the work for which it paid Starr, and that the commissions were simply a mechanism for Greenberg and other Starr directors to line their pockets.

*AFSCME v. AIG* – This historic federal appeals court ruling in favor of G&E's client established the right, under the then-existing proxy rules, for shareholders to place the names of director candidates nominated by shareholders on corporate proxy materials – reversing over 20 years of

adverse rulings from the SEC's Division of Corporate Finance and achieving what had long been considered the "holy grail" for investor activists. Although the SEC took nearly immediate action to reverse the decision, the ruling renewed and intensified the dialogue regarding "proxy access" before the SEC, ultimately resulting in a new rule currently being considered by the SEC that, if implemented, will make "proxy access" mandatory for every publicly traded corporation.

*Unisuper Ltd. v. News Corp., et al.* – G&E forced News Corp. to rescind the extension of its poison pill on the grounds that it was obtained without proper shareholder approval.

*Teachers' Retirement System of Louisiana v. HealthSouth* – G&E negotiated a settlement which ousted holdover board members loyal to indicted CEO Richard Scrushy and created mechanisms whereby *shareholders* would nominate their replacements.

*Carmody v. Toll Brothers* – This action initiated by G&E resulted in the seminal ruling that "dead-hand" poison pills are illegal.

In addition, the firm's lawyers are often called upon to testify on behalf of institutional investors before the SEC and various judicial commissions, and they frequently write and speak on securities and corporate governance issues. G&E partners Jay Eisenhofer and Michael Barry are co-authors of the *Shareholder Activism Handbook*, and in 2008, Jay Eisenhofer was named one of the 100 most influential people in the field of corporate governance.

G&E is proud of its success in "fighting for institutional investors" in courts and other forums across the country and throughout the world.

## G&E's Attorneys

**Jay W. Eisenhofer**

Jay Eisenhofer, co-founder and managing director of Grant & Eisenhofer P.A., has been counsel in more multi-hundred million dollar cases than any other securities litigator, including the $3.2 billion settlement in the Tyco case, the $895 million United Healthcare settlement, the $450 million settlement in the Global Crossing case, the historic $450 million pan-European settlement in the Shell case, as well as a $400 million settlement with Marsh & McLennan, a $303 million settlement with General Motors and a $300 million settlement with DaimlerChrysler. Mr. Eisenhofer was also the lead attorney in the seminal cases of *American Federation of State, County & Municipal Employees, Employees Pension Plan v. American International Group, Inc.*, where the U.S. Court of Appeals required shareholder proxy access reversing years of SEC no-action letters, and *Carmody v. Toll Brothers*, wherein the Delaware Court of Chancery first ruled that so-called "dead-hand" poison pills violated Delaware law.

Mr. Eisenhofer has served as litigation counsel to many public and private institutional investors, including, among others, California Public Employees Retirement System, Colorado Public Employees Retirement Association, the Florida State Board of Administration, Louisiana State Employees Retirement System, the Teachers' Retirement System of Louisiana, Ohio Public Employee Retirement Systems, State of Wisconsin Investment Board, American Federation of State, County & Municipal Employees, Service Employees International Union, Amalgamated Bank, Lens Investment Management, Inc. and Franklin Advisers, Inc.

Mr. Eisenhofer is consistently ranked as a leading securities and corporate governance litigator in *Chambers USA – America's Leading Business Lawyers*. In the 2010 edition, Mr. Eisenhofer is hailed as a "*master strategist*" and is lauded as an "*outstanding tactician ... especially recommended for his strategic guidance.*" Mr. Eisenhofer was recognized by Directorship Magazine in 2008 as one of the 100 most influential people in the field of corporate governance, a list that included figures like Ben Bernanke, Henry Paulson, Barney Frank and Warren Buffet. In addition, he has been named by Lawdragon to its list of the top 500 lawyers in America.

*The National Law Journal* has selected Grant & Eisenhofer as one of the top ten plaintiffs' law firms in the country for the last five years, earning the firm a place in *The National Law Journal's* Plaintiffs' Firms Hall Of Fame. Mr. Eisenhofer serves as a member of the Advisory Boards for the Program on Corporate Governance at Harvard Law School and the Weinberg Center for Corporate Governance at the University of Delaware.

Mr. Eisenhofer has written and lectured widely on securities fraud and insurance coverage litigation, business and employment torts, directors' and officers' liability coverage, and the Delaware law of shareholder rights and directorial responsibilities. Among the publications he has authored: "The Shareholders Activism Handbook" Aspen Publishers; "Proxy Access Takes Center Stage – The Second Circuit's Decision in <u>AFSCME Employees Pension Plan v. American International Group, Inc.</u>" *Bloomberg Law Reports*, Vol. 1, No. 5; "Investor Litigation in the U.S. - The System is Working" *Securities Reform Act Litigation Reporter*, Vol. 22, #5; "*In re Walt Disney Co. Deriv. Litig.* and the Duty of Good Faith Under Delaware Corporate Law" *Bank & Corporate Governance Law Reporter*, Vol. 37, #1; "Institutional Investors As Trend-Setters In Post-PSLRA Securities Litigation" *Practicing Law Institute*, July, 2006; "*In re Cox Communications, Inc.*: A Suggested Step in the Wrong Direction," *Bank and Corporate Governance Law Reporter,* Vol. 35, #1; "Does Corporate Governance Matter to Investment Returns?" *Corporate Accountability Report*, Vol. 3, No. 37; "Loss Causation in Light of Dura: Who

is Getting it Wrong?" *Securities Reform Act Litigation Reporter*, Vol. 20, #1; "Giving Substance to the Right to Vote: An Initiative to Amend Delaware Law to Require a Majority Vote in Director Elections," *Corporate Governance Advisor*, Vol. 13, #1; "An Invaluable Tool in Corporate Reform: Pension Fund Leadership Improves Securities Litigation Process," *Pensions & Investments*, Nov. 29, 2004; and "Securities Fraud, Stock Price Valuation, and Loss Causation: Toward a Corporate Finance-Based Theory of Loss Causation," *Business Lawyer*, Aug. 2004.

Mr. Eisenhofer is a graduate of the University of Pittsburgh, and a 1986 *magna cum laude* graduate of Villanova University School of Law, Order of the Coif. He was a law clerk to the Honorable Vincent A. Cirillo, President Judge of the Pennsylvania Superior Court and thereafter joined the Wilmington office of Skadden Arps Slate Meagher & Flom.  Mr. Eisenhofer was a partner in the Wilmington office of Blank Rome Comisky & McCauley until forming Grant & Eisenhofer P.A. in 1997.

**Stuart M. Grant**

Stuart M. Grant is co-founder and managing director of Grant & Eisenhofer P.A. Mr. Grant is nationally recognized for his representation of institutional investors in securities, regulatory and corporate governance litigation. He serves as litigation counsel to many of the largest public and private institutional investors in the world.

Mr. Grant has extensive knowledge in the areas of Delaware corporate law, fiduciary responsibility, securities and investments, private equity and fixed income, appraisal remedies, valuation, proxy contests and other matters related to protecting and promoting the rights of institutional investors.

Mr. Grant has been consistently ranked as a leading securities and corporate governance litigator in *Chambers USA – America's Leading Business Lawyers*. In the 2008 edition, it is noted that Mr. Grant "really understands the law and the psychology of litigation," and is described by clients as an "extremely talented litigator who possesses deep theoretical knowledge about class actions and corporate governance." Mr. Grant, who has been recognized as one of the Top 500 Leading Lawyers in America by Lawdragon, is rated AV by Martindale Hubbell.

Mr. Grant has testified on behalf of institutional investors before the SEC and the Third Circuit Panel on Appointment of Class Counsel. He has successfully argued on behalf of institutional investors in many groundbreaking corporate governance cases including: *In re Digex Stockholders Litigation*, the largest settlement in Delaware Chancery Court history, which led to the establishment of lead plaintiff provisions in Delaware; *UniSuper Ltd., et al. v. News Corporation, et al.*, a landmark case in which the Delaware Chancery Court ruled that shareholders may limit board authority without amending the corporation's charter; *In re Tyson Foods, Inc.*, which resulted in historic rulings from the Delaware Court of Chancery clarifying the fiduciary duties of corporate directors in connection with the administration of stock option plans; *Teachers' Retirement System of Louisiana v. Aidinoff, et al. and American International Group, Inc.,* the largest derivative shareholder litigation settlement in the history of Delaware Chancery Court; *Teachers' Retirement Systems of Louisiana v. Richard M. Scrushy, et. al*, which ousted holdover board members loyal to indicted CEO Richard Scrushy and created mechanisms whereby shareholders would nominate their replacements; *In re Cablevision Systems Corp.*

*Options Backdating Litigation* and *In re Electronics for Imaging, Inc. Shareholder Litigation*, both of which held directors and officers of their respective companies accountable for improperly granting backdated options and, most importantly, required the individual defendants to reach into their own pockets to cover a significant portion of the settlement.

Mr. Grant was the first attorney in the country to argue the provisions of the Private Securities Litigation Reform Act (PSLRA) allowing an institutional investor to be appointed as lead plaintiff in a securities class action. The opinion, which appointed the State of Wisconsin Investment Board as lead plaintiff and Grant & Eisenhofer as lead counsel, is widely considered the landmark on the standards applicable to lead plaintiff/lead counsel practice under the PSLRA; and the case, *Gluck, et al. v. Cellstar*, resulted in a class recovery of approximately 56% of the class' actual losses, which was four times the historical average gross recovery for securities fraud litigation.

Mr. Grant's more recent securities litigation representations include: *In re Delphi Corp Securities Litigation*, which resulted in settlement agreements totaling more than $325 million from Delphi Corp, its directors and officers insurance and the company's auditor Deloitte & Touche; *In re Parmalat Securities Litigation*, which resulted in a settlement of approximately $90 million in what the SEC described as "one of the largest and most brazen financial frauds in history;" *In re Refco Inc. Securities Litigation*, which resulted in a $400 million settlement; and *In re Safety-Kleen Securities Corporation Bondholders Litigation*, which, after a six-week securities class action jury trial, resulted in judgments holding the company's CEO and CFO jointly and severally liable for nearly $200 million and settlements with the remaining defendants for $84 million.

Mr. Grant is a frequent speaker at the Practising Law Institute (PLI), the Council of Institutional Investors, the Australian Council of Super Investors and several other securities fora across the globe. Mr. Grant has authored a number of articles and published writings. His articles have been cited with approval by the U.S. Supreme Court, U.S. Court of Appeals for the 2nd and 5th Circuits and numerous U.S. District Courts. Mr. Grant's articles include, among others, "The Devil is in the Details: Application of the PSLRA's Proportionate Liability Provisions is so Fraught With Uncertainty That They May be Void for Vagueness"; "Class Certification and Section 18 of the Exchange Act"; "*Unisuper v. News Corporation*: Affirmation that Shareholders, Not Directors, Are the Ultimate Holders of Corporate Power"; "Executive Compensation: Bridging the Gap Between What Companies Are Required to Disclose and What Stockholders Really Need to Know"; and a number of annual PLI updates under the heading of "Appointment of Lead Plaintiff Under the Private Securities Litigation Reform Act."

Mr. Grant serves as a member of the Advisory Board of the Weinberg Center for Corporate Governance at the University of Delaware. Mr. Grant joined the Widener University School of Law faculty as an Adjunct Professor of Law in 1994, where he leads a securities litigation seminar for third-year law students. Mr. Grant is a Certified Teacher for the National Institute of Trial Advocacy (NITA). Additionally, he has taught at the PricewaterhouseCoopers University of Delaware Directors' College.

Mr. Grant graduated in 1982 *cum laude* from Brandeis University with a B.A. in economics and received his J.D. from New York University School of Law in 1986. He served as Law Clerk to the Honorable Naomi Reice Buchwald in the U.S. District Court for the Southern District of

New York. Mr. Grant was  an associate at Skadden, Arps, Slate, Meagher & Flom (1987-94), and a partner in the Wilmington office of Blank Rome Comisky & McCauley until forming Grant & Eisenhofer P.A. in 1997.

**Michael J. Barry**

Michael Barry is a director at Grant & Eisenhofer. His practice focuses on corporate governance and securities litigation. He also advises clients on SEC matters. As a foremost practitioner in these areas, Mr. Barry has been significantly involved in groundbreaking class action recoveries, corporate governance reforms and shareholders rights litigation.

Mr. Barry has been instrumental in landmark corporate governance cases, including *AFSCME v. AIG*, where the Court of Appeals for the Second Circuit recognized the right of shareholders to introduce proxy access proposals; *Bebchuk v. CA, Inc.,* which opened the door for shareholders to introduce proposals restricting the ability of boards to enact poison pills; and *CA, Inc. v. AFSCME*, an historic 2008 decision of the Supreme Court of Delaware regarding the authority of shareholders to adopt corporate bylaws. Mr. Barry's case work also includes, among others, *In re Global Crossing Ltd. Securities Litigation*, which resulted in a $450 million settlement; a well-publicized derivative litigation action challenging the terms of the Caremark Rx, Inc. and CVS merger that resulted in a $3.2 billion settlement; and litigation between the Chicago Board of Trade and the Chicago Mercantile Exchange, which produced a $485 million settlement. Each of these cases resulted in substantial reforms to the terms of merger agreements to provide increased consideration and structural benefits to shareholders.

Mr. Barry has spoken widely on corporate governance and related matters. In addition to serving as a frequent guest lecturer at Harvard Law School, he speaks at numerous conferences each year. Mr. Barry has authored several published writings, including the *Shareholder Activism Handbook*, a comprehensive guide for shareholders regarding their legal rights as owners of corporations, which he co-authored.

Prior to joining Grant & Eisenhofer, Mr. Barry practiced at a large Philadelphia-based firm, where he defended the Supreme Court of Pennsylvania, the Pennsylvania Senate and Pennsylvania state court judges in a variety of trial and appellate matters. He is a 1990 graduate of Carnegie Mellon University and graduated *summa cum laude* in 1993 from the University of Pittsburgh School of Law, where he was an Executive Editor of the *University of Pittsburgh Law Review* and a member of the Order of the Coif.

**Daniel L. Berger**

Daniel Berger is a director at Grant & Eisenhofer. Prior to joining the firm, Mr. Berger was a partner at two major plaintiffs' class action firms in New York, including Bernstein Litowitz Berger & Grossmann (BLBG), where he had litigated complex securities and discrimination class actions for twenty two years.

Mr. Berger's previous experience includes trying two 10b-5 securities class actions to jury verdicts, which were among very few such cases ever tried. He also served as principal lead counsel in many of the largest securities litigation cases in history, achieving successful recoveries for classes of investors in cases including *In re Cendant Corp. Securities Litigation* ($3.3 billion); *In re Lucent Technologies, Inc. Securities Litigation* ($675 million); *In re Bristol-*

*Myers Squibb Securities Litigation* ($300 million); *In re Daimler Chrysler A.G. Securities Litigation* ($300 million); *In re Conseco, Inc. Securities Litigation* ($120 million); *In re Symbol Technologies Securities Litigation* ($139 million); and *In re OM Group Securities Litigation* ($92 million.)

Mr. Berger has successfully argued several appeals that made new law favorable to investors, including *In re Suprema Specialties, Inc. Securities Litigation,* 438 F.3d 256 (3d Cir. 2005); *McCall v. Scott,* 250 F.3d 997 (6th Cir. 2001) and *Fine v. American Solar King Corp.,* 919 F.2d 290 (5th Cir. 1990.) In addition, Mr. Berger was lead class counsel in many important discrimination class actions, in particular *Roberts v. Texaco, Inc.*, where he represented African-American employees of Texaco and achieved the then largest settlement ($175 million) of a race discrimination class action.

Mr. Berger currently serves on the editorial board of Securities Law360. He was a member of the Board of Managers of Haverford College from 2000-2003 and currently serves on the Board of Visitors of Columbia University Law School. He also served on the Board of inMotion, Inc., a non-profit organization providing legal services to victims of domestic violence, for six years, and currently is the Vice President of the Madison Square Park Conservancy.

Mr. Berger is a 1976 graduate from Haverford College, and graduated in 1979 from Columbia University School of Law.

**Cynthia A. Calder**

Cynthia Calder is a director at Grant & Eisenhofer. She concentrates her practice in the areas of corporate governance and securities litigation. She has represented shareholders in such seminal cases in the Delaware Court of Chancery as *UniSuper Ltd. v. News Corp.*, vindicating the shareholders' right to vote; *Carmody v. Toll Brothers*, finding the dead-hand poison pill defensive measure was illegal under Delaware law, *Jackson National Life Insurance Co. v. Kennedy*, breaking new ground in the interpretation of fiduciary duties owed to preferred shareholders; *Haft v. Dart Group Corp.*, resolving a contest for control of a significant public corporation; and *Paramount Communications Inc. v. QVC Network*, obtaining an injunction preventing the closing of a merger to force the board of directors to appropriately consider a competing bid for the corporation. More recently, Ms. Calder prosecuted a derivative suit on behalf of American International Group, Inc. shareholders against the company's former CEO, Maurice Greenberg, and other former AIG executives. The action was concluded for a settlement of $115 million – the largest such settlement in the history of the Delaware Court of Chancery. Ms. Calder was also the Court-appointed representative on the shareholder counsel's committee in the UnitedHealth Group derivative litigation, which was settled for more than $900 million – the largest known derivative settlement in any court system. Ms. Calder also recently prosecuted a shareholder class action, *In re ACS Shareholder Litigation*, which resulted in one of the largest class recoveries in the history of the Court of Chancery.

Ms. Calder has co-authored numerous articles on corporate governance and securities litigation, including "Options Backdating from the Shareholders' Perspective" *Wall Street Lawyer*, Vol. 11, No. 3; "Securities Litigation Against Third Parties: Pre-Central Bank Aiders and Abettors Become Targeted Primary Defendants" *Securities Reform Act Litigation Reporter*, Vol. 16, No.

2; and "Pleading Scienter After Enron: Has the World Really Changed?" *Securities Regulation & Law*, Vol. 35, No. 45.

Ms. Calder graduated *cum laude* from the University of Delaware in 1987 and graduated from the Villanova University School of Law in 1991. Upon graduating from law school, Ms. Calder served as a Judicial Law Clerk in the Delaware Court of Chancery to the Honorable Maurice A. Hartnett, III. Prior to joining Grant & Eisenhofer, Ms. Calder was an associate at Blank, Rome, Comisky & McCauley.

**Robert G. Eisler**

Robert Eisler is a director in Grant and Eisenhofer's antitrust practice. Mr. Eisler has been involved in many significant antitrust class action cases in recent years. He is experienced in numerous industries, including pharmaceuticals, paper products, construction materials, industrial chemicals, processed foods, municipal securities, and consumer goods.

Mr. Eisler has served as lead or co-lead counsel in the largest antitrust cases litigated, including, *In re Buspirone Antitrust Litigation*, (which led to a $90 million settlement and in which presiding Judge Koeltl stated that the plaintiffs' attorneys had done "a stupendous job"), *In re Ciprofloxacin Hydrochloride Antitrust Litigation, In re Flat Glass Antitrust Litigation*, *In re Municipal Derivatives Antitrust Litigation*, and *In re Chocolate Confectionary Antitrust Litigation*.

Mr. Eisler has played major roles in a number of other significant antitrust cases, including *In re Linerboard Antitrust Litigation*, *In re Aftermarket Filters Antitrust Litigation*, and *In re Publication Paper Antitrust Litigation*.

Mr. Eisler also has extensive experience in securities, derivative, complex commercial and class action litigation at the trial and appellate levels. He has been involved in numerous securities and derivative litigation matters on behalf of public pension funds, municipalities, mutual fund companies and individual investors in state and federal courts.

Mr.Eisler graduated from LaSalle University in 1986, and in 1989 from Villanova University School of Law.

**Stephen G. Grygiel**

Stephen Grygiel, a director at Grant & Eisenhofer, focuses his practice on complex securities, corporate governance and third party payor pharmaceutical cost-recovery cases. Mr. Grygiel has litigated and tried a variety of shareholder dissolution and shareholders' rights actions, adversary proceedings in bankruptcy court, and other corporate and commercial matters. He has litigated issues concerning the validity of stock issued in private companies, minority shareholders' rights under statutes, by-laws and contracts, valuations and requisite consideration for founders' stock, minority discounts and control premiums for valuation purposes, the interplay of security interests and stock ownership rights, secured party seizures of stock, and a bankruptcy estate's ownership of funds fraudulently obtained from banks through a sophisticated check-kiting scheme. Mr. Grygiel has also litigated private cost recovery actions under the Comprehensive

Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), representing plaintiffs in the *Laurel Park Coalition v. Goodyear* and *Hanlin v. IMC* cases. Having written and contributed to articles addressing private cost recovery actions and the intersection of CERCLA and common law rights of action, he has also lectured on those topics to industry professionals.

