UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PIPEFITTERS LOCAL NO. 636 DEFINED BENEFIT PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br> vs.<br><br>BANK OF AMERICA CORPORATION, et al.,<br><br>    Defendants. | Civil Action No. 1:11-cv-00733-WHP<br><br>CLASS ACTION |
| PATRICIA GROSSBERG LIVING TRUST, Individually and on Behalf of All Other Similarly Situated Stockholders,<br><br>    Plaintiff,<br><br> vs.<br><br>BANK OF AMERICA CORPORATION, et al.,<br><br>    Defendants. | Civil Action No. 1:11-cv-01982-AKH<br><br>CLASS ACTION |

[Caption continued on following page.]


MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF PIPEFITTERS LOCAL NO. 636 DEFINED BENEFIT PLAN FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

```
─────────────────────────────────── x
ANCHORAGE POLICE & FIRE            :  Civil Action No. 1:11-cv-02216
RETIREMENT SYSTEM, Individually and on :
Behalf of All Others Similarly Situated, :  CLASS ACTION
                                   :
            Plaintiff,             :
                                   :
    vs.                            :
                                   :
BANK OF AMERICA CORPORATION, et    :
al.,                               :
                                   :
            Defendants.            :
                                   :
─────────────────────────────────── x
```

I.      **PRELIMINARY STATEMENT**

Presently pending before this Court are at least three-related securities class action lawsuits (the "Actions"), brought on behalf of all purchasers of the publicly-traded securities of Bank of America Corporation ("BofA" or the "Company") between July 23, 2009 and October 19, 2010, inclusive (the "Class Period").[1] The Actions allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §78u-4, *et seq*.) and the Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

Pipefitters Local No. 636 Defined Benefit Plan ("Pipefitters 636") hereby moves this Court for an Order to: (i) consolidate the Actions; (ii) appoint Pipefitters 636 as Lead Plaintiff in the Actions under Section 21D(a)(3)(B) of the Exchange Act; and (iii) approve Pipefitters 636's selection of the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") to serve as Lead Counsel.

This motion is made on the grounds that Pipefitters 636 is the most adequate plaintiff, as defined by the PSLRA. Pipefitters 636 is precisely the type of institutional investor that Congress sought to summon and empower when it enacted the PSLRA. *See Ferrari v. Impath, Inc*., No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *10 (S.D.N.Y. July 20, 2004) (holding that the purpose behind the PSLRA is best achieved by encouraging institutional investors to serve as lead plaintiffs). Moreover, as an institutional investor, Pipefitters 636 is accustomed to acting as a fiduciary and its experience in legal and financial matters will substantially benefit the class.

---

[1]    While the class period alleged in the initial complaint commenced on January 20, 2010, a subsequently-filed related complaint starts the class period on July 23, 2009.

During the Class Period, Pipefitters 636 incurred a substantial $131,368.80 loss on its transactions in BofA common stock. *See* Rosenfeld Decl., Ex. B.[2] In addition, Pipefitters 636, for the purposes of this motion, adequately satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the putative class and that it will fairly and adequately represent the interests of the class.

## II.   FACTUAL BACKGROUND[3]

BofA is a bank holding company and a financial holding company. The Company is a financial institution, serving individual consumers, small and middle market businesses, large corporations and governments with a range of banking, investing, asset management and other financial and risk management products and services.

The complaint alleges that, throughout the Class Period, defendants issued materially false and misleading statements regarding the Company's business and financial results. Specifically, defendants failed to disclose that: (i) BofA did not have adequate personnel to process the huge numbers of foreclosed loans in its portfolio; (ii) BofA had not properly recorded many of its mortgages when originated or acquired, which would severely complicate the foreclosure process if it became necessary; (iii) defendants failed to maintain proper internal controls related to processing of foreclosures; (iv) BofA's failure to properly process both mortgages and foreclosures would impair the ability of BofA to dispose of bad loans; and (v) BofA had engaged in a practice known

---

[2]   References to the "Rosenfeld Decl., Ex. __" are to the exhibits attached to the accompanying Declaration of David A. Rosenfeld, dated April 4, 2011 and submitted herewith.

