Jeffrey B. Rudman (admitted *pro hac vice*)
Michael G. Bongiorno
Fraser L. Hunter, Jr.
Keith Bradley
David Zetlin-Jones
WILMER CUTLER PICKERING
    HALE AND DORR LLP
399 Park Avenue
New York, NY 10022
212-230-8800

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PENNSYLVANIA PUBLIC SCHOOL EMPLOYEES' RETIREMENT SYSTEM,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>BANK OF AMERICA CORPORATION et al.,<br><br>　　　　　　　Defendants. | :<br>:<br>:<br>:<br>: No. 11 CV 00733 (WHP)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**UNDERWRITER DEFENDANTS' REPLY MEMORANDUM**
**IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ...................................................................................................1

**ARGUMENT**................................................................................................................................1

    I.  Plaintiff's Section 11 Claims Are Untimely......................................................................1

    II.  Negative Causation Is Apparent On the Face of the Complaint ....................................9

**CONCLUSION** ...........................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*AXA Versicherung AG v. New Hampshire Insurance Co.*,
 391 F. App'x 25 (2d Cir. 2010)......................................................................................5

*Blackmoss Investment Inc. v. ACA Capital Holdings*,
 No. 07 Civ. 10528, 2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) .......................7, 9, 10

*City of Pontiac General Employees' Retirement Systems v. MBIA, Inc.*,
 637 F.3d 169 (2d Cir. 2011) ......................................................................................2, 4

*Dodds v. Cigna Securities, Inc.*,
 12 F.3d 346 (2d Cir. 1993) ...........................................................................................3

*Fogarazzo v. Lehman Brothers Inc.*,
 341 F. Supp. 2d 274 (S.D.N.Y. 2004) ..........................................................................1

*Freidus v. ING Groep N.V.*,
 736 F. Supp. 2d 816 (S.D.N.Y. 2010) ................................................................6, 7, 8

*GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd.*,
 580 F. Supp. 2d 321 (S.D.N.Y. 2008) ..........................................................................8

*In re American International Group Inc. 2008 Securities Litigation*,
 741 F. Supp. 2d 511 (S.D.N.Y. 2010) ..........................................................................5

*In re Barclays Bank PLC Securities Litigation*,
 No. 09 Civ. 1989(PAC), 2011 WL 31548 (S.D.N.Y. Jan. 5, 2011)....................2, 3, 6

*In re Countrywide Financial Corp. Securities Litigation*,
 588 F. Supp. 2d 1132 (S.D. Cal. 2008) ........................................................................6

*In re First Marblehead Corp. Securities Litigation*,
 639 F. Supp. 2d 145 (D. Mass. 2009)..........................................................................6

*In re Giant Interactive Group Inc., Securities Litigation*,
 643 F. Supp. 2d 562 (S.D.N.Y. 2009) ..........................................................................9

*In re IndyMac Mortgage-Backed Securities Litigation*,
 793 F. Supp. 2d 637 (S.D.N.Y. 2011) ..........................................................................2

*In re Morgan Stanley Mortgage Pass-Through Certificates Litigation*,
  810 F. Supp. 2d 650 (S.D.N.Y. 2011) ...................................................................................3

*In re Morgan Stanley Mortgage Pass-Through Certificates Litigation*,
  No. 09 Civ. 2137, 2010 WL 3239430 (S.D.N.Y. Aug. 17, 2010) .............................................6

*In re Merrill Lynch & Co. Research Reports Securities Litigation*,
  289 F. Supp. 2d 429 (S.D.N.Y. 2003) ...................................................................................8

*In re Novagold Resources Inc. Securities Litigation*,
  629 F. Supp. 2d 272 (S.D.N.Y. 2009) ...................................................................................4

*In re Wachovia Equity Securities Litigation*,
  753 F. Supp. 2d 327 (S.D.N.Y. 2011) ...................................................................................2

*LC Capital Partners, LP v. Frontier Insurance Group, Inc.*,
  318 F.3d 148 (2d Cir. 2003) ..............................................................................................7, 8

*Merck & Co. v. Reynolds*,
  130 S. Ct. 1784 (2010) ...........................................................................................1, 2, 3, 4

