UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PENNSYLVANIA PUBLIC SCHOOL
EMPLOYEES' RETIREMENT SYSTEM,            :
individually and on behalf of all others similarly
situated,                                :      11 Civ. 733 (WHP)

                    Plaintiff,       :      (ECF)

         v.                 :

BANK OF AMERICA CORPORATION, et al.,     :

                Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF
DEFENDANTS BANK OF AMERICA CORPORATION, KENNETH D. LEWIS, JOE L.
PRICE, II, BRIAN T. MOYNIHAN, CHARLES H. NOSKI AND NEIL COTTY
TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**


                                 SKADDEN, ARPS, SLATE,
                                  MEAGHER & FLOM LLP
                                Jay B. Kasner
                                Christopher P. Malloy
                                Scott D. Musoff
                                Four Times Square
                                New York, NY  10036
                                (212) 735-3000

                                Attorneys for Defendants
                                Bank of America Corporation,
                                Kenneth D. Lewis, Joe L. Price, II,
                                Brian T. Moynihan, Charles H. Noski
                                and Neil Cotty

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. II

TABLE OF ABBREVIATIONS ............................................................................................ V

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ......................................................................................................................... 2

I.      PLAINTIFF DOES NOT ADEQUATELY ALLEGE SCIENTER ................................ 2

      A.    Plaintiff's Theory of Fraud is Implausible ........................................................ 2

      B.    Plaintiff's Motive Allegations Are Irrational .................................................... 4

      C.    Plaintiff Fails To Allege That Any BAC Defendant Acted Recklessly ................. 4

II.     PLAINTIFF DOES NOT SUFFICIENTLY ALLEGE FALSITY ................................ 7

      A.    Plaintiff Fails to Allege that BAC Had a Duty to Disclose Regarding
              MERS ................................................................................................................ 7

      B.    BAC Did Not Conceal the Extent of Repurchase Claims .................................... 8

      C.    Plaintiff Has Not Alleged Any False Statement Regarding Internal
              Controls ............................................................................................................. 9

III.    PLAINTIFF DOES NOT ALLEGE LOSS CAUSATION ........................................... 9

IV.    PLAINTIFF HAS NOT STATED A SECTION 11 CLAIM ........................................ 10

CONCLUSION .................................................................................................................... 10

## TABLE OF AUTHORITIES

### CASES

In re Aegon N.V. Securities Litigation,
     No. 03 Civ. 0603(RWS), 2004 WL 1415973 (S.D.N.Y. June 23, 2004) ................................7

In re American International Group, Inc. 2008 Securities Litigation,
     741 F. Supp. 2d 511 (S.D.N.Y. 2010) ...................................................................................8

Borochoff v. GlaxoSmithKline PLC,
     No. 07 Civ. 5574(LLS), 2008 WL 2073421 (S.D.N.Y. May 9, 2008) ...................................3

In re CIT Group, Inc. Securities Litigation,
     349 F. Supp. 2d 685 (S.D.N.Y. 2004) .............................................................................6, 10

Cervantes v. Countrywide Home Loans, Inc.,
     656 F.3d 1034 (9th Cir. 2011) ...............................................................................................5

In re Citigroup, Inc. Securities Litigation,
     330 F. Supp. 2d 367 (S.D.N.Y. 2004) ...............................................................................7-8

In re Citigroup, Inc. Securities Litigation,
     753 F. Supp. 2d 206 (S.D.N.Y. 2010) ...................................................................................8

City of Roseville Employees Retirement System v. Horizon Lines, Ltd.,
     442 F. App'x 672 (3rd Cir. 2011) ..........................................................................................1

In re Countrywide Financial Corp. Securities Litigation,
     588 F. Supp. 2d 1132 (C.D. Cal. 2008) .................................................................................8

DiLeo v. Ernst & Young,
     901 F.2d 624 (7th Cir. 1990) .................................................................................................6

Fait v. Regions Financial Corp.,
     712 F. Supp. 2d 117 (S.D.N.Y. 2010) ...................................................................................9

Fait v. Regions Financial Corp.,
     655 F.3d 105 (2d Cir. 2011) ..................................................................................................6

Janus Capital Group, Inc. v. First Derivative Traders,
     131 S. Ct. 2296 (2011) ...........................................................................................................5

