UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PENNSYLVANIA PUBLIC SCHOOL EMPLOYEES' RETIREMENT SYSTEM, individually and on behalf of all others similarly situated, : 11 Civ. 733 (WHP)

Plaintiff, : (ECF)

v. :

BANK OF AMERICA CORPORATION, et al., :

Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF DEFENDANTS KENNETH D. LEWIS, JOE L. PRICE, II, BRIAN T. MOYNIHAN, CHARLES H. NOSKI AND NEIL COTTY <u>TO DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT</u>**

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Jay B. Kasner
Christopher P. Malloy
Scott D. Musoff
Four Times Square
New York, NY 10036
(212) 735-3000

Attorneys for Defendants
Kenneth D. Lewis, Joe L. Price, II,
Brian T. Moynihan, Charles H. Noski
and Neil Cotty

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. PLAINTIFF FAILS TO ALLEGE THAT THE EXECUTIVE DEFENDANTS KNEW OF SPECIFIC INFORMATION CONTRADICTING THEIR PUBLIC STATEMENTS REGARDING BAC'S REPURCHASE LIABILITIES. .......... 2

A. THE MAY 13, 2010 FCIC LETTER DOES NOT RAISE A STRONG INFERENCE OF SCIENTER. .......... 3

B. PLAINTIFF'S NEW ALLEGATIONS REGARDING THE TIMING OF PRE-LITIGATION REPURCHASE DEMANDS DO NOT SUPPORT A STRONG INFERENCE OF SCIENTER AGAINST THE EXECUTIVE DEFENDANTS. .......... 5

II. PLAINTIFF HAS NOT ALLEGED ANY NEW FACTS TO SHOW THAT ANY EXECUTIVE DEFENDANT KNEW BAC'S INTERNAL CONTROLS WERE INADEQUATE .......... 9

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

## CASES

Page(s)

Billhofer v. Flamel Technologies, S.A.,
No. 07 Civ. 9920, 2012 WL 3079186 (S.D.N.Y. July 30, 2012) ........................................... 4

City of Brockton Retirement System v. Shaw Group, Inc.,
540 F. Supp. 2d 464 (S.D.N.Y. 2008)........................................................................... 3, 5

Dobina v. Weatherford International Ltd.,
No. 11 Civ. 1646 (LAK), 2012 WL 5458148 (S.D.N.Y. Nov. 17, 2012) ........................... 10

In re Doral Financial Corp. Securities Litigation,
563 F. Supp. 2d 461 (S.D.N.Y. 2008), aff'd sub nom. West Virginia Investment Management Board v. Doral Financial Corp., 344 F. App'x 717 (2d Cir. 2009) ..................... 6

Fried v. Lehman Bros. Real Estate Assocs. III, L.P., No. 11-1774-cv, 2012 U.S. App. LEXIS 25983 (2d Cir. Dec. 20, 2012) ........................................................................................ 4

Hutchinson v. Perez,
No. 12 Civ. 1073 (HB), 2012 WL 5451258 (S.D.N.Y. Nov. 8, 2012)............................... 9, 10

Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.,
821 F. Supp. 2d 616 (S.D.N.Y. 2011), aff'd, 478 F. App'x 679 (2d Cir. 2012)....................... 4

In re MELA Sciences, Inc. Securities Litigation,
10 Civ. 8744 (VB), 2012 WL 4466604 (S.D.N.Y. Sept. 19, 2012)........................................ 9

New Orleans Employees Retirement System v. Celestica, Inc.,
455 F. App'x 10 (2d Cir. 2011)........................................................................................ 6

Pennsylvania Public School Employees Retirement System v. Bank of America Corp.,
No. 11 Civ. 733 (WHP), 2012 WL 2847732 (S.D.N.Y. July 11, 2012).......................... passim

In re Scholastic Corp. Securities Litigation,
252 F.3d 63 (2d Cir. 2001)............................................................................................. 6

Slayton v. American Express Co.,
604 F.3d 758 (2d Cir. 2010)........................................................................................... 7

In re Tower Automotive Securities Litigation,
483 F. Supp. 2d 327 (S.D.N.Y. 2007).............................................................................. 6

