USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/17/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
PENNSYLVANIA PUBLIC SCHOOL                :
EMPLOYEES' RETIREMENT SYSTEM,
individually and on behalf of all others similarly  :
situated,
                                          :   11 Civ. 733 (WHP)
                     Plaintiff,
                                          :   MEMORANDUM & ORDER
       -against-
                                          :
BANK OF AMERICA CORPORATION, et al.,
                                          :
                     Defendants.
------------------------------------X

WILLIAM H. PAULEY III, District Judge:

Lead Plaintiff Pennsylvania Public School Employees' Retirement System ("Plaintiff") brings this putative class action against Bank of America Corporation ("BoA") and current and past officers and directors of BoA: Kenneth D. Lewis, Joseph Lee Price, II, Brian T. Moynihan, Neil Cotty, and Charles H. Noski (the "Executive Defendants"). The Executive Defendants move to dismiss the Amended Consolidated Class Action Complaint. For the following reasons, the Executive Defendants' motion is denied.

## BACKGROUND

This Court's July 11, 2012 Memorandum & Order describes the allegations undergirding this action. See Pa. Pub. Sch. Emps' Ret. Sys. v. Bank of Am. Corp., 874 F. Supp. 2d 341, 346 (S.D.N.Y. 2012). In that Memorandum & Order, this Court dismissed all defendants except BoA from this action, granted Plaintiff leave to re-plead its claims against the Executive Defendants, and denied the motion to dismiss with respect to the Section 10(b) and Rule 10b-5 claim against BoA. Plaintiff filed its Amended Complaint on August 13, 2012.

Originally, Plaintiff alleged two claims against the Executive Defendants: (1) violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5, and (2) violations of Section 20(a) of the Exchange Act. This Court dismissed Plaintiff's first claim because it failed to plead the required strong inference of scienter. Pa. Pub. Sch. Emps' Ret. Sys., 874 F. Supp. 2d at 359. This Court also dismissed Plaintiff's second claim for failing to plead the required culpable state of mind. Pa. Pub. Sch. Emps' Ret. Sys., 874 F. Supp. 2d at 368.

In its initial Complaint, Plaintiff alleged that the BoA Defendants: (1) tolerated robo-signing; (2) failed to disclose BoA's vulnerability to repurchase claims; (3) deliberately circumvented internal controls in establishing allowances for repurchase claims; (4) kept reserves for repurchase claims low to forestall additional repurchase claims; (5) fought repurchase claims to discourage investors from asserting additional ones; (6) resisted investor attempts to examine loan files; (7) concealed BoA's use of Mortgage Electronic Registration Systems, Inc. ("MERS"); and (8) failed to notify mortgage-backed securities ("MBS") purchasers of breaches. Plaintiff also alleged that the magnitude of the fraud created an additional basis for establishing scienter. This Court found those allegations insufficient and held that "Plaintiff does not allege that the Executive Defendants knew of specific contradictory information at the same time they made misleading statements." Pa. Pub. Sch. Emps' Ret. Sys., 874 F. Supp. 2d at 359.

In its Amended Complaint, Plaintiff alleges that the Executive Defendants made misleading statements despite knowing that (1) BoA was vulnerable to repurchase claims; (2)

BoA had a material weakness in its internal controls; and (3) BoA was failing to comply with generally accepted accounting principles ("GAAP") and SEC regulations.

First, Plaintiff alleges that a letter dated May 13, 2010 from BoA's outside counsel to the Financial Crisis Inquiry Commission ("FCIC") establishes Moynihan's scienter. The letter "summarized the negative effects flowing from BoA's overemphasis on generating loans for securitization without due regard to prudent lending." Pa. Pub. Sch. Emps' Ret. Sys., 874 F. Supp. 2d at 364. It was sent in response to a request from FCIC Chairman Green, who asked Moynihan to expand on prior testimony that he had given to the FCIC. (Amended Consolidated Class Action Complaint, dated August 13, 2012 ("AC") ¶¶ 86, 301.) The letter contradicted Moynihan's subsequent representations regarding BoA's vulnerability to repurchase claims. (AC ¶ 302.)

