UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| PENNSYLVANIA PUBLIC SCHOOL EMPLOYEES' RETIREMENT SYSTEM, individually and on behalf of all others similarly situated, | x : : : : |
| Plaintiff, | : : |
| - v - | : : |
| BANK OF AMERICA CORPORATION, et al., | : : |
| Defendants. | : : : |
| | x |

11 Civ. 733 (WHP)

**ECF CASE**

**Electronically Filed**

-----------------------------------------------------------------

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BRIAN T. MOYNIHAN'S MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S APRIL 17, 2013, MEMORANDUM AND ORDER

**DLA PIPER LLP (US)**
Patrick J. Smith
John M. Hillebrecht
Jeffrey D. Rotenberg
1251 Avenue of the Americas
New York, NY 10020-1104
212-335-4500

*Attorneys for Defendant Brian T. Moynihan*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................. 1

BACKGROUND ............................................................... 2

ARGUMENT ................................................................. 6

    A.    Legal Standard For Reconsideration.................................... 6

    B.    The FCIC Letter Does Not Create A Strong Inference Of Scienter With Respect To Repurchase Claims And The Court's Finding Otherwise Is Manifest Error ..................................................... 6

    C.    Failure To Consider The Contents Of The FCIC Letter Is Manifest Error ........ 13

CONCLUSION ............................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bellezza v. Holland*,
  No. 09 Civ. 8434, 2011 WL 2848141 (S.D.N.Y. July 12, 2011) ............................................14

*Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*,
  337 B.R. 22 (S.D.N.Y. 2005) ..................................................................................................6

*CSI Inv. Partners II, L.P. v. Cendant Corp.*,
  180 F. Supp. 2d 444 (S.D.N.Y. 2001) ...................................................................................12

*In re Currency Conversion Fee Antitrust Litig.*,
  264 F.R.D. 100 (S.D.N.Y. 2010) ...........................................................................................14

*DiLaura v. Power Auth. of State of N.Y.*,
  982 F.2d 73 (2d Cir. 1992) .....................................................................................................13

*Gucci Am., Inc. v. Guess?, Inc.*,
  No. 09 Civ. 4373, 2011 WL 6326032 (S.D.N.Y. Dec. 16, 2011) ...........................................6

*Kregler v. City of New York*,
  821 F. Supp. 2d 651 (S.D.N.Y. 2011) ...................................................................................13

*Lewis v. Whelan*,
  99 F.3d 542 (2d Cir. 1996) .....................................................................................................14

*Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*,
  724 F. Supp. 2d 447 (S.D.N.Y. 2010) ...................................................................................11

*Luminent Mortg. Capital, Inc. v. Merrill Lynch & Co.*,
  652 F. Supp. 2d 576 (E.D. Pa. 2009) ....................................................................................10

*Matusovsky v. Merrill Lynch*,
  186 F. Supp. 2d 397 (S.D.N.Y. 2002) ...................................................................................12

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ...................................................................................................11

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*,
  874 F. Supp. 2d 341 (S.D.N.Y. 2012) ........................................................................... passim

*Rapoport v. Asia Elec. Holding Co., Inc.*,
  88 F. Supp. 2d 179 (S.D.N.Y. 2000) ...............................................................................12, 14

*Rezzonico v. H & R Block, Inc.*,
  182 F.3d 144 (2d Cir. 1999) ...................................................................................................14

*Sazerac Co., Inc. v. Falk,*
    861 F. Supp. 253 (S.D.N.Y. 1994) ........................................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007)..............................................................................................12

*U.S. Titan, Inc. v. Guangzhou Men Hua Shipping Co., Ltd.,*
    182 F.R.D. 97 (S.D.N.Y. 1998) ..............................................................................6

*United States v. Uccio,*
    940 F.2d 753 (2d Cir. 1991)...................................................................................14

*Westerbeke Corp. v. Daihatsu Motor Co., Ltd.,*
    304 F.3d 200 (2d Cir. 2002)...................................................................................14

*Woodward v. Raymond James Fin., Inc.,*
    732 F. Supp. 2d 425 (S.D.N.Y. 2010) ...................................................................10

Pursuant to Local Civil Rule 6.3, Defendant Brian T. Moynihan respectfully moves for partial reconsideration of this Court's April 17, 2013, Memorandum and Order (the "April 17 Order") denying in part the Executive Defendants' motion to dismiss Plaintiff's Amended Consolidated Class Action Complaint (the "Amended Complaint" or the "AC").

