UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
PENNSYLVANIA PUBLIC SCHOOL :
EMPLOYEES' RETIREMENT SYSTEM,
individually and on behalf of all others similarly :
situated,
                                                                                                                                       11 Civ. 733 (WHP)
                                                                                  :
            Plaintiff,                     **ECF CASE**
                                                                                   :
   -v-                       **Electronically Filed**

BANK OF AMERICA CORPORATION, et al.,

        Defendants.
------------------------------------- X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT
BRIAN T. MOYNIHAN'S MOTION FOR PARTIAL RECONSIDERATION
OF THE COURT'S APRIL 17, 2013, MEMORANDUM AND ORDER**

                                                                       **DLA PIPER LLP (US)**
                                                                       Patrick J. Smith
                                                                       John M. Hillebrecht
                                                                       Jeffrey D. Rotenberg
                                                                       1251 Avenue of the Americas
                                                                       New York, NY 10020-1104
                                                                       212-335-4500

                                                                       *Attorneys for Defendant Brian T. Moynihan*

Defendant Brian T. Moynihan ("Moynihan") respectfully submits this reply memorandum of law in further support of his motion for partial reconsideration of this Court's April 17, 2013, Memorandum and Order ("April 17 Order").

## PRELIMINARY STATEMENT

Plaintiff's attempts to confuse the issues presented by Moynihan's motion for reconsideration cannot overcome the deficiencies in Plaintiff's pleadings. In moving for reconsideration of the April 17 Order, Moynihan simply asks the Court to reconsider its finding that his knowledge of repurchase claims exposure can be inferred from Bank of America's ("BAC") May 13, 2010, letter to the Federal Crisis Inquiry Commission (the "FCIC Letter"), thereby supporting Plaintiff's scienter allegations as against him and rendering certain of his subsequent public statements about such claims misleading. Plaintiff now appears to acknowledge that the Court has not properly analyzed the underlying issues – that is, with the benefit of the FCIC Letter in the record and with due consideration of the conclusions Plaintiff purports to draw from the FCIC Letter. Yet Plaintiff continues to ask the Court to avoid addressing these issues. Moynihan's motion is both procedurally and substantively proper, and should be granted.

## ARGUMENT

### I. Moynihan's Motion For Partial Reconsideration Of The April 17th Order Is Procedurally Proper

Plaintiff seeks to escape the deficiencies in its allegations regarding Moynihan's repurchase claims scienter by imposing an unfounded restriction on the scope of permissible motions for reconsideration. (*See* Pl.'s Mem. Of Law In Opp. To Def. Brian T. Moynihan's Mot. For Partial Reconsideration ("Pl.'s Opp."), May 20, 2013, ECF No. 217, at 5-7). Under Local Rule 6.3, motions for reconsideration may address "factual matters [or data] that were put

before the Court in the underlying motion" but were "overlooked" by the Court in rendering its decision and "might have reasonably altered the result [it] reached." *Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, 337 B.R. 22, 25 (S.D.N.Y. 2005); *see also In re Gen. Elec. Co. Sec. Litig.*, 856 F. Supp. 2d 645, 651 (S.D.N.Y. 2012). This is precisely what the instant motion does. Plaintiff certainly offers no support for the proposition that the subject matter and scope of motions for partial reconsideration of a court's ruling upon a motion to dismiss is as limited as it suggests. Tellingly, the cases to which it cites (Pl.'s Opp. at 6) do not involve motions for reconsideration and are otherwise inapposite. Plaintiff's introduction of motions to strike under Rule 12(f) into the discussion is a thinly-veiled attempt to confuse what is truly at issue here. (Pl.'s Opp. at 6-7).

As evidenced in the April 17 Order, the Court considered each of Plaintiff's scienter theories seriatim, accepting some and rejecting others. *See Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, No. 11 Civ. 733, --- F. Supp. 2d ---, 2013 WL 1664696, at *4-*6 (S.D.N.Y. Apr. 17, 2013) (addressing separately Plaintiff's scienter theories as to repurchase claims, internal controls, and GAAP and SEC regulations). The Court dissected Plaintiff's claims and their respective subparts and underlying theories of liability under Sections 10(b) and 20(a) and allowed only those that were sufficiently pleaded to proceed. *See id.* at *6; *see also Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341, 351 (identifying Plaintiff's allegations that "[BAC] Defendants made misrepresentations and omissions regarding [among others] . . . (2) [BAC]'s exposure to repurchase claims . . . and (4) GAAP and SEC regulations"). The instant motion for reconsideration is consistent with the Court's approach in analyzing, and ruling on, the Executive Defendants' motions to dismiss.