Mr. Grygiel, who is rated AV by Martindale Hubbell, graduated *magna cum laude* in 1979 from Hamilton College where he was elected to Phi Beta Kappa and won other honors and academic awards. He graduated from Harvard Law School in 1986. Following law school, Mr. Grygiel clerked for the Chief Justice of Maine's Supreme Judicial Court.


**Reuben A. Guttman**

Reuben Guttman is a director at Grant & Eisenhofer. His practice involves complex litigation and class actions. He has represented clients in claims brought under the Federal False Claims Act, securities laws, the Price Anderson Act, Department of Energy (DOE) statutes and regulations, the Worker Adjustment and Retraining Notification Act (WARN), Racketeer Influenced and Corrupt Organizations Act (RICO) and various employment discrimination, labor and environmental statutes. He has also tried and/or litigated claims involving fraud, breach of fiduciary duty, antitrust, business interference and other common law torts.

Mr. Guttman has been counsel in some of the largest recoveries under the Federal False Claims Act, including *U.S. ex rel. Johnson v. Shell Oil Co.*, 33 F. Supp. 2d 528 (ED Tex. 1999), where over $300 million were recovered from the oil industry. He also represented one of the six main whistleblowers in litigation resulting in the government's September 2009, $2.3 billion settlement with Pfizer Pharmaceutical. Cases brought by Mr. Guttman under the False Claims Act on behalf of a European whistleblower resulted in a $13 million settlement with a Department of Defense contractor.

Mr. Guttman also served as lead counsel in a series of cases resulting in the recovery of more than $30 million under the Federal Fair Labor Standards Act. Cases brought by Mr. Guttman on behalf of nuclear weapons workers at "Manhattan Project" nuclear weapons sites resulted in congressional oversight and changes in procurement practices affecting the nation's nuclear weapons complex. In addition, he served as lead counsel in litigation brought on behalf of prison workers in the District of Columbia, which resulted in injunctive relief protecting workers against exposure to blood-borne pathogens. Mr. Guttman served as lead counsel in a mediation before the United States Equal Employment Opportunity Commission, resulting in work place standards and back pay for minority employees at a large Texas oil refinery.

Mr. Guttman is the author and/or editor of numerous articles and technical publications. He is co-author of *Gonzalez v. Hewitt*, a case file published by the Emory University Law School Center for Advocacy and Dispute Resolution (2010) and used to train law students and practicing attorneys. He has appeared on *ABC Nightly News* and CNN, and has been quoted in major publications including *The Wall Street Journal, The Washington Post, The Los Angeles Times, The Atlanta Journal-Constitution, USA Today, Houston Chronicle, Dallas Morning News* and national wire services including the Associated Press and Reuters.

In addition to his writings, Mr. Guttman has testified before committees of the United States House of Representatives and the United States Senate on the Asbestos Hazard Emergency Response Act (AHERA). In 1992, he advised President-elect Clinton's transition team on labor policy and worker health and safety regulation.

Mr. Guttman earned his law degree at Emory University Law School graduating in 1985, and his Bachelor's Degree from the University of Rochester in 1981. He is a Senior Fellow and Adjunct Professor at the Emory University School of Law Center for Advocacy and Dispute Resolution. As part of a U.S. State Department program in conjunction with the Center for Advocacy and Dispute Resolution, he has been one of five visiting professors at Universidad Panamericana in Mexico City training Mexican Judges and practitioners on oral advocacy and trial practice. He is a contributing editor of a soon to be published text book on trial practice for Mexican practitioners.

Mr. Guttman is a faculty member of the National Institute of Trial Advocacy. He has been a guest lecturer at a number of universities including Jao Tong University in Shanghai, Peking University in Beijing and Renmin University in Beijing. In 2006 he was invited by the Dutch Embassy in China to share his expertise with experts in China about changes to the nation's labor laws.      He      is      a      Co-Founder      of      Voices      for      Corporate      Responsibility, www.voicesforcorporateresponsibility.com, and founder of www.whistleblowerlaws.com and www.thecorporateinsider.com.

**Geoffrey C. Jarvis**

Geoffrey Jarvis, a director at Grant & Eisenhofer, focuses on securities litigation for institutional investors. He had a major role in *Oxford Health Plans Securities Litigation* and *DaimlerChrysler Securities Litigation*, both of which were among the top ten securities settlements in U.S. history at the time they were resolved. Mr. Jarvis also has been involved in a number of actions before the Delaware Chancery Court, including a Delaware appraisal case that resulted in a favorable decision for the firm's client after trial.  At the present time, he has primary responsibility for a number of cases in which Grant & Eisenhofer clients have opted-out of class actions, and has also played a lead role in class actions against Tyco, Alstom and Sprint.

Mr. Jarvis received a B.A. in 1980 from Cornell University, where he was elected to Phi Beta Kappa. He graduated *cum laude* from Harvard Law School in 1984. Until 1986, he served as a staff attorney with the Federal Communications Commission, participating in the development of new regulatory policies for the telecommunications industry. He then became an associate in the Washington office of Rogers & Wells, principally devoted to complex commercial litigation in the fields of antitrust and trade regulations, insurance, intellectual property, contracts and defamation issues, as well as counseling corporate clients in diverse industries on general legal and regulatory compliance matters. Mr. Jarvis was previously associated with a prominent Philadelphia litigation boutique and had first-chair assignments in cases commenced under the Pennsylvania Whistleblower Act and in major antitrust, First Amendment, civil rights, and complex commercial litigation, including several successful arguments before the U.S. Court of Appeals for the Third Circuit.

Mr. Jarvis authored "State Appraisal Statutes: An Underutilized Shareholder Remedy," *The Corporate Governance Advisor*, May/June 2005, Vol. 13, #3, and co-authored with Jay W. Eisenhofer and James R. Banko, "Securities Fraud, Stock Price Valuation, and Loss Causation: Toward a Corporate Finance-Based Theory of Loss Causation," *Business Lawyer*, Aug. 2004.

## John C. Kairis

John Kairis is a director at Grant & Eisenhofer, where he represents institutional investors in class action litigation, individual "opt-out" securities litigation, and derivative and corporate governance litigation in the Delaware Chancery Court and other courts throughout the country. He has been a leader of G&E teams that have achieved some of the largest recoveries in securities class action history, and played major roles in the *Tyco*, *Parmalat*, *Marsh & McLennan*, *Hollinger International* and *Dollar General* securities class actions, and opt-out actions in *AOL Time Warner* and *Telxon Corporation*. Among his Delaware Chancery Court litigation experience is a landmark case against HealthSouth, involving a books and records trial under Section 220 of the Delaware General Corporations Law, to obtain certain documents that the corporation refused to produce, which led to a settlement implementing corporate governance improvements, such as HealthSouth's agreement to replace its conflicted directors with independent directors approved by a committee which included the institutional investor plaintiff.

Mr. Kairis has also been instrumental in prosecuting consumer class actions involving unfair competition and false marketing claims against both Johnson & Johnson and Bausch & Lomb, and is currently prosecuting off-label marketing cases brought under the federal False Claims Act and various state counterpart false claims acts. Mr. Kairis currently represents the lead plaintiffs and the class in a securities fraud suit against Merck & Co. and certain of its officers and directors relating to the defendants' alleged suppression of test results of Merck's cholesterol medication Vytorin, the lead plaintiffs in a securities class action against Apollo Group and certain of its officers and directors relating to the defendants' participation in a fraudulent accounting scheme, and the lead plaintiffs in various breach of fiduciary duty cases pending in the Delaware Chancery Court.

Mr. Kairis has authored articles including "Shareholder Proposals For Reimbursement Of Expenses Incurred In Proxy Contests: Recent Guidance From The Delaware Supreme Court," *PLI*, What All Business Lawyers Must Know About Delaware Law Developments 2009 (New York, NY May 21, 2009) (co-authored with Stuart Grant); "Challenging Misrepresentations in Mergers: You May Have More Time Than You Think," *Andrews Litigation Reporter*, Vol. 12, Issue 3, June 14, 2006; and was the principle writer of an *amicus brief* to the United States Supreme Court on behalf of various public pension funds in the *Merck* case involving the standard for finding that a plaintiff is on "inquiry notice" of potential claims such that the limitations period for pleading securities fraud has commenced.

Mr. Kairis is a 1984 graduate of the University of Notre Dame and a 1987 graduate of the Ohio State University Moritz College of Law, where he was Articles Editor of the *Ohio State Law Journal* and recipient of the American Jurisprudence and John E. Fallon Memorial Awards for scholastic excellence. He is a member of the Delaware and American Bar Associations and the Delaware Trial Lawyers Association. Mr. Kairis has served on the boards of several nonprofit

organizations, including the West-End Neighborhood House, Inc., the Cornerstone West Development Corporation, and the board of the Westover Hills Civic Association. He has also served on the Delaware Corporation Law Committee, where he evaluated proposals to amend the Delaware General Corporation Law.

**Megan D. McIntyre**

Megan McIntyre is a director at Grant & Eisenhofer, practicing in the areas of corporate, securities and complex commercial litigation. Among other work, she has represented institutional investors, both public and private, in corporate cases in the Delaware Court of Chancery as well as in securities class actions in federal courts throughout the country that have resulted in significant recoveries. She was a member of the trial team in *In re Safety-Kleen Corp. Bondholders Litigation*, which ended in settlements and judgments totaling approximately $280 million after six weeks of trial in the Spring of 2005. In 2006, she was a member of the litigation team in the landmark case of *UniSuper Ltd. v. News Corporation*, where the Delaware Court of Chancery ruled that shareholders may contractually limit directors' authority without amending the certificate of incorporation.

Ms. McIntyre has successfully represented clients in obtaining access to corporate proxy statements for the purpose of presenting proposed shareholder resolutions and has brought and defended actions seeking to enforce shareholders' rights to inspect corporate books and records pursuant to the statutory authority of Section 220 of the Delaware General Corporation Law. She was also the principal author of the firm's amicus curiae brief on behalf of the Council of Institutional Investors (CII), filed in the Delaware Supreme Court in the Walt Disney derivative litigation, urging the Court's adoption as Delaware law of the CII's standards or criteria for determining director "independence."  She had a lead role in class actions involving Refco and Able Laboratories, in shareholder derivative actions involving Tyson Foods and Cablevision.  At present, she has a lead role in class actions involving Refco and Genzyme, in a shareholder derivative action involving AIG, and in several cases on behalf of clients who have opted out of securities class actions to pursue individual actions.

Ms. McIntyre has appeared as a guest on CNBC's "On the Money," and has authored or co-authored a number of articles involving issues of Delaware corporate law and the federal securities laws, including  "The Devil is in the Details: Application of the PSLRA's Proportionate Liability Provisions is So Fraught With Uncertainty That They May Be Void for Vagueness," 1505 PLI/Corp 83 (Sept. 2005); "Class Certification and Section 18 of the Exchange Act," The Review of Securities and Commodities Regulation, Vol. 35, No. 21, *Standard & Poor's* (Dec. 2002); "The Statutory Right of Inspection: An Important But Often Overlooked Tool," *Corporate Governance Advisor*, Vol. 9, No. 2 (May/June 2001); and "Causes of Action Available to Investors Under Delaware Law, Parts I and II," *Insights* (Oct. 1996; Nov. 1996).

Ms. McIntyre graduated from The Pennsylvania State University in 1991 and graduated *magna cum laude* in 1994 from The Dickinson School of Law, where she was an Articles Editor for the *Dickinson Law Review*. Prior to joining Grant & Eisenhofer, she was associated with the

Wilmington offices of both Skadden, Arps, Slate, Meagher & Flom, LLP and Blank, Rome, Comisky & McCauley, in their respective litigation departments.

**Linda P. Nussbaum**

Linda Nussbaum  is a director at Grant & Eisenhofer.  Ms. Nussbaum is nationally recognized for her representation of class and individual litigants in antitrust and pharmaceutical litigation. Her experience prior to Grant & Eisenhofer was as sole or co-lead counsel in many significant antitrust class actions which have resulted in substantial recoveries, many in the realm of hundreds of millions of dollars: *In re Microcrystalline Cellulose Antitrust Litigation; Oncology & Radiation Associates, P.A. v. Bristol-Myers Squibb Co., et al. (Taxol Antitrust Litigation)*; *North Shore Hematology-Oncology Associates, P.C. v. Bristol-Myers Squibb Co. (Platinol Antitrust Litigation)*; *In re Children's Ibuprofen Oral Suspension Antitrust Litigation*; *In re Relafen Antitrust Litigation*; *In re Plastics Additives Antitrust Litigation*; *In re Remeron Antitrust Litigation*; *Meijer, et al. v. Warner Chilcott Holdings Company, III, Ltd., et al. (Ovcon Antitrust Litigation)*; and *In re Lorazepam & Clorazepate Antitrust Litigation*.

Current cases in which Ms. Nussbaum serves as lead counsel include *In re Puerto Rican Cabotage Antitrust Litigation*; *In re DDAVP Direct Purchaser Antitrust Litigation*; *In re Photochromic Lens Antitrust Litigation*; *Meijer, Inc., et al. v. Astrazeneca Pharmaceuticals LP, et al (Toprol Antitrust Litigation)*; and *Meijer, Inc., et al. v. Abbott Laboratories (Norvir Antitrust Litigation)*. In addition, she represents large corporate entities in individual actions including *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*; *In re Neurontin Marketing and Sales Practices Litigation*; *In re Chocolate Confectionary Antitrust Litigation*; and *CVS Pharmacy v. American Express Travel Related Services, et al*.

She was selected "Litigator of the Week" by the *AmLaw Litigation Daily* on April 2, 2010 for her role in the trial of *Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals v. Pfizer*.

Ms. Nussbaum has lectured and written extensively about various aspects of antitrust law. Her articles include: "The Evolving Challenges of Class Certification" presented at the American Antitrust Institute's Third Annual Symposium on Private Antitrust Enforcement on December 8, 2009; "Daubert 15 Years Later: How Have Economists Fared?" presented at the ABA Section of Antitrust Law Spring Meeting in March 2009; and "The Hatch-Waxman Act 25 Years Later: Successes, Failures and Prescriptions for the Future," presented at a panel on "Lawyers, Drugs and Money, a Prescription for Antitrust Enforcement in the Pharmaceutical Industry" at the University of San Francisco School of Law Antitrust Symposium on September 25, 2009. Ms. Nussbaum is a member of the Advisory Board of the American Antitrust Institute.

Ms. Nussbaum obtained her J.D. from George Washington University and a LL.M. degree in taxation from New York University School of Law.

**James J. Sabella**

James Sabella is a director at Grant & Eisenhofer. He has over thirty years of experience in complex civil litigation, including representing plaintiffs and defendants in class and derivative

actions involving trial and appellate work in state and federal courts. He has substantial experience in securities litigation and litigation involving claims against accounting firms and underwriters. He has also handled antitrust litigation and cases involving the fiduciary obligations of trustees under state law.

Mr. Sabella has represented the lead plaintiffs in numerous major cases that have resulted in large recoveries, including the General Motors securities litigation, where the settlement was in excess of $300 million, and the Refco securities litigation, where the recovery was in excess of $400 million.  He also represented the lead plaintiffs in the Parmalat securities litigation, which resulted in landmark opinions establishing that the international firms that coordinate the audit services that audit firms conduct in various countries can be held liable for the conduct of such local audit firms.

Prior to joining Grant & Eisenhofer, Mr. Sabella practiced for twenty-eight years at several large Manhattan law firms, most recently as a partner in Sidley, Austin, Brown & Wood LLP, where his practice focused largely on accountants' liability defense, including the defense of actions alleging securities law violations and professional malpractice as well as grand jury investigations and investigations by the American Institute of Certified Public Accountants.

Mr. Sabella is a 1976 graduate of Columbia Law School, where he was a member of the Board of Directors of the *Columbia Law Review*. He received a B.A. *summa cum laude* from Columbia College in 1972 and a B.S. in 1973 from the Columbia School of Engineering, where he was valedictorian.

**Mary S. Thomas**

Mary Thomas is a director at Grant & Eisenhofer. She spent twelve years practicing business litigation with two of Los Angeles' leading law firms before joining Grant & Eisenhofer in 2006. Her experience prior to Grant & Eisenhofer includes trade secret and intellectual property matters, contract actions, employment defense, consumer class action defense, insurance disputes and environmental matters.

At Grant & Eisenhofer, Ms. Thomas has successfully represented institutional investors in class action securities and shareholder derivative litigation. Notably, Ms. Thomas represented the lead plaintiffs in the Marsh & McLennan securities litigation, which resulted in a $400 million settlement. Representative of Ms. Thomas' experience in Delaware Chancery Court is her successful representation of investors in the ACS shareholders litigation.

Ms. Thomas served as a volunteer arbitrator for the L.A. County Bar Association and as a volunteer mediator for the L.A. Superior Court and now serves as a volunteer guardian *ad litem* through Delaware's Office of the Child Advocate.  She co-authored "California Wage and Hour Laws" (published by the National Legal Center for the Public Interest, January 2005) and was one of several authors of the 10th and 11th editions of the *California Environmental Law Handbook.*

Ms. Thomas graduated *magna cum laude* from Harvard Law School in 1994 and *magna cum laude* from the University of Delaware in 1991.

**William A.K. Titelman**

William Titelman is a director at Grant & Eisenhofer.  His practice focuses on plaintiff securities litigation, representing public pension funds, union and Taft-Hartley funds.  Prior to joining Grant & Eisenhofer, Mr. Titelman spent more than six years as a partner in a New York based plaintiffs' securities litigation firm.

He has been actively involved in government, law and public policy throughout his career.  Mr. Titelman is involved in *In re Fannie Mae Securities Litigation*, *In re Royal Dutch/Shell Transport Securities Litigation*, *In re Marsh & McLennan Companies, Inc. Securities Litigation*, *In re Cigna Corp. Securities Litigation*, and *In re HealthSouth Stockholder Litigation.*  He organized and served as counsel for Amici Curiae states and public pension funds in *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, No. 06-43, and *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, No. 06-484, both before the United States Supreme Court, and *In re Dynex Capital Securities Litigation*, No. 06-2902-cv, before the Second Circuit.   The briefs in these three cases were filed on behalf of eight states and five public pension funds concerning critical issues of investor protection and securities litigation.

Mr. Titelman began his career in the early 1970's serving in several key positions in Pennsylvania state government, including Director of Motor Vehicles and Special Assistant to the Governor for Government Management. After graduating from The Dickinson School of Law in 1980, Mr. Titelman led the Pennsylvania Trial Lawyers Association for nearly a decade in its efforts to protect and expand individual rights, including shareholder rights, and drafted key provisions of Pennsylvania's automobile insurance and consumer safety laws. Subsequently, he became a partner at a leading Pennsylvania law firm, where he served on the firm's Board of Directors and chaired both its Harrisburg office and its Administrative Law and Government Affairs Practice Group.  One of his major clients was the Pennsylvania Public School Employees' Retirement System (PSERS).

In 1988, Mr. Titelman led the successful enactment of a new Pennsylvania Business Corporation Law. From 1989 to 1990, he led a national campaign organizing major public pension funds and other institutional investors, shareholder rights activists, former SEC Commissioners, leading economists and deans of business and law schools to oppose and successfully amend Pennsylvania Senate Bill 1310.

*The Wall Street Journal* described this legislation as the most onerous anti-shareholder, management-protection bill ever proposed in the United States.  Mr. Titelman served as General Counsel to both the Pennsylvania Public School Building and Higher Educational Facilities Authorities.  He went to serve on as Executive Vice President of Managed Care and Public Affairs at Rite Aid Corporation, where he suffered substantial losses as a victim of one of the nation's largest securities frauds.  He subsequently brought and settled an individual action for securities fraud against Rite Aid.

Prior to joining Grant & Eisenhofer, Mr. Titelman spent more than six years as a partner in a New York based plaintiffs' securities litigation firm. Mr. Titelman is a graduate of the Washington Jefferson College at Brown University, and The Dickinson School of Law.

**Jeff A. Almeida**

Jeff Almeida is senior counsel at Grant & Eisenhofer practicing in the areas of corporate, securities and complex commercial litigation. Mr. Almeida has represented domestic and foreign institutional investors in prominent securities fraud actions including, *In re Qwest Communications International Securities Litigation*; *In re Alstom SA Securities Litigation*; *In re Refco Inc. Securities Litigation*; *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*; *In re Pfizer Inc. Securities Litigation*; and *In re Global Cash Access Holdings Securities Litigation*. Mr. Almeida has also been actively engaged in derivative and class litigation in the Delaware Court of Chancery, including the matters *In re Tyson Foods, Inc*., which resulted in historic rulings clarifying the fiduciary duties of corporate directors in connection with the administration of stock option plans; *Louisiana Police Employees Retirement System v. Crawford* ("*Caremark*"), a well-publicized derivative action challenging the terms of the Caremark and CVS merger that resulted in a $3.2 billion settlement; and *In re Genentech Inc. Shareholder Litigation*, where he successfully represented Genentech minority stockholders against Roche's heavy-handed attempt to squeeze out the minority to seize control of Genentech. In recent years, Mr. Almeida has also represented prominent hedge fund clients in complex commercial litigation involving claims of short-squeeze market manipulation and the marketing and sale of abusive tax shelters.