[3]   These facts are drawn from the allegations in the action entitled *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of America Corporation, et al.*, Civil Action No. 1:11-cv-00733-WHP (the "*Pipefitters 636* Action").

internally as "dollar rolling" to remove billions of dollars of debt from its balance sheet over the prior years.

Beginning in May 2010, BofA began disclosing aspects of its "repo-to-maturity" transactions (dollar rolling), claiming the transactions did not have a material impact on BofA's balance sheet. Later, in October 2010, BofA announced a nationwide foreclosure halt pending a review of its foreclosure processes and whether there were irregularities with respect to its previously completed foreclosure activities. Then, on October 19, 2010, BofA announced its third quarter 2010 financial results, reporting a net loss of $7.3 billion and a diluted earnings per share loss of $0.77. BofA further reported receiving $18 billion in claims about faulty home loans that it may have to repurchase. On this news, BofA stock dropped $0.54 per share, to close at $11.80 per share on October 19, 2010 – a one-day decline of 5% and a nearly 42% decline from the stock's Class Period high.

## III.   ARGUMENT

### A.   The Actions Should Be Consolidated for All Purposes

The Actions each assert class claims on behalf of the purchasers of BofA securities for alleged violations of the Exchange Act during similar time periods. The Actions name similar defendants and involve the same factual and legal issues. They are each brought by investors who purchased BofA securities during the relevant time period in reliance on the integrity of the market for such securities and were injured by the fraud on the market that was perpetrated through the issuance of materially false and misleading statements and concealment of material information, thus artificially inflating the prices of BofA securities at all relevant times. Consolidation is appropriate where there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42 (a); *see also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). That test is met here and, accordingly, the Actions should be consolidated.

### B.      Pipefitters 636 Should Be Appointed Lead Plaintiff

#### 1.      The Procedure Required By the PSLRA

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(A)(i). Plaintiff in the *Pipefitters 636* Action caused the first notice regarding the pendency of the Actions to be published on *Business Wire*, a national, business oriented newswire service, on February 2, 2011. *See* Rosenfeld Decl., Ex. A. Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §§78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class who the Court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice. . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).  *See generally Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996).

### 2. Pipefitters 636 Satisfies the "Lead Plaintiff" Requirements of the Exchange Act

#### a. Pipefitters 636 Has Complied with the Exchange Act and Should Be Appointed Lead Plaintiff

The time period in which class members may move to be appointed Lead Plaintiff herein under 15 U.S.C. §78u-4(a)(3)(A) and (B) expires on April 4, 2011.  Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice on February 2, 2011, Pipefitters 636 timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the class.

Pipefitters 636 has duly signed and filed a certification stating that it is willing to serve as a representative party on behalf of the class.  *See* Exhibit to Complaint filed in *Pipefitters 636* Action. In addition, Pipefitters 636 has selected and retained competent counsel to represent itself and the class.  *See* Rosenfeld Decl., Ex. C.  Accordingly, Pipefitters 636 has satisfied the individual requirements of 15 U.S.C. §78u4(a)(3)(B) and is entitled to have its application for appointment as Lead Plaintiff and approval of selection of Lead Counsel as set forth herein, considered and approved by the Court.

#### b. Pipefitters 636 Is Precisely the Type of Lead Plaintiff Congress Envisioned When it Passed the PSLRA

The Congressional objective in enacting the lead plaintiff provisions was to encourage large, organized institutional investors to play a more prominent role in securities class actions.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately

benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. Pipefitters 636, as an institutional investor, is precisely the type of Lead Plaintiff Congress envisioned when it passed the PSLRA. *See id.*

### c. Pipefitters 636 Has the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period, as evidenced by, among other things, its signed certification, Pipefitters 636 incurred a substantial $131,368.80 loss on its transactions in BofA common stock. *See* Rosenfeld Decl., Ex. B. Pipefitters 636 thus has a significant financial interest in this case. Therefore, Pipefitters 636 satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in the Actions and should be appointed Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B).