*New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*,
  720 F. Supp. 2d 254 (S.D.N.Y. 2010) ...................................................................................5

*Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corporation*,
  No. 08 CV 1713, 2012 WL 601448 (E.D.N.Y. Feb. 23, 2012) ...............................................2

*Public Employees' Retirement System of Mississippi v. Goldman Sachs Group Inc.*,
  No. 09 Civ. 1110, 2011 WL 135821 (S.D.N.Y. Jan. 12, 2011) ...............................................5

*Public Employees Retirement System of Mississippi v. Merrill Lynch & Co.*,
  714 F. Supp. 2d 475 (S.D.N.Y. 2010) ...................................................................................2

*Staehr v. Hartford Financial Services Group*,
  547 F.3d 406 (2d Cir. 2008) ..................................................................................................1

*Stichting Pensionfonds ABP v. Countrywide Finance Corp.*,
  802 F. Supp. 2d 1125 (C.D. Cal. 2011) ................................................................................7

*Wright v. Ernst & Young, LLP*,
  152 F.3d 169 (2d Cir. 1998) ..................................................................................................6

## STATUTES

15 U.S.C. § 77m ................................................................................................................ 1, 3

28 U.S.C. § 1658(b)(1) ..................................................................................................... 2, 3

**PRELIMINARY STATEMENT**

Plaintiff's Opposition ("Opp.") fails to rebut either of the grounds for dismissal set forth by the Underwriter Defendants in their Opening Brief ("Mem."). The claims are barred by the statute of limitations, and negative causation is evident from the face of the Complaint and materials properly considered on a motion to dismiss.[1] The Complaint, which has already been amended once, should be dismissed with prejudice.

**ARGUMENT**

I. **Plaintiff's Section 11 Claims Are Untimely**

Myriad sources—BAC's own regulatory filings, judicial decisions, publicly filed complaints, and press reports—put reasonable investors on notice, long before the one-year bar date of September 23, 2010, of the facts that Plaintiff claims rendered the Offering Documents misleading. *See* Mem. 11–15.[2]

Plaintiff makes three attempts to avoid this basic reality. First, Plaintiff incorrectly argues that *Merck & Co. v. Reynolds*, 130 S. Ct. 1784 (2010), eliminated inquiry notice as a trigger for the statute of limitations under Section 13 of the Securities Act (15 U.S.C. § 77m), which governs the Section 11 claims here. Second, Plaintiff asserts, without any explanation, that the materials submitted by the Underwriter Defendants do not directly relate to the

---

[1] As the BAC Defendants set forth in their reply brief (incorporated herein by reference), Plaintiff's Section 11 claims are also deficient because they fail to identify any material misstatements in the Offering Documents or a material omission from those documents of any fact that the defendants had a duty to disclose.

[2] It is well-settled that courts may properly consider "press coverage, prior lawsuits, or regulatory filings," such as those submitted with the Underwriter Defendants' motion to dismiss, in deciding whether public disclosures of information gave investors a duty to inquire about the accuracy of a company's prior statements. *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008). Indeed, defendants asserting a limitations defense have been rebuked for *failing* to put these types of materials before the Court. *Fogarazzo v. Lehman Bros. Inc.*, 341 F. Supp. 2d 274, 299 (S.D.N.Y. 2004). These materials are not offered for their truth; what matters is the fact—judicially noticeable—that they were published. *Staehr*, 547 F.3d at 425.

omissions alleged in the Complaint.  Third, Plaintiff argues that despite the inescapable conclusion that the materials put Plaintiff on notice of potential Securities Act violations, supposed "reliable words of comfort from management" negated any notice.  *See* Opp. 30–32.  None of these contentions has merit.