Kalnit v. Eichler,
     264 F.3d 131 (2d Cir. 2001) ...............................................................................................4, 5

Lentell v. Merrill Lynch & Co.,
    396 F.3d 161 (2d Cir. 2005) ..............................................................................9

Litwin v. Blackstone Group, L.P.,
    634 F.3d 706 (2d Cir. 2011) ..............................................................................2

Local No. 38 International Brotherhood of Electrical Workers Pension Fund v.
    American Express Co.,
    724 F. Supp. 2d 447 (S.D.N.Y. 2010) ................................................................6

In re Marsh & Mclennan Companies Securities Litigation,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006) ................................................................8

NECA-IBEW Pension Trust Fund v. Bank of America Corp.
    (Report and Recommendation),
    No. 10 Civ. 440 (LAK)(HBP) (S.D.N.Y. Feb. 9, 2012) ......................................6

New Orleans Employees Retirement System v. Celestica, Inc.,
    No. 10-4702-cv, 2011 WL 6823204 (2d Cir. Dec. 29, 2011)................................6

In re PXRE Group, Ltd., Securities Litigation,
    600 F. Supp. 2d 510 (S.D.N.Y. 2009) ................................................................7

In re Par Pharmaceutical, Inc. Securities Litigation,
    733 F. Supp. 668 (S.D.N.Y. 1990) ....................................................................8

Plumbers & Steamfitters Local 773 Pension Fund v.
    Canadian Imperial Bank of Commerce,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010) ................................................................7

SEC v. Conaway,
    698 F. Supp. 2d 771 (E.D. Mich. 2010) ............................................................8

SEC v. First Jersey Securities, Inc.,
    101 F.3d 1450 (2d Cir. 1996)............................................................................8

Sheppard v. BAC Home Loans Servicing, LP,
    No. 3:11-cv-00062, 2012 WL 204288 (W.D. Va. Jan. 24, 2012)..........................5

Shields v. Citytrust Bancorp, Inc.,
    25 F.3d 1124 (2d Cir. 1994) ..............................................................................4

In re Sina Corp. Securities Litigation,
    No. 05 Civ. 2154(NRB), 2006 WL 2742048 (S.D.N.Y. Sept. 26, 2006)................8

Steinberg v. Sherman,
   No. 07 Civ. 1001(WHP), 2008 WL 2156726 (S.D.N.Y. May 8, 2008)..................................5

In re Tamoxifen Citrate Antitrust Litigation,
   466 F.3d 187 (2d Cir. 2006) .....................................................................................10

Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital Inc.,
   531 F.3d 190 (2d Cir. 2008) ....................................................................................5, 7

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
   551 U.S. 308 (2007) ..................................................................................................1

Wilson v. Merrill Lynch & Co.,
   No. 10-1528-cv, 2011 WL 5515958 (2d Cir. Nov. 14, 2011) ..............................................3, 8

In re WorldCom, Inc. Securities Litigation,
   294 F. Supp. 2d 392 (S.D.N.Y. 2003)..........................................................................4

In re Yukos Oil Co. Securities Litigation,
   No. 04 Civ. 5243(WHP), 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) ................................5

**STATUTES**

Securities and Exchange Act of 1934, Section 13(b)(5)
   15 U.S.C. § 78m(b)(5)...............................................................................................9

Private Securities Litigation Reform Act of 1995,
   Pub. L. No. 104-67, 109 Stat. 737...............................................................................5

**RULES**

Federal Rule of Civil Procedure 9(b) ............................................................................9

## TABLE OF ABBREVIATIONS

| ABBREVIATION | DESCRIPTION |
|---|---|
| **Non-Parties** ||
| "PIMCO" | Pacific Investment Management Company, LLC |
| "SEC" | The U.S. Securities and Exchange Commission |
| **Documents Referenced** ||
| "BAC Br." | Memorandum of Law in Support of the Motion of Defendants Bank of America Corporation, Kenneth D. Lewis, Joe L. Price, II, Brian T. Moynihan, Charles H. Noski and Neil Cotty to Dismiss the Consolidated Class Action Complaint, dated January 11, 2012 |
| "Musoff Jan. 11, 2012 Decl. Ex. ___" | Declaration in Support of the Bank of America Defendants' Motion to Dismiss the Consolidated Class Action Complaint, dated January 11, 2012 |
| "Opp." | Memorandum of Lead Plaintiff, Pennsylvania Public School Employees' Retirement System, in Opposition to Defendants' Motions to Dismiss the Consolidated Class Action Complaint, dated February 15, 2012 |
| "Supp. Decl. of Scott D. Musoff (March 2, 2012), Ex. EE" | Exhibit EE to the Supplemental Declaration in Further Support of The Bank of America Defendants' Motion to Dismiss The Consolidated Class Action Complaint, dated March 2, 2012 |
| **Other Abbreviations** ||
| "CW" | Confidential witness |
| "Regulation S-K, Item 303" | Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(a) |
| "Rule 9(b)" | Federal Rule of Civil Procedure 9(b) |