## PRELIMINARY STATEMENT

This Court previously dismissed the claims against the Executive Defendants[1] because "Plaintiff does not allege that the Executive Defendants knew of specific contradictory information at the same time they made misleading statements." Pa. Pub. Sch. Emps. Ret. Sys. v. Bank of Am. Corp., No. 11 Civ. 733 (WHP), 2012 WL 2847732, at *14 (S.D.N.Y. July 11, 2012) (the "July 11 Opinion"). The parties agree that the Court's ruling dismissing the claims against the Executive Defendants is "the law of the case." (Memorandum of Law of Lead Plaintiff In Opposition To The Executive Defendants' Motion To Dismiss ("Opposition" or "Pl. Br.") at 1) As explained in the Memorandum of Law in Support of The Motion of Defendants Kenneth D. Lewis, Joe L. Price, II, Brian T. Moynihan, Charles H. Noski and Neil Cotty to Dismiss The Amended Consolidated Class Action Complaint ("Opening Brief" or "Def. Br."), Plaintiff's new allegations, which are primarily found in paragraphs 301-305 of the Amended Complaint, do not cure the fatal flaws in Plaintiff's pleading. Plaintiff's Opposition actually reinforces this point because instead of focusing on the new allegations, Plaintiff relies heavily on the same allegations that the Court already rejected as insufficient. (See, e.g., Pl. Br. at 5-6 , citing AC ¶¶ 104, 105, 108, 109, 113-114, 118, 121(e))[2]

Moreover, Plaintiff's Opposition turns the law of the case doctrine on its head by arguing that scienter of the Executive Defendants can be established by focusing on the Court's scienter holding as to BAC. (See Pl. Br. at 7, 9-10) This conflation of corporate scienter with individual scienter is directly contrary to the July 11 Opinion, which specifically distinguishes BAC's scienter from that of the Executive Defendants. 2012 WL 2847732, at *18 ("While Plaintiff's

---

1 Undefined capitalized terms are defined in the Opening Brief.

2 For the convenience of the Court, attached hereto as Appendix A is a chart showing the overlap of the allegations in the Amended Complaint and the Original Complaint.

allegations are not sufficient to allege scienter as to the Executive Defendants, several of the allegations, taken together, raise a strong inference of scienter as to BoA.").

## ARGUMENT

### I. PLAINTIFF FAILS TO ALLEGE THAT THE EXECUTIVE DEFENDANTS KNEW OF SPECIFIC INFORMATION CONTRADICTING THEIR PUBLIC STATEMENTS REGARDING BAC'S REPURCHASE LIABILITIES.

Plaintiff argues that the Amended Complaint adequately alleges that the Executive Defendants recklessly "failed to disclose [BAC]'s vulnerability to repurchase claims." (Pl. Br. at 6) The Court previously dismissed this claim against the Executive Defendants because the Original Complaint did "not allege that the Executive Defendants knew of specific contradictory information at the same time they made misleading statements." July 11 Opinion, 2012 WL 2847732, at *14. Instead of pointing to new particularized allegations in the Amended Complaint demonstrating that the Executive Defendants knew of "specific contradictory information," Plaintiff's Opposition merely recycles the same allegations the Court has already held to be insufficient regarding purported generic "reports" or "information" received by the Executive Defendants. (<u>See</u> Pl. Br. at 5-6, citing AC ¶¶ 104, 105, 108, 109, 113-114, 118, 121(e)) <u>See, e.g.</u>, July 11 Opinion, 2012 WL 2847732, at *15 ("Plaintiff does not allege that information Cotty gleaned from these reports alerted him that any disclosures were false or misleading."). As the Amended Complaint contains no new allegations regarding specific information in the alleged reports available to the Executive Defendants, Plaintiff has failed to fix the fundamental flaw in its claim against the Executive Defendants.

Plaintiff further contends that Lewis and Moynihan must have known that their statements regarding BAC's exposure to repurchase demands were misleading because Lewis and Moynihan allegedly had ultimate responsibility over allowances. (<u>See</u> Pl. Br. at 9, citing ¶¶ 118, 121(n)) Again, the Court has already rejected this contention. <u>See</u> July 11 Opinion, 2012 WL 2847732, at *15 ("And CW-5's claim that Moynihan had ultimate decision-making

authority relating to accruals for repurchase demands does not suggest that Moynihan was aware of BoA's omissions."). In addition, Plaintiff also alleges that the Executive Defendants must have known of the coming repurchase demands because "the sheer size" of the repurchase demands that BAC would eventually face. (Pl. Br. at 12) The Court has also already rejected this argument. See July 11 Opinion, 2012 WL 2847732, at *18 ("Plaintiff's allegation that the large number of repurchase claims raise a strong inference of scienter also fails.").