Plaintiff also alleges, more generally, that the other Executive Defendants knew of repurchase liabilities and did not adequately disclose them. Previously, this Court found that the Executive Defendants had been "forthright in disclosing losses on repurchase claims." Pa. Pub. Sch. Emps' Ret. Sys., 874 F. Supp. 2d at 361. Plaintiff now alleges that even if the Executive Defendants disclosed certain repurchase claims, they failed to disclose repurchase demands. (AC ¶ 302). Repurchase claims refer to lawsuits or other formal proceedings seeking to compel repurchase; repurchase demands refer to pre-litigation letters requesting repurchase. Similarly, Plaintiff alleges that scienter can be inferred from the fact that BoA entered into tolling agreements with Government Sponsored Enterprises ("GSEs") regarding their repurchase demands. (AC ¶ 302(a).) Plaintiff alleges that BoA wrongfully delayed disclosure of these demands.

Second, Plaintiff alleges that the Executive Defendants were knowingly responsible for material weaknesses in BoA's internal controls. (AC ¶ 304.) Specifically, on January 29, 2010, the SEC sent a letter to BoA regarding BoA's policy of accounting for certain contingencies. The January letter asked BoA to disclose its public filing information regarding its repurchase reserve calculation. Cotty and Noski were directly involved in replying to the letter. On May 3, 2010, the SEC sent another comment letter advising BoA that any "future filing" would require further disclosures. (AC ¶ 304(c).)

Third, Plaintiff alleges that the Executive Defendants failed to disclose information required by GAAP and SEC regulations. Specifically, Plaintiff alleges that generally accepted accounting principles require disclosure of potential liabilities. The Executive Defendants were made aware of potential liabilities through their review of various demand letters and their role in subverting generally accepted accounting principles. (AC ¶¶ 121(e), (k), (l), (n), 303, 304.) By certifying that they were complying with reporting obligations, they knowingly made materially misleading statements.

## DISCUSSION

I. Legal Standard

On a motion to dismiss, a court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in plaintiff's favor. See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998). Nonetheless, "factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (requiring plaintiff to plead "enough fact[s] to raise a reasonable expectation that discovery will

reveal evidence of [his claim]"). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citation omitted). "A court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." Anderson News, LLC, et al. v Am. Media Inc., 680 F.3d 162, 185 (2d Cir. 2012). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991). A complaint alleging securities fraud must meet the heightened pleading standard of Rule 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).

II. Section 10(b) and Rule 10b-5 Claims

Plaintiff asserts that the Executive Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5. To state a claim for relief under Section 10(b) and Rule 10b-5, Plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter;

(3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Pac. Inv. Mgmt. Co. v. Mayer Brown LLP, 603 F.3d 144, 151 (2d Cir. 2010). The parties dispute whether the Amended Complaint adequately alleges scienter.

The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires that the plaintiff "plead with particularity facts giving rise to a strong inference that the defendant acted" with an "intent to deceive, manipulate, or defraud" or acted recklessly. ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 198 (2d Cir. 2009) (internal quotations omitted) (emphasis in original). "Recklessness is defined as at the least, an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." ECA, 553 F.3d at 198 (internal quotation marks and alternations omitted). "The inquiry . . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Tellabs Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 323 (2007) (emphasis in original).

In assessing whether a plaintiff has stated a claim, "a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." Tellabs, 551 U.S. at 323. "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, 551 U.S. at 324. "[S]cienter can be established by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness."

ECA, 553 F.3d at 198. "[T]he strength of the circumstantial allegations [of conscious misbehavior or recklessness] must be correspondingly greater if there is no motive." ECA, 553 F.3d at 198-99 (internal quotation marks omitted). Here, Plaintiff relies on the second prong. (Pl.'s Mem. in Opp'n to Mot. to Dismiss ("Opp'n") at 5.)

A. Repurchase Claims

Addressing Moynihan first, Plaintiff now alleges that the May 13 letter establishes his scienter because Moynihan knew of the information in the letter but nevertheless went on to make statements contradicting the representations in the letter. (AC ¶ 86.) This Court previously rejected the argument that the letter established scienter for the Executive Defendants because there was "no allegation that the Executive Defendants saw the letter or knew of its contents." Pa. Pub. Sch. Emps.' Ret. Sys., 874 F. Supp. 2d at 359.

In the Amended Complaint, Plaintiff alleges that Moynihan knew of the letter because it constituted part of his sworn testimony to the FCIC. According to Plaintiff, the letter responded to a request from FCIC Chairman Green, which was addressed to Moynihan and asked him to expand on his testimony. While the letter was signed by BoA's outside counsel on behalf of BoA, Moynihan likely knew its contents because it purported to respond to the FCIC's demand for Moynihan to supplement his testimony.