## PRELIMINARY STATEMENT

Defendant Moynihan respectfully submits that in its April 17 Order the Court mistakenly applied a ruling from its July 11, 2012, Memorandum and Order (the "July 2012 Order") concerning the contents of a May 13, 2010, letter to the Federal Crisis Inquiry Commission (the "FCIC Letter").  The July 2012 Order was rendered at a time when the FCIC Letter was not of record and not before the Court.  In that Order, the Court relied on Plaintiff's inaccurate description of the FCIC Letter's contents.  Based on these counter-factual allegations and not the FCIC Letter itself, and relying entirely on its July 2012 Order's ruling based on these misleading allegations, in its April 17 Order the Court erroneously concluded that the FCIC Letter supported a cogent inference of Moynihan's scienter for claims based on misrepresentations concerning repurchase claims against Bank of America.  Plaintiff led the Court to this mistaken conclusion by placing both factual and legal error in its path.

Mindful of the significant volume of briefing and argument that the Court has already entertained around this issue, and the fact that this motion constitutes the first substantive submission to Your Honor from undersigned counsel in this action, we nonetheless feel compelled on Moynihan's behalf to make this narrowly-drawn motion.  We do so because, for the reasons set forth below, we believe that the Court, in relying on Plaintiff's mischaracterization of the FCIC Letter, clearly erred in a way that leaves Moynihan defending a theory of liability that has no place in this case.

The Court's finding regarding Moynihan's scienter as to Plaintiff's repurchase liability theory is predicated <u>solely</u> on its earlier adoption of Plaintiff's erroneous and misleading characterization of the FCIC Letter.  Contrary to Plaintiff's allegations, the FCIC Letter does not address the Bank's exposure to repurchase claims, and it therefore cannot establish Moynihan's knowledge about such claims.  The FCIC Letter was indisputably in the record on the motion to dismiss the Amended Complaint.  The Court should have considered its contents in assessing that motion, rather than rely on its earlier decision on the first motion, which necessarily relied on Plaintiff's self-serving gloss on the FCIC Letter and not the FCIC Letter itself (which was not then in the record).  From the language in the Court's April 17 Order, it appears that the Court did not consider the FCIC Letter itself, record evidence that wholly belied Plaintiff's interpretation.  Alternatively, to the extent the Court did in fact review the contents of the FCIC Letter, we respectfully submit that the Court manifestly erred in its interpretation.  As set forth below, Plaintiff cannot establish through the FCIC Letter that Moynihan "knew of specific contradictory information" regarding repurchase claims when he made allegedly "misleading statements" to the public.  *Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341, 359 (S.D.N.Y. 2012).  Given the absence of any other scienter allegations regarding repurchase claims, the allegations regarding such claims should have been dismissed as to Moynihan.

## BACKGROUND

Plaintiff's Consolidated Class Action Complaint, filed on September 23, 2011 (the "Original Complaint" or the "OC") asserted claims against, among others, Bank of America Corporation ("BAC" or the "Bank") and certain of its current and former officers and directors (the "Executive Defendants"), including Moynihan.  On July 11, 2012, the Court dismissed all

defendants except BAC, granted Plaintiff leave to re-plead its claims against the Executive

Defendants, and denied the motion to dismiss with respect to the Section 10(b) and Rule 10b-5

claim against BAC.  *Pa. Pub. Sch. Emps.' Ret. Sys.*, 874 F. Supp. 2d at 364 and 370.  Among the

claims against BAC that survived were allegations that BAC made misrepresentations and

omissions regarding BAC's exposure to repurchase claims (that is, "lawsuits or other formal

proceedings seeking to compel repurchase" of loans for breaches of warranties (April 17 Order at

3) (the "Repurchase Claims")).  In allowing the allegations regarding Repurchase Claims to

proceed against BAC, the Court concluded that an amalgam of Plaintiff's allegations <u>collectively</u>

gave rise to a cogent and compelling inference of BAC's corporate scienter.  *Id.* at 363

("[S]everal of the allegations, taken together, raise a strong inference of scienter as to [BAC].").