Plaintiff attempts to avoid this conclusion by again conflating what the Court has been careful to keep distinct – repurchase *claims* and repurchase *demands*. *See, e.g.*, *Pa. Pub. Sch. Emps.' Ret. Sys.*, 2013 WL 1664696, at *2 and *4 (discussing distinction between claims and demands). This argument is particularly surprising in light of Plaintiff's own emphasis on this very distinction in the Amended Complaint. (*See* Am. Consolidated Class Action Compl. ("AC") ¶ 302). This conflation is reflected in Plaintiff's arguments that this motion is procedurally improper because, in a different portion of the April 17 Order, the Court held that the Complaint adequately alleged scienter as to all of the Executive Defendants based on alleged violations of GAAP. (Pl.'s Opp. at 4-5, 7-8 (citing *Pa. Pub. Sch. Emps.' Ret. Sys.*, 2013 WL 1664696, at *5-*6)). According to Plaintiff, the "accounting claims relating to the repurchase *claims* . . . have already been upheld by the Court." (Pl.'s Opp. at 7 (emphasis added)). But Plaintiff mischaracterizes the Court's ruling. In discussing the GAAP related allegations, the Court plainly and explicitly focused on "repurchase demands." In fact, in its one-page discussion the Court used the words "repurchase demands" or "demand" five times, while not referring at all to repurchase claims. *See Pa. Pub. Sch. Emps.' Ret. Sys.*, 2013 WL 1664696, at *5-*6. In discussing *scienter* as to the GAAP allegations, the Court focused exclusively on repurchase demands and made no reference whatsoever to repurchase claims. *See id.* at *6 (stating that Amended Complaint adequately alleges that "the Executive Defendants were aware of the repurchase demands . . . . The Executive Defendants were made aware of these potential liabilities by various demand letters and by their role in camouflaging those demands[.]"). As discussed further below, these issues are plainly distinct and the instant motion merely tracks the structure and logic of the Court's opinion.

In addition, although Plaintiff claims the instant motion is "vague" and "unclear," its Opposition somehow managed to address the subject matter and issues raised by the motion. (Pl.'s Opp. at 7). That is unsurprising, given that what Moynihan seeks here is straightforward. This motion's focus is the Court's conclusion in the April 17 Order that the FCIC Letter "establishes that Moynihan had knowledge of the repurchase claims and renders his subsequent representations misleading," and that "[a]ccordingly, Plaintiff adequately pleads the required strong inference that Moynihan acted with scienter regarding the repurchase claims." *Pa. Pub. Sch. Emps.' Ret. Sys.*, 2013 WL 1664696, at *4. Moynihan contends that this ruling was made in error, and that the April 17 Order, in the context of the prior briefing and oral argument, suggests this error was influenced by: (i) misapplication of the law of the case doctrine and (ii) undue acceptance of the erroneous characterization of the contents of the FCIC Letter in the Original Complaint (and in turn the Amended Complaint). (*See* Mem. of Law In Support of Def. Brian T. Moynihan's Mot. for Partial Reconsideration ("Moynihan Br."), May 1, 2013, ECF No. 200, at 6-8, 12).

## II. Plaintiff Cannot Overcome The Unambiguous Contents Of The FCIC Letter

The Court's finding that the FCIC Letter itself "establishes that Moynihan had knowledge of the repurchase claims," *Pa. Pub. Sch. Emps.' Ret. Sys.*, 2013 WL 1664696, at *4, was apparently predicated solely on its earlier adoption of the Original Complaint's erroneous and misleading characterization of the FCIC Letter and not on the actual contents of the letter.[1] Tellingly, Plaintiff continues to assiduously ignore the actual contents of that letter. The FCIC

---

[1] The Court took the allegations set out in Paragraph 101 as true both times, and concluded that the FCIC Letter "summarized the negative effects flowing from [BAC's] overemphasis on generating loans for securitization without due regard to prudent lending." *Pa. Pub. Sch. Emps.' Ret. Sys.*, 874 F. Supp. 2d at 364 (citing Pl.'s Consolidated Class Action Compl. ("Original Complaint") ¶ 101); *Pa. Pub. Sch. Emps.' Ret. Sys.*, 2013 WL 1664696, at *4; *see also* AC ¶ 86 ("The harmful consequences of the overemphasis of BAC and its legacy entities on generating inventory for securitization rather than on making prudent lending decisions were set forth in" the FCIC Letter). Moynihan's awareness of the FCIC Letter is the only allegation that separates him from the other Executive Defendants. *See Pa. Pub. Sch. Emps.' Ret. Sys*, 2013 WL 1664696, at *4.