Prior to joining Grant & Eisenhofer in August 2004, Mr. Almeida was affiliated for seven years as an attorney with a major Philadelphia defense firm, where he practiced in the areas of complex commercial litigation, with a focus on consumer class actions, commercial contract disputes, and insurance coverage and bad faith defense.

Mr. Almeida is a 1994 graduate of Trinity College in Hartford, Connecticut, where he captained the varsity basketball team and achieved election to Phi Beta Kappa, and a 1997 graduate of William and Mary Law School in Williamsburg, Virginia. Mr. Almeida is admitted to practice in Delaware, Pennsylvania, and New Jersey, along with several federal district courts.

**Charles T. Caliendo**

Charles Caliendo is senior counsel at Grant & Eisenhofer. He represents institutional investors in class action securities, opt-out and shareholder derivative litigation. Prior to joining Grant & Eisenhofer, he served as an Assistant Attorney General in the Investment Protection Bureau of the New York State Attorney General's Office where he prosecuted cases and led investigations related to mutual fund market timing and late trading. Mr. Caliendo practiced at a Manhattan-based law firm in the areas of class action securities, mergers and acquisitions, corporate governance and other commercial litigation.

Mr. Caliendo has written and spoken on issues relating to regulatory enforcement, corporate internal investigations and securities and shareholder litigation. In November 2004 and June

2006, Mr. Caliendo was a speaker at financial services industry seminars sponsored by The Association of the Bar of the City of New York for which he authored articles entitled "The Investment Protection Bureau:  An Overview of Financial Markets Regulation and Enforcement in New York" and "Thompson Memo Under A Microscope." In June 2005, Mr. Caliendo spoke before a delegation of Chinese mutual fund CEOs participating in the Penn-China Mutual Fund CEO Leadership Program, University of Pennsylvania Graduate School of Education. Mr. Caliendo co-authored  "Who Says The Business Judgment Rule Does Not Apply To Directors Of New York Banks?" 118 *Banking Law Journal* 493 (June 2001) and  "Board of Directors' 'Revlon Duties' Come Into Focus," *New York Law Journal*, vol. 222, no. 86, col. 1 (Nov. 1, 1999).

Mr. Caliendo received his B.S. from Cornell University and J.D. from St. John's University School of Law where he was an editor of the *St. John's Law Review* and a Saint Thomas More Scholar.

### John D. Radice

John Radice is senior counsel at Grant & Eisenhofer.  Mr. Radice practices in the areas of antitrust focusing on pharmaceutical antitrust, False Claims Act, and other areas of complex civil litigation.

His representative cases include: *In re Tricor Direct Purchaser Antitrust Litigation* (*w*hich yielded *a* $250 million settlement after the start of trial in case alleging delayed entry of AB-rated generic versions of Tricor); *In re Neurontin Marketing & Sales Litigation* (resulting in a $47 million jury verdict before interest and statutory trebling based on unlawful and fraudulent promotion of Neurontin); *United States ex rel. Piacentile v. Bristol-Myers Squibb Co.* (resulting in $515 million settlement related to unlawful promotion of Abilify); *United States ex rel. Marchese v. Cell Therapeutics, Inc.* (resulting in $10.5 million settlement stemming from unlawful marketing of Trisenox).

Prior to joining the firm, Mr. Radice was associated with major plaintiffs' class action firms in New York and Philadelphia, where he represented clients pursuing antitrust, False Claims Act, and international human rights cases.  He has published numerous articles including "Where do we go now? The Hatch-Waxman Act 25 Years Later: Successes, Failures, and Prescriptions for the Future" published in the Rutgers Law Journal; "The False Claims Act: A Public-Private Partnership" in Volume II, in AAJ 2009 Annual Convention: AAJ Education Reference Materials 1497 (Jennifer Adams ed., 2009); and "Daubert and Rule 702 in the Context of Antitrust Economic Experts: A Practitioner's Guide," Daubert 15 Years Later: How Have Economists Fared (ABA Spring Meeting 2009).

Mr. Radice obtained his J.D. from New York University School of Law and graduated *magna cum laude* from Princeton University with a B.A.   He clerked for Judge Edith Brown Clement in the U.S. District Court of Appeals for the Fifth Circuit in New Orleans following his graduation from law school. Through the Arthur Garfield Hays Civil Liberties Program at New York University School of Law, where he was a Palmer Weber Fellow, Mr. Radice pursued internships at the NAACP Legal Defense & Education Fund, the ACLU, and a prominent civil

rights law firm. At Princeton, he was a member of the lightweight crew team. Together with Dr. Lee Shearer, Mr. Radice founded and is president of Insicknessandinhealth.org, a non-profit dedicated to promoting health and well-being in underserved communities.

### Ralph N. Sianni

Ralph Sianni is senior counsel at Grant & Eisenhofer. Mr. Sianni's practice involves complex commercial litigation, including securities, corporate governance and third-party payor pharmaceutical cost-recovery cases.  He joined Grant & Eisenhofer from another leading national securities litigation firm, where he handled class action securities cases, and cases involving mergers and acquisitions, general corporate law and breach of fiduciary duties.  His experience includes working with a team of lawyers who appealed a pro bono prisoners' civil rights case to the Supreme Court of the United States.

Mr. Sianni co-authored the article,  "Is the Fix In? - Are Hedge Funds Secretly Disenfranchising Shareholders?", *Bloomberg Law Reports - Corporate Governance*, Jan. 2005.

Prior to entering private practice, Mr. Sianni served as a Law Clerk to the Hon. Stephen J. McEwen, Jr., President Judge of Pennsylvania Superior Court.  As a Legislative Intern for the American Civil Liberties Union of Pennsylvania, Mr. Sianni researched and wrote memoranda on First Amendment issues for the Pennsylvania legislature.

Mr. Sianni earned his law degree from the Boston University School of Law and an MA in history from Yale University.  He graduated *cum laude* with distinction in his major (history) from the University of Pennsylvania.

### Brenda F. Szydlo

Brenda Szydlo is senior counsel at Grant & Eisenhofer, where she focuses on securities litigation on behalf of institutional investors. Ms. Szydlo has more than twenty years of litigation experience in a broad range of matters.

Prior to joining Grant & Eisenhofer, Ms. Szydlo served as counsel in the litigation department of Sidley Austin LLP in New York, and its predecessor, Brown & Wood LLP, where her practice focused on securities litigation and enforcement, accountants' liability defense and general commercial litigation.

Ms. Szydlo is a 1988 graduate of St. John's University School of Law, where she was a St. Thomas More Scholar and member of the Law Review. She received a bachelor's degree in economics from Binghamton University in 1985.

### Hung G. Ta

Hung Ta is senior counsel at Grant & Eisenhofer, where he focuses on securities litigation and shareholder derivative litigation on behalf of institutional investors.

Prior to joining Grant & Eisenhofer, Mr. Ta spent more than six years as a litigation associate at a leading New York law firm, where he represented a considerable number of officers and other clients of the firm in securities litigation, white-collar defense work and regulatory investigations.  Mr. Ta also represented other clients of the firm in general commercial litigation matters involving bankruptcy, reinsurance, professional malpractice, mutual fund litigation and ERISA litigation.

Before coming to the United States, Mr. Ta completed his education in Australia, earning a degree in Finance from the University of New South Wales School of Commerce and his Law degree from the University of New South Wales School of Law.  After law school, Mr. Ta clerked with the Honorable Justice Gaudron of the High Court of Australia, Australia's ultimate appellate court.

**Diane Zilka**

Diane Zilka is senior counsel at Grant & Eisenhofer, and integral to the Firm's successful efforts to prosecute securities fraud and corporate governance cases on behalf of U.S. and international clients in class and individual actions. She played a key role in achieving significant recoveries for funds managed by U.S. and international institutional investors in such cases as *Parmalat Securities Litigation* and *Styling Technology Corporation*, and on behalf of public pension funds in *Just For Feet Securities Litigation*, among others. Ms. Zilka was on the trial team in:  *Safety Kleen Bondholder Litigation*, which recovered more than $275 million in judgments and settlements on behalf of investors; *TRSL v. AIG* a derivative shareholder action which resulted in a $115 million settlement, the largest such settlement in the history of Delaware Chancery Court; and *In Re Appraisal of Metromedia Int'l Group, Inc.*, which was only the second appraisal action of preferred shares in the history of Delaware Chancery Court which resulted in a judgment against the company of more than $188 million.  In the corporate governance arena, Ms. Zilka has successfully defended clients before the SEC in "no-action" proxy proposal challenges, and has successfully represented clients in Chancery Court "books and records" actions. She has prosecuted numerous direct and derivative breach of fiduciary duty cases, litigating such cutting-edge issues as the propriety of including derivative securities in "poison pills." Ms. Zilka is a co-author with Stuart Grant of "The Role of Foreign Investors in Federal Securities Class Actions," 1442 PLI/CORP. 91 (2004) and "The Current Role Of Foreign Investors In Federal Securities Class Actions," 1620 PLI/Corp 11 (2007).

Ms. Zilka has concentrated her career in securities, corporate and complex commercial litigation. Before joining G&E, she was a partner in a New York City law firm and a member of its investor protection practice group.  Ms. Zilka also has extensive experience litigating other complex matters such as ERISA and bankruptcy, and she has represented investors in proceedings before the NYSE and the American Arbitration Association.

Ms. Zilka serves as a Co-Chair of the annual Combined Campaign For Justice which provides critical funding for Delaware's legal services agencies.  She is a member of the Board of The Print Center of Philadelphia and of Panetiere Partners, two not-for-profit organizations.  She has also volunteered with Literacy Volunteers Serving Adults in Wilmington and Big Brothers Big Sisters of Philadelphia.

Ms. Zilka graduated from the University of New York at Binghampton in 1982, and received her J.D. from Fordham University School of Law in 1985.

**Richard S. Schiffrin**

Richard S. Schiffrin is of counsel at Grant & Eisenhofer.  He has represented institutional investors and consumers in securities and consumer class actions worldwide.  In 2008, Mr. Schiffrin retired as a founding partner of Schiffrin Barroway Topaz & Kessler, LLP.

Mr. Schiffrin has been recognized for his expertise in many prominent cases, including *In re Tyco International Ltd. Securities Litigation*, the most complex securities class action in history, which resulted in a record $3.2 billion settlement.  The $2.975 billion payment by Tyco represents the single largest securities class action recovery from a single corporate defendant in history, while the $225 million settlement with PricewaterhouseCoopers (PwC) represents the largest payment PwC has ever paid to resolve a securities class action and is the second-largest auditor settlement in securities class action history; *In re AremisSoft Corp. Securities Litigation*, a complex case involving litigation in four countries, resulting in a $250 million settlement providing shareholders with a majority of the equity in the reorganized company after embezzlement by former officers; *In re Tenet Healthcare Corp.*, resulting in a $216.5 million settlement and which led to several important corporate governance improvements; *Henry v. Sears, et al.*, one of the largest consumer class actions in history which resulted in a $156 million settlement distributed without the filing of a single proof of claim form by any class member; *Wanstrath v. Doctor R. Crants, et al.*, a derivative action filed against the officers and directors of Prison Realty Trust, Inc., challenging the transfer of assets to a private entity owned by company insiders, resulting in corporate governance reform in addition to the issuance of over 46 million shares to class members; *Jordan v. State Farm Insurance Company*, resulting in a $225 million settlement and other monetary benefits for current and former State Farm policy-holders; and *In re Sotheby's Holdings, Inc. Derivative Litigation*, resulting in a multi-million dollar settlement and significant governance changes.

Mr. Schiffrin is an internationally renowned speaker and lectures frequently on corporate governance and securities litigation.  His lectures include:  the MultiPensions Conference in Amsterdam, Netherlands; the Public Funds Symposium in Washington, D.C.; the European Pension Symposium in Florence, Italy; and the Pennsylvania Public Employees Retirement Summit (PAPERS) in Harrisburg, Pennsylvania.  Mr. Schiffrin has also taught legal writing and appellate advocacy at John Marshall Law School and served as a faculty member at legal seminars, including the Annual Institute on Securities Regulation, NERA: Finance, Law & Economics - Securities Litigation Seminar, the Tulane Corporate Law Institute, and the CityBar Center for CLE (NYC): Ethical Issues in the Practice of Securities Law.

Mr. Schiffrin is a graduate of DePaul Law School and attended graduate school at the University of Chicago.  After protecting the civil rights of clients for seven years as an Assistant Public Defender with the Office of the Public Defender of Cook County, where he tried hundreds of cases, Mr. Schiffrin founded Schiffrin & Craig, Ltd., representing consumers and individual investors in actions brought against public companies.  He is licensed to practice law in

Pennsylvania and Illinois and has been admitted to practice before numerous United States District Courts.

## Abe Alexander

Abe Alexander is an associate at Grant & Eisenhofer, where his practice focuses on securities, corporate governance, and antitrust litigation. Prior to joining Grant & Eisenhofer, Mr. Alexander clerked for Chief Justice Michael L. Bender of the Colorado Supreme Court.

Mr. Alexander is a member of teams currently prosecuting securities claims against Merck & Co. and UBS Puerto Rico, and corporate governance claims against Massey Energy Company, former directors of Countrywide Financial Corp., and JPMorgan Chase Bank, N.A..

Mr. Alexander is also a member of teams currently pursuing antitrust claims on behalf of purchasers of packaged ice and MiraLAX.

Mr. Alexander graduated *cum laude* from New York University in 2003 where he earned his B.A. in Analytic Philosophy and received the Founders' Day Award for academic achievement. He earned his law degree Order of the Coif from the University of Colorado Law School in 2008, where he received numerous awards and honors, including the Class of 1913 Scholarship for academic achievement and the school's Trial Advocacy Award.  While in law school, Mr. Alexander was member of the school's award-winning national moot court team.

## Peter B. Andrews

Peter Andrews is an associate at Grant & Eisenhofer. Mr. Andrews' practice involves complex commercial litigation. Mr. Andrews represents plaintiffs in a variety of matters, including securities class actions, consumer class actions, and Fair Labor Standards Act collective actions. Mr. Andrews also represents whistleblowers in Federal False Claims Act litigation.

While at Grant & Eisenhofer, Mr. Andrews has, among others, represented investors against the directors and officers of a failed telecom company for breach of fiduciary duty in *Rahl v. Flag Telecom, Inc.*; represented public pension funds in opt-out securities litigation against the officers and directors of *Enron*; represented former employees of a failed health system in order to secure promised interests in pension benefits (*Burstein v. Allegheny Health System*); and represented a class of former customers against a major cable television provider in *Baldasarri v. Suburban Cable TV Co. (Comcast Corporation)*. Mr. Andrews has also been actively engaged in litigation in the Delaware Court of Chancery in shareholder derivative and corporate governance cases such as *CALPERS v. Coulter et al., and Lone Star Steakhouse & Saloon Inc.*

Prior to joining Grant & Eisenhofer in 2004, Mr. Andrews was with a major Philadelphia defense firm where he represented securities brokers and broker-dealers in various disputes, including customer complaint litigation. Mr. Andrews also represented clients in regulatory proceedings pursued by NYSE, NASD, and SEC, and advised clients as to best practices under federal and state insurance and securities regulations.

Mr. Andrews is a 1992 graduate of Colby College in Waterville, Maine, where he captained the Colby rugby team, and a 1998 graduate of the Dickinson School of Law of the Pennsylvania State University. Upon graduation from Dickinson, Mr. Andrews clerked for the Honorable Alan M. Black of the Court of Common Pleas of Lehigh County, Pennsylvania.

**Talyana T. Bromberg**

Talyana Bromberg is an associate at Grant & Eisenhofer, where she focuses her practice on complex international and national securities fraud litigation. She previously served as a partner at a prominent law firm in Riga, Latvia, where she focused on commercial litigation and arbitration, real estate and property denationalization.  She also served as in-house counsel for a U.S.-Latvian joint venture in the exporting and manufacturing sector.

Ms. Bromberg has, among others, represented sophisticated institutional investors in complex international securities class actions, including, *In re Parmalat Securities* Litigation and *In Re Vivendi Universal S.A. Securities litigation,* and her efforts contributed to the firm's successful settlements in numerous securities litigation actions.

Ms. Bromberg received her LL.M. degree from the University of Pennsylvania Law School and her J.D. equivalent from the University of Latvia School of Law in Riga in 1989.  Following law school, Ms. Bromberg clerked for Latvia's Circuit Court Judge for Maskavas District of Riga.

**Traci L. Buschner**

Traci Buschner is an associate at Grant & Eisenhofer. A former state prosecutor, Ms. Buschner has spent the last 13 years representing plaintiffs in complex litigation ranging from class actions to government contract fraud under federal and state false claims acts. She has been involved in multi-million dollar recoveries on behalf of workers under the Federal Fair Labor Standards Act and has served as counsel in False Claims actions, bringing tens of millions of dollars to the United States Government.  Ms. Buschner represented one of the six main whistleblowers in False Claims Act litigation against Pfizer, Inc., which resulted in the Government's recovery of $2.3 billion in 2009.

Ms. Buschner's practice has involved representation of some of the nation's largest labor unions and their members. Prior to joining Grant & Eisenhofer, she was an attorney with the Washington, DC office of one of the nation's largest personal injury and labor firms and also practiced with an Austin, Texas firm where she spear-headed litigation on behalf of victims of asbestos exposure.

On behalf of the Oil, Chemical & Atomic Workers International Union (OCAW), AFL-CIO, Ms. Buschner was actively involved in environmental litigation which led to Secretary of Energy, William Richardson, canceling a project to recycle radioactive nickel at the Oak Ridge, Tennessee K-25 Nuclear Weapons Complex. The documentation of her efforts to expose faulty government contracting at Department of Energy Nuclear weapons sites was published in The Environmental Forum, Volume 17, No. 6, November/December 2000.

Ms. Buschner graduated from Miami University in 1990, and received her J.D. from the University of Louisville in 1995.

**Michele S. Carino**

Michele Carino is an associate at Grant & Eisenhofer, focusing on securities and corporate governance litigation. Ms. Carino has experience in a variety of complex commercial cases, including matters involving securities, accountant liability, labor and employment, corporate governance, contracts and torts.

Ms. Carino graduated *magna cum laude* from Georgetown University Law Center in 1999 and received a Bachelor's degree in economics from the State University of New York at Binghamton in 1992. Ms. Carino is an adjunct professor at law at Columbia University School of Law, teaching a legal research and writing workshop for first year law students.

**Ananda N. Chaudhuri**

Ananda Chaudhuri is an associate at Grant & Eisenhofer. Mr. Chaudhuri's experience includes positions as a Summer Associate at Adkins, Kelston, Zavez, P.C. in Boston, and research and writing positions at Pennsylvania Employment Law Publishing (Philadelphia), *Self Magazine*, and *Working Woman* magazine in New York City.

He received his B.A. in Journalism and Anthropology from New York University, and his law degree in 2005 from the University of Pennsylvania, where he was a member of the Journal of International Law and Policy and a member of the Film, Music & Media Society.

**Deborah A. Elman**

Deborah Elman is an associate at Grant & Eisenhofer. Ms. Elman focuses on securities fraud and derivative cases at Grant & Eisenhofer.  Prior to joining Grant & Eisenhofer as an associate, Ms. Elman represented clients before the SEC and participated in numerous appearances before federal and state courts as an associate at a leading New York law firm.

Ms. Elman served as a law clerk for the Honorable William L. Standish, United States District Judge, in the United States District Court for the Western District of Pennsylvania, participating in all aspects of federal trial court practice.

Ms. Elman graduated *cum laude* in 2001 from the University of Pittsburgh School of Law, where she was Lead Executive Editor of the *Journal of Law and Commerce* and received the Horowitz Graduate Student Paper Prize, the  National Association of Women Lawyers Law Student Achievement Award and the School of Law Community Service Award. She received a Masters of Public Health degree in 1997 from Columbia University, where she graduated *cum laude* with a Bachelor of Arts degree in 1995.

**Lydia Ferrarese**

Lydia Ferrarese is an associate at Grant & Eisenhofer, where she focuses on securities litigation on behalf of institutional investors. Ms. Ferrarese has represented sophisticated institutional investors in high-profile international securities fraud class action, *In re Parmalat Securities* Litigation, and her efforts contributed to the firm's successful settlement against financial institutions and Parmalat in that case.

Prior to joining Grant & Eisenhofer, Ms. Ferrarese (who received her initial law degree in Italy) served as a visiting attorney with several prominent law firms in New York, Boston and Los Angeles. She was also an Associate at international law firms in Milano and Bologna, Italy. Ms. Ferrarese drafted numerous agreements and opinions on corporate issues for major Italian and multi-national corporations, focusing on Mergers and Acquisitions.