### d. Pipefitters 636 Otherwise Satisfies Rule 23

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Lax v. First Merchs. Acceptance Corp.*, No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866, at *20 (N.D. Ill. Aug. 11, 1997). Pipefitters 636 satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004) ("The possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact"). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Ferrari*, 2004 U.S. Dist. LEXIS 13898, at *18.

Pipefitters 636 satisfies this requirement because, just like all other class members, it: (1) purchased BofA securities during the Class Period; (2) was adversely affected by defendants' false and misleading statements; and (3) suffered damages as a result thereof. Thus, Pipefitters 636's

- 7 -

claims are typical of those of other class members since its claims and the claims of other class members arise out of the same course of events.

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of Pipefitters 636 to represent the class to the existence of any conflicts between the interest of Pipefitters 636 and the members of the class. The Court must evaluate adequacy of representation by considering: (i) whether the class representatives' claims conflict with those of the class; and (ii) whether class counsel is qualified, experienced, and generally able to conduct the litigation. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004).

Here, Pipefitters 636 is an adequate representative of the class. As evidenced by the injuries suffered by Pipefitters 636 and the class, the interests of Pipefitters 636 are clearly aligned with the members of the class, and there is no evidence of any antagonism between Pipefitters 636's interests and those of the other members of the class. Further, Pipefitters 636 has taken significant steps that demonstrate it will protect the interests of the class: it commenced the first of these related actions and has retained competent and experienced counsel to prosecute these claims. In addition, as shown below, Pipefitters 636's proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Pipefitters 636 *prima facie* satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### C. The Court Should Approve Pipefitters 636's Choice of Counsel

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. In that regard, Pipefitters 636 has selected the law firm of Robbins Geller as Lead Counsel. Robbins Geller has substantial experience in the prosecution of shareholder and securities class actions, including serving as lead counsel in *In re Enron Corp. Securities Litigation*, No. H-01-3624 (S.D. Tex.), in

which Robbins Geller achieved the largest recovery ever obtained in a shareholder class action. *See* Rosenfeld Decl., Ex. C. Specifically, the court in *Enron* stated:

> The firm is comprised of probably the most prominent securities class action attorneys in the country. It is not surprising that Defendants have not argued that counsel is not adequate. Counsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal evidences those qualities is evident throughout this suit.

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644, 675 (S.D. Tex. 2006).

Accordingly, the Court should approve Pipefitters 636's selection of Lead Counsel.

## IV. CONCLUSION

For all the foregoing reasons, Pipefitters 636 respectfully requests that the Court: (i) consolidate the Actions; (ii) appoint Pipefitters 636 as Lead Plaintiff in the Actions; (iii) approve its selection of Lead Counsel as set forth herein; and (iv) grant such other relief as the Court may deem just and proper.

DATED: April 4, 2011

ROBBINS GELLER RUDMAN
 & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD

              */s/ David A. Rosenfeld*
              DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

>ROBBINS GELLER RUDMAN
>   & DOWD LLP
>JONAH H. GOLDSTEIN
>655 West Broadway, Suite 1900
>San Diego, CA  92101
>Telephone:  619/231-1058
>619/231-7423 (fax)
>jonahg@rgrdlaw.com
>
>[Proposed] Lead Counsel for Plaintiffs
>
>SULLIVAN, WARD, ASHER & PATTON, P.C.
>JACQUELINE A. KELLY
>MICHAEL J. ASHER
>25800 Northwestern Highway
>1000 Maccabees Center
>Southfield, MI  48075-1000
>Telephone:  248/746-0700
>248/746-2760 (fax)
>
>Additional Counsel for Plaintiff