*First*, as two courts within this District have held, *Merck* did not alter the limitations period for Section 11 actions, either expressly or by implication.  *See In re IndyMac Mortgage-Backed Sec. Litig.*, 793 F. Supp. 2d 637, 648 (S.D.N.Y. 2011); *In re Barclays Bank PLC Sec. Litig.*, No. 09 Civ. 1989(PAC), 2011 WL 31548, at *6 (S.D.N.Y Jan. 5, 2011) (refusing to apply *Merck* to Section 11 claim); *but see Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp.,* No. 08 CV 1713(ERK)(WDW), 2012 WL 601448, at *10 n.11 (E.D.N.Y. Feb. 23, 2012) (applying *Merck* to Section 11 claim).  *See also* Mem. 9–10 n.6.[3]  *Merck* addressed only the limitations period prescribed by 28 U.S.C. § 1658(b)(1), which applies to "claim[s] of fraud" under the securities laws.  According to Plaintiff, its claims against the Underwriters are not claims of fraud.  Opp. 29.  More importantly, there are significant textual differences between the statutes that preclude extension of *Merck* to Section 13.  Section 1658(b)(1) is triggered only by "discovery"—a word *Merck* interpreted to refer to what a reasonably diligent plaintiff would discover—"of the facts constituting the violation."  By contrast, Securities Act Section 13 refers explicitly to the point when "discovery of the untrue

---

[3]   Neither *Public Employees Retirement System of Mississippi v. Merrill Lynch &. Co.*, 714 F. Supp. 2d 475 (S.D.N.Y. 2010), nor *In re Wachovia Equity Securities Litigation.*, 753 F. Supp. 2d 327 (S.D.N.Y. 2011), cited by Plaintiff (Opp. 30), compels a different conclusion.  In the former case the court expressly applied the ordinary rule of inquiry notice and constructive knowledge.  *See* 714 F. Supp. 2d at 490.  The latter case held the Section 11 claims at issue time-barred regardless of whether the plaintiff could be charged with constructive knowledge.  *See* 753 F. Supp. 2d at 371.  *City of Pontiac General Employees' Retirement Systems v. MBIA, Inc.*, 637 F.3d 169 (2d Cir. 2011), on which Plaintiff also relies to urge *Merck*'s application (Opp. 30), does not even mention, much less address, Section 13's statute of limitations.

statement or omission . . . should have been made," 15 U.S.C. § 77m.[4] As Justice Scalia explained in *Merck*, the phrase "should have been made" "provid[es] (explicitly) a constructive-discovery rule," 130 S. Ct. at 1801 (Scalia, J., concurring)—as the Second Circuit has long held for Securities Act claims, *Dodds v. Cigna Securities, Inc.*, 12 F.3d 346, 350 (2d Cir. 1993).

Accordingly, *Merck* did not disturb the Second Circuit's longstanding interpretation: The Section 13 statute of limitations holds a plaintiff responsible for constructive discovery. *See id.* Once publicly available information puts reasonable investors on "inquiry notice," a plaintiff must undertake a diligent investigation. A plaintiff that fails to do so (and to allege the details of the investigation) will be charged with constructive knowledge of the claims at the moment the duty of inquiry arose, and the statute of limitations begins to run at that point. *Id.* No allegation of any such investigation is made here.[5]

In any event, it makes no difference if the Court applies *Merck* rather than the Second Circuit's traditional concept of constructive discovery. *See In re Barclays*, 2011 WL 31548, at *7 (disclosure of the precise facts alleged to be concealed triggers the running of the limitations period under either traditional Section 13 jurisprudence or "the more exacting standard outlined in *Merck*"). Indeed, Plaintiff's Opposition nowhere states why the application of *Merck* would salvage its untimely claims. The relevant difference between *Merck* and the Second Circuit's

---

[4] For a Section 11 claim, a plaintiff needs few or no facts beyond the falsity of, or omission from, a registration statement. *See infra* at 4. The text of Section 13, by comparison to Section 1658(b)(1), makes that proposition explicit.

[5] Plaintiff concedes that it did not begin investigating its claims until October 2010. *See* Opp. 31; *see also* Mem. 9 (noting Plaintiff's failure to allege diligent investigation). It alleges, in conclusory fashion, that it could not, in the exercise of diligence, have known before that time of the alleged omissions contained in the Offering Documents. Compl. ¶¶ 371, 384, 395. Such unsubstantiated conclusions do not satisfy a plaintiff's burden to plead facts demonstrating its compliance with Section 13's statute of limitations. *See In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 810 F. Supp. 2d 650, 662–63 (S.D.N.Y. 2011) (rejecting similar allegations as insufficient under Section 13).