## PRELIMINARY STATEMENT

As the BAC Defendants' opening brief demonstrated, Plaintiff's attempt to cobble together a series of disparate business developments announced by BAC in October 2010 and layer on a contrived, unrelated motive does not even come close to alleging fraud or misrepresentation.  The Complaint must therefore be dismissed with prejudice.[1]

First, Plaintiff has not alleged a plausible, let alone a compelling inference of scienter. Plaintiff argues that the BAC Defendants have failed to view the allegations regarding MERS or repurchase claims "holistically" as supposedly mandated by Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 326 (2007).  Taken individually, Plaintiff's allegations are plainly insufficient; taken holistically, the alleged scheme – which commenced before its alleged motive was formed and was premised on concealing publicly available information – is implausible. (See BAC Br. at 14).  See also City of Roseville Emps. Ret. Sys. v. Horizon Lines, Ltd., 442 F. App'x 672, 675 (3d Cir. 2011) (even when viewed holistically "zero plus zero equals zero")

Second, Plaintiff does not sufficiently allege falsity.  Regarding MERS, Plaintiff admits that BAC "never said anything" (Opp. at 4), but rather was under some affirmative duty to disclose "systematic problems inherent in utilizing the MERS system." (Id. at 7)  Moreover, Plaintiff attempts to minimize the authorities that have rejected the theory that using MERS is per se problematic, and argues instead that the handful of reported cases finding curable defects with MERS-registered mortgages creates "factual issues." (Id. at 8)  This is nonsense.  If Plaintiff cannot identify facts showing that the alleged "systematic problems" with MERS even existed, let alone that they were known, appreciated and deliberately concealed, then surely it cannot point to any clear duty to disclose these supposed "facts."

---

[1] The BAC Defendants have focused this reply on Plaintiff's principal points, but do not concede any of the arguments raised in the opposition.  The BAC Defendants also incorporate the arguments, to the extent applicable, advanced in the reply briefs filed by the Underwriter Defendants and PwC, including as to Plaintiff's Section 11 claims.

As to repurchase claims, again Plaintiff does not sufficiently identify any affirmatively false statement or a duty to disclose.  Instead, Plaintiff argues that BAC "downplayed" its exposure to such claims (Opp. at 2) or "implied that BAC had no representation and warranty exposure to private purchasers of MBS."  (Id. at 11)  This too is based on a specious premise, i.e., that BAC's mortgage servicing portfolio was subject to hundreds of billions of dollars of repurchase claims that required greater reserves to be taken earlier than they were.  (Id. at 6, 18)

## ARGUMENT

**I.    PLAINTIFF DOES NOT ADEQUATELY ALLEGE SCIENTER**

### A.    Plaintiff's Theory of Fraud Is Implausible

Plaintiff ignores or tries to sidestep all of the reasons why its theory of fraud is not cogent and is less compelling than the competing inference that BAC executives, in good faith, accurately disclosed information, reasonably known to them at the time, that BAC had a duty to disclose.  (BAC Br. at 13-16)  First, the Complaint itself alleges that the BAC Defendants concealed judicial opinions regarding MERS (which Plaintiff concedes was not even a "problem[]" until "late 2008" (Opp. at 24)) and undisclosed repurchase obligations before the Class Period began – before the TARP repayment motive could have even theoretically been formed.  (Compl. ¶¶ 114, 127)  But Plaintiff does not and cannot dispute that a scheme commenced before its purported motive is formed is inherently implausible.  (BAC Br. at 14)[2]