Plaintiff offers only two "new" assertions to establish scienter. They contend that (i) Moynihan purportedly must have seen a May 13, 2010 letter from outside BAC's counsel to the FCIC that supposedly would have alerted him to the repurchase problems, and (ii) the Executive Defendants must have known of the inadequacy of disclosures regarding repurchases based solely on the timing of BAC's receipt of certain repurchase demands. As explained below, neither of these arguments has any merit. Thus, even if read "holistically" (Pl. Br. at 2, 4), none of Plaintiff's allegations, old or new, is sufficient to raise the necessary strong inference of scienter. See City of Brockton Ret. Sys. v. Shaw Grp., Inc., 540 F. Supp. 2d 464, 475 (S.D.N.Y. 2008) (rejecting argument that "amalgam of suggestions [was] sufficient to plead scienter" because none of plaintiff's individual allegations was sufficient, and "zero plus zero plus zero" does not create a strong inference of fraudulent intent).

## A. THE MAY 13, 2010 FCIC LETTER DOES NOT RAISE A STRONG INFERENCE OF SCIENTER.

As Plaintiff acknowledges, the Court previously held that the May 13, 2010 FCIC Letter (the "Letter") could not establish scienter as to any Executive Defendant because "'[t]here is no allegation that the Executive Defendants saw the letter or knew of its contents.'" (Pl. Br. at 6, citing July 11 Opinion, 2012 WL 2847732, at *14) Plaintiff tries to overcome this deficiency by asserting that Moynihan must have seen the May 13, 2010 Letter because it purportedly supplements his testimony. (See Pl. Br. at 7) As explained in the Opening Brief, this assertion is

without merit because the Letter was submitted by counsel for BAC on behalf of BAC, not on behalf of Moynihan. (See Def. Br. at 15-16) As a result, Plaintiff's reliance on the Model Rules of Professional Conduct and the rules of evidence (Pl. Br. at 7-8 & n.6) for the proposition that counsel must have shown the Letter to Moynihan is misplaced – counsel signed the Letter on behalf of BAC, not Moynihan. Moreover, the fact that "someone in BoA's management authorized the FCIC letter" (Pl. Br. at 7) is a far cry from specifically alleging, as is required, that Moynihan was that "someone." See July 11 Opinion, 2012 WL 2847732, at *29. Indeed, the Second Circuit just confirmed on December 20, 2012, that it is not sufficient to allege "facts from which, if true, a reasonable person could infer that the defendant acted with the required intent." See Fried v. Lehman Bros. Real Estate Assocs. III, L.P., No. 11-1774-cv, 2012 U.S. App. LEXIS 25983, at *4 (2d Cir. Dec. 20, 2012) (internal quotations and citation omitted). Rather, "[t]o qualify as 'strong'" an inference of scienter "'must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" Id. (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 314 (2007)). See also Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co., 821 F. Supp. 2d 616, 621 (S.D.N.Y. 2011) (Pauley, J.) ("To move past the pleading stage, plaintiff must 'specify the internal report . . . [and] which company officers reviewed them.'") (citation omitted), aff'd, 478 F. App'x 679 (2d Cir. 2012); Billhofer v. Flamel Techs., S.A., No. 07 Civ. 9920, 2012 WL 3079186, at *14 (S.D.N.Y. July 30, 2012) ("facts suggesting only that it was 'conceivable' for the Defendants to have engaged in unlawful conduct are not sufficient").