BoA argues that, even if Moynihan knew of the letter, there is nothing in the letter that specifically contradicted any of his public statements. But this Court's finding that the letter "summarized the negative effects flowing from BoA's overemphasis on generating loans for securitization without due regard to prudent lending" closes the door on that argument at the pleading stage. Pa. Pub. Sch. Emps.' Ret. Sys., 874 F. Supp. 2d at 364. This Court relied on that

fact to find that "Plaintiff's allegations concerning BoA's knowledge of repurchase claims also raises a strong inference of scienter on BoA's part." Pa. Pub. Sch. Emps.' Ret. Sys., 874 F. Supp. 2d at 363-64. The May 13 letter establishes that Moynihan had knowledge of the repurchase claims and renders his subsequent representations misleading. Accordingly, Plaintiff adequately pleads the required strong inference that Moynihan acted with scienter regarding the repurchase claims.

Turning to the other Executive Defendants, Plaintiff alleges that their knowledge of undisclosed repurchase demands render their subsequent certifications misleading. But immediate disclosure of repurchase demands is not required. See Higginbotham v. Baxter Int'l Inc., 495 F.3d 753, 760-61 (7th Cir. 2007) ("Prudent managers conduct inquiries rather than jump the gun with half-formed stories as soon as a problem comes to their attention."); cf. also Reiss v. Pan Am. World Airways, Inc., 711 F.2d 11, 14 (2d Cir. 1983) (holding that, in the context of corporate merger negotiations, "[d]isclosure may in fact be more misleading than secrecy" because such negotiations involve "complex bargaining between two (and often more) parties which may fail as well as succeed, or may succeed on terms which vary greatly from those under consideration at the suggested time of disclosure").

Here, the repurchase demands required investigation and not all demands were meritorious. Plaintiff alleges that, given the size of the demands and the nature of the claims, the Executive Defendants must have known that the repurchase demands constituted a major undisclosed liability. But nothing in the Amended Complaint suggests that the Executive Defendants honestly believed that the existing reserves were inadequate. The Amended Complaint does not allege that the Executive Defendants conducted a review of each demand

and assessed its merit. And regardless, BoA disclosed unresolved repurchase requests in August 2010 to the tune of $11.1 billion. As such, Plaintiff's allegations regarding the Executive Defendants' response to repurchase claims do not plausibly create a strong inference of scienter.

Nor do Plaintiff's allegations regarding non-disclosure of tolling agreements. Tolling agreements are entered into for a variety of reasons, and nothing in the Amended Complaint suggests that the Executive Defendants knew that the claims underlying the tolling agreements were valid. And BoA disclosed GSE repurchase requests in August 2010. (Declaration of Scott D. Musoff, dated Jan. 11, 2012 ("Musoff Decl.") Ex. D: 10-Q, dated Aug. 6, 2010 ("Aug. 2010 10-Q") at 40.) Accordingly, Plaintiff's allegations establish Moynihan's scienter but fail to establish scienter against the other Executive Defendants regarding the statements they made about repurchase claims.

B. <u>Material Weakness in Internal Controls</u>

Plaintiff alleges that the Executive Defendants were knowingly responsible for undisclosed weaknesses in BoA's internal controls. (AC ¶ 302(e).) This Court previously found that BoA failed to disclose a material weakness in its internal controls but noted that "it does not make sense that the Executive Defendants would circumvent internal controls to manipulate allowance levels while being forthright in disclosing losses on repurchase claims." <u>Pa. Pub. Sch. Emps.' Ret. Sys.</u>, 874 F. Supp. 2d at 361. Plaintiff attempts to remedy this deficiency by alleging that the Executive Defendants did not timely disclose BoA's losses on repurchase claims and did not disclose repurchase demands. (AC ¶¶ 302(e), 304(e).)

Specifically, Plaintiff argues that an SEC comment letter indicates that Cotty and Noski were knowingly responsible for the weakness in internal controls. (AC ¶ 304.) In that

letter, the SEC inquired as to why BoA had recognized a $3 billion settlement with the GSEs all at once, rather than accounting for portions of the liability earlier. Plaintiff argues that this letter demonstrates that the Executive Defendants were aware that it was improper not to disclose contingent liabilities. But Plaintiff does not plead sufficient facts regarding the Executive Defendants' judgment regarding the merits of the repurchase demands. Because these demands were speculative, they do not form the basis of a claim for lack of internal controls. Plaintiff's additional allegations do not change this analysis. To the extent that the SEC letter is a criticism of accounting practice, "[a]llegations of accounting irregularities, standing alone, are insufficient to state a securities fraud claim. Only where such allegations are coupled with evidence of corresponding fraudulent intent might they be sufficient." In re JP Morgan Chase Sec. Litig., No. 02 Civ. 1282 (SHS), 2007 WL 950132, at *13 (S.D.N.Y. Mar. 29, 2007) (internal alterations omitted).