Among these allegations was that certain of BAC's responses in the FCIC Letter evinced the

Bank's knowledge of Repurchase Claims, which contradicted its public statements.  *See id.* at

364.  The Court did not address the sufficiency of this allegation standing alone – nor did it

address the sufficiency of any single one of the other allegations it relied on, standing alone – in

rendering its decision as to BAC's Repurchase Claims scienter.

 Plaintiff did not attach the FCIC Letter to the Original Complaint, and no party placed it

into the record in connection with the initial motion to dismiss.  Accordingly, the Court

understandably did not cite to the FCIC Letter in the July 2012 Order, instead relying entirely

upon Plaintiff's mischaracterization of it in the Original Complaint.  Paragraph 101 of the

Original Complaint, which the Court cited in the July 2012 Order, referenced unsurprising

statements by BAC in the FCIC Letter concerning declines in the value of BAC's subprime

mortgage-backed securities holdings and the rise in subprime and Alt-A loan delinquencies and

defaults between 2006 and 2010.  Plaintiff misleadingly characterized such developments as the

inevitable consequence of the BAC legacy entities' mortgage underwriting practices, which they have argued led to the Repurchase Claims. The FCIC Letter does not support this connection between declines in value and increases in delinquencies and defaults on the one hand, and Repurchase Claims on the other. Nonetheless, the Court took the allegations set out in Paragraph 101 as true (without reference to the actual contents of the FCIC Letter), and concluded that the FCIC Letter "summarized the negative effects flowing from [BAC's] overemphasis on generating loans for securitization without due regard to prudent lending." *Pa. Pub. Sch. Emps.' Ret. Sys.*, 874 F. Supp. 2d at 364 (citing OC ¶ 101). The Court subsequently denied BAC's motion for reconsideration and for certification of an interlocutory appeal, again without addressing the FCIC Letter's actual contents. Instead, the Court concluded generally that all "of the facts alleged, taken collectively, give rise to a strong inference of [BAC's] scienter." *Id.* at 372 (internal quotation marks and citations omitted).

Plaintiff filed the Amended Complaint on August 13, 2012, asserting claims against BAC and the Executive Defendants under Sections 10(b) and 20(a) of the Exchange Act. Plaintiff included new allegations against the Executive Defendants regarding their purported knowledge of the extent of BAC's mortgage repurchase exposure. As respects the Repurchase Claims allegations, Plaintiff alleged that Moynihan had knowledge of the FCIC Letter, and that it contradicted his public statements regarding the Bank's repurchase exposure. (AC ¶¶ 301-02).

In moving to dismiss, the Executive Defendants placed the FCIC Letter into the record for the first time. (*See* Exhibit A to the Decl. of Scott D. Musoff ("Exhibit A"), Nov. 5, 2012, ECF No. 175-1, at 2-9). Citing to and quoting from the FCIC Letter, the Executive Defendants showed that nothing contained therein is in any way suggestive of fraudulent intent. In pertinent part, the Executive Defendants highlighted that the FCIC Letter simply reiterated information

that in substance was already in the public record and corresponded with public testimony Moynihan gave before the FCIC. (*See, e.g.*, Mem. Of Law In Supp. Of The Mot. Of Defs. Kenneth D. Lewis, Joe L. Price, II, Brian T. Moynihan, Charles H. Noski and Neil Cotty To Dismiss the Am. Consolidated Class Action Compl. ("Exec. Def. Mem."), Nov. 5, 2012, ECF No. 174, at 2-3, 16-17). The Executive Defendants noted that the FCIC Letter makes no reference to repurchase liabilities (either demands or claims), "says nothing about alleged breache[s] of representations or warranties or put-back claims," and would simply have alerted any reader to the decline in value of "subprime mortgages sold by Countrywide at the height of the real estate boom" – a fact that had already been disclosed. (Exec. Def. Mem. at 2-3). In its opposition, Plaintiff completely ignored these arguments and the contents of the FCIC Letter, and instead just referred back to its conclusory allegations and the Court's earlier rulings on BAC's Repurchase Claims scienter. (*See* Mem. Of Law Of Lead Pl., Pa. Pub. Sch. Emps.' Ret. Sys., In Opp. To The Exec. Defs.' Mot. To Dismiss The Am. Class Action Compl., Dec. 12, 2012, ECF No. 178, at 9).