Letter does not contain a single reference to or discussion of repurchase claims risk, and it in no way speaks to Moynihan's knowledge about BAC's repurchase claims exposure. There is no mention of or allusion to any alleged or potential breaches of representations or warranties or put-back claims. Nothing is said in the FCIC Letter about the prudence (or imprudence) of BAC's relevant lending practices or securitization business, nor is there any suggestion in the FCIC Letter of any connections between such practices and the state of the portfolio. (*See* Exhibit A to the Decl. of Scott D. Musoff, Nov. 5, 2012, ECF No. 175-1, at 8 (referencing questions 15 and 22 of the FCIC Letter)). Yet the FCIC Letter is the lynchpin of Plaintiff's argument regarding Moynihan's repurchase claims scienter.

No doubt recognizing the deficiencies of a scienter theory so reliant on the FCIC Letter, Plaintiff now tries to minimize its importance, and instead focuses on other allegations in the Amended Complaint, which collectively do not support the Court's finding of Moynihan's repurchase claims scienter. In so doing, Plaintiff muddles the theories of liability it has previously advanced and that the Court (quite rightly) has treated as distinct.

In making this abrupt change of course, Plaintiff ends up highlighting the flaws in its arguments as to Moynihan's repurchase claims scienter. The various allegations Plaintiff cuts and pastes into its brief do not alter the analysis. (*See* Pl.'s Opp. at 12-13). They serve only to reinforce that the Amended Complaint does not give rise to a strong inference of Moynihan's scienter concerning BAC's repurchase claims exposure. *See In re Gen. Elec. Co. Sec. Litig.*, 856 F. Supp. 2d at 659 (noting that while a court considers "all of the facts alleged, taken collectively," it must also "take into account plausible opposing inferences") (emphasis removed and citations omitted).

Plaintiff attempts to construct a narrative as to Moynihan's repurchase claims scienter that fails to even mention BAC's actual repurchase claims exposure. (Pl.'s Opp. at 13-14). Importantly, and fatally to its argument here, Plaintiff acknowledges that the Court found repurchase claims scienter based on this litany of allegations only "in reliance upon" paragraph 101 of the Original Complaint – the very paragraph that mischaracterized the FCIC Letter.[2] (Pl.'s Opp. at 14). As argued previously (Moynihan Br. at 6-8) that mischaracterization – and hence the Court's adoption of it – finds no support in the actual contents of the FCIC Letter.

The conflation of "repurchase demands" and "repurchase claims" is rampant in Plaintiff's opposition, and undermines its attempt to draw the conclusions on which it relies. As the Court has explained, "[r]epurchase claims refer to lawsuits or other formal proceedings seeking to compel repurchase; repurchase demands refer to pre-litigation letters requesting repurchase." *Pa. Pub. Sch. Emps.' Ret. Sys.*, 2013 WL 1664696, at *2. Despite its efforts, Plaintiff cannot utilize allegations concerning repurchase demands to satisfy its pleading burden as to knowledge of specific facts concerning BAC's repurchase claims exposure. The Court rightly recognized that one cannot infer knowledge of claims exposure from general knowledge about demands. *Id.* at *4.

For this reason, Plaintiff cannot undermine the instant motion by relying upon the Court's scienter findings as to the Executive Defendants' alleged violations of SEC regulations, FAS 5, and GAAP. These findings certainly have no bearing on whether the FCIC Letter supports Moynihan's scienter as to repurchase claims exposure. Plaintiff's assertion that "[p]otential liability involving FAS 5 . . . was directly related to the same repurchase claims that are

---

[2] As noted above, Paragraph 101 of the Original Complaint provided, in pertinent part, that: "The harmful consequences of the overemphasis of BAC and its legacy entities on generating inventory for securitization rather than on making prudent lending decisions were set forth in a May 13, 2010 letter from counsel for BAC to the Financial Crisis Inquiry Commission."

implicated by the [FCIC] letter" (Pl.'s Opp. at 4), is inconsistent with the April 17 Order, which predicates potential liability on the allegation that the Executive Defendants were generally aware of "repurchase *demands*" because they were aware of "various demand letters" and nonetheless certified compliance with FAS 5 despite having "failed to disclose such potential liabilities." *Pa. Pub. Sch. Emps.' Ret. Sys.*, 2013 WL 1664696, at *6 (emphasis added). The Court said nothing about specific knowledge of repurchase <u>claims</u> in that context – which follows from Plaintiff's failure to allege adequately such knowledge of repurchase claims exposure across all the Executive Defendants. *See id.* at *5 (rejecting Plaintiff's efforts to conflate repurchase demands with repurchase claims and holding that the Complaint "fail[s] to establish scienter against the other Executive Defendants regarding . . . repurchase claims"). Either way, the survival of the GAAP-related allegations has no bearing on either this motion or the adequacy of Plaintiff's allegations of scienter as to Moynihan's repurchase claims exposure.