Ms. Ferrarese received her LL.M. in Corporate, Banking and Finance Law at Fordham University School of Law in New York City, and her J.D. equivalent from the University of Bologna, Italy in 1993. She was a contributing writer and editor of the "Guide for the Italian Importer to the United States" by Michael Doland, 2000, and editor of the articles, "Dissolution of a Corporation and Minority Shareholders' Rights" *Le Societa', Ipsoa*, May 2001 and "Rules on class actions: Comparative Analysis between the Italian Law and the U.S. Law," *La Responsabilita' Civile, Utet*, August 2008.

**Shelly L. Friedland**

Shelly Friedland is an associate at Grant & Eisenhofer, and an experienced litigator with over ten years of experience practicing both civil and criminal law. Prior to joining Grant & Eisenhofer, she practiced at a national class action firm, prosecuting antitrust cases on behalf of plaintiffs injured by price-fixing and illegal monopolistic practices. Previously, her general litigation practice included several securities-related matters, representing both corporate defendants and third-party plaintiffs.

Ms. Friedland is a *cum laude* graduate of Harvard Law School, where she was an Executive Editor of the Human Rights Law Journal.  She received her bachelor's degree from Columbia College, graduating *summa cum laude*.  She is a member of the New York City Bar Association and the American Bar Association, where she is a member of the Class Action and Derivatives Committee of the Litigation Section.

**Robert D. Gerson**

Robert Gerson is an associate at Grant & Eisenhofer, focusing on mortgage-backed securities litigation and complex litigation issues.

Mr. Gerson is a graduate of New York Law School, where he was a member of the Moot Court Association.  He participated in Fordham Law School's Kaufman Memorial Securities Law Moot Court Competition.  During law school, he was an intern in the Office of the New York

State Attorney General.  Mr. Gerson received a B.A. in Government and Politics from the University of Maryland in 2006.

**Christian J. Keeney**

Christian Keeney is an associate at Grant & Eisenhofer, focusing on complex litigation issues. Mr. Keeney served as a judicial extern for the Honorable Mary Pat Thynge of the U.S. District Court for the District of Delaware while attending Villanova University School of Law. He also served as a certified legal intern for Villanova's Civil Justice Clinic, representing clients in various civil matters.

Mr. Keeney received his J.D. in 2008 from Villanova University School of Law, where he served as the Summer Competition Coordinator for the Moot Court Board, President of the Sports & Entertainment Law Society and Class Representative for the Student Bar Association. Mr. Keeney also published a scholarly article in the University of Florida's Journal of Technology Law and Policy.  He received a B.A. in Political Science from the University of Kentucky. He also participated in Georgetown University's Washington Semester Program, serving as a columnist for the *Georgetown Voice*.

**Christine M. Mackintosh**

Christine Mackintosh is an associate at Grant & Eisenhofer. She adds depth and experience to Grant & Eisenhofer's complex litigation and trial capabilities. As a member of the Litigation Practice Group of a large Philadelphia law firm, she gained extensive experience in commercial, securities, bankruptcy, and insurance recovery litigation.  She acted as lead counsel in several bankruptcy and commercial litigation cases, and served as lead trial counsel in a case brought before the US Bankruptcy Court for the Eastern District of PA.

A *magna cum laude* graduate of St. Joseph's University in Philadelphia, Ms. Mackintosh earned her law degree at the University of Pennsylvania Law School. She is the co-author of two articles published by the Practising Law Institute's *Corporate Law & Practice Course Handbook Series.* "Ethical Issues and Their Impact on Securities Litigation," published in September-October, 2003, was co-authored with Marc J. Sonnenfeld, Viveca D. Parker and Marisel Acosta. "Lessons From Sarbanes-Oxley: The Importance of Independence In Internal Corporate Investigations," published in July, 2003, was co-authored with Alfred J. Lechner, Jr.

**Kyle J. McGee**

Kyle McGee is an Associate at Grant & Eisenhofer, focusing on complex securities litigation on behalf of institutional investor clients. He also works in the areas of unfair competition, qui tam, eco-fraud, and M&A litigation.

Mr. McGee earned a research degree from the University of Edinburgh in Scotland as well as a J.D. from Villanova University in 2009, both with honors.  He regularly participates in academic circles organized around themes in law and the humanities and the social sciences. He has

published articles in journals including *Law & Literature*, *Philosophy & Social Criticism*, and the *Cardozo Law Review* in addition to speaking at institutions including the State University of New York at Stony Brook/Manhattan, Villanova Law, and Cardozo Law. Mr. McGee is co-editor of *Deleuze & Law*, a scholarly monograph exploring the jurisprudence of philosopher Gilles Deleuze to be published by Edinburgh University Press.  While in the UK, he worked for the European Union as a language editor on the transnational Access to Citizenship project, and assisted in the upstart of the Edinburgh Student Law Review. He is a member of the National Lawyers' Guild and the ACLU.

Mr. McGee studied the history and philosophy of law at Edinburgh and was honored as a Dean's Merit Scholar at Villanova Law. He also founded the Villanova University Law and Philosophy Society. In 2005, he graduated from the University of Scranton with a B.A. in Philosophy and Media and Information Technology.

**Susan R. Schwaiger**

Susan Schwaiger is an associate at Grant & Eisenhofer. She practices in the area of antitrust, with experience in a wide variety of industries, and other areas of complex civil litigation.

Prior to joining Grant & Eisenhofer, Ms. Schwaiger was of counsel to several leading New York-based antitrust firms representing plaintiffs in class and individual actions. She has authored *The Submission of Written Instructions and Statutory Language to New York Criminal Juries*.

Ms. Schwaiger has played significant roles in a number of major antitrust cases including In re Microcrystalline Cellulose Antitrust Litigation; In re Plastics Additives Antitrust Litigation; and In re Lorazepam & Clorazepate Antitrust Litigation.  In addition, she has represented large corporate entities in individual actions in In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation; In re Chocolate Confectionary Antitrust Litigation; and CVS Pharmacy v. American Express Travel Related Services, et al. Ms. Schwaiger's experience also includes representation of Shannon Faulkner and Nancy Mellette in their successful litigation against The Citadel military academy in Charleston, South Carolina, where Shannon Faulkner became the first female cadet admitted to the all-male academy in August 1995.

Ms. Schwaiger graduated *cum laude* from Brooklyn Law School in 1992 with a J.D. She obtained her M.A. from the University of Kentucky and a B.S. from the University of Tennessee.

**David A. Straite**

David Straite is an associate at Grant & Eisenhofer. He represents institutional investors in the United States and Europe in all aspects of investor protection litigation, including corporate governance and shareholder derivative actions, hedge fund disputes, and securities actions, with particular focus on claims against financial institutions.

Representative cases include *ABP v. Bank of America Corp.*, an individual securities action on behalf of the EU's largest pension fund related to Bank of America's acquisition of Merrill

Lynch; *International Fund Management v. Citigroup, Inc.*, an individual securities action against Citigroup and other defendants on behalf of European investors; *LV Highland Credit Feeder Fund LLC v. Highland Capital Management, L.P.*, an action on behalf of a feeder fund and offshore investors related to the wind-down of two hedge funds; *TRSL v. Greenberg*, a shareholder derivative action on behalf of AIG, which resulted in the largest derivative settlement in the history of the Delaware Court of Chancery; *In re Lehman Brothers Equity/Debt Securities Litigation*, a securities class action on behalf of Lehman investors.

Prior to joining Grant & Eisenhofer, Mr. Straite was an associate in the Antitrust department in Skadden, Arps, Slate, Meagher & Flom LLP's New York office, where he represented corporations and investors during the antitrust review of mergers and acquisitions under section 7 of the Clayton Act, HSR premerger notification under section 7A, criminal antitrust grand jury investigations, civil regulatory investigations by the DOJ and FTC, class action antitrust litigation, complex document production and e-discovery, and CFIUS. Mr. Straite was also a litigation associate in the Philadelphia office of Blank Rome LLP, primarily defending claims against air carriers and avionics components manufacturers, and had a solo practice advising small businesses, negotiating contracts, drafting RFP responses, and acting as outside general counsel to a telecommunications start-up company.

Mr. Straite is a 1996 *magna cum laude* graduate of the Villanova University School of Law, where he was a member of the Order of the Coif, the Federalist Society and the St. Thomas More Society. In recognition of his efforts as managing editor of the Villanova Law Review, he received the Arthur Pulling Award. Mr. Straite is a 1993 graduate of the Murphy Institute of Political Economy at Tulane University in New Orleans, where he majored in both Political Economy and Economics.

Mr. Straite recently authored *Netherlands: Amsterdam Court of Appeal Approves Groundbreaking Global Settlements Under the Dutch Act on the Collective Settlement of Mass Claims*, in The International Lawyer's annual "International Legal Developments in Review" (2009); was a contributing author to Dabbah and Lasok's *Merger Control Worldwide* (2005); and contributed to four annual supplements (2002-2005) of the seminal premerger treatise, *Acquisitions Under the Hart-Scott-Rodino Antitrust Improvements Act* by Axinn, Fogg, Stoll & Prager. He has lectured frequently on topics related to the attorney-client privilege and work product doctrine. He is also a Member of the ABA Section of International Law (Europe Committee and International Securities and Capital Markets Committee) and ABA Section of Litigation; The Federalist Society; and The Royal Society of St. George.

**Justin K. Victor**

Justin Victor is an associate at Grant & Eisenhofer, focusing on the False Claims Act, class action litigation and antitrust.

Previously, Mr. Victor worked as a summer associate for an international law firm in Chicago, Illinois and London, England, as well as a Judicial Intern for the Honorable T. Jackson Bedford Jr., at Fulton County Superior Court in Atlanta, Georgia.

Mr. Victor received his J.D. from Emory University School of Law in 2010, where he was awarded the inaugural William C. O'Kelley Scholarship. Mr. Victor also served on the Executive Board for the Emory Mock Trial Society and graduated Order of the Barristers. He graduated from the University of Michigan with a B.A. in Political Science in 2007.

### Ned C. Weinberger

Ned Weinberger is an associate at Grant & Eisenhofer, focusing on securities litigation and shareholder derivative litigation on behalf of institutional investor clients.

Mr. Weinberger attended the Louis D. Brandeis School of Law at the University of Louisville, where he served on the *Journal of Law and Education*. During law school, Mr. Weinberger worked for a nationally-recognized law firm in Louisville, Kentucky. He graduated *cum laude* in May 2005 from Miami University with a B.A. in English Literature.

### Marc D. Weinberg

Prior to joining G&E in 2006, Marc Weinberg gained a fourteen-year track record with two of the nation's leading securities litigation firms.  He focuses on institutional services at Grant & Eisenhofer.

Mr. Weinberg earned his law degree at Widener University in 1992 after graduating from Pennsylvania State University.  He is a member of the Philadelphia and Pennsylvania Bar Associations, and the Moot Court Honor Society.

### Tracy L. Campbell

Tracy Campbell is a staff attorney at Grant & Eisenhofer, who focuses on complex securities fraud litigation in class action cases. She received her law degree from the University of Houston Law Center in 2003, where she completed an externship at the Methodist Health Care System. Before joining Grant & Eisenhofer, Ms. Campbell focused her practice on the area of health law. Upon graduating from law school, she worked at a mid-sized firm in Houston where she concentrated primarily on asbestos litigation. Subsequently, she worked for a small transactional health law firm in San Antonio, Texas.

Ms. Campbell received her B.S. in Business Administration with a Concentration in International Business Management from Goldey-Beacom College in 1997, where she graduated *magna cum laude*. Prior to entering law school, Ms. Campbell gained business experience as an analyst at JP Morgan. Upon relocating to Texas, she continued to pursue a career in the financial industry while obtaining her law degree. Ms. Campbell is a member of the Delaware Bar Association.

**Alice Y. Cho**

Alice Cho is a staff attorney at Grant & Eisenhofer, where her focus is on securities fraud class actions. She graduated from Brooklyn Law School in 2004 after receiving a B.A. from the University at Albany.

During law school, Ms. Cho interned as a law clerk for the Honorable Frederic Block, U.S. District Court, Eastern District of New York. She also worked with the New York City Human Rights Commission and the Asian American Legal Defense and Education Fund.

Ms. Cho currently serves as Executive Vice President of the Korean American Lawyers Association of Greater New York (KALAGNY).

**R. Alexander Gartman**

Alexander Gartman concentrates on securities litigation as a staff attorney at Grant & Eisenhofer. He graduated *cum laude* from Temple University School of Law in 2005. He served on the Student Bar Association Budget Committee, and  the Curriculum Committee, working with faculty to revise first year curriculum.

Mr. Gartman received a B.B.A. in Finance in 1998 from The College of William and Mary, where he double majored in Economics.

**Matthew Hartman**

Matthew Hartman is a staff attorney at Grant & Eisenhofer, where his responsibilities include coordinating the work of document review attorneys, tracking deposition schedules and preparation, proofreading and e-filing legal memoranda. He monitors court dockets, e-files in diverse jurisdictions; checks federal and local rules for filing compliance issues, organizes potential exhibits for depositions, monitors responses to subpoenas and document requests and monitors document conversion work by vendors for uploading to various document review databases.

Mr. Hartman joined Grant & Eisenhofer in 2004 as a document review attorney in a prominent securities case involving mismanagement and falsification of business and stock records. While on that case, he developed a training manual for attorneys joining the team. His previous corporate experience maintaining corporate records and working on securities issuances and acquisitions has provided a valuable knowledge base for business litigation. While working for the Silicon Valley office of an international law firm, he drafted, researched and revised corporate documents, maintained stock and option ledgers, reviewed documents in due diligence projects for mergers, acquisitions and financings, and performed legal research in the area of compliance with state securities regulations.

A graduate of American University with an M.A. in philosophy and social policy, Mr. Hartman earned his law degree from the Duquesne University School of Law in 1997. He also holds a Certificate in International Business Management from the University of California – Irvine.

**Michael A. Morris**

Michael Morris is a staff attorney at Grant & Eisenhofer. He received his law degree from the University of Bridgeport Law School in 1980, and has been a member of the Connecticut Bar since 1980.

He was employed by the City of New Haven as Special Assistant Corporation Counsel where he represented and provided legal counsel for several city departments. He subsequently established his own law practice in New Haven which he maintained until 2000.

Mr. Morris served as Counsel to the Board of Directors for the Greater New Haven Transit District which involved federal and state legal matters in transportation, government contract and grant development, and presenting testimony to the Connecticut State Legislature.

Mr. Morris earned his M.B.A. from the University of Bridgeport. He also helped organize and became the first president of the University of Bridgeport Law School Alumni Association.

**Joseph P. Neary**

Joseph Nearey focuses on complex securities litigation as a staff attorney at Grant & Eisenhofer. He received his law degree in 2001 from Temple University School of Law, where he was a member of the Temple International and Comparative Law Journal.  He attended the Temple University School of Law Semester in Japan and interned at a prominent Tokyo firm.  He served as a summer intern for the Honorable James R. Cavanaugh of the Superior Court of Pennsylvania.

Mr. Nearey graduated *cum laude* from Hamilton College in 1997 with dual B.A.'s in English Literature and Government.

**Lindsay A. Roseler**

Lindsay Roseler is an associate at Grant & Eisenhofer, where she concentrates on class action and complex fraud actions brought under the Federal Securities Acts and the False Claims Act. She has actively participated on litigation teams for cases such as *In re Parmalat Securities Litigation* and *In re Delphi Corp. Securities Litigation*.

Ms. Roseler received her law degree in 2005 from Syracuse University College of Law, where she was a member of the *Syracuse Journal of International Law and Commerce*. She is a Certified Mediator and has trained in International Business Mediation and Alternative Dispute Resolution.

Ms. Roseler received a B.A. in International Relations and Diplomacy with a minor in International Business Administration from Schiller International University in Europe. While in Europe, she worked for the United States Commercial Department in Madrid, Spain and for the United States Military in London, England and Heidelberg, Germany. Upon graduation, Ms. Roseler returned to the United States and worked with an international development foundation

before pursuing her legal education. She is fluent in German and has advanced knowledge of Spanish.

**Raymond Schuenemann**

Raymond Schuenemann focuses on securities litigation as a staff attorney at Grant & Eisenhofer. He is a graduate of the Widener University School of Law and a member of the American Bar Association and the Pennsylvania Bar Association.

Prior to joining Grant & Eisenhofer, Mr. Schuenemann worked as an associate in labor law, nursing home law, sales and use tax law, and real estate law. He also worked as a consultant in the area of sales and use tax.

Mr. Schuenemann received a B.S. in Finance from West Chester University in 1999. He has experience as an investment accountant and internal auditor in the banking and finance sectors.

**Selected Institutional Client Representations**

G&E has represented or is currently representing a number of institutional investors in major securities fraud actions, shareholder derivative suits, other breach-of-fiduciary-duty cases and related ancillary proceedings around the country.  Some of our cases include:

**(A)    In Securities Fraud Litigation:**

**(1)    Cellstar**

In one of the earliest cases filed after the enactment of PSLRA, the State of Wisconsin Investment Board ("SWIB") was designated lead plaintiff and G&E was appointed lead counsel in Gluck v. CellStar Corp., 976 F.Supp. 542 (N.D.Tex. 1997).  The cited opinion is widely considered the landmark on standards applicable to the lead plaintiff/lead counsel practice under PSLRA. (See, especially, In re Cendant Corp. Litig., 2001 WL 980469, at *40, *43 (3d Cir. Aug. 28, 2001), citing CellStar.)  After the CellStar defendants' motion to dismiss failed and a round of discovery was completed, the parties negotiated a $14.6 million settlement, coupled with undertakings on CellStar's part for significant corporate governance changes as well.  With SWIB's active lead in the case, the class recovery, gross before fees and expenses, was approximated to be 56% of the class' actual loss claims, about 4 times the historical 14% average gross recovery in securities fraud litigation.  Because of the competitive process that SWIB had undertaken in the selection of counsel, resulting in a contingent fee percentage significantly less than the average 31% seen historically, the net recovery to the class after all claims were submitted came to almost 50% of actual losses, or almost 5 times the average net recovery.

**(2)    DaimlerChrysler**

Florida State Board of Administration ("FSBA") was appointed lead plaintiff and G&E co-lead counsel in the PSLRA class action on behalf of shareholders of the former Chrysler Corporation who exchanged their shares for stock in DaimlerChrysler in Chrysler's 1998 business combination with Daimler-Benz AG which was represented at the time as a "merger of equals."  On February 5, 2004, the court granted final approval of a $300 million cash settlement in that case, among the largest securities class action settlements since the enactment of the PSLRA.  In re DaimlerChrysler Securities Litigation, D. Del., C.A. No. 00-0993.

**(3)    Oxford Health Plans**

Public Employees' Retirement Association of Colorado ("ColPERA") engaged G&E to represent it to seek the lead plaintiff designation in the numerous securities fraud actions that were consolidated into In re Oxford Health Plans, Inc., Securities Litig., S.D.N.Y., MDL Docket No. 1222 (CLB).  The court

ordered the appointment of ColPERA as a co-lead plaintiff and G&E as a co-lead counsel.  G&E and its co-leads filed the Consolidated Amended Complaint.  Memorandum opinions and orders were entered denying defendants' motions to dismiss (see 51 F.Supp. 2d 290 (May 28, 1999) (denying KPMG motion) and 187 F.R.D. 133 (June 8, 1999) (denying motion of Oxford and individual director defendants)).  The case settled for $300 million, another settlement negotiated by G&E that is among the largest settlements since the enactment of the PSLRA.

**(4)** **Dollar General**

The U.S. District Court for the Middle District of Tennessee ordered the appointment of Florida State Board of Administration ("FSBA") and the Teachers' Retirement System of Louisiana ("TRSL") as lead plaintiffs and G&E as co-lead counsel in a PSLRA and Rule 10b-5 case against the defendant company, its accountants, and individual insiders who allegedly issued false and misleading statements over an alleged 3-year Class Period and failed to disclose adverse facts about the company's financial results.  Settlements were approved involving a cash payment of $162 million from the company and the individual defendants, an additional $10.5 million from Deloitte & Touche, LLP (Dollar General's accountants), and beneficial governance reforms for Dollar General.  In re Dollar General Securities Litigation, M.D. Tenn., No. 3:01-0388, orders dated July 19, 2001 and September 29, 2003.

**(5)** **Just For Feet**

G&E represented the State of Wisconsin Investment Board ("SWIB") in a federal securities class action against certain officers and directors of Just For Feet, Inc., and against Just For Feet's auditors, in the Northern District of Alabama.  That action arose out of the defendants' manipulation of the company's accounting practices to materially misstate the company's financial results.  Having been appointed co-lead plaintiff, SWIB and (G&E) as its counsel took primary responsibility for the case.  (SWIB v. Ruttenberg, et al., N.D. Ala., CV 99-BU-3097-S and 99-BU-3129-S, 102 F. Supp. 2d 1280 (N.D. Ala. 2000)).  SWIB obtained a policy limits settlement with the individual defendants' D&O carrier and an additional $7.4 million from Just For Feet's auditor, for a recovery totaling approximately $32 million.