Section 13 cases is that, under *Merck*, the limitations period does not begin until a reasonably diligent investor would have discovered the basis for a claim, even if the plaintiff in a given case was not actually diligent. *See Merck*, 130 S. Ct. at 1797–98. In the Section 11 context—and certainly in a case like this, where the public disclosures providing inquiry notice were abundant—*Merck* has no practical consequence, because the same disclosures that give rise to inquiry notice provide essentially everything that would be discovered by a reasonably diligent investigation. After all, unless the Section 11 plaintiff chooses to sound its claim in fraud, it does not have to allege scienter and therefore, unlike a plaintiff proceeding under the antifraud provisions of the Exchange Act, need not gather enough facts to make out a cogent inference of scienter. Thus, to start the running of the statute of limitations, little, if anything, is needed beyond notice of the probable falsity of a registration statement. *See Merck*, 130 S. Ct. at 1801 (Scalia, J., concurring) ("Determining when the plaintiff should have uncovered an untrue assertion in a registration statement or prospectus [under Section 13] is much simpler than assessing when a plaintiff should have learned that the defendant deliberately misled him using a deceptive device"); *In re Novagold Res. Inc. Sec. Litig.*, 629 F. Supp. 2d 272, 288 n.6 (S.D.N.Y. 2009) ("[P]laintiffs need more information before they may be charged with being on notice of a securities fraud claim than they need to bring a claim challenging an untrue statement"); *cf. Merck*, 130 S. Ct. at 1796 (majority op.) (statute of limitations for fraud claim does not run until reasonably diligent investor would have discovered "facts showing scienter"); *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011) (same). The Underwriter Defendants made this observation already (Mem. 9–10 n.6), and Plaintiff has simply failed to respond.[6]

---

6   For example, the mainstream media coverage of multiple lawsuits suggesting that the use

***Second***, Plaintiff fails to refute the Underwriter Defendants' well-documented demonstration (Mem. 13–15) that widely reported lawsuits concerning MERS gave rise to inquiry notice.  Plaintiff declares now, with little analysis, that these lawsuits "in no way relate directly to the . . . omissions Lead Plaintiff has alleged in the Complaint" (Opp. 31 n.13), yet its Complaint expressly relies on many of the same lawsuits as the very basis for its MERS-related allegations.  *See* Compl. ¶¶ 77–87, 186, 237–38; Opp. 7 (arguing that BAC's offering documents were misleading because they failed to disclose "a growing number of judicial decisions" holding "mortgage liens recorded through the MERS system . . . not enforceable by it").[7]  As Plaintiff concedes, investors are certainly on inquiry notice "when uncontroverted evidence irrefutably demonstrates" that they should have discovered the alleged omissions.  *See* Opp. 31 (quoting *In re Am. Int'l Grp. Inc. 2008 Sec. Litig.* 741 F. Supp. 2d 511, 538 (S.D.N.Y. 2010)).[8]

---

of MERS was problematic surely would have enabled Plaintiff to plead that BAC failed to apprise it of the risk of using MERS, particularly given that BAC's participation in MERS was of longstanding public knowledge.  Plaintiff's claim here does not hinge on any later-discovered facts beyond the generalized questions about MERS raised by the pre-2009 lawsuits.  As the Underwriter Defendants have previously noted, these early lawsuits did not actually create a material risk that MERS-processed loans would be unenforceable.  Mem. 7; *see also* BAC Reply 8.  But, in any event, all the information Plaintiff needed to assert its deficient MERS-related claims was available to investors long before the one-year statute-of-limitations bar.

[7]   Plaintiff cites several cases holding that certain materials, offered by the defendants, were not closely enough related to the alleged misrepresentations to constitute inquiry notice.  Opp. 31–32.  But in those cases the materials in question did not even mention the issuer of the relevant securities.  *See Pub. Empls' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, No. 09 Civ. 1110, 2011 WL 135821, at *8 (S.D.N.Y. Jan. 12, 2011); *N.J. Carpenters Vacation Fund v. Royal Bank of Scot. Grp., PLC*, 720 F. Supp. 2d 254, 267 (S.D.N.Y. 2010).  No similar deficiency is present here.  *See* Mem. 11–15 (citing various documents explicitly mentioning BAC—including BAC's own regulatory filings—as giving rise to inquiry notice).