Second, the fraud alleged is implausible because it was predicated on concealing public information.  (BAC Br. at 15)  Plaintiff's response is that the BAC Defendants are relying on materials extrinsic to the Complaint (Opp. at 19), but Plaintiff relies on these materials too.  (See,

---

[2] None of Plaintiff's cases supports the plausibility of its fraud allegations.  Plaintiff's "reliable words of comfort" cases (Opp. at 19-20) focus on inquiry notice, not scienter.  Litwin v. Blackstone Group, L.P., 634 F.3d 706 (2d Cir. 2011) (Opp. at 20) involved the alleged failure to disclose "known trends" in violation of Regulation S-K, Item 303.  Here, Plaintiff cannot sufficiently allege (let alone with the requisite specificity) that BAC was aware of any adverse, undisclosed trends with regard to MERS.

e.g., Compl. ¶ 106)  And Plaintiff acknowledges that BAC's affiliates disclosed the use of MERS and that Justice Schack's decisions were reported by the press.  Plaintiff instead argues that these facts do not show the "magnitude" of BAC's use of MERS (Opp. at 21) despite acknowledging the trillions of dollars in mortgages serviced by BAC.  Ultimately, Plaintiff misses the point as to scienter:  It is implausible for BAC's executives to conceive of a fraud that required them to conceal matters already revealed by the New York Times, the Wall Street Journal and in multiple SEC filings.  Plaintiff makes no effort to distinguish Borochoff v. GlaxoSmithKline PLC, No. 07 Civ. 5574(LLS), 2008 WL 2073421, at *8 (S.D.N.Y. May 9, 2008), aff'd sub nom. Avon Pension Fund v. GlaxoSmithKline PLC, 343 F. App'x 671 (2d Cir. 2009) on this point.  See also Wilson v. Merrill Lynch & Co., No. 10-1528-cv, 2011 WL 5515958, at *10 (2d Cir. Nov. 14, 2011) (to be published in F.3d) (public disclosures vitiated Section 10(b) claim).[3]

Third, Plaintiff cannot dispute that its fraud theory presumes that the Individual Defendants acted in an economically irrational fashion.  (BAC Br. at 15)  Plaintiff's only response is that this is a "defense by hindsight." (Opp. at 24)  But Plaintiff admits that: (1) MERS was not a problem "before the onset of the financial crisis" – specifically between 2004 and 2007 when the mortgages at issue here were originated (Id.); and (2) as late as February 2011, BAC disclosed it was still "us[ing] the MERS system for a substantial portion of the residential mortgage loans that we originate."  (Compl. ¶ 167)  Likewise, Plaintiff does not attempt to explain why BAC (and other banks) would continue to use MERS if they really believed it created systemic defects and offers no economically rational reason why the BAC Defendants would have concealed matters that Plaintiff claims were imminently going to lead to disaster if MERS were found to be fundamentally flawed.  Courts will not infer scienter from conduct that

---

[3] Plaintiff alleges that BAC's stock traded in an efficient market "that promptly digested current information with respect to the Company *from all publicly-available sources* . . . ." (Compl. ¶ 319(d))  So Plaintiff cannot deny that information about BAC's use of MERS was public.

provides only "a short respite from an inevitable day of reckoning." See Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1130 (2d Cir. 1994).

### B.    Plaintiff's Motive Allegations Are Irrational

Plaintiff's principal defense of its motive allegation is to argue that it does not need to allege a motive (conceding there was none). (Opp. at 19) Secondarily, it claims that BAC's motive to repay its TARP loans was so it could give Mr. Moynihan a 67% raise when he became CEO in 2010. (Id. at 23)[4] But the Complaint alleges that BAC was motivated to repay TARP so it could retain lower-level management. (Compl. ¶ 65) Moreover, Plaintiff makes no allegation that the Bank had determined as early as February 2009 (when the purported motive was formed) that Mr. Moynihan would succeed Mr. Lewis as CEO (or that Mr. Lewis would even be leaving). Plaintiff also ignores that the majority of Mr. Moynihan's 2010 compensation (like all of the other Individual Defendants) was in the form of long-term equity and subject to clawbacks. (BAC Br. at 12, 17) Plaintiff argues, without any basis, that the Individual Defendants' desire to maintain the stock price was "unique and substantial" (Opp. at 23), but Plaintiff has no response to the argument that it would be irrational for any BAC Defendant to commit fraud contrary to his financial interests.[5] Ultimately, Plaintiff cannot distinguish this case from the many rejecting the desire for executive compensation as a sufficient motive. (BAC Br. at 16-17)