Perhaps more importantly, Plaintiff's contention that a review of the May 13 FCIC Letter would have alerted the reader to the inadequacy of BAC's disclosures regarding repurchase demands cannot be squared with the contents of the May 13 FCIC Letter. The Letter says absolutely nothing about repurchase claims. (See D.E. 175, Ex. A to Supp. Musoff. Decl.) Tellingly, the Executive Defendants' Opening Brief points out this stark inconsistency between

the contents of the May 13 FCIC Letter and Plaintiff's arguments about that letter, and Plaintiff's Opposition fails to respond to this point. (See Def. Br. at 16-18; Pl. Br. at 6-9) Plaintiff asserts that the Court previously found that this Letter evidenced fraud (Pl. Br. at 9), but the Court has never before reviewed the contents of the Letter. The Executive Defendants have now submitted the Letter to the Court due to its prominence in Plaintiff's new pleading. Plaintiff cannot ignore the actual contents of the Letter and insist that the Court instead accept Plaintiff's false description of the document. See, e.g., City of Brockton, 540 F. Supp. 2d at 475 ("plaintiffs cannot avoid having the Court consider" facts that the plaintiff "artfully fail[ed] to plead" because "the Court can take notice of the contents of documents that are referenced in the complaint") (citing Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000)).

**B. PLAINTIFF'S NEW ALLEGATIONS REGARDING THE TIMING OF PRE-LITIGATION REPURCHASE DEMANDS DO NOT SUPPORT A STRONG INFERENCE OF SCIENTER AGAINST THE EXECUTIVE DEFENDANTS.**

As noted above and in the Opening Brief, the Court dismissed Plaintiff's claim that the Executive Defendants concealed BAC's exposure to repurchase liabilities because "Plaintiff does not allege that the Executive Defendants knew of specific contradictory information at the same time they made misleading statements." July 11 Opinion, 2012 WL 2847732, at *14. Plaintiff contends that by amending its pleading to allege dates by which BAC (not the Executive Defendants) purportedly received notice of repurchase demands (not lawsuits), Plaintiff has allegedly cured this deficiency in its pleading. (Pl. Br. at 9-15) The mere insertion of dates by which certain repurchase demands were made on BAC is not sufficient to show that the Executive Defendants knew of specific contradictory information regarding repurchase liabilities when they made public statements for several reasons.

First, instead of pointing to new particularized allegations demonstrating that the Executive Defendants knew of "specific contradictory information," Plaintiff's Opposition merely recycles the same allegations the Court has already held to be insufficient regarding

purported generic "reports" or "information" received by the Executive Defendants. (See Pl. Br. at 5-6, citing AC ¶¶ 104, 105, 108, 109, 113-114, 118, 121(e)) See July 11 Opinion, 2012 WL 2847732, at *15 ("Plaintiff does not allege that information Cotty gleaned from these reports alerted him that any disclosures were false or misleading."); see id. at *14-15. The Amended Complaint contains no new information regarding specific facts in these alleged reports that would have caused the Executive Defendants to know that their public statements were false but merely recycles the same vague allegations that the Executive Defendants received reports regarding repurchases that the Court previously found to be insufficient. See id. (dismissing OC ¶ 136 (e), (k), (l) & (n) as insufficient to plead scienter). (See also App. A (showing the equivalence of OC ¶ 136 to AC ¶ 121)) The mere assertion that the Executive Defendants "participated in meetings" in which repurchase demands were discussed (Pl. Br. at 13, citing AC ¶ 302) falls woefully short of pleading a strong inference of scienter under the PSLRA.[3] See In re Doral Fin. Corp. Sec. Litig., 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008) (allegation that defendant attended meetings during which reports were circulated about company's internal controls was insufficient because it "contain[ed] . . . no information regarding how extensively or in what manner the reports were discussed"), aff'd sub nom., W. Va. Inv. Mgmt. Bd. V. Doral Fin. Corp., 344 F. App'x 717 (2d Cir. 2009).[4]

---

3 In addition, Plaintiff's argument that "it is certainly reasonable to infer that the very top leadership of BoA" knew of the purported "delay and defer" strategy (Pl. Br. at 14, n.11), is insufficient to plead scienter in accordance with Tellabs. Merely arguing that "BoA intentionally withheld information" and pointing to "complaints about BoA's lack of responsiveness" (Pl. Br. 23-24) does not support a cogent and compelling inference of scienter on the part of Executive Defendants. (Def. Br. at 21-22)

4 The cases Plaintiff cites are inapposite. See In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 76 (2d Cir. 2001) ("complaint contains detailed allegations as to what defendants knew on a daily, weekly and monthly basis about the retail trade of Goosebumps books"); New Orleans Emps. Ret. Sys. v. Celestica, Inc., 455 F. App'x 10, 13-14 (2d Cir. 2011) (plaintiff alleged specific information that was relayed to defendants during conference calls in which they participated); In re Tower Auto. Sec. Litig., 483 F. Supp. 2d 327, 339-40 (S.D.N.Y. 2007)