C. GAAP and SEC Regulations

Although the Executive Defendants' failure to disclose potential liability arising from repurchase demands is not misleading in its own right, it may nevertheless violate GAAP and SEC regulations. See S.E.C. v. Steadman, 967 F.2d 636, 645 (D.C. Cir. 1992) (noting that "accounting rules d[o] not obligate appellants to attempt to quantify the contingent liability through rough guesses or speculation," but holding that [generally accepted accounting principles] require disclosure of "the general nature of the potential liability, as long as there [is] 'a reasonable possibility' that it [will] be realized."). Violating GAAP and SEC regulations may not amount to a material misrepresentation. But falsely certifying compliance with those same regulations certainly can. See Steadman, 967 F.2d at 645.

The Amended Complaint alleges sufficient specific facts to demonstrate that the Executive Defendants were aware of the repurchase demands, even if they were not aware of the merits of each individual demand. And the GAAP precept of Accounting for Contingencies ("FAS 5") requires disclosure of probable losses, even when the losses are not estimable, as long as there is a "manifestation by a potential claimant of an awareness of a possible claim or assessment." FAS 5, ¶ 10. Under FAS 5, BoA was obligated to disclose the general nature of the potential liability that it faced. Its failure to do so constituted a violation of FAS 5. The Executive Defendants were made aware of these potential liabilities by various demand letters and by their role in camouflaging those demands. (AC ¶¶ 121(e), (k), (l), (n).) By certifying that they were complying with FAS5 when they had failed to disclose such potential liabilities, they knowingly made materially misleading statements. Accordingly, Plaintiff's allegations regarding the Executive Defendants' violation of GAAP and SEC regulations give rise to a strong inference of scienter.

III.  Section 20(a) Claims

Plaintiff asserts claims against the Executive Defendants for violations of Section 20(a) of the Exchange Act. To survive a motion to dismiss, plaintiff must allege: (1) "an underlying primary violation by the controlled person"; (2) "control over the controlled person"; and (3) "particularized facts as to the controlling person's culpable participation in the fraud perpetrated by the controlled person." In re AOL Time Warner, Inc. Sec. & ERISA Litig., 381 F. Supp. 2d 192, 233 (S.D.N.Y. 2004); see also In re Smith Barney Transfer Agent Litig., 884 F. Supp. 2d 152, 166 (S.D.N.Y. 2012).

"While the Second Circuit has not yet addressed the meaning of culpable participation at length, other than to state that a determination of § 20(a) liability requires an individualized determination of a defendant's particular culpability, courts have required a showing of both fraudulent conduct and a culpable state of mind." In re Emex Corp. Sec. Litig., No. 01 Civ. 4886 (SWK), 2002 WL 31093612, at *10 (S.D.N.Y. Sept. 18, 2002) (internal quotation marks omitted).

Originally, this Court dismissed Plaintiff's Section 20(a) claim for "failing to allege particularized facts of the Executive Defendants' culpable participation in the fraud perpetrated by the controlled person." Pa. Pub. Sch. Emps.' Ret. Sys., 874 F. Supp. 2d at 361 (internal quotations omitted). As explained above, Plaintiff's new allegations plausibly establish fraudulent conduct and a culpable state of mind as to all Executive Defendants for failing to comply with GAAP and SEC regulations and against Moynihan for failing to disclose repurchase liabilities. Accordingly, the Executive Defendants' motion to dismiss Plaintiff's Section 20(a) claim is denied.

CONCLUSION

For the foregoing reasons, the Executive Defendants' motion to dismiss the Amended Complaint is denied. The Clerk of the Court is directed to terminate the motion pending at ECF No. 173.

Dated: April 17, 2013
      New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Mark Robert Rosen
Barrack, Rodos & Bacine
3300 Two Commerce Square, 2001 Market Street
Philadelphia, PA 19103
*Lead Counsel for Plaintiff*

Jay B. Kasner
Skadden, Arps, Slate, Meagher & Flom LLP (NYC)
Four Times Square
42nd floor
New York, NY 10036
*Counsel for Bank of America and the Executive Defendants*