On April 17, 2013, the Court granted in part and denied in part the Executive Defendants' motion to dismiss. It upheld Plaintiff's claims based on the argument that the Executive Defendants' alleged violations of GAAP and SEC regulations gave rise to a strong inference of scienter. (April 17 Order at 11). This motion does not seek reconsideration of this aspect of the April 17 Order. The Court also held that Plaintiff had adequately pled Moynihan's scienter regarding Repurchase Claims by setting out allegations about his awareness of the FCIC Letter (and nothing else). (*Id.* at 7). It rejected Moynihan's argument that "there is nothing in the letter that specifically contradicted any of his public statements." (*Id.*). The Court based this conclusion solely on its earlier finding in the July 2012 Order that the FCIC Letter "'summarized

the negative effects flowing from [BAC's] overemphasis on generating loans for securitization without due regard to prudent lending'" – a finding that was the by-product of Plaintiff's misleading characterization of the FCIC Letter at a time when the FCIC Letter was not in the record or before the Court.  (*Id.* (quoting *Pa. Pub. Sch. Emps.' Ret. Sys.*, 874 F. Supp. 2d at 364)).  The Court also opined that its prior conclusion "closes the door on [any] argument" at the pleading stage as to whether the FCIC Letter raises a strong inference of scienter.  (*Id.* at 7).  The Court did not cite to or discuss the contents of the FCIC Letter itself in the April 17 Order.

## ARGUMENT

### A.    Legal Standard For Reconsideration

Under Local Civil Rule 6.3, reconsideration is appropriate where, as here, "the Court overlooked . . . factual matters that were put before the Court in the underlying motion and which, had they been considered, might have reasonably altered the result reached by the Court." *Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, 337 B.R. 22, 25 (S.D.N.Y. 2005).  Reconsideration "provides the Court with an opportunity to correct manifest errors of . . . fact . . . or prevent manifest injustice."  *U.S. Titan, Inc. v. Guangzhou Men Hua Shipping Co., Ltd.*, 182 F.R.D. 97, 100 (S.D.N.Y. 1998); *accord Gucci Am., Inc. v. Guess?, Inc.*, No. 09 Civ. 4373, 2011 WL 6326032, at *1 (S.D.N.Y. Dec. 16, 2011).  On these grounds, Moynihan respectfully submits that the Court should reconsider the April 17 Order as set forth below.

### B.    The FCIC Letter Does Not Create A Strong Inference Of Scienter With Respect To Repurchase Claims And The Court's Finding Otherwise Is Manifest Error

In both the Original Complaint and the Amended Complaint, Plaintiff characterized the FCIC Letter as one reflecting the "consequences of the overemphasis of BAC . . . on generating inventory for securitization rather than on making prudent lending decisions."  (OC ¶ 101; AC

¶ 86).  It is this self-serving and wholly erroneous characterization of the FCIC Letter that the

Court, misled by Plaintiff and without the benefit of the FCIC Letter's actual text, adopted.  (*See*

April 17 Order at 7 (relying entirely on the Court's earlier "finding that the letter 'summarized

the negative effects flowing from [BAC's] overemphasis on generating loans for securitization

without due regard to prudent lending'") (quoting *Pa. Pub. Sch. Emps.' Ret. Sys.*, 874 F. Supp.

2d at 364)).  Leaving aside the misleading language from Plaintiff's pleadings and looking

instead to the actual contents of the FCIC Letter, it is plain that (a) the FCIC Letter in no way

supports the claim that imprudent lending occurred and (b) the FCIC Letter says nothing about

Repurchase Claims and nothing that supports a strong inference of knowledge or scienter about

such Repurchase Claims.  Plaintiff relies exclusively on, but does not even quote from, the

following portion of the FCIC Letter in pleading Moynihan's scienter as to Repurchase Claims:

> **(15)   Did Bank of America acquire subprime mortgages,
> create pools of these mortgages and sell securities backed by
> these pools? If so, please provide data on the value of the
> securities sold, whether Bank of America retained any interest
> in these pools, and the nature of these interests and their
> respective dollar amounts.**
>
> RESPONSE:
>
> In 2006 and 2007, BAC, legacy Countrywide, and legacy Merrill
> Lynch each created pools of subprime mortgages, and sold
> securities collateralized by those pools. Each entity typically
> retained an interest in the residual tranche of those pools. The
> value of the entities' retained interest has substantially decreased
> since the issuance of those securities.
>
> The par value at issuance of the securities sold by Bank of America
> was approximately $6 billion. The value of BAC's retained interest
> in these securities was approximately $12 million as of February
> 25, 2010.
>
> The par value at issuance of the securities sold by Countrywide
> was approximately $118 billion. The value of BAC's retained

interest in these securities was approximately $2 billion as of February 19, 2010.