As to the repurchase claims liability, the Court found scienter as to Moynihan (and only Moynihan) based entirely on the FCIC Letter (and only the FCIC Letter). *See id.* at *4. It is that ruling (and only that ruling) that Moynihan asks the Court to reconsider and, in so doing, to conclude that the FCIC Letter says nothing about repurchase claims and nothing that supports a strong inference of knowledge or scienter about such repurchase claims.

### III. Plaintiff Cannot Render Moynihan's Public Statements Regarding Repurchase Claims Actionable Via The FCIC Letter

While studiously avoiding a close reading of its text, Plaintiff asserts that the FCIC Letter made apparent to any reader that the repurchase claims "were far larger" than disclosed and that as a result subsequent public statements regarding claims exposure were misleading. (Pl.'s Opp. at 11). This conclusion, however, is not supported by the FCIC Letter either on its own or in the context of Plaintiff's allegations as a whole. There is no plausible reading of the Amended

Complaint which supports the inference that the FCIC Letter salvages otherwise deficient allegations of Moynihan's scienter on repurchase claims.

At best, Plaintiff's theory is predicated upon a pile of unfounded assumptions and rote speculation. It turns on what the data in the FCIC Letter meant to Moynihan, and whether he concluded based thereon that some number of repurchase claims would be brought and that some number of the claims actually brought would have merit. As BAC has argued:

> This convoluted theory simply does not stand up to the more compelling and cogent inference that BAC executives acted in good faith and that BAC accurately disclosed information, reasonably known, and which it had a duty to disclose, and provided updated information as developments occurred in the context of the continued weakness in the U.S. housing market and economy in general.

(Mem. Of Law In Supp. Of The Mot. Of Defs. Bank of America Corp., Kenneth D. Lewis, Joe L. Price, II, Brian T. Moynihan, Charles H. Noski and Neil Cotty To Dismiss the Consolidated Class Action Compl., Jan. 11, 2012, ECF No. 113, at 13). Any theory of guilty knowledge based on the contents of the FCIC Letter is further undermined by the fact that it was submitted to a commission reporting to the United States Congress through, in part, the issuance of a public (best-selling) report. *See* Julie Bosman & Sewell Chan, *From a Crisis, a Best Seller*, N.Y. TIMES Jan. 31, 2011, http://query.nytimes.com/gst/fullpage.html?res=9C0CE6DC1031F932A05752C0A9679D8B63. It is simply not plausible that BAC would make a submission to the FCIC, while nearly simultaneously making contradictory material public statements. *See Pa. Pub. Sch. Emps.' Ret. Sys.*, 874 F. Supp. 2d at 361 ("It is not plausible that the Executive Defendants would simultaneously conceal repurchase claims through these means while also disclosing repurchase claims in their public filings.") (citing *Borochoff v. GlaxoSmithKline PLC*, No. 07 Civ. 5574, 2008 WL 2073421, at *8 (S.D.N.Y. May 9, 2008), *aff'd* 343 F. App'x 671 (2d Cir. 2009) (allegations of intent to defraud held inconsistent with defendants' disclosures to the

public and to the FDA)). Although the FCIC Letter was not immediately publicly available, that it was submitted to a commission working on behalf of the Congress makes wildly implausible the claim that it contained information inconsistent with BAC's public statements. The FCIC Letter is without question not a source from which to draw a cogent inference of scienter.

## CONCLUSION

For the foregoing reasons, Defendant Brian T. Moynihan respectfully requests that the Court grant his motion for partial reconsideration, and dismiss the allegations regarding repurchase claims against him.

Dated: New York, New York.
       May 31, 2013

**DLA PIPER LLP (US)**

By: /s/ Patrick J. Smith
    Patrick J. Smith
    (patrick.smith@dlapiper.com)
    John M. Hillebrecht
    (john.hillebrecht@dlapiper.com)
    Jeffrey D. Rotenberg
    (jeffrey.rotenberg@dlapiper.com)

1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Attorneys for Defendant Brian T. Moynihan*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Reply Memorandum of Law in Support of Defendant Brian T. Moynihan's Motion for Partial Reconsideration of the Court's April 17, 2013, Memorandum and Order was filed electronically on this 31st day of May, 2013.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/  Patrick Smith
Patrick Smith, Esq.
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 335-4500
Fax: (212) 335-4501
patrick.smith@dlapiper.com