**(6)** **Waste Management**

G&E filed a non-class federal securities action against Waste Management, Inc., its former and current directors, and the company's accountants in the Northern District of Florida, on behalf of Lens Investment Management, LLC and Ram Trust Services, Inc.  The complaint alleged that Waste Management had, over a five-year period, issued financial statements and other public statements that were materially false and misleading due to the defendants' fraudulent and improper accounting manipulations.  G&E also filed non-class actions in Illinois state court,

asserting similar claims on behalf of the Florida State Board of Administration ("FSBA") and the Teachers' Retirement System of Louisiana ("TRSL").  After G&E successfully defeated the defendants' motions to dismiss FSBA's complaint in state court, FSBA's cause of action was transferred to the Northern District of Florida.  At the point where there were competing motions for summary judgment pending, G&E successfully negotiated a settlement pursuant to which each plaintiff received several times what it would have received in the class action.  Florida State Board of Administration, Ram Trust Services, Inc. and Lens Investment Management, LLC v. Waste Management, Inc., et al., N.D.Fla., No. 4:99CV66-WS, amended complaint filed June 21, 1999; and Teachers' Retirement System of Louisiana v. Waste Management, Inc., et al., Circuit Ct., Cook Co. [Ill.], No. 98 L 06034, complaint filed May 18, 1999.

**(7)**     **Total Renal Care**

In June 1999, the Louisiana State Employees' Retirement System ("LASERS") and Teachers' Retirement System of Louisiana ("TRSL") were appointed as Lead Plaintiff in a federal securities class action against Total Renal Care ("TRC") and certain of its officers and directors, pending in the U.S. District Court for the Central District of California.  G&E was approved as Plaintiffs' Lead Counsel.  Plaintiffs filed their Corrected Consolidated Amended Complaint against the defendants, alleging, inter alia, that the defendants manipulated TRC's financial statements so as to materially overstate TRC's revenues, income and assets and to artificially inflate TRC's stock price.  G&E negotiated a settlement requiring TRC's payment of $25 million into a settlement fund for the class and the company's adoption of certain internal corporate governance policies and procedures designed to promote the future accountability of TRC's management to its stockholders.  At the time of the settlement, this amount represented 33% of the value of the Company's shares.  In re Total Renal Care Securities Litigation, C.D. Cal., Master File No. CV-99-01745 CBM.

**(8)**     **Safety-Kleen**

G&E was sole lead counsel for the plaintiffs in a federal securities class action and a series of related individual actions against former officers, directors, auditors and underwriters of Safety-Kleen Corporation, who are alleged to have made false and misleading statements in connection with the sale and issuance of Safety-Kleen bonds.  In re Safety-Kleen Corp. Bondholders Litig., D.S.C., No. 3:00-CV-1145-17, consolidated complaint filed January 23, 2001.  In March of 2005, after a jury had been selected for trial, the auditor defendant settled with the class and individual claimants for $48 million.  The trial then proceeded against the director and officer defendants.  After seven weeks of trial, the director defendants settled for $36 million, and the court entered judgment as a matter of law in favor of the class and against the company's CEO and CFO, awarding damages of over $190 million.

**(9)    Styling Technology Corporation**

G&E represented funds managed by Franklin Advisors, Inc., Conseco Capital Management, Inc., Credit Suisse Asset Management, Pilgrim American Funds and Oppenheimer Funds, Inc. in a securities action brought in May 2001, asserting both federal (1933 Act) and state claims brought in the Superior Court of California.  The suit alleged that certain former officers, as well as the independent auditors, of Styling Technology Corporation made false and misleading statements in connection with the sale and issuance of Styling Technology bonds.  Styling Technology filed for bankruptcy protection under Chapter 11 in August 1999.  In October 2000, discovery of accounting irregularities and improperly recognized revenue forced the Company to restate its financial statements for the years 1997 and 1998.  Plaintiffs, owning $66.5 million of the total $100 million in bonds sold in the offering, settled the case for a recovery representing approximately 46% of the losses suffered by the client funds that they manage.  Franklin High Income Trust, et al. v. Richard R. Ross, et al., Cal. Super., San Mateo Co. [Calif.], Case No: 415057, complaint filed November 28, 2000.

**(10)    Tyco**

G&E is co-lead counsel representing co-lead plaintiffs Teachers' Retirement System of Louisiana and Louisiana State Employees' Retirement System in a securities class action against Tyco International Ltd. and PricewaterhouseCoopers LLP.  The complaint alleged that the defendants, including Tyco International, Dennis Kozlowski and other former executives and directors of Tyco, and PricewaterhouseCoopers, made false and misleading public statements and omitted material information about Tyco's finances in violation of Sections 10(b), 14, 20A and 20(a) of the Securities Exchange Act of 1934.  Tyco agreed to fund $2.975 billion in cash to settle these claims, representing the single largest payment from any corporate defendant in the history of securities class action litigation.  PricewaterhouseCoopers also agreed to pay $225 million to settle these claims, resulting in a total settlement fund in excess of $3.2 billion.

**(11)    Global Crossing**

Ohio Public Employees' Retirement System ("Ohio PERS") and the Ohio Teachers' Retirement System ("STRS") were appointed lead plaintiff and G&E was appointed sole lead counsel in a securities class action against Global Crossing, Ltd. and Asia Global Crossing, Ltd.  In re Global Crossing, Ltd. Securities & "ERISA" Litig., MDL Docket No. 1472.  In November 2004, the Court approved a partial settlement with the Company's former officers and directors, and former outside counsel, valued at approximately $245 million.  In July 2005, the Court approved a $75 million settlement with the Citigroup-related defendants (Salomon Smith Barney and Jack Grubman).  In October 2005, the Court approved a settlement with Arthur Anderson LLP and all Anderson-related

defendants for $25 million. In October 2006, the Court approved a $99 million settlement with various financial institutions. In total, G&E has recovered $448 million for investors in Global Crossing.

**(12)    Telxon Corporation**

G&E filed a federal securities and common law action against Telxon Corporation, its former officers and directors and its accountants in the Northern District of Ohio on behalf of Wyser-Pratte Management Co., Inc., an investment management firm. Following mediation, G&E negotiated a settlement of all claims. Wyser-Pratte Management Co., Inc. v. Telxon Corp., et al., N.D. Ohio, Case No. 5:02CV1105.

**(13)    Hayes Lemmerz**

G&E served as lead counsel to plaintiffs and class members who purchased or acquired over $1 billion in bonds issued by Hayes Lemmerz International, Inc. G&E negotiated a settlement worth $51 million. Pacholder High Yield Fund, Inc. et al. v. Ranko Cucoz et al., E.D. Mich., C.A. No. 02-71778.

**(14)    Enron/Worldcom**

In 2001, G&E, on behalf of various Ohio public pension funds, filed opt-out actions which remain pending. Public Employees' Retirement System of Ohio v. Ebbers, et al., S.D.N.Y. No. 03-Civ-0338; Public Employees' Retirement System of Ohio v. Fustow, et al., S.D. Tex. No. H-02-4788.

**(15)    Asia Pulp and Paper**

On behalf of bondholders of various subsidiaries of Indonesian paper-making giant Asia Pulp and Paper ("APP"), G&E filed an action alleging that the bondholders were defrauded by APP's financial statements which were inflated by nearly $1 billion in fictitious sales. Defendants' motions to dismiss were denied. Franklin High Income Trust, et al. v. APP Global Ltd., et al., N.Y. Sup. Ct., Trial Div., Index No. 02-602567. The matter was resolved through a confidential settlement several years ago.

**(16)    Babcock Borsig**

G&E filed suit against German company Babcock Borsig, AG alleging that Babcock's CEO, in concert with officers of Babcock's largest shareholder, German conglomerate TUI, devised a plan to overstate Babcock's income through improper use of an accounting device relating to a Babcock subsidiary. The suit was filed on behalf of Wyser-Pratte Management Co., Inc.. Defendants' motions to dismiss were granted and the case had been terminated. Wyser-Pratte

Management Co., Inc. v. Babcock Borsig, A.G., et al., N.Y.Sup. Ct., Trial Div., Index No. 603364/02.

**(17)  Alstom**

In January 2004, Louisiana State Employees' Retirement System was appointed as co-lead plaintiff and G&E was appointed co-lead counsel in a class action against Alstom SA, a French corporation engaged in power generation, transmission and distribution in France.  The suit alleges that Alstom and other defendants made false and misleading statements concerning the growth and financial performance of its transportation subsidiary.  Motions to dismiss were denied in part and granted in part and an amended complaint has been filed.  In re Alstom SA Sec. Litig., S.D.N.Y. 03-cv-6595.

**(18)  Parmalat**

G&E is co-lead counsel in this securities class action arising out of a multi-billion dollar fraud at Parmalat, which the SEC has described as "one of the largest and most brazen corporate financial frauds in history."  The court has recently denied the motions to dismiss filed by both the company and their auditors.  In re Parmalat Securities Litig., S.D.N.Y. 04-MDL-1653.

**(19)  Marsh & McLennan**

G&E is co-lead counsel for the class of former Marsh & McLennan shareholders in this federal securities class action alleging that the company, its officers, directors, auditors, and underwriters participated in a fraudulent scheme involving, among other things, bid-rigging and secret agreements to steer business to certain insurance companies in exchange for "kick-back" commissions.  In re Marsh & McLennan Companies, Inc. Sec. Litig., S.D.N.Y. 04-cv-8144.

**(20)  Hollinger International**

G&E is co-lead counsel in this securities class action arising out of a company scandal at Hollinger International, Inc. which involves payment of millions of dollars to certain executives, including the company's former CEO, Lord Conrad Black, relating to sales of company assets.  G&E has entered into a tentative settlement with Hollinger that is awaiting approval from the Court.  Hollinger International Securities Litigation, N.D. Ill. 04-C-0834.

**(21)  Delphi**

Delphi is an automotive company that was spun off of General Motors.  The company failed as a stand-alone entity, but concealed its failure from investors.  G&E's client is one of the largest pension funds in the world and is a lead plaintiff, and G&E serves as a co-lead counsel in the case.  In re Delphi

<u>Corporation Securities Derivative & ERISA Litigation</u>, E.D. Mich., MDL No. 1725.

**(22)**  **<u>Refco</u>**

A mere two months after going public, Refco admitted that its financials were unreliable because the company had concealed that hundreds of millions of dollars of uncollectible receivables were owed to the company by an off-balance sheet entity owned by the company's CEO.  G&E serves as a co-lead counsel and G&E's client, PIMCO, is a co-lead plaintiff.  <u>In re Refco, Inc. Securities Litigation</u>, S.D.N.Y., No. 05 Civ. 8626.

**(23)**  **<u>Sprint</u>**

G&E represented lead plaintiff institutional investor Carlson Capital, L.P. in this class action suit against Sprint Corporation and its former CEO and directors for breach of fiduciary duty in the consolidation of two separate tracking stocks.  In December 2007, a $57.5 million settlement was approved.  <u>In re Sprint Corporation Shareholder Litigation</u>, D. Kan., No. 04 CV 01714.

**(B)**  **In Derivative and Other Corporate Litigation:**

**(1)**  **<u>Digex</u>**

This case resulted in a settlement of over $400 million, the largest reported settlement in the history of Delaware corporate litigation.  G&E represented the lead plaintiff, TCW Technology Limited Partnership, in alleging that Digex, Inc.'s  directors and majority stockholder (Intermedia, Inc.) breached their fiduciary duties in connection with WorldCom's proposed $6 billion acquisition of Intermedia.  Among other issues, WorldCom was charged with attempting to usurp a corporate opportunity that belonged to Digex and improperly waiving on Digex's behalf the protections of Delaware's business combination statute. Following G&E's argument on a motion to preliminarily enjoin the merger, the Court issued an opinion declining to enjoin the transaction but acknowledging plaintiffs' likelihood of success on the merits. <u>In re Digex, Inc. Shareholders Litigation</u>, C.A. No. 18336, 2000 WL 1847679 (Del. Ch. Dec. 13, 2000).  The case settled soon thereafter.

**(2)**  **<u>Willamette</u>**

In January 2002, at the request of Wyser-Pratte Management Co., Inc. and Franklin Mutual Advisors, G&E filed a shareholder derivative action in Oregon state court claiming that the board of Willamette Industries, Inc. breached its fiduciary duties by attempting to cause Willamette to acquire the asbestos-ridden building products division of Georgia-Pacific Company as part of a scorched-earth effort to defeat a hostile takeover of Willamette by its chief competitor,

Weyerhaeuser Company.  G&E obtained an expedited hearing on its motion for a preliminary injunction and obtained an agreement from Willamette at the hearing not to consummate any deal with Georgia-Pacific without providing prior notice to G&E.  Almost immediately thereafter, and after years of fighting against Weyerhaeuser's take-over attempts, the Willamette board relented and agreed to sell the company to Weyerhaeuser.  Wyser-Pratte Management Co., Inc. & Franklin Mutual Advisors v. Swindells, et al., No. 0201-0085 (Ore. Cir. Ct.).

**(3)    Medco Research**

In January 2000, G&E filed a shareholder derivative action on behalf of State of Wisconsin Investment Board against the directors of Medco Research, Inc. in Delaware Chancery Court.  The suit alleged breach of fiduciary duty in connection with the directors' approval of a proposed merger between Medco and King Pharmaceuticals, Inc.  G&E was successful in obtaining a preliminary injunction requiring Medco to make supplemental and corrective disclosures. Because of G&E's efforts, the consideration to Medco's stockholders increased by $4.08 per share, or $48,061,755 on a class-wide basis.  State of Wisconsin Investment Board v. Bartlett, et al., C.A. No. 17727, 2000 WL 193115 (Del. Ch. Feb. 9, 2000).

**(4)    Occidental Petroleum**

G&E represented Teachers' Retirement System of Louisiana and served as co-counsel in a shareholders' derivative suit against the directors of Occidental Petroleum Corporation, challenging as corporate waste the company's excessive compensation arrangements with its top executives.  Filed in California state court, the case settled when the company agreed to adopt CalPERS's model principles of corporate governance and undertook to reconstitute its key committees so as to meet the tests of independence under those principles. Teachers' Retirement System of Louisiana v. Irani et al., No. BC1850009 (Cal. Super.).

**(5)    Staples, Inc.**

On behalf of Teachers' Retirement System of Louisiana, G&E challenged Staples, Inc.'s proposed "recapitalization" plan to unwind a tracking stock, Staples.com, which it created in 1998.  G&E obtained a preliminary injunction against the deal and the deal terms were ultimately altered resulting in a $15-$20 million gain for shareholders.  Additional disclosures were also required so that shareholders voted on the challenged transaction based on a new proxy statement with substantial additional disclosures.  In re Staples, Inc. Shareholders Litigation, C.A. No. 18784, 2001 WL 640377 (Del. Ch. June 5, 2001).

**(6)    SFX/Clear Channel Merger**

-40-

G&E filed a class action on behalf of Franklin Advisers, Inc. and other stockholders of SFX, challenging the merger between SFX and Clear Channel. While the SFX charter required that in any acquisition of SFX  all classes of common stockholders be treated equally, the merger, as planned, provided for approximately $68 million more in consideration to the two Class B stockholders (who happened to be the senior executives of SFX) than to the public stockholders.  The merger was structured so that stockholders who voted for the merger also had to vote to amend the Charter to remove the non-discrimination provisions as a condition to the merger.  G&E negotiated a settlement whereby $34.5 million more was paid to the public stockholders upon closing of the merger.  This was more than half the damages alleged in the Complaint.  Franklin Advisers, Inc., et al. v. Sillerman, et al., C.A. No. 17878 (Del. Ch.).

**(7)** **Lone Star Steakhouse & Saloon**

G&E filed a derivative lawsuit on behalf of CalPERS against Lone Star's former CEO, Jamie Coulter, and six other Lone Star directors.  The suit alleged that the defendants violated their fiduciary duties in connection with their approval of the company's acquisition of CEI, one of Lone Star's service providers, from Coulter, as well as their approvals of certain employment and compensation arrangements and option repricing programs.  Before filing the suit, G&E had assisted in CalPERS in filing a demand for books and records pursuant to Section 220 of the Delaware General Corporation Law.  The company's response to that demand revealed the absence of any documentation that the board ever scrutinized transactions between Lone Star and CEI, that the board negotiated the purchase price for CEI, or that the board analyzed or discussed the repricing programs.  In August 2005, the Court approved a settlement negotiated by G&E whereby Lone Star agreed to a repricing of options granted to certain of its officers and directors, payments from certain of the officers and directors related to option grants, and a $3 million payment from Lone Star's director and officer insurance policy.  Lone Star further acknowledged that the lawsuit was one of the significant factors considered in its adoption of certain corporate governance reforms.  California Public Employees' Retirement System v. Coulter, et al., C.A. No. 19191 (Del. Ch.).

**(8)** **Siebel**

The issue of excessive executive compensation has been of significant concern for investors, yet their concerns have remained largely unaddressed due to the wide discretion afforded corporate boards in establishing management's compensation. G&E effected a sea change in the compensation policies of Siebel Systems, a leading Silicon Valley-based software developer long considered to be an egregious example of executive compensation run amok, and caused Thomas Siebel, the company's founder and CEO, to cancel 26 million options with a potential value of $54 million.  Since the company's founding in 1996, Siebel Systems had paid Mr. Siebel nearly $1 billion in compensation, largely in the

form of lavish stock options that violated the shareholder-approved stock option plan. In addition, the company had paid its directors millions of dollars for their service on the board, also in the form of stock options, at levels exponentially higher than that paid to directors on the boards of similar companies. G&E, on behalf of Teachers' Retirement System of Louisiana, commenced a derivative action challenging the company's compensation practices in September of 2002 even though a prior, similar lawsuit had been dismissed. Following a hard-fought and acrimonious litigation, G&E successfully negotiated a settlement that, in addition to the options cancellation, included numerous corporate governance reforms. The company agreed to, inter alia, restructure its compensation committee, disclose more information regarding its compensation policies and decisions, cause its outside auditor to audit its option plans as part of the company's annual audit, and limit the compensation that can be paid to directors. The Siebel Systems settlement generated considerable favorable press in the industry, as investors and compensation experts anticipated that the reforms adopted by Siebel Systems could affect how other companies deal with compensation issues. Teachers' Retirement System of Louisiana v. Thomas M. Siebel, et al., C. A. No. 425796 (Cal. Super.).

**(9)     HealthSouth Corporation**

G&E filed a derivative and class action lawsuit on behalf of Teachers' Retirement System of Louisiana against HealthSouth Corporation, its auditors, certain individual defendants, and certain third parties seeking, inter alia, an order forcing the HealthSouth board of directors to hold an annual shareholder meeting for the purpose of electing directors, as no such meeting had been held for over thirteen months. Following a trial, G&E negotiated a settlement of part of its claims, pursuant to which five of the defendant directors who were alleged to have engaged in improper self-dealing with the company agreed to resign and be replaced by directors selected by a committee comprised in part by institutional investors of HealthSouth. Teachers' Retirement System of Louisiana v. Scrushy, Del. Ch., C.A. No. 20529 (March 2, 2004).

**(10)    NYSE/Archipelago**

G&E served as co-lead counsel in a class action in New York state court, brought on behalf of a class of seat holders of the New York Stock Exchange ("NYSE") challenging the proposed merger between the NYSE and Archipelago Holdings, LLC. The complaint alleged that the terms of the proposed merger were unfair to the NYSE seat holders, and that by approving the proposed merger, the NYSE board of directors had violated their fiduciary duties of care, loyalty and candor, because the transaction was the result of a process that was tainted by conflicts of interest and the directors failed adequately to inform themselves of the relevant facts. The court denied the defendants' motion to dismiss, and after expedited discovery, including over 30 depositions in a five week period, a preliminary injunction evidentiary hearing was held, in which plaintiffs sought to postpone the

vote on the merger until a new, current fairness opinion was obtained from an independent financial advisor.  On the second day of the hearing, the defendants agreed to the relief being sought, namely that they would obtain a new, current fairness opinion from an independent financial advisor.  In re New York Stock Exchange/Archipelago Merger Litig., No. 601646/05 (Sup. Ct. N.Y. Co.)

**(11)   Caremark / CVS**

G&E represented institutional shareholders in this derivative litigation challenging the conduct of the board of directors of Caremark Rx Inc. in connection with the negotiation and execution of a merger agreement with CVS, Inc., as well as that board's decision to reject a competing proposal from a different suitor.   Ultimately, through the litigation, G&E was able to force Caremark's board not only to provide substantial additional disclosures to the public shareholders, but also to renegotiate the terms of the merger agreement with CVS to provide Caremark shareholders with an additional $3.19 billion in cash consideration and to ensure Caremark's shareholders had statutory appraisal rights in the deal.  Louisiana Municipal Police Employees' Retirement System, et al. v. Crawford, et al., C.A. No. 2635-N (Del. Ch.).