[8]   Plaintiff contends that "uncontroverted evidence irrefutably demonstrat[ing]" the alleged misstatements is a prerequisite to inquiry notice, and that accordingly, the existence of inquiry notice can almost never be determined on a motion to dismiss.  Opp. 31.  But the existence of notice is an "objective determination" that "can be resolved as a matter of law," and disclosures can be sufficient to trigger notice even without "detail[ing] every aspect of the alleged fraudulent scheme."  *AXA Versicherung AG v. N.H. Ins. Co.*, 391 F. App'x 25, 29 (2d Cir. 2010); *see also*

- 5 -

A complaint can hardly be timely when public documents available more than a year before filing provided "precisely the information that . . . Plaintiffs claim [Defendants] should have disclosed earlier." *Barclays*, 2011 WL 31548, at *7.[9]

With respect to the risk of repurchase demands, Plaintiff now admits that "BAC disclosed repurchase claims by GSEs and monoline insurers during the Class Period." Opp. 2, 22. These disclosures—which were made by February 2010 at the latest—refute any argument that Plaintiff's Section 11 claims relating to repurchase claims were timely. Mem. 12. In an effort to escape the obvious import of these disclosures, Plaintiff tries to revise the Complaint through its brief, now contending that the non-disclosure pertained only to the specific risk of repurchase claims from private MBS purchasers. Opp. 2, 22. This newly minted theory should be rejected. *See Wright v. Ernst & Young, LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (party may not amend its complaint through an opposition brief).

Regardless, inquiry notice cannot be avoided by parsing a disclosure so finely. "[T]he facts placing one on inquiry notice need not detail every aspect of the alleged fraudulent scheme, but only enough in the totality of the circumstances to establish a probability of the alleged claim." *Freidus v. ING Groep N.V.*, 736 F. Supp. 2d 816, 829 (S.D.N.Y. 2010) (internal

---

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, No. 09 Civ. 2137, 2010 WL 3239430, at *7 (S.D.N.Y. Aug. 17, 2010) (similar (internal citations omitted)).

[9] Among other disclosures, prospectuses filed by trusts affiliated with BAC and Countrywide disclosed those companies' use of MERS. Mem. 13. Plaintiff protests that prospectuses filed by an issuer's affiliate trust are not available to or intended for purchasers of public stock. Opp. 5, 20–21. Plaintiff offers no support for the novel assertion that investors may blind themselves to certain SEC filings just because they are filed by affiliated entities. To the contrary, the sole authority Plaintiff cites found that such filings were generally available. *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1160 (S.D. Cal. 2008) (securitization trust prospectuses "are on file with the SEC and available to the public"). *See also In re First Marblehead Corp. Sec. Litig.*, 639 F. Supp. 2d 145, 155–56 (D. Mass. 2009) (dismissing fraud claims because representations in securitization prospectus filed by trusts affiliated with defendant disclosed purportedly concealed facts).

quotation marks and citations omitted). "A statute which does not begin to run until every possible phrasing or permutation of the defendant's wrongdoing has been publicly reported would never run." *Stichting Pensionfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1137 (C.D. Cal. 2011) (prior lawsuits alleging Countrywide's violations of underwriting standards provided ample notice to commence limitations period; plaintiff's argument that more was required to reveal full extent of alleged problems was "minor and semantic"). BAC's disclosures of the risks and amounts of repurchase demands by GSEs and monolines "establish[ed] a probability" of similar demands from private label MBS purchasers, particularly because the Complaint itself affirmatively alleges that the representations and warranties that give rise to repurchase claims by the various kinds of purchasers are materially indistinct (Compl. ¶ 103). *See Freidus*, 736 F. Supp. 2d at 829.[10]

*Finally*, Plaintiff's contention that reassurances from management abated any concerns these disclosures might have prompted (Opp. 32 n.14) is baseless. "[R]eliable words of comfort" may dissipate a plaintiff's inquiry duty "only if an investor of ordinary intelligence would reasonably rely on the statements to allay the investor's concern." *LC Capital Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 155 (2d Cir. 2003). Plaintiff identifies only two purportedly "reassuring statements" (Opp. 32 n.14 (citing Compl. ¶¶ 148, 255)), neither of which meets this standard. First, during BAC's April 16, 2010 earnings call, BAC's CEO, referring to