### C.    Plaintiff Fails To Allege That Any BAC Defendant Acted Recklessly

Plaintiff allows that, without a cogent motive, "'the strength of the circumstantial allegations [of conscious misbehavior or recklessness] must be correspondingly greater,'" Kalnit v. Eichler, 264 F.3d 131, 142 (2d Cir. 2001) (citation omitted), and it must allege behavior

---

[4] Plaintiff erroneously claims (Opp. at 23) that Mr. Moynihan was elevated from General Counsel to CEO. See Musoff Jan. 11, 2012 Decl. Ex. C at 12.

[5] In In re WorldCom, Inc. Securities Litigation, 294 F. Supp. 2d 392 (S.D.N.Y. 2003) (Opp. at 23), defendant Ebbers was alleged to have taken large personal loans against his holdings and the inflation of WorldCom's share price was needed to avoid margin calls. Id. at 416-17. Nothing approaching the extent of this personal benefit to the Individual Defendants is alleged here.

approaching a knowing or deliberate and conscious state of mind.  (BAC Br. at 17-18)  Plaintiff

must, but does not, specifically allege that each Individual Defendant knew facts contradicting

disclosures, see Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital Inc., 531

F.3d 190, 194-95 (2d Cir. 2008), or that BAC had a "clear duty" to disclose.  See Kalnit, 264

F.3d at 144; see also In re Yukos Oil Co. Sec. Litig., No. 04 Civ. 5243(WHP), 2006 WL

3026024, at *20 (S.D.N.Y. Oct. 25, 2006) (Pauley, J.) (cannot group plead scienter).[6]

   Regarding MERS, Plaintiff charges BAC with failing to speculate about what would

happen to its mortgage holdings "if MERS was determined to be ineffective in transferring title"

(Opp. at 20) (emphasis added), but does not allege facts showing that any BAC Defendant knew,

let alone believed, this was even possible during the Class Period.  Indeed, Plaintiff concedes that

MERS did not experience "problems" for several years prior to the Class Period.  (Id. at 24)

   Plaintiff does not cite a single opinion, let alone one known to BAC, supporting the view

that MERS is inherently flawed or dispute that Cervantes v. Countrywide Home Loans, Inc., 656

F.3d 1034 (9th Cir. 2011) rejects this theory.[7]  Given that by the outset of the Class Period,

MERS had recorded over 60% of U.S. mortgages (Musoff Jan. 11, 2012 Decl. Ex. T) and has

repeatedly been judicially validated, it is implausible to infer that the BAC Defendants knew, and

fraudulently concealed, that MERS was defective (which it is not).

---

[6] To the extent "group pleading" survives Janus Capital Group, Inc. v. First Derivative Traders,
131 S. Ct. 2296 (2011) or the passage of the PSLRA, oral statements are not group published
information.  See Steinberg v. Sherman, No. 07 Civ. 1001(WHP), 2008 WL 2156726, at *4
(S.D.N.Y. May 8, 2008).  It is also insufficient to simply allege each BAC Defendant was a
senior executive "at some point during the Class Period" (Opp. at 14) to hold each Individual
Defendant liable for all Class Period group statements.  That not all Individual Defendants were
members of senior management over the entire course of the Class Period undermines the claim
that each was a control person over the entire course of the Class Period as well.  (Opp. at 34)

[7] Cervantes has been cited with approval.  See Sheppard v. BAC Home Loans Servicing, LP, No.
3:11-cv-00062, 2012 WL 204288, *5 (W.D. Va. Jan. 24, 2012) (assignment from MERS to BAC
affiliate gave BAC affiliate standing to bring foreclosure action).  Plaintiff also does not dispute
that its "robo-signing" allegations – as a purported outcome of MERS's deficiencies (Opp. at 16)
– amount to charges of mismanagement.