*(cont'd)*

Second, as explained in the Opening Brief, mere knowledge of the existence of a repurchase demand or a request for a tolling agreement is not equivalent to knowing that BAC faced greater exposure to repurchases that would require an increase to its reserves or additional disclosures regarding these potential risks. (Def. Br. at 19)[5] In its Opposition, Plaintiff does not respond to this argument. Nor does Plaintiff have any response to its own allegations that, after BAC received a demand, it pursued a loan-by-loan review of the loans identified in the demand to assess the validity of the demand. (Def. Br. at 19-20, citing AC ¶ 222) Nor does Plaintiff dispute that it was prudent for BAC to take its time in conducting that process. (Def. Br. at 19-20, 22, citing Slayton v. Am. Express Co., 604 F.3d 758, 777 (2d Cir. 2010); Higginbotham v. Baxter Int'l Inc., 495 F.3d 753, 761 (7th Cir. 2007); Reiss v. Pan Am. World Airways, Inc., 711 F.2d 11, 14 (2d Cir. 1983))

Third, Plaintiff contends that the Executives Defendants purportedly caused BAC to violate the requirements of FIN 45 and FAS 5 by not disclosing the extent of BAC's exposure to pre-litigation repurchase demands and the "'reasonably possible' losses" for those demands. (Pl. Br. at 11-12) But these arguments merely second guess judgments about reserves for future

*(cont'd from previous page)*

(plaintiff alleged specific contrary information that was "routinely" discussed at meetings that defendants attended, so there was "no question" of their knowledge).

5 For instance, nothing in the Amended Complaint or Plaintiff's Opposition suggests that the Executive Defendants were aware of information during the Class Period that should have led them to believe that BAC would be required to repurchase $25.6 billion of loans subject to tolling agreements with Fannie Mae or $9 billion in claims that BAC "expected" from the GSEs in October 2010. (See Def. Br. at 21) Moreover, Plaintiff admits that Moynihan disclosed the "billions of dollars of 'private label' claims" in his October 19, 2010 analyst conference call, only one day after those claims had been asserted. (Pl. Br. at 12; AC ¶ 147) And Plaintiff does not explain how those claims could have been disclosed in the August 2010 disclosure, months before they were even raised. See Slayton v. Am. Express Co., 604 F.3d 758, 776 (2d Cir. 2010) ("That the losses eventually reported in July greatly exceeded $182 million likewise does not undermine the non-fraudulent inference because plaintiffs may not plead fraud by hindsight.").

claims. Such judgments could only be actionable if the Executive Defendants did "'not honestly believe[]'" that BAC's reserves were adequate. See July 11 Opinion, 2012 WL 284732, at *8 (quoting Fait v. Regions Fin. Corp., 655 F.3d 105, 113 (2d Cir. 2011)) Plaintiff makes no such specific allegations in the Amended Complaint. On the contrary, despite the Opposition Brief's criticism of BAC's estimates of reasonably possible losses,[6] Plaintiff concedes that it has no grounds to bring a legally viable challenge to BAC's reserves. (See Pl. Br. at 14 ("The AC never challenges BoA's reserves."))

Fourth, as the Court previously held, Plaintiff's argument that the Executive Defendants concealed BAC's exposure to repurchase claims is "undermined by the fact that the Executive Defendants disclosed losses [BAC] incurred in settling those claims." July 11 Opinion, 2012 WL 2847732, at *15. Plaintiffs now argue that the disclosures regarding repurchase claims were inadequate because they purportedly understated BAC's exposure to repurchase liability. (Pl. Br. at 11-12) But Plaintiff's arguments are based on misleading descriptions of BAC's disclosures. For example, Plaintiff argues that BAC's August 10, 2010 disclosure of $11.1 billion in unresolved repurchase demands was inadequate because that figure included $5.6 billion from the GSEs, $4.0 billion from the monoline insurers and $1.4 billion from other investors, while the Amended Complaint alleges that, in September 2010, the OIG estimated that BAC's "repurchase obligations" to monoline insurers ranged from $10 to $20 billion. (Pl. Br. at 12, citing AC ¶ 302(d)) BAC's August 2010 disclosure states that:

> At June 30, 2010, the unpaid principal balance of loans related to unresolved repurchase requests previously received from monolines was approximately $4.0 billion . . . [and] the unpaid principal balance of loans for which the monolines had requested loan files for review but for which no repurchase request has been received was approximately $9.8 billion.