The par value at issuance of the securities sold by Merrill Lynch was approximately $57 billion. The value of BAC's retained interest in these securities was approximately $499 million as of February 25, 2010.

**(22) What are the delinquency and default rates on Countrywide's subprime and Alt-A loans from the date of the acquisition to December 31, 2009?**

<u>RESPONSE</u>:

As of July 1, 2008, BAC (including Countrywide) originated no new Alt-A or subprime loans. For the legacy Countrywide Alt-A loan portfolio, as of December 31, 2009, approximately 37% were delinquent by thirty days or more and approximately 10% were in default. For the legacy Countrywide subprime first lien loan portfolio, as of December 31, 2009, approximately 52% of loans were delinquent by thirty days or more and approximately 7% were in default.

(Exhibit A at 8). Plaintiff's characterization of these responses, adopted by the Court at a time when the FCIC Letter itself was not in the record, is profoundly misleading.

The contents of the FCIC Letter do not comport with the Court's finding that it addresses "'the negative effects flowing from [BAC's] overemphasis on generating loans for securitization without due regard to prudent lending.'" (April 17 Order at 7 (quoting *Pa. Pub. Sch. Emps.' Ret. Sys.*, 874 F. Supp. 2d at 364)). Nor does the FCIC Letter provide a basis for inferring scienter on Moynihan's part or for the Court's finding that it "establishes that Moynihan had knowledge of the repurchase claims." (*Id.* at 8). The FCIC Letter does not contain a single reference to or discussion of Repurchase Claims risk, and it in no way speaks to Moynihan's knowledge of BAC's Repurchase Claims exposure. There is no mention of or allusion to any alleged or potential breaches of representations or warranties or put-back claims. Nothing is said in the FCIC Letter about the prudence (or imprudence) of BAC's relevant lending practices or

securitization business, nor is there any suggestion in the FCIC Letter of any connections between such practices and the state of the portfolio.  Unsurprisingly, neither the Amended Complaint, nor Plaintiff's various motion papers, nor the April 17 Order cite any identifiable information in the FCIC Letter specifically addressing Repurchase Claims, let alone anything contradicting BAC's public disclosures.  This is not surprising since the FCIC Letter was consistent with BAC's public statements at the time.  One searches the FCIC Letter in vain for any statement of fact that could support the change in the scienter analysis as to Repurchase Claims against Moynihan from the July 2012 Order's decision dismissing such claims against him to the April 17 Order's finding that the FCIC Letter – standing alone – "establishes that Moynihan had knowledge of the repurchase claims."  (April 17 Order at 8).

Plaintiff may as well have simply referred to BAC's public disclosures and asserted that Moynihan, as CEO, was aware of their contents.  The statements from the FCIC Letter relied on by Plaintiff – which simply describe the decline in value in subprime mortgages sold by Countrywide at the height of the real estate boom – relate to the industry-wide collapse in the real estate market, with particulars as to Countrywide's mortgages.  Nothing about these facts gives a reader, such as Moynihan, any particular knowledge about Repurchase Claims.  Certainly, given the market-wide conditions in the relevant time frame, nothing set forth in the FCIC Letter provides the requisite specific facts as to any putative breach of representations or warranties which is the *sine qua non* of Repurchase Claims.  Just as demands are not the equivalent of claims (*see id.* ("Here, the repurchase demands required investigation and not all demands were meritorious.")), delinquency rates and default rates are not the equivalent of Repurchase Claims.  While the FCIC Letter shows that the value of many mortgage-backed securities declined during this time frame, nothing about that, or about delinquency rates or

default rates, means that problems with the underlying loans existed or that origination standards or other underwriting criteria were intentionally ignored.  The Court's implicit finding to the contrary, based on Plaintiff's unsupported and misleading characterization of the FCIC Letter as suggesting imprudent lending practices (AC ¶ 86), was error.