**(12)   AIG**

In the largest settlement of derivative shareholder litigation in the history of Delaware Chancery Court, G&E reached a $115 million settlement in a suit against former executives of AIG for breach of fiduciary duty.  The case challenged hundreds of millions of dollars in commissions paid by AIG to C.V. Starr & Co., a privately held affiliate controlled by former AIG Chairman Maurice "Hank" Greenberg and other AIG directors. The suit alleged that AIG could have done the work for which it paid Starr, and that the commissions were simply a mechanism for Greenberg and other Starr directors to line their pockets. Teachers' Retirement System of Louisiana v. Greenberg, et al., C. A. No. 20106-VCS (Del. Ch.).

# Exhibit C



# LABATON SUCHAROW LLP

## INVESTOR PROTECTION LITIGATION

Labaton Sucharow LLP    140 Broadway, New York, NY 10005    212 907 0700 main    212 818 0477 fax    www.labaton.com

# THE FIRM AND ITS ACHIEVEMENTS

## Table of Contents

OVERVIEW ......................................................................................................... 1

CORPORATE GOVERNANCE ............................................................................. 2

NOTABLE LEAD COUNSEL APPOINTMENTS ................................................... 6

TRIAL EXPERIENCE .......................................................................................... 7

NOTABLE SUCCESSES ...................................................................................... 8

COMMENTS ABOUT OUR FIRM BY THE COURTS........................................... 20

*PRO BONO* ACTIVITIES .................................................................................... 21

WOMEN'S INITIATIVE AND MINORITY SCHOLARSHIP ................................. 21

ATTORNEYS........................................................................................................ 22

    LAWRENCE A. SUCHAROW, CHAIRMAN.................................................................22

    EDWARD LABATON, SENIOR PARTNER .................................................................25

    JOEL H. BERNSTEIN, SENIOR PARTNER.................................................................26

    THOMAS A. DUBBS, SENIOR PARTNER...................................................................28

    JONATHAN M. PLASSE, SENIOR PARTNER .............................................................30

    MARTIS ALEX, PARTNER ......................................................................................31

    CHRISTINE S. AZAR, PARTNER ............................................................................32

    CHRISTOPHER J. KELLER, PARTNER......................................................................33

    HOLLIS SALZMAN, PARTNER ...............................................................................35

    MICHAEL W. STOCKER, PARTNER.........................................................................36

To view biographies of all Labaton Sucharow attorneys, please visit
www.labaton.com

Founded in 1963, Labaton Sucharow LLP ("Labaton Sucharow") is an internationally respected law firm with offices in New York, New York and Wilmington, Delaware and has relationships throughout the U.S., Europe and the world.  The Firm consists of more than 60 attorneys and a professional support staff that includes certified public accountants, licensed private investigators, resident securities analysts and 16 paralegals.  The Firm prosecutes major complex litigation in the United States, and has successfully conducted a wide array of representative actions (principally class, mass and derivative) in the areas of securities, antitrust, merger/ acquisition, limited partnership, ERISA, product liability, and consumer litigation. Labaton Sucharow's Securities Litigation Group offers comprehensive services for our institutional investor clients and has recovered, through trial and settlement, more than $4 billion for the benefit of investors who have been victimized by such diverse schemes as stock price manipulation, mismanagement, and fraudulent offerings of securities.  Through its efforts, the litigation group has also obtained meaningful corporate governance reforms to minimize the likelihood of repetitive wrongful conduct.  Visit our website at **www.labaton.com** for more information about our dynamic firm.

## CORPORATE GOVERNANCE

Labaton Sucharow is committed to corporate governance reform.  Through its leadership of membership organizations which seek to advance the interests of shareholders and consumers, Labaton Sucharow seeks to strengthen corporate governance and support legislative reforms which improve and preserve shareholder and consumer rights.

The Firm is a patron of the John L. Weinberg Center for Corporate Governance of the University of Delaware ("The Center").  The Center provides a forum for business leaders, directors of corporate boards, the legal community, academics, practitioners, graduate and undergraduate students, and others interested in corporate governance issues to meet and exchange ideas.  One of Labaton Sucharow's senior partners, Edward Labaton, is a member of the Advisory Committee of The Center.  Additionally, Mr. Labaton has served for more than 10 years as a member of the Program Planning Committee for the annual ALI-ABA Corporate Governance Institute, and serves on the Task Force on the Role of Lawyers in Corporate Governance of the Association of the Bar of the City of New York.

On April 1, 2009, Partner Ira Schochet began his two-year term as President of the National Association of Shareholder and Consumer Attorneys (NASCAT), a membership organization of approximately 100 law firms that practice class action and complex civil litigation.  Through the aegis of NASCAT and other organizations, the Firm continues to advocate against those who would seek to weaken shareholder and consumer rights through ill-conceived legislative or regulatory action.  Continuing its spirit of service, Mr. Schochet follows the path of Chairman Lawrence Sucharow who was privileged to be selected by his peers to serve as President of NASCAT in 2003-2005.

On behalf of its institutional and individual investor clients, Labaton Sucharow has achieved some of the largest precedent-setting settlements since the enactment of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and has helped avert future instances of securities fraud by negotiating substantial corporate governance reforms as conditions of many of its largest settlements.

Because of the depth of their experience and deep commitment to the principles of corporate governance, many Labaton Sucharow partners have served as featured speakers on topics relating to corporate governance and reform at various symposia and lectures.

As a result of Labaton Sucharow's extensive experience and commitment to corporate governance reform, the Firm's clients have secured meaningful reforms, in addition to substantial monetary recoveries, in significant settlements such as:

- ***In re Waste Management, Inc. Securities Litigation***, Civ. No. H-99-2183 (S.D. Tex.):  Labaton Sucharow, acting as Lead Counsel for the State of Connecticut Retirement Plans & Trust Funds, caused the Company to present a binding resolution to declassify its board of directors, which was approved by its shareholders.  As a consequence of Labaton Sucharow's efforts, the Company further agreed to amend its Audit Committee charter, which led to its enhanced effectiveness.

- ***In re Vesta Insurance Group Securities Litigation***, Civ. No. CV-98-W-1407-S (N.D. Ala.):  Labaton Sucharow, acting as Lead Counsel for the Florida State Board of Administration, caused the Company to adopt provisions requiring that:  (i) a majority of its Board members be independent; (ii) at least one independent director be experienced in corporate governance; (iii) the audit,

nominating and compensation committees be comprised entirely of independent directors; and (iv) the audit committee comply with the recommendations of the Blue Ribbon Panel on the effectiveness of audit committees.

- ***In re Orbital Sciences Corporation Securities Litigation***, Civ. No. 99-197-A (E.D. Va.):  Labaton Sucharow, acting as Lead Counsel for the New York City Pension Funds, negotiated the implementation of measures concerning the Company's quarterly review of its financial results, the composition, role and responsibilities of its Audit and Finance committee, and the adoption of a Board resolution providing guidelines regarding senior executives' exercise and sale of vested stock options.

- ***In re Bristol-Myers Squibb Securities Litigation***, Civ. No. 00-1990 (D.N.J.):  Labaton Sucharow, acting as Lead Counsel for the LongView Collective Investment Fund of the Amalgamated Bank, negotiated noteworthy corporate governance reforms.  Bristol-Myers Squibb ("BMS") agreed to publicly disclose the following information concerning all of its drugs marketed for at least one indication:  a description of the clinical study design and methodology; results of the clinical trials; and safety results, including the reporting of adverse events seen during the clinical trials.  The disclosures are posted on BMS's website, *www.BMS.com*, as well as an industry website, *www.clinicalstudyresults.org*. BMS agreed to post these disclosures for a 10-year period following approval of the settlement, and has further agreed that any modifications to the disclosure protocol must be approved by the Court, at the request of Labaton Sucharow as Lead Counsel, unless the modifications increase the scope of the disclosures.  The

corporate reform measures obtained in this case exceed the scope of reforms obtained by the New York State Attorney General's office in the settlement of an action against GlaxoSmithKline ("GSK") arising from the sale of Paxil, an antidepressant. The Paxil settlement is limited to drugs sold in the United States, whereas as a result of the BMS settlement, the company must post the clinical trial results of drugs marketed in any country throughout the world.

- ***The Boeing Company,*** Civ. No. 03 CH 15039 and Civ. No. 03 CH 16301 (Cook Co., Ill, Ch. Div.): In 2006, Labaton Sucharow, acting as Lead Counsel for Plaintiffs in a derivative class action against the directors of The Boeing Company ("Boeing"), achieved a landmark settlement establishing unique and far-reaching corporate governance standards relating to ethics compliance, provisions that obligated Boeing to contribute significant funds over and above base compliance spending to implement the various prescribed initiatives. The terms were well designed to provide for early detection and prevention of corporate misconduct. They were comprehensive and integrated, enhancing effectiveness by providing for top-down oversight, direction and planning; and buttressed by extensive and coordinated bottom-up and horizontal reporting. In addition, the reforms were also designed to enhance Board independence and effectiveness and, by creating a direct reporting role to the Board, the independence of the management level oversight functions.

- ***In re Take-Two Interactive Securities Litigation***, No. 06-CV-803-RJS (S.D.N.Y.): In 2009, Labaton Sucharow, acting as Lead Counsel for Lead Plaintiffs New York City Employees' Retirement System, New York City Police

Pension Fund and New York City Fire Department Pension Fund in a securities class action against Take-Two Interactive Software, Inc. ("Take-Two") and its officers and directors, achieved significant corporate governance reforms. Take-Two was required to adopt a policy, commonly referred to as "clawback" provision, providing for the recovery of bonus or incentive compensation paid to senior executives in the event that such compensation was awarded based on financial results later determined to have been erroneously reported as a result of fraud or other knowing misconduct by the executive. The Company was also required to adopt a policy requiring that its Board of Directors submit any stockholder rights plan (also commonly known as a "poison pill") that is greater than 12 months in duration to a vote of stockholders. Finally, Take-Two was required to adopt a bylaw providing that no business may be properly brought before an annual meeting of stockholders by a person other than a stockholder unless such matter has been included in the proxy solicitation materials issued by the Company.

## NOTABLE LEAD COUNSEL APPOINTMENTS

Labaton Sucharow's institutional and individual investor clients are regularly appointed by federal courts to serve as lead plaintiffs in prominent securities litigations brought under the PSLRA. Since January 2003, dozens of state, city and county public pension funds and union funds have selected Labaton Sucharow to represent them in federal securities class actions and advise them as securities litigation/investigation counsel. Listed below are several of our current notable Lead and Co-Lead Counsel appointments.

- 6 -

*IN RE THE BEAR STEARNS COMPANIES INC. SECURITIES, DERIVATIVE AND EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA) LITIGATION*
*NO. CV :08-MD-01963-RWS (S.D.N.Y.)*

Representing Michigan Retirement Systems
as Co-Lead Plaintiff

*CITY OF NEW ORLEANS EMPLOYEES' RETIREMENT SYSTEM*
*V. PRIVATEBANCORP, INC., ET AL*
*NO.1:10-CV-06826 (N.D. ILL.)*

Representing the State-Boston Retirement System
as Co-Lead Plaintiff

*IN RE GOLDMAN SACHS GROUP INC. SECURITIES LITIGATION*
*NO. 1:10-CV-03461(S.D.N.Y.)*

Representing the Arkansas Teacher Retirement System
as Co-Lead Plaintiff

## TRIAL EXPERIENCE

Few securities class action cases go to trial.  But when it is in the best interests of its clients and the class, Labaton Sucharow repeatedly has demonstrated its willingness and ability to try these complex securities cases before a jury.  Labaton Sucharow's recognized willingness and ability to bring cases to trial significantly increases the ultimate settlement value for shareholders.

In the first financial-crisis-related securities class action case to go to jury verdict, the Firm, as Co-Lead Counsel on behalf of State-Boston Retirement System and the class, obtained a jury verdict against BankAtlantic Bancorp, Inc. and two senior officers for securities fraud after they lied about and failed to disclose the extent of risk in the company's troubled loan portfolio in 2007.  The case was only the tenth securities fraud class action to go to trial since passage of the PSLRA, and only the second successful plaintiff's verdict in a case brought on behalf of a public pension fund.

In addition, in *In re Real Estate Associates Limited Partnership Litigation*, when defendants were unwilling to settle for an amount Labaton Sucharow and its clients viewed as fair, we tried the case with co-counsel for six weeks and obtained a landmark $184 million jury verdict in November 2002. The jury supported plaintiffs' position that defendants knowingly violated the federal securities laws, and that the general partner had breached his fiduciary duties to plaintiffs. The $184 million award was one of the largest jury verdicts returned in any PSLRA action and one in which the plaintiff class, consisting of 18,000 investors, recovered 100% of their damages.

## NOTABLE SUCCESSES

Labaton Sucharow has achieved notable successes in major securities litigations on behalf of its clients and certified investor classes.

- Labaton Sucharow served as Co-Lead Counsel in *In re HealthSouth Securities Litigation*, Civ. No CV-03-BE-1500-S (N.D. Ala.), a case stemming from the largest fraud ever perpetrated in the healthcare industry. In early 2006, Lead Plaintiffs negotiated a settlement of $445 million with defendant HealthSouth. This partial settlement, comprised of cash and HealthSouth securities to be distributed to the class, is one of the largest in history. On June 12, 2009, the Court also granted final approval to a $109 million settlement with defendant Ernst & Young LLP ("E&Y") believed to be the eighth largest securities fraud class action settlement with an auditor. In addition, on July 26, 2010, the Court granted final approval to a $117 million partial settlement with the remaining principal defendants in the case, UBS AG, UBS Warburg LLC, Howard Capek,

Benjamin Lorello and William McGahan (the "UBS Defendants").  The total value of the settlements for Healthsouth stockholders and Healthsouth bondholders, who were represented by separate counsel, is $804.5 million.

- In *In re American International Group, Inc. Securities Litigation*, Master File No. 04 Civ. 8141 (JES) (AJP) (S.D.N.Y.), Lead Counsel Labaton Sucharow represents Lead Plaintiff Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, and Ohio Police & Fire Pension Fund, along with the Attorney General of the State of Ohio.  On October 3, 2008, a $97.5 million settlement between the Lead Plaintiff and PricewaterhouseCoopers LLP was announced.  The settlement, which still must be approved by the Court, was the eighth largest at the time by an accounting firm to settle a securities fraud class action.  On July 16, 2010, an agreement on the terms of a proposed $725 million settlement was announced, which, if approved by the Court, would resolve the Ohio Funds' claims against AIG and certain individual AIG directors and officers.

- On behalf of the New York State Common Retirement Fund and five New York City public pension funds, Labaton Sucharow served as Lead Counsel in *In re Countrywide Financial Corporation Securities Litigation*, No. CV 07-05295 MRP (MANx) (C.D. Cal.), for claims alleging that Countrywide, one of the nation's largest mortgage lenders, and other defendants violated the federal securities laws by making misstatements and omitting material facts about Countrywide's policies and procedures for underwriting loans that entailed greater risk than disclosed.  The parties have agreed to a Settlement whereby

Countrywide and its auditing firm, KPMG LLP, together have paid $624 million in cash, with a portion set aside for up to two years to satisfy certain opt-out claims.   This recovery is among the largest securities fraud settlements since the enactment of the PSLRA.  On March 10, 2011, the Settlement was granted final approval.

- ***In re Waste Management, Inc. Securities Litigation***, Civ. No. H-99-2183 (S.D. Tex.).  In 2002, Judge Melinda Harmon approved an extraordinary settlement that provided for recovery of $457 million in cash, plus an array of far-reaching corporate governance measures.  At that time, this settlement was the largest common fund settlement of a securities action achieved in any court within the Fifth Circuit and the third-largest achieved in any federal court in the nation.  Judge Harmon noted, among other things, that Labaton Sucharow "obtained an outstanding result by virtue of the quality of the work and vigorous representation of the Class."

- In ***In re General Motors Corp. Securities Litigation***, No. 06-1749, (E.D. Mich.), Co-Lead Counsel Labaton Sucharow represented Lead Plaintiffs Deka Investment GmbH and Deka International S.A. Luxembourg in claims alleging that General Motors, and certain of GM's officers and directors (including CEO Rick Wagoner), issued a series of false and misleading statements to investors about the auto maker's financial health going back to 2000.  On July 21, 2008, a settlement was reached whereby GM made a cash payment of $277 million and Defendant Deloitte & Touche LLP, which served as GM's outside auditor during

the period covered by the action, agreed to contribute an additional $26 million in cash.

- In *In re PaineWebber Limited Partnerships Litigation*, Master File No. 94 Civ. 832/7 (SHS) (S.D.N.Y.), Judge Sidney H. Stein approved a settlement valued at $200 million and found "that Class Counsel's representation of the Class has been of high caliber in conferences, in oral arguments and in work product."

- *Eastwood Enterprises, LLC v. Farha et al.*, 8:07-cv-1940-T-33EAJ (M.D. Fla.). On behalf of The New Mexico State Investment Council and the Public Employees Retirement Association of New Mexico, Co-Lead Counsel for the Class, Labaton Sucharow LLP, negotiated a $200 million settlement over allegations that WellCare Health Plans, Inc., a Florida-based managed healthcare service provider, disguised its profitability by overcharging state Medicaid programs. Under the terms of the settlement, which is still subject to approval by the Court, WellCare agreed to pay an additional $25 million in cash if, at any time in the next three years, WellCare is acquired or otherwise experiences a change in control at a share price of $30 or more after adjustments for dilution or stock splits.

- In *In re El Paso Corporation Securities Litigation*, Civ. No. H-02-2717 (S.D. Tex.), Labaton Sucharow secured a $285 million class action settlement against the El Paso Corporation. The case involved a securities fraud stemming from the Company's inflated earnings statements, which cost shareholders hundreds of millions of dollars during a four-year span. The settlement was approved by the Court on March 6, 2007.

- 11 -

- ***In re Bristol-Myers Squibb Securities Litigation***, Civ. No. 00-1990 (D.N.J.). After prosecuting securities fraud claims against BMS for more than five years, Labaton Sucharow reached an agreement to settle the claims for $185 million and significant corporate governance reforms.  This settlement is the second largest recovery against a pharmaceutical company, and it is the largest recovery ever obtained against a pharmaceutical company in a securities fraud case involving the development of a new drug.  Moreover, the settlement is the largest ever obtained against a pharmaceutical company in a securities fraud case that did not involve a restatement of financial results.

- On behalf of Lead Plaintiff New Mexico State Investment Council, Labaton Sucharow served as Lead Counsel in ***In re Broadcom Corp. Securities Litigation***, No. CV-05036-R (C.D. Cal.), a case stemming from Broadcom Corp.'s $2.2 billion restatement of its historic financial statements for 1998-2005 - the largest restatement in history due to options backdating.  In December 2009, New Mexico reached an agreement-in-principle with Broadcom and two individual defendants to resolve this matter for $160.5 million, the second largest up-front cash settlement ever recovered from a company accused of options backdating.

- In ***In re Mercury Interactive Corp. Securities Litigation***, Civ. No. 5:05-CV-3395 (N.D. Cal.), Labaton Sucharow reached an agreement to settle for $117.5 million, a figure representing one of the largest known settlements in a securities fraud litigation based upon options backdating.  The allegations in *Mercury* concern backdated option grants used to compensate employees and officers of the Company.  Mercury's former CEO, CFO, and General Counsel actively

participated in and benefited from the options backdating scheme, which came at the expense of Mercury shareholders and the investing public.  Labaton Sucharow and Hewlett-Packard's counsel executed a Stipulation of Settlement and the Court granted preliminary approval of the settlement on June 2, 2008.  On September 25, 2008, the Court granted final approval of the settlement.

- In the well-known *In re Prudential Securities Inc. Limited Partnership Litigation*, Civ. No. M-21-67 (S.D.N.Y.), the late Judge Milton Pollack cited the "Herculean" efforts of Labaton Sucharow and its Co-Lead Counsel and, in approving a $110 million partial settlement, stated that "this case represents a unique recovery – a recovery that does honor to every one of the lawyers on your side of the case."

- *In re Vesta Insurance Group, Inc. Securities Litigation*, Civ. No. CV-98-AR-1407 (N.D. Ala.).  After years of protracted litigation, Labaton Sucharow secured a settlement of $78 million on the eve of trial.

- *In re St. Paul Traveler's II Securities Litigation*, Civ. No. 04-4697 (JRT/FLN) (D. Minn.), the second of two cases filed against St. Paul Travelers by Labaton Sucharow, arose from the industry-wide insurance scandal involving American International Group, Marsh McClennan, the St. Paul Companies and numerous other insurance providers and brokers.  On July 23, 2008, the Court granted final approval of the $77 million settlement and certified the settlement Class.

- In *In re St. Paul Travelers Securities Litigation*, 04-CV-3801 (D. Minn.), Labaton Sucharow was able to successfully negotiate the creation of an all cash

settlement fund to compensate investors in the amount of $67.5 million in November 2005.  This settlement is one of the largest securities class action settlements in the Eighth Circuit.