---

[10] Beyond its failure to allege that private-label repurchase demands differ in any relevant way from demands from government-sponsored entities or monoline insurers, Plaintiff has also not alleged there was any known risk, before October 2010, specific to private-label repurchase demands. *See* Opp. 4, 11, 16, 18, 22 (reciting only one alleged private-label repurchase demand on **October 18, 2010**, which was disclosed promptly). "The securities laws do not require clairvoyance in the preparation of offering documents, and a misstatement or omission can only be actionable where it was material as of the date the offering documents became effective." *Blackmoss Inv. Inc. v. ACA Capital Holdings*, No. 07 Civ. 10528, 2010 WL 148617, at *7 (S.D.N.Y. Jan. 14, 2010) (internal citations and quotation marks omitted).

the general financial crisis, said that "the worst of the crisis is behind us we believe." Compl. ¶ 255. But that "mere expression of hope," in the aftermath of a global credit crisis, did not relieve investors of the duty to inquire once they were on notice of a potential claim, particularly where the statement at issue did not even mention MERS or repurchase claims. *LC Capital Partners*, 318 F.3d at 156; *see also Freidus*, 736 F. Supp. 2d at 829 (statements that company's subprime exposure would be "of limited size and of relatively high quality" were not "words of comfort" sufficient to eliminate plaintiff's duty of inquiry). Second, on October 8, 2010, BAC's CEO also allegedly said that BAC's foreclosure moratorium was only meant to "clear the air." Compl. ¶ 148. But even if somehow construed as a reassurance that there were no potential risks from MERS or repurchase claims, the statement could not have negated inquiry notice because it occurred months, and in some cases years, after the disclosures that gave rise to inquiry notice here. *See LC Capital Partners*, 318 F.3d at 155 ("words of comfort" capable of negating inquiry notice must "accompan[y]" the warning signs).[11] Plaintiff's allegations contain no suggestion that it undertook any diligence in the interim.

---

[11] Plaintiff's letter proposing a motion to strike makes an additional argument—omitted from the opposition brief—that certain of the news articles cited by the Underwriter Defendants contained reassurances relieving Plaintiff of its duty to inquire. *See* Rosen Decl. Ex. 2, at 2. The supposed "words of comfort" were merely statements by MERS representatives asserting the legal viability of MERS, notwithstanding various court challenges, as a means to track and register mortgages. *Id.* A statement denying an allegation or expressing optimism about a court proceeding is not a reassurance on which a reasonable investor can rely. *See GVA Mkt Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd.*, 580 F. Supp. 2d 321, 332 (S.D.N.Y. 2008) (neither "express[ed] optimism about a positive outcome to the investigations" nor "outright denials of the specific practices being investigated" negated plaintiff's duty to inquire); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 289 F. Supp. 2d 429, 433 (S.D.N.Y. 2003) ("A plaintiff's duty to inquire is not dissipated merely because of a defendant's denial of wrongdoing.").

## II.     Negative Causation Is Apparent On the Face of the Complaint

As the Underwriter Defendants demonstrated in their Opening Brief, the disclosures upon which Plaintiff premises its loss causation allegations revealed no new facts to the market about either BAC's use of MERS or its exposure to repurchase claims. Mem. 16–22. And Plaintiff's attempt to cherry-pick supposedly "corrective disclosures" that correspond to minor stock price drops does not withstand scrutiny. *Id.*

Plaintiff does not challenge the Underwriter Defendants' analysis of the disclosures in question and the contemporaneous stock price movements. *See* Opp. 33. Instead, Plaintiff contends broadly that: (1) a Securities Act claim cannot be dismissed on loss causation grounds because loss causation is an affirmative defense; and (2) the Court should not engage in what Plaintiff calls a "fact-intensive" analysis of documents extraneous to the Complaint. Opp. 33. But the Underwriter Defendants cited multiple cases in which courts dismissed Section 11 claims on negative causation grounds. Mem. 16. Plaintiff does not meaningfully address these cases. And in assessing a loss causation argument in a Section 11 case, as in other contexts, a court may certainly consider facts subject to judicial notice, such as stock prices. *See Blackmoss Inv. Inc. v. ACA Capital Holdings*, No. 07 Civ. 10528, 2010 WL 148617, at *11 (S.D.N.Y. Jan. 14, 2010) (dismissing Section 11 claim on negative causation grounds on the basis of a company's public filings and historic stock prices).[12]