As to allegedly concealed repurchase claims, Plaintiff does not dispute that it has failed to identify any undisclosed repurchase claims known to BAC's executives. For instance, Plaintiff admits that PIMCO sent its repurchase demand letter to BAC on October 18, 2010, the day before it was disclosed. Ultimately, Plaintiff's claim rests on the purportedly "radical[] increase[s] [in] [BAC's] allowance for these repurchase demands" (Opp. at 18) after the end of the putative Class Period, which is textbook fraud by hindsight. See Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co., 724 F. Supp. 2d 447, 463 (S.D.N.Y. 2010) (Pauley, J.), aff'd, 430 F. App'x 63 (2d Cir. 2011). Because estimating reserves is subjective, see Fait v. Regions Fin. Corp., 655 F.3d 105, 113 (2d Cir. 2011),[8] and the timing of changes to reserve estimates is too easily criticized, DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990), an increase in reserves, even if "substantial" is not "evidence of their inadequacy" at the time estimates were made. See In re CIT Group, Inc. Sec. Litig., 349 F. Supp. 2d 685, 689 (S.D.N.Y. 2004).

Plaintiff offers only a cursory defense of the CW allegations (Opp. at 17), which nonetheless do not support a strong inference of recklessness. Only two CWs even purport to state that BAC senior management knew of "facts" as to repurchase claims.[9] (Id. citing Compl. ¶¶ 123-24, 136(d), (e), (j)-(m)) According to CW-5, Mr. Moynihan wanted to "fight every repurchase request tooth and nail" (which was disclosed), but there is no allegation that these

---

[8] Plaintiff argues that Fait's holding is limited to "forward-looking" estimates for loan loss reserves, not reserves which are "quantifiable." (Opp. at 28) But Plaintiff's reading of Fait is wrong and its suggestion that repurchase reserves are "existing facts" rather than estimates is nonsense. (Id. at 28 n.10) At a minimum, setting these reserves requires subjective estimates of future events. (BAC Br. at 10); see also NECA-IBEW Pension Trust Fund v. Bank of Am. Corp., No. 10 Civ. 440 (LAK)(HBP) at 38 n.18 (S.D.N.Y. Feb. 9, 2012) (Report and Recommendation) (where BAC "disclosed that its loss reserves were estimated figures subject to market conditions," "were not worded as guarantees" and plaintiff did not allege reserves were not honestly held opinions, allegedly false statements about reserves were inactionable under Fait).

[9] The allegations here are nothing like those in New Orleans Employees Retirement System v. Celestica, Inc., No. 10-4702-cv, 2011 WL 6823204 (2d Cir. Dec. 29, 2011) (Opp. at 16, 17), where CWs asserted that they presented defendants with spreadsheets detailing inventory problems that rendered their public statements false. Id. at *2.

requests were not subject to legitimate dispute.  (BAC Br. at 10)  CW-5 also alleged that Mr.

Price "had to have known" about undisclosed repurchase claims, having been sent "reports" with

the "performance characteristics" of Countrywide MBS.  (Compl. ¶ 136(e))  But alleging access

to reports, without specifying their contents and why they contradicted contemporaneous public

statements is not enough.  See Dynex, 531 F.3d at 196; Plumbers & Steamfitters Local 773

Pension Fund v. Canadian Imperial Bank of Commerce, 694 F. Supp. 2d 287, 299 (S.D.N.Y.

2010).  Similarly, CW-8's claims about "meetings" and "bypassed" recommendations involving

Mr. Cotty (Compl. ¶ 136(k), (m)) say nothing about him being presented with reports

contradicting public statements about repurchase claims.  (Compl. ¶ 190, cited Opp. at 17)

   Plaintiff's claim that BAC's reserves were set "substantially lower than its peers" (Opp. at

18) also cannot infer recklessness, even if assumed to be true.  See In re PXRE Grp., Ltd. Sec.

Litig., 600 F. Supp. 2d 510, 546 n.39 (S.D.N.Y. 2009) (no recklessness alleged "[e]ven assuming

that PXRE was simply the *worst* . . . at estimating losses"), aff'd sub nom. Condra v. PXRE Grp.

Ltd., 357 F. App'x 393 (2d Cir. 2009).  Finally, scienter cannot be inferred from the "size of the

concealed liability" (Opp. at 18).  See PXRE, 600 F. Supp. 2d at 545-46 (80% difference

between estimated and actual losses did not infer recklessness); In re Aegon N.V. Sec. Litig., No.