---

[6] (See also Pl. Br. at 16 (focusing on language in a comment letter from the SEC asking why BAC was not "**better . . . able to establish at least some reserve . . . .**") (emphasis in original))

(See D.E. 115, Ex. D to Musoff Decl., at 41) (emphasis added) This disclosure does not conflict with the OIG's estimate of $10 to $20 billion in "repurchase obligations."

## II. PLAINTIFF HAS NOT ALLEGED ANY NEW FACTS TO SHOW THAT ANY EXECUTIVE DEFENDANT KNEW BAC'S INTERNAL CONTROLS WERE INADEQUATE.

Plaintiff still has not explained how the Amended Complaint overcomes the Court's conclusion that "'it does not make sense that the Executive Defendants would circumvent internal controls to manipulate allowance levels while being forthright in disclosing losses on repurchase claims.'" (Pl. Br. at 16, citing July 11 Opinion, 2012 WL 2847732, at *16) Plaintiff contends that both Cotty and Noski were aware of "disclosure failures" because they were copied on BAC's response to a series of SEC comment letters (provided to the Court by the Executive Defendants)[7] requesting "more transparency" about BAC's repurchase liability. (Id.) But Plaintiff had already referenced these letters in its Original Complaint, and the Court dismissed those allegations as insufficient. See July 11 Opinion, 2012 WL 2847732, at *16, n.4. Moreover, Plaintiff has no answer to the argument that the SEC never initiated an investigation against BAC, nor did it ever ask BAC to restate its financials.[8] (Def. Br. at 23-24)

Furthermore, Plaintiff cannot establish scienter against the Executive Defendants based merely on Sarbanes-Oxley certifications. (Def. Br. at 18, n.8) See also Hutchinson v. Perez, No. 12 Civ. 1073 (HB), 2012 WL 5451258, at *6 (S.D.N.Y. Nov. 8, 2012) ("[W]ithout sufficiently

---

7 (See D.E. 175, Ex. G to Supp. Musoff Decl.) A true and correct copy of the January 29, 2010 SEC comment letter can be found at: http://www.sec.gov/Archives/edgar/data/70858/000000000010024673/filename1.pdf

8 For this same reason, the SEC comment letters do not support Plaintiff's bald conclusion that the Executive Defendants knew of any violations of GAAP. (Pl. Br. at 20-21) See, e.g., In re MELA Sciences, Inc. Sec. Litig., 10 CV 8774 VB, 2012 WL 4466604, at *8 (S.D.N.Y. Sept. 19, 2012) (warning letter from FDA did not show that "defendants had knowledge of facts or access to information contradicting their public statements"). See also July 11 Opinion, 2012 WL 2847732, at *16.

alleging the requisite fraudulent intent first, Plaintiff cannot rely on the mere fact that [defendants] signed certifications under Sarbanes-Oxley Act of 2002."). Nor does Dobina v. Weatherford Int'l Ltd., No. 11 Civ. 1646 (LAK), 2012 WL 5458148 (S.D.N.Y. Nov. 7, 2012), cited by Plaintiff, hold otherwise. In Dobina, the court sustained a claim against an executive who did not merely certify the financial statements, but had personally "designed" the internal controls and had received specific reports warning that the controls were inadequate. See 2012 WL 5458148, at *9. No such facts are alleged here.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Executive Defendants' Opening Brief, the Amended Complaint should be dismissed with prejudice.

Dated: New York, New York
December 21, 2012

Respectfully submitted,

/s/ Jay B. Kasner

Jay B. Kasner (jay.kasner@skadden.com)
Christopher P. Malloy
(christopher.malloy@skadden.com)
Scott D. Musoff (scott.musoff@skadden.com)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Paul J. Lockwood
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Rodney Square
PO Box 636
Wilmington, DE 19899
(302) 651-3000

*Attorneys for Defendants Kenneth D. Lewis, Joe L. Price, II, Brian T. Moynihan, Charles H. Noski and Neil Cotty*