Furthermore, the basic information contained in the FCIC Letter was disclosed by BAC and well-known in the market.  For example, the data in the FCIC Letter relating to subprime and Alt-A mortgage delinquency rates and declines in value reflected a state of affairs well known to the public months before May 2010.  BAC itself publicly disclosed similar information in its 2009 10-K.  (*See* Exhibit C to the Decl. of Scott D. Musoff, Jan. 11, 2012, ECF. No. 115-3, at 31, 59 (noting increase of noninterest expenses from $4.7 billion to $11.7 billion due in part to Countrywide delinquencies and noting that of the $5.5 billion of Countrywide loans "that are not current, approximately 51 percent, or $2.8 billion are in early stage delinquency")).  The FCIC Letter merely gives further metrics on the change in retained value of these mortgages over a four-year period and recounts information relating to delinquency rates unsurprising to anyone familiar with the market-wide housing collapse.  Plaintiff cannot and does not dispute the existence of widespread public awareness during the class period that mortgage securities, including those in which BAC held interests, had been suffering significant decreases in value since 2006, while loan defaults and delinquencies had increased.  *See Luminent Mortg. Capital, Inc. v. Merrill Lynch & Co.*, 652 F. Supp. 2d 576, 594 (E.D. Pa. 2009) (noting that declining housing prices and increasing mortgage defaults and foreclosures were "widely known" in 2007); *Woodward v. Raymond James Fin., Inc.*, 732 F. Supp. 2d 425, 436 (S.D.N.Y. 2010) (stating that in 2008 "market observers in all sectors were aware of increasing foreclosures . . .

and the likelihood that the housing market would worsen and impact the general economic outlook").

As reflected in the FCIC Letter, and as disclosed elsewhere, BAC's retained interest in its securities and loan portfolio behaved consistently with the market.  (*See*, *e.g.*, Exec. Def. Mem. at 8, 16-17).  The FCIC Letter simply offers general information on this expected (and widely disclosed) reaction to the real estate crash and financial crisis.  One cannot plausibly infer any conclusions of substance about the scope of any exposure to Repurchase Claims from this information.  *See Pa. Pub. Sch. Emps.' Ret. Sys.,* 874 F. Supp. 2d at 360 ("Knowledge of negative economic trends does not equate to harboring a mental state to deceive, manipulate, or defraud") (internal quotation marks and citations omitted).

Nonetheless, relying solely on Plaintiff's characterization of the FCIC Letter but not citing to the FCIC Letter itself, the Court found that "Plaintiff adequately ple[d] the required strong inference that Moynihan acted with scienter regarding the repurchase claims."  (April 17 Order at 8).  This is manifest error.  The high-level statements actually contained in the FCIC Letter, and relied upon by Plaintiff, do not speak directly to Repurchase Claims and hence are not "contrary facts" sufficient to transform public statements on Repurchase Claims exposure into misrepresentations.  *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (plaintiffs "must specifically identify" the "contrary facts" to which they claim defendant had access through previous reports or statements); *Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 461-62 (S.D.N.Y. 2010) (Pauley, J.) (allegation that CFO "received 'detailed' information fails" absent specificity regarding details provided) (collecting cases).  The Court should not have accepted the Plaintiff's inaccurate allegations as true under these circumstances.  Allegations cannot be well-pled where the documents on which they are

-11-

based in no way support the premise of those allegations. *See Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 399-400 (S.D.N.Y. 2002) (noting that plaintiff's allegations that are contradicted by documents incorporated into or integral to a complaint are insufficient to defeat a motion to dismiss); *CSI Inv. Partners II, L.P. v. Cendant Corp.*, 180 F. Supp. 2d 444, 455 n.12 (S.D.N.Y. 2001) (courts are not required "to accept statements about a document incorporated by reference, if they are clearly contradicted by the document itself"); *Rapoport v. Asia Elec. Holding Co., Inc.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) (noting that where a complaint's allegations contradict the terms of documents incorporated by reference, "the documents control and this Court need not accept as true the allegations in [a] complaint") (citing *Sazerac Co., Inc. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994)).  As no plausible, compelling inference of scienter relating to the Repurchase Claims may be derived from the FCIC Letter, it cannot support Moynihan's scienter.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

There are any number of more compelling opposing inferences to be drawn from the FCIC Letter, each of which supports dismissal of the Repurchase Claims allegations against Moynihan.  *Tellabs*, 551 U.S. at 314.  The onset and deepening of the global real estate crisis and economic recession during the period undermines any assertion that the information contained in the FCIC Letter somehow supports a cogent inference of Moynihan's knowledge of Repurchase Claims.  General and widespread market factors, rather than any conduct that might support Repurchase Claims, far more compellingly explain the financial troubles outlined in the FCIC Letter.  The Court nonetheless erroneously adopted Plaintiff's sinister misreading of the FCIC Letter, and its mistake should be corrected.