- In *In re Monster Worldwide, Inc. Securities Litigation*, No. 07-CV-02237 (S.D.N.Y.), Labaton Sucharow represented Middlesex County Retirement System in claims alleging that Defendants engaged in a long-running scheme to backdate Monster's stock option grants to attract and retain employees without recording the resulting compensation expenses.  On November 25, 2008, the Court granted final approval of the $47.5 million settlement.

- In *Abrams v. VanKampen Funds, Inc.*,  01 C 7538 (N.D. Ill.), in January 2006 Labaton Sucharow obtained final approval of a $31.5 million settlement in an innovative class action concerning VanKampen's senior loan mutual fund, alleging that the fund overpriced certain senior loan interests where market quotations were readily available.  The gross settlement fund constitutes a recovery of about 70% of the class's damages as determined by plaintiffs' counsel.

- In *Desert Orchid Partners, L.L.C. v. Transactions Systems Architects, Inc.*, Civ. No. 02 CV 533 (D. Neb.), Labaton Sucharow represented the Genesee Employees' Retirement System as Lead Plaintiff in claims alleging violations of the federal securities laws.  On March 2, 2007, the Court granted final approval to the settlement of this action for $24.5 million in cash.

- *In re Orbital Sciences Corp. Securities Litigation*, Civ. No. 99-197-A (E.D. Va.).  After cross-motions for summary judgment were fully briefed, defendants

- 14 -

(and Orbital's auditor in a related proceeding) agreed to a $23.5 million cash settlement, warrants, and substantial corporate governance measures.

- On September 9, 2008, the Court granted final approval of the $20 million settlement in *In re International Business Machines Corp. Securities Litigation*, Civ. No. 1:05-cv-6279 (AKH) (S.D.N.Y.), in which Labaton Sucharow served as Lead Counsel.  The action alleged that that International Business Machines Corp. ("IBM"), and its Chief Financial Officer, Mark Loughridge, made material misrepresentations and omissions concerning IBM's expected 2005 first quarter earnings, IBM's expected 2005 first quarter operational performance, and the financial impact of IBM's decision to begin expensing stock options on its 2005 first quarter financial statements.

- In *In re Just for Feet Noteholder Litigation*, Civ. No. CV-00-C-1404-S (N.D. Ala.), Labaton Sucharow, as Lead Counsel, represented Lead Plaintiff Delaware Management and the Aid Association for Lutherans with respect to claims brought on behalf of noteholders.  On October 21, 2005, Chief Judge Clemon of the U.S. District Court for the Northern District of Alabama preliminarily approved Plaintiffs' settlement with Banc of America Securities LLC, the sole remaining defendant in the case, for $17.75 million.  During the course of the litigation, Labaton Sucharow obtained certification for a class of corporate bond purchasers in a ground-breaking decision, *AAL High Yield Bond Fund v. Ruttenberg*, 229 F.R.D. 676 (N.D. Ala. 2005), which is the first decision by a federal court to explicitly hold that the market for high-yield bonds such as those at issue in the action was efficient.

- In *In re American Tower Corporation Securities Litigation*, Civ. No. 06 CV 10933 (MLW) (D. Mass.), Labaton Sucharow represented the Steamship Trade Association-International Longshoreman's Association Pension Fund (STA-ILA) in claims alleging that certain of American Tower Corporation's current and former officers and directors improperly backdated the Company's stock option grants and made materially false and misleading statements to the public concerning the Company's financial results, option grant policies and accounting, causing damages to investors. On June 11, 2008, the Court granted final approval of the $14 million settlement.

- In *In re CapRock Communications Corp. Securities Litigation*, Civ. No. 3-00-CV-1613-R (N.D. Tex.), Labaton Sucharow represented a prominent Louisiana-based investment adviser in claims alleging violations of the federal securities laws. The case settled for $11 million in 2003.

- In *In re SupportSoft Securities Litigation*, Civ. No. C 04-5222 SI (N.D. Cal.), Labaton Sucharow secured a $10.7 million settlement on October 2, 2007 against SupportSoft, Inc. The action alleged that the defendants had artificially inflated the price of the Company's securities by re-working previously entered into license agreements for the Company's software in order to accelerate the recognition of revenue from those contracts.

- In *In re InterMune Securities Litigation*, Master File No. 03-2454 SI (N.D. Cal. 2005), Labaton Sucharow commenced an action on behalf of its client, a substantial investor, against InterMune, a biopharmaceutical firm, and certain of its officers, alleging securities fraud in connection with InterMune's sales and

- 16 -

marketing of a drug for off-label purposes.  Notwithstanding higher pleading and proof standards in the jurisdiction in which the action had been filed, Labaton Sucharow utilized its substantial investigative resources and creative alternative theories of liability to successfully obtain an early, pre-discovery settlement of $10.4 million.  The Court complimented Labaton Sucharow on its ability to obtain a substantial benefit for the Class in such an effective manner.

- Labaton Sucharow served as Lead Counsel in *In re HCC Insurance Holdings, Inc. Securities Litigation*, Civ. No. 4:07-cv-801 (S.D. Tex.), a case alleging that certain of HCC's current and former officers and directors improperly backdated the Company's stock option grants and made materially false and misleading statements to the public concerning the Company's financial results, option grant policies and accounting, causing damages to investors.  On June 17, 2008, the Court granted final approval of the $10 million settlement.

- In *In re Adelphia Communications Corp. Securities & Derivative Litigation*, Civ. No. 03 MD 1529 (LMM) (S.D.N.Y.), Labaton Sucharow represents the New York City Employees' Retirement System (and certain other New York City pension funds) and the Division of Investment of the New Jersey Department of the Treasury in separate individual actions against Adelphia's officers, auditors, underwriters, and lawyers.  To date, Labaton Sucharow has fully resolved certain of the claims brought by New Jersey and New York City for amounts that significantly exceed the percentage of damages recovered by the Class.  New Jersey and New York City continue to prosecute their claims against the remaining defendants.

- In ***STI Classic Funds v. Bollinger Industries, Inc.***, No. 96-CV-0823-R (N.D.
  Tex.), Labaton Sucharow commenced related suits in both state and federal courts
  in Texas on behalf of STI Classic Funds and STI Classic Sunbelt Equity Fund,
  affiliates of the SunTrust Bank.  As a result of Labaton Sucharow's efforts, the
  class of Bollinger Industries, Inc. investors on whose behalf the bank sued
  obtained the maximum recovery possible from the individual defendants and a
  substantial recovery from the underwriter defendants.  Notwithstanding a strongly
  unfavorable trend in the law in the State of Texas, and strong opposition by the
  remaining accountant firm defendant, Labaton Sucharow has obtained class
  certification and continues to prosecute the case against that firm.

- In ***Rosengarten v. International Telephone & Telegraph Corp.***, Civ. No.
  76-1249 (N.D.N.Y.), Judge Morris Lasker noted that the Firm "served the
  corporation and its stockholders with professional competence as well as
  admirable intelligence, imagination and tenacity."

- In ***In re Prudential-Bache Energy Income Partnerships Securities
  Litigation***, MDL No. 888, an action in which Labaton Sucharow served on the
  Executive Committee of Plaintiffs' Counsel, Judge Marcel Livaudais, Jr., of the
  United States District Court for the Eastern District of Louisiana, observed that:

  > Counsel were all experienced, possessed high professional
  > reputations and were known for their abilities.  Their cooperative
  > effort in efficiently bringing this litigation to a successful
  > conclusion is the best indicator of their experience and ability . . . .
  >
  > The Executive Committee is comprised of law firms with national
  > reputations in the prosecution of securities class action and
  > derivative litigation.  The biographical summaries submitted by
  > each member of the Executive Committee attest to the

accumulated experience and record of success these firms have compiled.

Among the institutional investor clients Labaton Sucharow represents and advises are:

Arkansas Teacher Retirement System

Baltimore County Retirement System

Bristol County Retirement Board

California Public Employees' Retirement System

City of New Orleans Employees' Retirement System

Connecticut Retirement Plans & Trust Funds

Division of Investment of the New Jersey Department of the Treasury

Doubloon Capital LLC

Genesee County Employees' Retirement System

Illinois Municipal Retirement Fund

Louisiana Municipal Police Employees' Retirement System

Teachers' Retirement System of Louisiana

Macomb County Employees Retirement System

Metropolitan Atlanta Rapid Transit Authority

Michigan Retirement Systems

Middlesex Retirement Board

Mississippi Public Employees' Retirement System

New York City Pension Funds

New York State Common Retirement Fund

Norfolk County Retirement System

Office of the Ohio Attorney General and several of its Retirement Systems

Oklahoma Firefighters Pension and Retirement System

Plymouth County Retirement System

Office of the New Mexico Attorney General and several of its Retirement Systems

Rhode Island State Investment Commission

San Francisco Employees' Retirement System

State of Oregon Public Employees' Retirement System

State of Wisconsin Investment Board

State-Boston Retirement System

- 19 -

Steamship Trade Association/International Longshoremen's Association

Virginia Retirement Systems

## COMMENTS ABOUT OUR FIRM BY THE COURTS

Many federal judges have commented favorably on the Firm's expertise and results achieved in securities class action litigation. Judge John E. Sprizzo complimented the Firm's work in *In re Revlon Pension Plan Litigation*, Civ. No. 91-4996 (JES) (S.D.N.Y.). In granting final approval to the settlement, Judge Sprizzo stated that "[t]he recovery is all they could have gotten if they had been successful. I have probably never seen a better result for the class than you have gotten here."

Labaton Sucharow was a member of the Executive Committee of Plaintiffs' Counsel in *In re PaineWebber Limited Partnerships Litigation*, Master File No. 94 Civ. 8547 (SHS). In approving a class-wide settlement valued at $200 million, Judge Sidney H. Stein of the Southern District of New York stated:

> The Court, having had the opportunity to observe first hand the quality of Class Counsel's representation during this litigation, finds that Class Counsel's representation of the Class has been of high caliber in conferences, in oral arguments and in work product.

Judge Lechner, presiding over the $15 million settlement in *In re Computron Software Inc. Securities Class Action Litigation*, Civ. No. 96-1911 (AJL) (D.N.J.), where Labaton Sucharow served as Co-Lead Counsel, commented that

> I think it's a terrific effort in all of the parties involved . . . , and the co-lead firms . . . I think just did a terrific job.

> You [co-lead counsel and] Mr. Plasse, just did terrific work in the case, in putting it all together . . . .

- 20 -

In *Middlesex County Retirement System v. Monster Worldwide, Inc.*, No. 07-cv-2237 (S.D.N.Y.), Judge Rakoff appointed Labaton Sucharow as Lead Counsel, stating that "the Labaton firm is very well known to courts for the excellence of its representation."

In addition, Judge Rakoff commented during a final approval hearing that "the quality of the representation was superb" and "[this case is a] good example of how [the] securities class action device serves laudatory public purposes."

During a fairness hearing in the *In re American Tower Corporation Securities Litigation*, No. 06-CV-10933 (MLW) (D. Mass.), Chief Judge Mark L. Wolf stated:

> "[t]he attorneys have brought to this case considerable experience and skill as well as energy.  Mr. Goldsmith has reminded me of that with his performance today and he maybe educated me to understand it better."

## *PRO BONO* ACTIVITIES

Our attorneys devote substantial time to *pro bono* activities.  Many of our attorneys participated in the Election Protection Program sponsored in 2004 by the Lawyers Committee for Civil Rights Under the Law to ensure that every voter could vote and every vote would count. In addition, the Firm's attorneys devote their time to *pro bono* activities in the fields of the arts, foundations, education, and health and welfare issues.

## WOMEN'S INITIATIVE AND MINORITY SCHOLARSHIP

Labaton Sucharow founded a Women's Initiative to reflect the Firm's commitment to the advancement of women professionals.  The goal of the initiative is to bring professional women together to collectively advance women's influence in business.  Each event showcases a successful woman role model as a guest speaker.  We actively discuss our respective business initiatives and hear the guest speaker's strategies for success.  Labaton Sucharow mentors and

promotes the professional achievements of the young women in our ranks and others who join us for events.  The Firm also is a member of the National Association of Women Lawyers (NAWL).  For more information regarding Labaton Sucharow's Women's Initiative, please visit http://www.labaton.com/en/about/women/Womens-Initiative.cfm

Further, as part of an effort to increase attorney diversity, the Firm has established an annual scholarship program at Brooklyn Law School that provides a $5,000 scholarship and a summer associate position at the Firm to a member of a minority group.  Currently, there are two minority associates employed by Labaton Sucharow who were recipients of this scholarship.

## ATTORNEYS

The biographies of all of Labaton Sucharow's attorneys who are involved in the prosecution of securities actions are listed on the Firm website at www.labaton.com/en/ourpeople.

A short description of the qualifications and accomplishments of select Labaton Sucharow partners follows.

### *LAWRENCE A. SUCHAROW, CHAIRMAN*                    **lsucharow@labaton.com**

Lawrence A. Sucharow, a nationally recognized leader of the securities class action bar, is the chairman of Labaton Sucharow.  In this capacity, he participates in developing the litigation and settlement strategies for many of the class action cases Labaton Sucharow prosecutes.

For more than three decades, Mr. Sucharow has devoted his practice to counseling clients and prosecuting cases on complex issues involving securities, antitrust, business transaction, product liability, and other class actions.  Mr. Sucharow has successfully recovered more than

$1 billion on behalf of institutional investors such as state, city, county and union pension funds, shareholders of public companies, bondholders, purchasers of limited partnership interests, purchasers of consumer products and individual investors.

Mr. Sucharow obtained $225 million in savings for the class of In re CNL Resorts, Inc. Securities Litigation.  In other recently settled actions, Mr. Sucharow undertook a lead role in obtaining benefits for class members of $200 million (*In re Paine Webber Incorporated Limited Partnerships Litigation*); $110 million partial settlement (*In re Prudential Securities Incorporated Limited Partnerships Litigation*); $91 million (*In re Prudential Bache Energy Income Partnerships Securities Litigation*); and more than $92 million (*Shea v. New York Life Insurance Company*).  In approving the *Prudential* settlement, Judge Milton Pollack referred to the efforts of plaintiffs' counsel as "Herculean," stating: "…this case represents a unique recovery – a recovery that does honor to every one of the lawyers on your side of the case."

In addition, in 2002 Mr. Sucharow served as Co-Trial Counsel in a six-week trial of a federal securities law claim on behalf of 18,000 passive investors in the Real Estate Associates limited partnerships.  That trial resulted in an unprecedented $182 million jury verdict.

Mr. Sucharow is the author of "Schapiro Takes Right Path On Market Reform, But Auditors, Lawyers and Shareholders Need Better Tools," *Pensions & Investments*, June 1, 2009. He is the co-author of "How Courts Analyze Guilty Pleas and Government Investigations When Considering the Plausibility of an Antitrust Conspiracy After Twombly," *BNA's Class Action Litigation Report*, March 26, 2010; "Death of the Worldwide Class?," *BNA's Securities Regulation & Law Report*, June 22, 2009, and "Executive Compensation: Despite reforms, pay is less transparent and shareholder-friendly than in the past," *New York Law Journal*, March 20, 2008.

Mr. Sucharow is a member of the Federal Bar Council's Committee on Second Circuit Courts, and the Federal Courts Committee of the New York County Lawyers' Association.  He is also a member of the Securities Law Committee of the New Jersey State Bar Association and was the founding chairman of the Class Action Committee of the Commercial and Federal Litigation Section of the New York State Bar Association from 1988-1994.  He was honored by his peers by his election to serve a two-year term as President of the National Association of Shareholder and Consumer Attorneys (NASCAT), a membership organization of approximately 100 law firms which practice complex civil litigation including class actions.

Mr. Sucharow earned a B.B.A., *cum laude*, from Baruch School of the City College of the City University of New York in 1971 and a J.D., *cum laude*, from Brooklyn Law School in 1975.

Mr. Sucharow is admitted to practice in New York and New Jersey as well as before the United States District Courts for the Southern and Eastern Districts of New York, the District of New Jersey, the District of Arizona, the United States Court of Appeals for the Second Circuit, and the United States Supreme Court.

As a result of his career accomplishments, Mr. Sucharow is one of only four plaintiff's securities lawyers in the United States independently selected by *Chambers and Partners USA* to be in its highest category, Band 1, (Plaintiffs Securities Class Actions).  In August 2010, he was recognized by *Law360* as one the ten Most Admired Securities Attorneys in the United States. Mr. Sucharow has received a rating of AV from the publishers of the Martindale-Hubbell directory.

*EDWARD LABATON, SENIOR PARTNER*                    *elabaton@labaton.com*

An accomplished trial lawyer and Senior Partner with the Firm, Edward Labaton has devoted his 50 years of practice to representing a full range of clients in class action and complex litigation matters in state and federal court.  Mr. Labaton has played a lead role as plaintiffs' class counsel in a number of successfully prosecuted high profile cases, involving companies such as PepsiCo, Dun & Bradstreet, Financial Corporation of America, ZZZZ Best, Revlon, GAF Co., American Brands, Petro Lewis and Jim Walter, as well as several Big Eight (now Four) accounting firms.  He has also argued appeals in state and federal courts, achieving results with important precedential value.

Mr. Labaton has been President of the Institute for Law and Economic Policy since its founding in 1996.  The Institute co-sponsors at least one annual symposium with a major law school dealing with issues relating to the civil justice system.  In 2010 he was appointed to the newly formed Advisory Board of George Washington University's Center for Law, Economics, & Finance (C-LEAF), a think tank within the Law School, for the study and debate of major issues in economic and financial law confronting the United States and the globe.  Mr. Labaton is also a member of the Advisory Committee of the Weinberg Center for Corporate Governance of the University of Delaware, a Director of the Lawyers' Committee for Civil Rights under Law, a member of the American Law Institute, and a life member of the ABA Foundation.  In addition, he has served on the Executive Committee and has been an officer of the Ovarian Cancer Research Fund since its inception in 1996.

Mr. Labaton is the past Chairman of the Federal Courts Committee of the New York County Lawyers Association, and was a member of the Board of Directors of that organization. He is an active member of the Association of the Bar of the City of New York, where he was Chair of the Senior Lawyers' Committee and served on its Task Force on the Role of Lawyers in

Corporate Governance.  He has also served on its Federal Courts, Federal Legislation, Securities

Regulation, International Human Rights and Corporation Law Committees.  He also served as

Chair of the Legal Referral Service Committee, a joint committee of the New York County

Lawyers' Association and the Association of the Bar of the City of New York.  He has been an

active member of the American Bar Association, the Federal Bar Council and the New York

State Bar Association, where he has served as a member of the House of Delegates.

Mr. Labaton is the co-author of "It's Time to Resuscitate the Shareholder Derivative

Action," *The Panic of 2008: Causes, Consequences, and Implications for Reform*, Lawrence

Mitchell and Arthur Wilmarth, Jr., eds, (Edward Elgar, 2010).

For more than 30 years, he has lectured in the areas of federal civil litigation, securities

litigation and corporate governance.  Mr. Labaton graduated *cum laude* with a B.B.A. from

Baruch College, City College of New York in 1952 and earned his LL.B. from Yale University

in 1955.

He is admitted to practice in New York as well as before the United States District Courts

for the Southern and Eastern Districts of New York; the Central District of Illinois; the United

States Courts of Appeals for the Second, Fifth, Sixth, Seventh, Ninth, Tenth and Eleventh

Circuits; and the United States Supreme Court.

Mr. Labaton has received a rating of AV from the publishers of the Martindale-Hubbell

directory.

### JOEL H. BERNSTEIN, SENIOR PARTNER                         *jbernstein@labaton.com*

With more than 30 years' experience in the area of complex litigation, Joel H. Bernstein

concentrates his practice in the protection of investors who have been victimized by securities

- 26 -

fraud and breach of fiduciary duty.  His expertise in the area of shareholder litigation has resulted in the recovery of hundred of millions of dollars in damages to wronged investors.

Mr. Bernstein advises numerous large public pension funds, hedge funds, other institutional investors and individual investors with respect to securities litigation in the federal and state courts as well as in arbitration proceedings before the New York Stock Exchange, the National Association of Securities Dealers and other self-regulatory organizations.

Mr. Bernstein has played a central role in numerous high profile cases, including *In re Paine Webber Incorporated Limited Partnerships Litigation*, $200 million settlement; *In re Prudential Securities Incorporated Limited Partnerships Litigation*, $130 million settlement; *In re Prudential Bache Energy Income Partnerships Securities Litigation*, $91 million settlement; *Shea v. New York Life Insurance Company*, $92 million settlement; and, *Saunders et al. v. Gardner*, $10 million -- then the largest punitive damage award in the history of the NASD. Most recently, Mr. Bernstein was instrumental in securing a $117.5 million settlement in *In re Mercury Interactive Securities Litigation*, a figure representing one of the largest known settlements or judgments in a securities fraud litigation based upon options backdating.