*Blackmoss Investments*, cited in the Underwriter Defendants' opening brief, illustrates these principles that Plaintiff misstates. The plaintiff there alleged that the defendant's IPO registration statement materially understated its exposure to subprime collateralized debt

---

[12]     Plaintiff's argument relies on *In re Giant Interactive Group Inc.*, *Securities Litigation*, 643 F. Supp. 2d 562, 573 (S.D.N.Y. 2009) (Opp. 33), but the Court in that case did in fact take judicial notice of documents outside the complaint in evaluating the defendant's negative causation argument. *See* 643 F. Supp. 2d at 573.

obligations ("CDOs"), and that the company's stock declined when the full extent of that exposure was revealed years later. *Id.* at *3–*4. However, the defendant's public filings repeatedly disclosed updated information about its CDO portfolio and associated exposures throughout the class period, long before plaintiff suffered its claimed losses. *Id.* at *11. "Under these circumstances," the court held, "Plaintiff cannot establish a causal relationship between Defendant's alleged misrepresentations and subsequent declines in [Defendant's] stock price." *Id.* The court concluded that negative causation was apparent on the complaint's face and dismissed the Section 11 claims on the pleadings. *Id.*

Similarly here, BAC repeatedly disclosed updated and accurate information about its exposure to repurchase demands, and the market knew about its use of MERS for securitizations—and the risks alleged to accompany that use—long before Plaintiff's claimed "corrective" disclosures. *See supra* at 5–6.

## CONCLUSION

For the above reasons and those stated in their Opening Brief, the Underwriters respectfully move this Court to dismiss Count IV of the Consolidated Class Action Complaint with prejudice.

Respectfully Submitted,

Dated: New York, New York
March 2, 2012

WILMER CUTLER PICKERING
HALE AND DORR LLP

By: /s/ Michael G. Bongiorno
Jeffrey B. Rudman (admitted *pro hac vice*)
Michael G. Bongiorno
Fraser L. Hunter, Jr.
Keith Bradley
David Zetlin-Jones

399 Park Avenue
New York, NY 10022
(212) 230-8800

*ATTORNEYS FOR CANTOR FITZGERALD & CO.,*
*COWEN AND COMPANY, LLC,*
*DAIWA CAPITAL MARKETS AMERICA INC.,*
*DEUTSCHE BANK SECURITIES INC.,*
*GLEACHER & COMPANY SECURITIES, INC.,*
*GOLDMAN, SACHS & CO.,*
*ICBC INTERNATIONAL SECURITIES LTD.,*
*KEEFE, BRUYETTE & WOODS, INC.,*
*KEYBANC CAPITAL MARKETS INC.,*
*MACQUARIE CAPITAL (USA) INC.,*
*MERRILL LYNCH, PIERCE, FENNER AND*
  *SMITH INCORPORATED,*
*MIZUHO SECURITIES USA INC.,*
*MORGAN STANLEY & CO. LLC,*
*NATIONAL AUSTRALIA BANK LIMITED,*
*RBS SECURITIES INC.,*
*SAMSUNG SECURITIES CO., LTD.,*
*SAMUEL A. RAMIREZ & CO., INC.,*
*SANFORD C. BERNSTEIN & CO., LLC,*
*SANTANDER INVESTMENT SECURITIES INC.,*
*SG AMERICAS SECURITIES, LLC,*
*SOUTHWEST SECURITIES, INC.,*
*STIFEL, NICOLAUS & COMPANY, INC.,*
*SUNTRUST ROBINSON HUMPHREY, INC.*
*UBS SECURITIES LLC,*
*UNICREDIT CAPITAL MARKETS, INC., AND*
*WELLS FARGO SECURITIES, LLC*