03 Civ. 0603(RWS), 2004 WL 1415973, at *6-7, *9 (S.D.N.Y. June 23, 2004).

## II. PLAINTIFF DOES NOT SUFFICIENTLY ALLEGE FALSITY

### A. Plaintiff Fails to Allege that BAC Had a Duty to Disclose Regarding MERS

   Plaintiff does not dispute that its omission-based claims are inactionable without

allegations showing a duty to disclose.  (BAC Br. at 22-24)  Here, Plaintiff has failed to allege

that BAC had a duty to make any disclosures about MERS.  Thus, Plaintiff's principal argument

– that every general statement about BAC's "mortgage loans" contained an "implied

representation that its mortgage liens were valid and effective" (Opp. at 6) – is a red herring.  See

In re Citigroup, Inc. Sec. Litig., 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004) (no duty to disclose

that revenues were derived from "'unsustainable and illegitimate sources'" (citation omitted)), aff'd sub nom. Albert Fadem Trust v. Citigroup, Inc., 165 F. App'x 928 (2d Cir. 2006); In re Sina Corp. Sec. Litig., No. 05 Civ. 2154(NRB), 2006 WL 2742048, at *6 (S.D.N.Y. Sept. 26, 2006).[10]

But Plaintiff's citation to a handful of cases finding curable defects in MERS assignments does not allege any "implied" representation was false.  Plaintiff's allegations amount to mere speculation – for which no duty to disclose exists – that MERS might some day be found to be inherently flawed, despite the present belief that it is proper.  (See BAC Br. at 22-23); see also In re Par Pharm., Inc. Sec. Litig., 733 F. Supp. 668, 675 (S.D.N.Y. 1990) (Opp. at 7).

### B.    BAC Did Not Conceal the Extent of Repurchase Claims

Plaintiff now concedes that BAC disclosed: (1) repurchase claims by the GSEs and monolines (Opp. at 2); and (2) increasing repurchase reserves.  (Id. at 10)  And it does not dispute that BAC's Class Period disclosures contained pages devoted to MBS litigation and the risk of additional repurchase claims.  (BAC Br. at 9-11)  Still, Plaintiff argues that BAC nonetheless "downplayed" its exposure to repurchase claims.  (Opp. at 2)

For example, Plaintiff claims that Mr. Lewis supposedly "admitted" that 89% of Countrywide's loans originated between 2005 and 2006 would not qualify under BAC's 2008

---

[10] In re Countrywide Financial Corp. Securities Litigation, 588 F. Supp. 2d 1132 (C.D. Cal. 2008) (Opp. at 5, 8) addressed whether disclosures in MBS prospectuses (issued by special investment vehicles, not Countrywide) were sufficient to neutralize supposed misstatements. Id. at 1160. Here, Plaintiff does not point to misstatements, but rather omissions for which a plaintiff must first allege a duty to disclose. Cf. Wilson, 2011 WL 5515958, at *10 (finding omitted information was disclosed). Plaintiff's remaining cases (Opp. at 5-7) are inapposite. In re Marsh & McLennan Cos. Securities Litigation, 501 F. Supp. 2d 452 (S.D.N.Y. 2006) held that statements about revenue were not false even if statements about sources of revenue were. Id. at 469-70. In re Citigroup, Inc. Securities Litigation, 753 F. Supp. 2d 206 (S.D.N.Y. 2010), addressed scienter, not a duty to disclose. Id. at 238. Similarly, the defendants in In re American International Group, Inc. 2008 Securities Litigation, 741 F. Supp. 2d 511 (S.D.N.Y. 2010), made affirmative representations about confidence in its risk assessments when they knew that no risk controls were in place. Id. at 530-31. SEC v. First Jersey Securities, Inc., 101 F.3d 1450 (2d Cir. 1996), addressed a market manipulation scheme, id. at 1469, and SEC v. Conaway, 698 F. Supp. 2d 771 (E.D. Mich. 2010), addressed misrepresentations, not omissions. Id. at 827.

8

standards.  (Opp. at 9)  This says nothing about whether Countrywide's loans were "defective" when originated.[11]  Plaintiff also contends that Mr. Price "falsely implied" that private repurchase claims were generally "unenforceable," and that this downplayed BAC's exposure to repurchase claims for "'private label' MBS."  (Opp. at 2)  In context, however, Mr. Price was discussing repurchase claims associated with "whole loans" purchased by BAC, and there is no mention of MBS sold by BAC's affiliates.  Supp. Decl. of Scott D. Musoff (March 2, 2012), Ex. EE.