-12-

**C.      Failure To Consider The Contents Of The FCIC Letter Is Manifest Error**

The Court's initial findings regarding the FCIC Letter should not have limited the scope of its subsequent analysis concerning the contents of the FCIC Letter.  The April 17 Order suggests, however, that the Court in fact drew exclusively upon the July 2012 Order without considering or assessing the actual contents of the FCIC Letter.  Had the Court considered the contents of the FCIC Letter, it would have recognized that Plaintiff had mischaracterized its contents, and that no plausible, cogent inference of Moynihan's scienter as to Repurchase Claims can be based on it.

We respectfully submit that the Court's error appears to have resulted, at least in part, from misapplication of the "law of the case" doctrine.  At oral argument, the Court inquired as to whether its prior decisions on the FCIC Letter and scienter in connection with the Original Complaint as to BAC, the entity, constituted the law of the case for purposes of the Executive Defendants' motion to dismiss the Amended Complaint as to those individual defendants.  As counsel for the Executive Defendants explained, the correct answer is that it does not.  (Hr'g Tr. 31:10-23, Feb. 19, 2013).  Nonetheless, the April 17 Order suggests that the Court erroneously proceeded to apply the doctrine and as a result did not properly consider the contents of the FCIC Letter.  (*See* April 17 Order at 7 (Court's prior "finding . . . closes the door on that argument")).

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the <u>same issues</u> in subsequent stages in the same case." *DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992) (emphasis added, internal citations omitted); *see Kregler v. City of New York*, 821 F. Supp. 2d 651, 658 (S.D.N.Y. 2011) (declining to apply law of the case doctrine where amended pleading "alleges materially different and more detailed claims than" put forward in prior pleadings).  The doctrine only

-13-

applies to legal questions, not to factual questions such as what the FCIC Letter actually says. *See Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 148 (2d Cir. 1999). It is also a discretionary doctrine. *See Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 219 (2d Cir. 2002) ("[L]aw of the case is necessarily amorphous in that it 'directs a court's discretion,' but does not restrict its authority."); *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991); *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 112 (S.D.N.Y. 2010) (Pauley, J.). Courts should certainly disregard the doctrine where, as here, there are "cogent or compelling" reasons to do so, such as to "correct a clear error or prevent manifest injustice." *Bellezza v. Holland*, No. 09 Civ. 8434, 2011 WL 2848141, at *3 (S.D.N.Y. July 12, 2011) (internal quotes omitted); *see Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (holding that district court properly disregarded "discretionary" law of the case doctrine to eliminate an "inconsistency in its prior findings").

As a result of its application of the law of the case doctrine, the Court gave undue deference to its prior ruling adopting Plaintiff's allegations regarding the contents of the FCIC Letter on the instant motion to dismiss. The Court assumed the truth of Plaintiff's allegations concerning the FCIC Letter, though the Letter itself, which was properly before the Court, undermined those very allegations. *See Rapoport*, 88 F. Supp. 2d at 184 (the actual contents of documents incorporated by reference "control and this Court need not accept as true the allegations in [a] complaint").

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendant Brian T. Moynihan respectfully requests that the

Court grant his motion for partial reconsideration, and dismiss the allegations regarding

Repurchase Claims against him.

Dated:  New York, New York                       **DLA PIPER LLP (US)**
        May 1, 2013


By: <u>/s/ Patrick J. Smith</u>
      Patrick J. Smith
      (patrick.smith@dlapiper.com)
      John M. Hillebrecht
      (john.hillebrecht@dlapiper.com)
      Jeffrey D. Rotenberg
      (jeffrey.rotenberg@dlapiper.com)

1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Attorneys for Defendant Brian T. Moynihan*

-15-

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing

Memorandum of Law in Support of Defendant Brian T. Moynihan's Motion for Partial

Reconsideration of the Court's April 17, 2013, Memorandum and Order was filed electronically

on this 1st day of May, 2013. Notice of this filing will be sent to all parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.


<u>/s/  Patrick Smith</u>
Patrick Smith, Esq.
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 335-4500
Fax: (212) 335-4501
patrick.smith@dlapiper.com