A leading figure in his area of practice, Mr. Bernstein is frequently sought out by the press to comment on securities law and also has authored numerous articles on related issues, including "Stand Up to Your Stockbroker, Your Rights As An Investor."  He is a member of the American Bar Association and the New York County Lawyers' Association.

Mr. Bernstein earned a J.D. from Brooklyn Law School in 1975 and received his undergraduate degree from Queens College in 1971.

He is admitted to practice in New York as well as before the United States District Courts for the Southern and Eastern Districts of New York, and the United States Courts of Appeals for

the Second and Third Circuits.  He is a member of the American Bar Association and the New York County Lawyers' Association.

Mr. Bernstein has received a rating of AV from the publishers of the Martindale-Hubbell directory.

### THOMAS A. DUBBS, SENIOR PARTNER                    tdubbs@labaton.com

Thomas A. Dubbs specializes in the representation of institutional investors including pension funds in securities fraud and other types of litigation.  A recognized leader in the field, Mr. Dubbs represented the first major private institutional investor to become a lead plaintiff in a class action under the Private Securities Litigation Reform Act.

Mr. Dubbs currently serves as Lead or Co-Lead Counsel in federal securities class actions against AIG, Wellcare and Bear Stearns, among others.

Most recently, Mr. Dubbs has played a central role in numerous high profile cases, including *In re HealthSouth Securities Litigation*, $804.5 million settlement; *In re Broadcom Corp. Securities Litigation*, $160.5 million settlement; *In re Vesta Insurance Group, Inc. Securities Litigation*, $79 million settlement; and *In re St. Paul Travelers II Securities Litigation*, $77 million settlement.

Representing an affiliate of the Amalgamated Bank, the largest labor-owned bank in the United States, a Labaton Sucharow team led by Mr. Dubbs successfully litigated a class action against Bristol-Myers Squibb, which resulted in a settlement of $185 million and major corporate governance reforms.

Mr. Dubbs is the author of "Shortsighted?," *Investment Dealers' Digest*, May 29, 2009; "A Scotch Verdict on 'Circularity' and Other Issues," 2009 *Wis. L. Rev.* 455 n.2 (2009); and several columns in UK-wide pensions publications focusing on securities class actions and

corporate governance.  He also is the co-author of the following articles: "In Debt Crisis, An Arbitration Alternative," *The National Law Journal*, March 16, 2009; "The Impact of the LaPerriere Decision: Parent Companies Face Liability," *Directors Monthly*, February 1, 2009; "Auditor Liability in the Wake of the Subprime Meltdown," *BNA's Accounting Policy & Practice Report*, November 14, 2009; and "US Focus: Time for Action," *Legal Week*, April 17, 2008.

Mr. Dubbs frequently lectures to institutional investors and other groups such as the Government Finance Officers Association, the National Conference on Public Employee Retirement Systems and the Council of Institutional Investors.

Prior to joining Labaton Sucharow, Mr. Dubbs was Senior Vice President & Senior Litigation Counsel for Kidder, Peabody & Co. Incorporated where he represented the firm in many class actions, including the First Executive and Orange County litigations.  Before joining Kidder, Mr. Dubbs was head of the litigation department at Hall, McNicol, Hamilton & Clark, where he was the principal partner representing Thomson McKinnon Securities Inc. in litigation matters including class actions such as the *Petro Lewis* and *Baldwin United* litigations.

Mr. Dubbs earned a B.A. and a J.D. from the University of Wisconsin-Madison in 1969 and 1974, respectively.  He received an M.A. from the Fletcher School of Law & Diplomacy, Tufts University in 1971.

Mr. Dubbs is admitted to practice in New York as well as before the United States District Court for the Southern District of New York; the United States Courts of Appeals for the Second, Ninth and Eleventh Circuits; and the United States Supreme Court.  He is a member of the New York State Bar Association, the Association of the Bar of the City of New York, and the American Society of International Law.

Mr. Dubbs has been recognized by *The National Law Journal*, *Chambers and Partners USA* and the *Lawdragon 500*. Mr. Dubbs has received a rating of AV from the publishers of the Martindale-Hubbell directory.

### JONATHAN M. PLASSE, SENIOR PARTNER                          *jplasse@labaton.com*

An accomplished litigator, Jonathan M. Plasse has devoted over 30 years of his practice to the prosecution of complex cases involving securities class action, derivative, transactional, and consumer litigation. Currently, he is prosecuting securities class actions against Shering-Plough, Fannie Mae and Morgan Stanley.

Most recently, Mr. Plasse was an integral member of the team representing the New York State Common Retirement Fund and the New York City Pension Funds as lead plaintiffs in *In re Countrywide Financial Corporation Securities Litigation*. The $624 million settlement is one of the largest securities fraud settlements in U.S. history. His other recent successes include serving as Co-Lead Counsel in *In re General Motors Corp. Securities Litigation* ($303 million settlement) and *In re El Paso Corporation Securities Litigation* ($285 million settlement). Mr. Plasse also served as Lead Counsel in *In re Waste Management Inc. Securities Litigation*, where he represented the Connecticut Retirement Plans and Trusts Funds, and obtained a settlement of $457 million.

Mr. Plasse serves as the Chair of the Securities Litigation Committee of the Association of the Bar of the City of New York. He has also chaired and been a regular speaker at continuing legal education seminars relating to securities class action litigation.

Mr. Plasse received a B.A. degree, *magna cum laude*, from the State University of New York in Binghamton in 1972. He received a J.D. from Brooklyn Law School in 1976, where he served as a member of the *Brooklyn Journal of International Law*.

- 30 -

He is admitted to practice in New York as well as before the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second Circuit.

Mr. Plasse has received a rating of AV from the publishers of the Martindale-Hubbell directory.

### MARTIS ALEX, PARTNER                                    malex@labaton.com

Martis Alex concentrates her practice on prosecuting complex securities fraud cases on behalf of institutional investors.  She has extensive experience managing complex nationwide litigation, including securities class actions as well as product liability and consumer fraud litigation.  She has successfully represented investors and consumers in cases that achieved cumulative recoveries of hundreds of millions of dollars for plaintiffs.

Ms. Alex was an integral part of the team that successfully litigated *In re Bristol Myers Squibb Securities Litigation*, where Labaton Sucharow was able to secure a $185 million settlement on behalf of investors, as well as meaningful corporate governance reforms that will affect future consumers and investors alike.  She is currently litigating *In re American International Group, Inc. Securities Litigation*, a major securities class action brought by Lead Plaintiff Ohio (comprised of several of Ohio's retirement systems).  Ms. Alex was Lead Trial Counsel and Chair of the Executive Committee in *Zenith Laboratories Securities Litigation*, a federal securities fraud class action which settled during trial, and achieved a significant recovery for investors.  She also was Chair of the Plaintiffs' Steering Committee in *Napp Technologies Litigation*, where Labaton Sucharow won substantial recoveries for families and firefighters injured in a chemical plant explosion.

Ms. Alex served as Co-Lead Counsel or in a leadership role in several securities class actions that achieved substantial awards for investors, including *Cadence Design Securities Litigation*, *Halsey Drug Securities Litigation*, *Slavin v. Morgan Stanley, Lubliner v. Maxtor Corp.* and *Baden v. Northwestern Steel and Wire*.  She also served on the Executive Committee or in other leadership roles in national product liability actions against the manufacturers of breast implants, orthopedic bone screws, and atrial pacemakers, and was a member of the Plaintiffs' Legal Committee in the national litigation against the tobacco companies.

Ms. Alex is the author of "Women in the Law: Many Mentors, Many Lessons: A Baby Boomer's Perspective," *New York Law Journal*, November 8, 2010; and the co-author of "Role of the Event Study in Loss Causation Analysis," *New York Law Journal*, August 20, 2009.

Prior to entering private practice, Ms. Alex was a trial lawyer with the Sacramento, California District Attorney's Office.  She is a frequent speaker at national conferences on product liability and securities fraud litigation, and is a recipient of the American College of Trial Lawyers' Award for Excellence in Advocacy.

Ms. Alex earned a J.D. from McGeorge Law School and a Masters Degree in Psychology from California State College.  She is admitted to practice in New York, California, the United States Supreme Court, and in Federal Courts in several jurisdictions.

### CHRISTINE S. AZAR, PARTNER                                        *cazar@labaton.com*

A seasoned litigator of investor rights, Christine S. Azar is the partner in charge of Labaton Sucharow LLP's Delaware office.

Prior to joining Labaton Sucharow, Ms. Azar practiced corporate litigation at Blank Rome LLP with a primary focus on corporate governance, shareholders' rights and other disputes in courts nationwide as well as in the Delaware Court of Chancery.

- 32 -

Ms. Azar began her career at Grant & Eisenhofer, P.A., where she specialized in the representation of institutional investors in complex federal and state securities and corporate governance actions.

Ms. Azar is the co-author of the following articles: "Running on Empty," *The Deal Magazine*, February 18, 2011; "Appointment of Lead Plaintiff Under the Private Securities Litigation Reform Act: Update 2001", 1269 PLI/Corp 689 (September 2001); and "Appointment of Lead Plaintiff Under the Private Securities Litigation Reform Act: Update 2000", 199 PLI/Corp 455 (September 2000).

Ms. Azar earned a B.S., *cum laude*, from James Madison University in 1988.  She earned a J.D., *cum laude*, from the University of Notre Dame Law School in 1991.

Ms. Azar is admitted to practice in Delaware, New Jersey and Pennsylvania.

### CHRISTOPHER J. KELLER, PARTNER                     ckeller@labaton.com

Christopher J. Keller concentrates his practice in sophisticated securities class action litigation in federal courts throughout the country.

Mr. Keller has served as lead counsel in over a dozen options backdating class actions filed under the federal securities laws.  He was instrumental in securing a $117.5 million settlement in *In re Mercury Interactive Securities Litigation*, which is one of the largest settlements to date in an options backdating class action.  He also serves as Co-Lead Counsel in *In re Satyam Computer Services, Ltd. Securities Litigation*.

Mr. Keller was a member of the trial team that successfully litigated the *In re Real Estate Associates Limited Partnership Litigation* in the United States District Court for the Central District of California.  The six-week jury trial resulted in a landmark $184 million plaintiffs'

verdict, which is one of the largest jury verdicts since the passage of the Private Securities Litigation Reform Act of 1995.

Mr. Keller is very active in investigating and initiating securities and shareholder class actions.  He also concentrates his efforts on educating institutional investors on developing trends in the law and new case theories.  Mr. Keller is a regular speaker at institutional investor gatherings as well as a frequent speaker at continuing legal education seminars relating to securities class action litigation.

Mr. Keller is the co-author of the following articles: "SEC Contemplating Governance Reforms," *Executive Counsel*, December 2010; "Is the Shield Beginning to Crack?," *New York Law Journal*, November 15, 2010; "Say What? Pay What? Real World Approaches to Executive Compensation Reform," *Corporate Counsel*, August 5, 2010; "Reining in the Credit Ratings Industry," *New York Law Journal*, January 11, 2010; "Japan's Past Recession Provides a Cautionary Tale," *The National Law Journal*, April 13, 2009; "Balancing the Scales: The Use of Confidential Witnesses in Securities Class Actions," BNA's *Securities Regulation & Law Report*, January 19, 2009; "Eyeing Executive Compensation," *The National Law Journal*, November 17, 2008; and "Tellabs: PSLRA Pleading Test Comparative, Not Absolute," *New York Law Journal*, October 3, 2007.

Mr. Keller earned a B.S. from Adelphi University in 1993 and a J.D. from St. John's University School of Law in 1997.

He is admitted to practice in New York as well as before the United States District Courts for the Southern and Eastern Districts of New York, the Eastern District of Wisconsin, the District of Colorado and the United States Supreme Court.  Mr. Keller is a member of several

professional groups, including the New York State Bar Association and the New York County Lawyers' Association.

---

***HOLLIS SALZMAN, PARTNER***                          ***hsalzman@labaton.com***

Hollis Salzman is Managing Chair of the Firm's Antitrust Practice Group. She primarily represents clients in cases involving federal antitrust law violations. Her work in the area of antitrust law has been recognized in the 2008 Plaintiffs' Hot List published by *The National Law Journal*. She is also involved in the Firm's securities litigation practice group where she represents institutional investors in portfolio monitoring and securities litigation. Some of Ms. Salzman's clients include MARTA and the City of Macon, Georgia.

Ms. Salzman is actively engaged in the prosecution of major antitrust class actions pending throughout the United States. She is presently Co-Lead Counsel in many antitrust cases, including: *In re Air Cargo Shipping Services Antitrust Litigation*, *In re Marine Hoses Antitrust Litigation*, and *In re Puerto Rican Cabotage Antitrust Litigation*.

She also served as Co-Lead Counsel in several antitrust class actions which resulted in extraordinary settlements for class members, such as *In re Air Cargo Shipping Services Antitrust Litigation* ($85 million partial settlement from certain defendants); *In re Abbott Labs Norvir Antitrust Litigation* ($10 million settlement); *In re Buspirone Antitrust Litigation* ($90 million settlement); *In re Lorazepam & Clorazepate Antitrust Litigation* ($135.4 million settlement) and *In re Maltol Antitrust Litigation* and *Continental Seasonings Inc. v. Pfizer, Inc., et al.*, ($18.45 million settlement). Additionally, she was principally responsible for administering a $65 million settlement with certain brand-name prescription drug manufacturers where their conduct allegedly caused retail pharmacy customers to overpay for their prescription drugs.

Ms. Salzman is the co-author of the following articles: "Iqbal And The Twombly Pleading Standard," *CompLaw 360*, June 15, 2009; "Analysis of Abbott Laboratories Antitrust Litigation," *Pharmaceutical Law & Industry Report*, June 20, 2008; and "The State of State Antitrust Enforcement," NYSBA *NYLitigator*, Winter 2003, Vol. 8, No. 1.

She is a Co-Chair of the New York State Bar Association, Commercial & Federal Litigation Section – Antitrust Committee, and a member of the Association of the Bar of the City of New York Antitrust Committee and Women's Antitrust Bar Association.  Ms. Salzman also provides *pro bono* representation to indigent and working-poor women in matrimonial and family law matters.

Ms. Salzman received a J.D. from Nova University School of Law in 1992 and a B.A. in Economics from Boston University in 1987.

Ms. Salzman is admitted to practice in New York, New Jersey, and Florida as well as before the United States District Courts for the Southern and Eastern Districts of New York; the Southern and Middle Districts of Florida; and the United States Court of Appeals for the Eleventh Circuit.

### MICHAEL W. STOCKER, PARTNER                    *mstocker@labaton.com*

Michael W. Stocker represents clients in commercial litigation, with a primary focus on sophisticated antitrust and securities class action matters.

Earlier in his career, Mr. Stocker worked as a senior staff attorney with the United States Court of Appeals for the Ninth Circuit, and completed a legal externship with United States Magistrate Judge (now District Judge) Phyllis J. Hamilton of the Northern District of California.

Mr. Stocker's recent publications include: "Running on Empty," *The Deal Magazine*, February 18, 2011; "SEC Contemplating Governance Reforms," *Executive Counsel*, December

2010; "SEC paper focuses on proxy voting shortcomings," *The National Law Journal*, November 15, 2010; "Is the Shield Beginning to Crack?," *New York Law Journal*, November 15, 2010; "What Wall Street Can Learn From the BP Spill," *Institutional Investor*; November 1, 2010; "Automated Trading Leaving Retail Investors In The Dust," (Opinion), *Forbes.com*, October 15, 2010; "Toyota Debacle Spurs Reform Questions," *Directorship*, August 9, 2010; "Say What? Pay What? Real World Approaches to Executive Compensation Reform," *Corporate Counsel*, August 5, 2010; "SEC Measures To Prevent Flash Crashes Are Sensible, But Are They Enough?" (Opinion), *Forbes.com*, May 20, 2010; "A Recall for Toyota's Corporate Governance?" (Opinion), *Pensions & Investments*, April 5, 2010,"Reining in the Credit Ratings Industry," *New York Law Journal*, January 11, 2010; and "It's Time to Resuscitate the Shareholder Derivative Action," *The Panic of 2008: Causes, Consequences, and Implications for Reform*, Lawrence Mitchell and Arthur Wilmarth, Jr., eds, (Edward Elgar, 2010).

Mr. Stocker has offered financial commentary and analysis to BBC4 Radio and on the Canadian Broadcasting Corporation's Lang & O'Leary Exchange, and is a frequent speaker and panelist on topics relating to financial reform.

Mr. Stocker is also the Chief Contributor to "Eyes On Wall Street" (www.eyesonwallstreet.com), Labaton Sucharow's blog on economics, corporate governance, and other issues of interest to investors.

Mr. Stocker earned a B.A. from the University of California, Berkeley, in 1989, a J.D. from the University of California, Hastings College of Law, in 1995, and a Master of Criminology degree from the Law Department of the University of Sydney in 2000.

He is admitted to practice in California and New York as well as before the United States District Courts for the Northern and Central Districts of California, the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Second, Eighth and Ninth Circuits.

# Exhibit D



Robbins Geller
Rudman & Dowd LLP

February 02, 2011 04:12 PM Eastern Daylight Time

## Robbins Geller Rudman & Dowd LLP Files Class Action Suit Against Bank of America Corporation

SAN DIEGO--(BUSINESS WIRE)--Robbins Geller Rudman & Dowd LLP ("Robbins Geller") (http://www.rgrdlaw.com/cases/bofacorp/) today announced that a class action has been commenced on behalf of an institutional investor in the United States District Court for the Southern District of New York on behalf of purchasers of Bank of America Corporation ("BofA") (NYSE:BAC) common stock during the period between January 20, 2010 and October 19, 2010 (the "Class Period").

If you wish to serve as lead plaintiff, you must move the Court no later than 60 days from today. If you wish to discuss this action or have any questions concerning this notice or your rights or interests, please contact plaintiff's counsel, Darren Robbins of Robbins Geller at 800/449-4900 or 619/231-1058, or via e-mail at djr@rgrdlaw.com. If you are a member of this class, you can view a copy of the complaint as filed or join this class action online at http://www.rgrdlaw.com/cases/bofacorp/. Any member of the putative class may move the Court to serve as lead plaintiff through counsel of their choice, or may choose to do nothing and remain an absent class member.

The complaint charges BofA and certain of its officers and directors with violations of the Securities Exchange Act of 1934. BofA is a bank holding company and a financial holding company.

The complaint alleges that during the Class Period, defendants issued materially false and misleading statements regarding the Company's business. Defendants concealed defects in the recording of mortgages and improprieties with respect to the preparation of foreclosure paperwork that harmed BofA's investors when BofA had to temporarily discontinue foreclosures and admit to the problems it was experiencing. For much of the Class Period, defendants also concealed that BofA had previously engaged in a practice known as "dollar rolling," wherein it omitted billions of dollars in debt from its balance sheet reported to the public. As a result of defendants' false statements, BofA's stock traded at artificially inflated prices during the Class Period, reaching a high of $19.48 per share on April 15, 2010.

Beginning in May 2010, BofA began disclosing aspects of its "repo-to-maturity" transactions (dollar rolling), claiming the transactions did not have a material impact on BofA's balance sheet. Later, in October 2010, BofA announced a nationwide foreclosure halt pending a review of its foreclosure processes and whether there were irregularities with respect to its previously completed foreclosure activities. Then, on October 19, 2010, BofA announced its third quarter 2010 financial results, reporting a net loss of $7.3 billion and a diluted earnings per share loss of $0.77. BofA further reported receiving $18 billion in claims about faulty home loans that it may have to repurchase. On this news, BofA stock dropped $0.54 per share, to close at $11.80 per share on October 19, 2010 – a one-day decline of 5% and a nearly 42% decline from the stock's Class Period high.

According to the complaint, the true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows: (a) BofA did not have adequate personnel to process the huge numbers of foreclosed loans

in its portfolio; (b) BofA had not properly recorded many of its mortgages when originated or acquired, which would severely complicate the foreclosure process if it became necessary; (c) defendants failed to maintain proper internal controls related to processing of foreclosures; (d) BofA's failure to properly process both mortgages and foreclosures would impair the ability of BofA to dispose of bad loans; and (e) BofA had engaged in a practice known internally as "dollar rolling" to remove billions of dollars of debt from its balance sheet over the prior years.

Plaintiff seeks to recover damages on behalf of all purchasers of BofA common stock during the Class Period (the "Class"). The plaintiff is represented by Robbins Geller, which has expertise in prosecuting investor class actions and extensive experience in actions involving financial fraud.

Robbins Geller, a 180-lawyer firm with offices in San Diego, San Francisco, New York, Boca Raton, Washington, D.C., Philadelphia and Atlanta, is active in major litigations pending in federal and state courts throughout the United States and has taken a leading role in many important actions on behalf of defrauded investors, consumers, and companies, as well as victims of human rights violations. The Robbins Geller Web site (http://www.rgrdlaw.com) has more information about the firm.

## Contacts

Robbins Geller Rudman & Dowd LLP
Darren Robbins, 800-449-4900 or 619-231-1058
djr@rgrdlaw.com