        **C.**    **Plaintiff Has Not Alleged Any False Statement Regarding Internal Controls**

        For the reasons set forth above, Plaintiff has not alleged any internal control failures.  <u>See</u> <u>Fait v. Regions Financial Corp.</u>, 712 F. Supp. 2d 117, 125 (S.D.N.Y. 2010) (allegations of false statements regarding internal controls over reserves were duplicative of insufficient allegations regarding reserves themselves), <u>aff'd</u>, 655 F.3d 105 (2d Cir. 2011).[12]  Moreover, Plaintiff does not dispute that the SEC regulations it cites only cover "disclosure controls" and "controls over financial reporting."  (Opp. at 12; <u>see also</u> BAC Br. at 25)  Plaintiff's assertions about MERS' "financial statement implications" and "inten[t]" (Opp. at 12) are offered without support.

**III.**    **PLAINTIFF DOES NOT ALLEGE LOSS CAUSATION**

        While addressing negative causation under Section 11, Plaintiff ignores that it must also affirmatively allege loss causation in support of its 10(b) claim.  (<u>See</u> BAC Br. at 3-4)  The failure to sufficiently allege loss causation is an independent basis to dismiss Plaintiff's Section 10(b) claim.  <u>See</u> <u>Lentell v. Merrill Lynch & Co.</u>, 396 F.3d 161, 175-78 (2d Cir. 2005).

---

[11] Likewise, Plaintiff argues that BAC falsely downplayed its exposure by stating in its <u>2008</u> 10-K that it "attempts to limit its risk of incurring [losses from repurchase claims] by *structuring its operations to ensure consistent production of quality mortgages*." (Opp. at 8)  Aside from being inactionable puffery, the statement is clearly a reference to BAC's then-current mortgage production, which Plaintiff admits had tighter origination standards.  Failing to allege the BAC Defendants knew undisclosed facts about repurchase claims, each of the cases Plaintiff cites to support its repurchase claim arguments (<u>id.</u>) is inapposite.

[12] Circumvention of internal controls is a reporting violation actionable only by the SEC.  <u>See</u> 15 U.S.C. § 78m(b)(5).  The internal control cases that Plaintiff cites (Opp. at 13) are inapposite, as each addresses known internal control weaknesses not alleged here.

9

**IV.     PLAINTIFF HAS NOT STATED A SECTION 11 CLAIM**

Plaintiff's Section 11 claim fails for the reasons discussed by the other defendants, and for the same reasons as its 10(b) claim:  Plaintiff does not allege a duty to disclose regarding MERS or that BAC omitted or misrepresented its exposure to repurchase claims.  (BAC Br. at 28-30)  Finally, that the BAC Defendants "deliberately" kept reserves low (Opp. at 16) "unquestionably sounds in fraud," In re CIT Group, 349 F. Supp. 2d at 690 n.4, requiring heightened pleading under Rule 9(b) despite Plaintiff's disclaimer.  (Opp. at 29)[13]

**CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated:    New York, New York
          March 2, 2012

Respectfully submitted,

      /s/ Jay B. Kasner
Jay B. Kasner (jay.kasner@skadden.com)
Christopher P. Malloy
(christopher.malloy@skadden.com)
Scott D. Musoff (scott.musoff@skadden.com)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
(212) 735-3000

*Attorneys for Defendants Bank of America
 Corporation, Kenneth D. Lewis, Joe L. Price, II,
 Brian T. Moynihan, Charles H. Noski and
 Neil Cotty*

---

[13] As to Plaintiff's remaining arguments:  Even assuming that Mr. Moynihan's forward-looking statements about what BAC "believe[d]" (Opp. at 13) were not preceded by meaningful cautionary language, they would only be actionable if stated with actual knowledge of falsity, which Plaintiff does not allege.  (BAC Br. at 26)  In addition, Plaintiff's boilerplate request for leave to replead should be denied.  See In re Tamoxifen Citrate Antitrust Litig., 466 F.3d 187, 220 (2d Cir. 2006) ("It is within the [district] court's discretion to deny leave to amend . . . when leave is requested informally in a brief filed in opposition to a motion to dismiss.").