UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| PENNSYLVANIA PUBLIC SCHOOL EMPLOYEES' RETIREMENT SYSTEM, individually and on behalf of all others similarly situated, | : : : : : | CIVIL ACTION NO 11-CV-00733-WHP |
| Plaintiff, | : : | |
| v. | : : | CLASS ACTION |
| BANK OF AMERICA CORPORATION, et al., | : : | |
| Defendants. | : : | |

---

**MEMORANDUM OF LAW OF LEAD PLAINTIFF PENNSYLVANIA
PUBLIC SCHOOL EMPLOYEES' RETIREMENT SYSTEM
IN SUPPORT OF MOTION TO CERTIFY CLASS**

**BARRACK, RODOS & BACINE**

Leonard Barrack
Mark R. Rosen
Jeffrey A. Barrack
Jeffrey B. Gittleman
Chad A. Carder
Julie B. Palley
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Fax: (215) 963-0838

**BARRACK, RODOS & BACINE**

A. Arnold Gershon
William J. Ban
Michael A. Toomey
425 Park Avenue, 31st Floor
New York, NY 10022
Telephone: (212) 688-0782
Facsimile: (212) 688-0783

*Attorneys for Lead Plaintiff Pennsylvania
Public School Employees' Retirement
System and Lead Counsel for the Class*

231011

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

I.     PRELIMINARY STATEMENT ............................................................................. 1

II.    ARGUMENT ........................................................................................................ 4

     A.     Rule 23(a) is Satisfied ............................................................................. 6

         1.     The Members of the Class Are So Numerous That Joinder
            of All Members Is Impracticable ................................................. 6

         2.     There Are Questions of Law and Fact Common to the Members of the Class ... 8

         3.     Plaintiffs' Claims Are Typical of the Claims of the Class ............................... 10

         4.     Plaintiffs Will Fairly and Adequately Protect the Interests
            of the Class ................................................................................. 12

     B.     Rule 23(b)(3) Is Satisfied ...................................................................... 14

         1.     Issues Common to the Class Predominate Over Issues That
            Are Not Common To the Class ................................................... 15

            i.     Trading Volume ............................................................ 19

            ii.     Analyst Coverage ......................................................... 19

            iii.    Market Makers .............................................................. 20

            iv.    S-3 Registration Eligibility .......................................... 21

            v.     Price Reaction To Unexpected, Material Disclosures .............................. 21

         2.     A Class Action Is the Best Method of Trying This Case ................................... 22

     C.     Lead Counsel Should be Appointed Class Counsel .................................... 24

III.   CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128, 153 (1972) ........................................................................ 16

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591, 625 (1997) ......................................................... 5, 12, 14, 15

*Basic v. Levinson*,
    485 U.S. 224, 247 (1988) ........................................................................ 17

*Blackie v. Barrack*,
    524 F.2d 891, 902 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976) ............................. 8, 9, 15

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) ..................................................... *passim*

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473, 483 (2d Cir. 1995) .............................................................. 6

*Cromer Fin. Ltd. v. Berger,*
    205 F.R.D. 113, 133 (S.D.N.Y. 2001) .................................................... 24

*Darquea v. Jaden Corp.*,
    06 Civ. 722 (DLB), 2008 U.S. Dist. LEXIS 17747 (S.D.N.Y. Mar. 6, 2008) ................... 13, 23

*Escott v. Barchris Constr. Corp.*,
    340 F.2d 731, 733 (2d Cir. 1965) ............................................................. 4

*Ferrari v. Impath, Inc.*,
    03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 20, 2004) ..................... 20

*Fogarazzo v. Lehman Bros., Inc.*,
    232 F.R.D. 176, 180 (S.D.N.Y.  2005) .................................................... 9

*Fogarazzo v. Lehman Bros.*,
    263 F.R.D. 90, 96 (S.D.N.Y. 2009) ...................................................... 6, 12

*Gen. Tel. Co. of Southwest v. Falcon*,
    457 U.S. 147, 157-58 n. 13 (1982) ......................................................... 8

*Green v. Wolf Corp.*,
    406 F.2d 291, 298, 301 (2d Cir. 1968), *cert. denied*, 395 U.S. 977 (1969) .................... 8, 9, 16

*In re Bank of America Corp. Sec., Derivative and*
    *Emp. Ret. Income Security Act (ERISA) Litigation*,
    281 F.R.D. 134 (S.D.N.Y. 2012) ...................................................... *passim*

*In re Deutsche Telekom AG Sec. Litig.*,
    229 F. Supp. 2d 277, 280 (S.D.N.Y. 2002) ........................................... 7, 8, 14, 23

*In re Drexel Burnham Lambert Group*,
   960 F.2d 285, 291 (2d Cir. 1992)....................................................................... 10

*In re DVI Inc. Sec. Litig.*,
   639 F.3d 623, 634 (3d Cir. 2011).......................................................................... 18

*In re DVI, Inc. Sec. Litig.*,
   249 F.R.D. 196, 209 (E.D. Pa. 2008), *aff'd*, 639 F.3d 623 (3d Cir. 2011) ........................ 19, 20

*In re Dynex Capital, Inc. Sec. Litig.*,
   05 Civ. 1897 (HB), 2011 U.S. Dist. LEXIS 22484 (S.D.N.Y. Mar. 7, 2011) .................. *passim*

*In re Globalstar Sec. Litig.*,
   01 Civ. 1748 (PKC), 2004 U.S. Dist. LEXIS 24164 (S.D.N.Y. Dec. 1, 2004) ...................... 11

*In re Juniper Networks Sec. Litig.*,
   264 F.R.D. 584, 591 n.8 (N.D. Cal. 2009)................................................................. 18

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42, 46 (S.D.N.Y. 1998) ....................................................................... 20

*In re Pfizer Sec. Litig.*,
   282 F.R.D. 38, 53 n.9 (S.D.N.Y. 2012) ................................................................... 18

*In re Priceline.com Inc. Sec. Litig.*,
   236 F.R.D. 89, 101-02 (D. Conn. 2006) ................................................................ 14

*In re SLM Corp. Sec. Litig.*,
   08 Civ. 1029 (WHP), 2012 U.S. Dist. LEXIS 8158 (S.D.N.Y. Jan. 24, 2012) ...................... 4

*In re Smith Barney Transfer Agent Litig.*,
   05 Civ. 7583 (WHP), 2006 U.S. Dist. LEXIS 19728 (S.D.N.Y. Apr. 17, 2006) .................... 3

*In re Smith Barney Transfer Agent Litig.*,
   290 F.R.D. 42, 45 (S.D.N.Y. 2013).................................................................. *passim*

*In re Vivendi Universal, S.A. Sec. Litig.*
   242 F.R.D. 76, 91 (S.D.N.Y. 2007) ......................................................................... 6

*In re WorldCom, Inc. Sec. Litig.*,
   219 F.R.D 267, 280 (S.D.N.Y. 2003) ..................................................................... 11

*Kelleher v. ADVO, Inc.*,
   2:06CV01422(AVC), 2009 U.S. Dist. LEXIS 68914 (D. Conn. Mar. 30, 2009)..................... 6

*Lapin v. Goldman Sachs & Co.*,
   254 F.R.D. 168, 175 (S.D.N.Y. 2008) ........................................................ 6, 14, 17, 18

*Marisol A. By Forbes v. Giuliani*,
   126 F.3d 372, 375-76 (2d Cir. 1997) .............................................................. *passim*

*Maywalt v. Parker & Parsley Petroleum Co.*,
   147 F.R.D. 51, 54 (S.D.N.Y. 1993) ......................................................................... 4

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247, 1252 (2d Cir. 2002) ........................................................................ 15

*Robidoux v. Celani*,
   987 F.2d 931, 935 (2d Cir. 1993) ................................................................... 6, 10, 11

*Saddle Rock Partners Ltd. v. Hiatt*,
   96 Civ. 9474 (SHS), 2000 U.S. Dist. LEXIS 11931 (S.D.N.Y. Aug. 21, 2000) ..................... 13

*Teamsters Local 445 v. Bombardier*,
   546 F.3d 196, 204 n.11, 210-11 (2d Cir. 2008) ........................................................ 18

*Wagner v. Barrick Gold Corp.*,
   251 F.R.D. 112, 115 (S.D.N.Y. 2008) ............................................................ 5, 12, 17

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S.Ct. 2541, 2551 n. 5 (2011) .......................................................................... 8

*Wilkof v. Caraco Pharm. Labs., Ltd.*,
   280 F.R.D. 332, 342-43 (E.D. Mich. 2012) ............................................................. 18

## **Rules**

Fed. R. Civ. P. 23 ................................................................................... 4, 6, 15
Fed. R. Civ. P. 23 (a) ....................................................................................... 5
Fed. R. Civ. P. 23(a)(1) ............................................................................... 6, 8
Fed. R. Civ. P. 23(a)(2) .................................................................................... 8
Fed. R. Civ. P. 23(a)(3) .................................................................................. 10
Fed. R. Civ. P. 23(a)(4) .................................................................................. 12
Fed. R. Civ. P. 23(b)(3) ..................................................................... 5, 14, 22, 23
Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) ....................................................................... 24

## **Other Authorities**

Securities Exchange Act of 1934,
   15 U.S.C. § 78j .......................................................................................... 1

Securities & Exchange Commission
   Rule 10b-5, 17 C.F.R. 240.10b-5 .......................................................................... 1

H.R. Conf. Rep. No. 104-369,
   at 33, 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ........................................... 20

Lead Plaintiff, the Commonwealth of Pennsylvania, Public School Employees'

Retirement System (hereafter referred to as "Lead Plaintiff" or "PSERS"), pursuant to this

Court's Order of July 30, 2013 (Docket No. 233), respectfully submits this memorandum of law

in support of its accompanying motion for class certification.

## I.     PRELIMINARY STATEMENT

This is an action brought under Section 10(b) of the Securities Exchange Act of 1934, 15

U.S.C. § 78j, and Securities & Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. 240.10b-5.

Lead Plaintiff seeks certification of a plaintiff class (the "Class"), pursuant to Rules 23(a) and

23(b)(3) of the Federal Rules of Civil Procedure, consisting of all persons or entities who

purchased or otherwise acquired Bank of America Corporation ("BofA" or the "Company")

common stock or Common Equivalent Securities ("CES") from February 27, 2009 through

October 19, 2010 (the "Class Period"), and suffered damages as a result.  Excluded from the

Class are: (a) Defendants;[1] (b) members of the immediate family of each of the Executive

Defendants; (c) any person who was an executive officer and/or director of BofA during the

Class Period; (d) any entity that served as an underwriter for BofA's CES offering; (e) any

person, firm, trust, corporation, officer, director, or any other individual or entity in which any

Defendant has a controlling interest; and (f) the legal representatives, agents, affiliates, heirs,

successors-in-interest or assigns of any such excluded party.

As alleged by Lead Plaintiff in the Complaint, which includes the allegations this Court

sustained against Defendant BofA by Memorandum & Order of July 11, 2012 (Docket No. 148),

as well as the allegations this Court sustained against the Executive Defendants by Memorandum

---

[1]     As identified more specifically in Lead Plaintiff's Amended Consolidated Class Action Complaint ("Complaint"), Defendants include BofA as well as Kenneth D. Lewis, Joseph Lee Price, II, Brian T. Moynihan, Charles H. Noski, and Neil Cotty (the individuals collectively referred to herein as the "Executive Defendants").

& Order of April 17, 2013 (Docket No. 183), this case concerns, among other things, Defendants' actions in concealing and misrepresenting to investors (1) the extent of BofA's risk arising from and vulnerability to repurchase claims related to residential mortgage-backed securities issued by BofA or its legacy entities; (2) the risk and legal obstacles associated with BofA's reliance on MERS;  (3) that BofA maintained effective disclosure controls and procedures and effective controls over financial reporting, which it did not; and (4) that BofA complied with Generally Accepted Accounting Principles ("GAAP") and SEC regulations, which it did not, thereby rendering BofA's SEC filings false and misleading.  ¶¶1-14, 19-27, 56-126, 132-292.[2]  In the Complaint, Lead Plaintiff asserts claims grounded in fraud based on materially false and misleading statements made with scienter against the Company and the Executive Defendants for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

This action is ideally suited for class certification.  Lead Plaintiff and thousands of members of the putative Class suffered substantial damages as a result of the material misrepresentations and omissions contained in SEC filings, press releases and other public statements disseminated by Defendants throughout the Class Period.  Therefore, this action is similar to the numerous securities cases that have been certified as class actions in this and every other circuit in the country.  Indeed, another court in this District recently certified a class of BofA stock purchasers in a separate securities fraud action with a class period ending only weeks before the Class Period in this action begins.  *See In re Bank of America Corp. Sec., Derivative and Emp. Ret. Income Security Act (ERISA) Litigation,* 281 F.R.D. 134 (S.D.N.Y. 2012) (Castel,

---

[2]      References to allegations in the Complaint shall appear as "¶__."

J.) (certifying a class of BofA stock purchasers from September 18, 2008 through January 21, 2009).

Given these facts, Defendants do not dispute that this action and the proposed Class satisfy various elements of Rule 23, including numerosity, commonality, predominance (including the efficiency of the market for BofA's common stock and its CES), and superiority. *See* Joint Status Report Concerning Class Certification and Document Discovery, filed October 31, 2013, at ¶3(b), (d) (Docket No. 239).  For now, Defendants have reserved the right to challenge typicality and adequacy under Rule 23, but have agreed to notify the Court and Lead Plaintiff no later than December 13, 2013, if they intend to mount a challenge to certification of the Class on either of these bases.  *Id*. at ¶3(d).  Should they decide not to challenge either typicality of adequacy, Lead Plaintiff's instant motion would be entirely uncontested.

Even though Defendants have conceded that most of the requirements of Rule 23 are satisfied in this action, Lead Plaintiff believes it is appropriate to set forth herein the grounds supporting its contention that all of the requirements for class certification under Rule 23 have been fully satisfied, including typicality and adequacy.  In addition to the fact that this action is ideally suited for class certification, Lead Plaintiff PSERS is exactly the type of plaintiff the Private Securities Litigation Reform Act of 1995 (the "PSLRA") seeks to encourage to lead cases such as this.  *See In re Smith Barney Transfer Agent Litig.*, 05 Civ. 7583 (WHP), 2006 U.S. Dist. LEXIS 19728, at *7 (S.D.N.Y. Apr. 17, 2006).  PSERS is a public pension fund with fund assets totaling nearly $50 billion for the benefit of working and retired Pennsylvania public school employees and their beneficiaries.  As of June 30, 2012, PSERS had nearly 600,000 total active members, retirees, beneficiaries and vested/inactive members, or approximately one out of every 21 Pennsylvania citizens, and is the 18th largest state-sponsored defined benefit pension

fund in the country.  During the Class Period, PSERS purchased significant amounts of BofA common stock as well as BofA's CES, and suffered a substantial loss as a result of the securities law violations alleged in this action.  *See* Declaration of Mark R. Rosen in Support of Lead Plaintiff's Motion for Class Certification ("Rosen Decl."), Ex. A (PSERS's transactions in BofA's common stock and its CES).  As such, PSERS is a demonstrably adequate representative of the entire Class and its claims are typical of those of the Class.  Further, PSERS has selected competent and experienced counsel to pursue the claims on behalf of all Class members.

Because Lead Plaintiff meets all of the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, Lead Plaintiff's motion for class certification should be granted.

## II.    ARGUMENT

Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") governs the certification of a class in federal court.  Fed. R. Civ. P. 23.  The Court of Appeals for the Second Circuit and district courts within the Circuit, including this one, have admonished that the class certification requirements of Rule 23 are to be construed liberally.  *See, e.g., Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997); *In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 45 (S.D.N.Y. 2013); *In re SLM Corp. Sec. Litig.*, 08 Civ. 1029 (WHP), 2012 U.S. Dist. LEXIS 8158, at *9 (S.D.N.Y. Jan. 24, 2012).  The Second Circuit has also explicitly noted its preference for class certification in securities cases.  *See Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 54 (S.D.N.Y. 1993) (citing *Escott v. Barchris Constr. Corp.,* 340 F.2d 731, 733 (2d Cir.), *cert. denied*, 382 U.S. 816 (1965)).

For a class to be certified, the court must determine that the following four requirements contained in Rule 23(a) are satisfied: (1) the class must be so numerous that joinder of all

members is impracticable ("numerosity"); (2) there must be questions of law or fact common to class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy of representation").  Fed. R. Civ. P. 23(a); *see also Marisol*, 126 F.3d at 375-76; *Smith Barney*, 290 F.R.D. at 45; *Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112, 115-118 (S.D.N.Y. 2008).  The requirements of commonality and typicality "tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)."  *Marisol*, 126 F.3d at 376.

In addition to these requirements, one of the alternative requirements of Rule 23(b) must also be met.  *Marisol*, 126 F.3d at 376; *Smith Barney*, 290 F.R.D. at 45; *SLM*, 2012 U.S. Dist. LEXIS 8158, at *8.  Here, Lead Plaintiff is seeking class certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23 (b)(3); *see also Smith Barney*, 290 F.R.D. at 45; *SLM*, 2012 U.S. Dist. LEXIS 8158, at *8; *Bank of America*, 281 F.R.D. at 138.  These two requirements are often described as "predominance" and "superiority." *See SLM*, 2012 U.S. Dist. LEXIS 8158, at *8.

This case has all the hallmarks of a Rule 23(b)(3) class action.  The proposed Class consists of a large group of geographically dispersed purchasers of BofA securities over a period of one and a half years who sustained damages as a result of a common set of material facts that were misrepresented or omitted by Defendants.  Indeed, courts in this Circuit and elsewhere have long recognized that class actions are a particularly appropriate means for resolving claims for violations of the securities laws.  *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625

(1997) ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws"); *see also Kelleher v. ADVO, Inc.,* Civil No. 3:06CV01422(AVC), 2009 U.S. Dist. LEXIS 68914, at *17 (D. Conn. Mar. 30, 2009) ("The Second Circuit has repeatedly affirmed that class actions are particularly appropriate for resolving securities fraud actions such as the instant case"); *In re Vivendi Universal, S.A. Sec. Litig.,* 242 F.R.D. 76, 91 (S.D.N.Y. 2007) (same); Fed. R. Civ. P. 23, Advisory Committee Notes (1966) ("a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action").

As further set forth below, Lead Plaintiff has satisfied each of the Rule 23 requirements and its motion for class certification should be granted.

### A.    Rule 23(a) is Satisfied

#### 1.    The Members of the Class Are So Numerous That Joinder of All Members Is Impracticable

The first subdivision of Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); *Fogarazzo v. Lehman Bros., Inc.,* 263 F.R.D. 90, 96 (S.D.N.Y. 2009).  "Impracticable," however, does not mean "impossible," as "joinder may merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims."  *Fogarazzo,* 263 F.R.D. at 96; *see also Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir. 1993)).  The Second Circuit and courts within it have repeatedly held that numerosity is generally presumed when the proposed class would have at least 40 members.  *See In re Dynex Capital, Inc. Sec. Litig.,* 05 Civ. 1897 (HB), 2011 U.S. Dist. LEXIS 22484, at *4 (S.D.N.Y. March 7, 2011) (noting holding of *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995)); *see also Bank of America,* 281 F.R.D. at 138; *Lapin v. Goldman Sachs & Co.,* 254 F.R.D. 168, 175 (S.D.N.Y. 2008).

Moreover, in securities fraud cases relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.  *See, e.g., Bank of America*, 281 F.R.D. at 138; *see also In re Deutsche Telekom AG Sec. Litig*., 229 F. Supp. 2d 277, 280 (S.D.N.Y. 2002) ("Class certification is frequently appropriate in securities fraud cases involving a large number of shares traded publicly in an established market.").  Because securities cases usually involve a large number of publicly-traded shares and/or other securities, with hundreds if not thousands of potential class members dispersed throughout the country, the numerosity requirement is often, as it is here, undisputed in such cases.  *See SLM*, 2012 U.S. Dist. LEXIS 8158, at *9.

Here, the Class is so numerous that joinder of all members is impracticable.  Around the beginning of the Class Period, BofA had over 6.4 billion shares of common stock issued and outstanding, and thereafter, on December 4, 2009, issued 1.286 billion shares of CES with a total market value of $19.29 billion.  ¶¶127-131; *see also* Declaration of Jeffrey W. Golan in Support of Lead Plaintiff's Motion for Class Certification ("Golan Decl."), attached as Exhibit B to the Rosen Decl., at ¶10.  Those CES converted to BofA common stock on a 1-for-1 basis on February 24, 2010, *see* Golan Decl. at ¶10, and, by the end of the Class Period, BofA had over 10 billion shares of common stock issued and outstanding.  Moreover, BofA's market capitalization totaled nearly $140 billion in September, 2010, just before the events that Lead Plaintiff alleges revealed the extent and nature of the risks facing BofA that had been concealed from investors.  Also, for the entirety of the Class Period, BofA was one of the 30 constituents of the vaunted Dow Jones Industrial Average, and over the course of the Class Period an average of 258.9 million BofA common shares were traded *each day*.  *See* Golan Decl. at ¶16.  All of these

facts conclusively demonstrate that numerosity is satisfied.  *See Bank of America*, 281 F.R.D. at 139 (finding numerosity satisfied because "BofA had between 4.6 billion and 6.4 billion outstanding shares of common stock during the class period, with an average daily trading volume of 133,640,000 shares").

    For the reasons above, and because Defendants do not contest that joining the thousands of Class members who reside in a geographically disbursed area would be burdensome and expensive, and thus impracticable, Lead Plaintiff has satisfied the numerosity requirement of Rule 23(a)(1).

        **2.    There Are Questions of Law and Fact Common to the Members of the Class**

    Rule 23(a)(2) requires that there be a question of law or fact common to the class.  *See Marisol*, 126 F.3d at 376 (commonality requirement is met "if plaintiffs' grievances share a common question of law or of fact").  Commonality (as well as the typicality requirement of Rule 23(a)(3)) "'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected.'"  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 n.5 (2011) (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157-58 n. 13 (1982)).  As such, commonality is "not defeated by slight differences in class members' positions," *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976), or because all of the allegations of the class do not fit together "like pieces in a jigsaw puzzle." *Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968), *cert. denied*, 395 U.S. 977 (1969); *see also In re Dynex*, 2011 U.S. Dist. LEXIS 22484, at *5 ("Class certification will not necessarily be precluded by differing individual circumstances of class members"); *In re Deutsche Telekom*, 229 F. Supp. 2d

at 281 ("Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members").  Indeed, the commonality requirement has been applied permissively by the courts in securities fraud actions because, in such actions, it is the defendants' acts and omissions that are at the center of the case. *See Bank of America*, 281 F.R.D. at 139 (quoting *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005)).

The "commonality" requirement, uncontested by Defendants, is easily satisfied here.  The Complaint alleges material misrepresentations in, and omissions from, SEC filings and other public statements that constitute a common course of wrongful conduct by Defendants in violation of the federal securities laws.  Courts have consistently found that such allegations of a common and consistent course of conduct to be the hallmark of securities actions certified under Rule 23.  *See, e.g., Green*, 406 F.2d at 300; *Blackie*, 524 F.2d at 901-02.  Indeed, the claims against Defendants are based upon common operative facts and the following common legal issues: (a) whether Defendants violated the federal securities laws; (b) whether the Company's SEC filings, press releases and other public statements made by Defendants during the Class Period contained misstatements of material fact or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; (c) whether the market prices of BofA securities during the Class Period were artificially inflated due to the material misrepresentation and/or non-disclosures alleged in the Complaint; (d) with respect to Plaintiffs' claims under Section 10(b) of the Exchange Act, whether those Defendants acted with the requisite state of mind in omitting and/or misrepresenting material facts in the documents filed with the SEC, press releases and other public statements; (e) with respect to Plaintiffs' claims pursuant to Section 20(a) of the Exchange

Act, whether the Executive Defendants are controlling persons of the Company; and (f) the extent of damage sustained by Class members and the appropriate measure of damages.  ¶47.

Because this case presents common questions of law and fact, the commonality requirement is satisfied.  *Bank of America*, 281 F.R.D. at 139; *In re Vivendi*, 242 F.R.D. at 84.

### 3.      Lead Plaintiff's Claims Are Typical of the Claims of the Class

Rule 23(a)(3) requires that the claims of the class representatives be typical of those of the class and "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol*, 126 F.3d at 376 (quoting *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992)); *Smith Barney*, 290 F.R.D. at 45.  Typicality involves an analysis of the nature of the claims of the representative rather than the individual characteristics of the plaintiff, and when the same unlawful conduct was directed at or affected both the named plaintiff and the prospective class, typicality is usually met.  *Smith Barney*, 290 F.R.D. at 45-46 (quoting *Robidoux*, 987 F.2d at 936-37); *see also In re Vivendi*, 242 F.R.D. at 85 ("In prosecuting their case, plaintiffs will necessarily seek to develop facts relating to the … dissemination of allegedly false or misleading statements underlying their claims.  Such allegations are generally considered sufficient to satisfy the typicality requirement").  As with the commonality requirement, the typicality requirement is not demanding.  *In re Dynex*, 2011 U.S. Dist. LEXIS 22484, at *8.

Further, when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is met irrespective of minor variations in the fact patterns underlying individual claims.  As this Court has explained:

> The same material omissions that purportedly defrauded the named plaintiffs operated as a fraud on all shareholders.  To the extent that these incomplete disclosures injured the named plaintiffs, they injured all members of the proposed

10

>    class.  And the burden of demonstrating typicality is fairly easily met so long as
>    other class members have claims similar to the named plaintiff.

*Smith Barney*, 290 F.R.D. at 46 (internal quotes omitted); *see also*, *e.g.*, *In re WorldCom, Inc.*

*Sec. Litig.*, 219 F.R.D 267, 280 (S.D.N.Y. 2003) (citing *Robidoux*, 987 F.2d at 936-37).  Indeed,

typicality does not require that the situations of the named representatives and the class members

be identical.  *See In re Globalstar Sec. Litig.*, 01 Civ. 1748 (PKC), 2004 U.S. Dist. LEXIS

24164, at *11 (S.D.N.Y. Dec. 1, 2004).

     Here, the typicality requirement is satisfied, as the claims asserted by Lead Plaintiff are

based upon the same allegedly false and misleading statements contained in, or material facts

omitted from, the SEC filings, press releases, and other public statements that form the basis of

the claims of all Class members.  Lead Plaintiff, like other putative Class members, seeks to

recover damages for losses from the same false and misleading representations and omissions

made by Defendants throughout the Class Period in violation of the securities laws.  Lead

Plaintiff purchased substantial amounts of various BofA securities during the Class Period, and it

suffered losses like all other members of the Class, either as a result of sales made after

dissemination of certain partial corrective disclosures and/or through retention of such securities

until the end of the Class Period.  *See* Ex. A to the Rosen Decl.  The impact of the Defendants'

material misrepresentations and omissions affected all members of the Class in the same manner.

Since the losses of Lead Plaintiff and the class members arise out of the same wrongful course of

conduct, Lead Plaintiff's claims are typical of the claims of the Class.  *See Bank of America*, 281

F.R.D. at 139 (typicality satisfied where, "[a]s with the proposed class members, the class

plaintiffs assert that they acquired BofA securities at prices allegedly inflated by defendants'

misstatements and/or omissions, and have an interest in maximizing their recovery").

**4.    Lead Plaintiff Will Fairly and Adequately Protect the Interests of the Class**

Rule 23(a)(4) allows class certification if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Fogarazzo*, 263 F.R.D. at 97. This requirement is satisfied if (1) the named plaintiff has interests common with, and not antagonistic to, the Class' interests, and (2) the plaintiff's attorney is qualified, experienced and generally able to conduct the litigation. *Wagner*, 251 F.R.D. at 118; *In re WorldCom*, 219 F.R.D. at 282. The requirement of adequacy "is motivated by concerns similar to those driving the commonality and typicality requirements, namely, the efficiency and fairness of class certification." *Marisol*, 126 F.3d at 378.

This Court has repeatedly admonished that, in the context of complex securities litigation, attacks on the adequacy of the class representative based on the representative's ignorance or credibility are rarely appropriate. *Smith Barney*, 290 F.R.D. at 46; *SLM*, 2012 U.S. Dist. LEXIS 8158, at *23. And this Court has also rejected various challenges to a proposed representative's adequacy where defendants' criticisms did not relate to the representative's claims or threaten to become the focus of the litigation. *SLM*, 2012 U.S. Dist. LEXIS 8158, at *23-*30.

Here, Lead Plaintiff clearly satisfies both prongs of Rule 23(a)(4)'s adequacy test. The first requirement, which overlaps with the commonality and typicality prerequisites, asks whether the class representatives "possess the same interest and [have] suffer[ed] the same injury as the class members." *Amchem Prods.*, 521 U.S. at 625-26; *see also In re Vivendi*, 242 F.R.D. at 85 (recognizing that "the issues of typicality and adequacy tend to merge"). Lead Plaintiff has no interests that are antagonistic to those of the Class. Indeed, as a purchaser of BofA securities who suffered losses as a result of such investments, Lead Plaintiff's interests are directly aligned with the interests of all Class members. Lead Plaintiff and the absent Class members have

precisely the same interest in proving that Defendants violated the securities laws and in achieving the maximum recovery possible. *See Bank of America*, 281 F.R.D. at 140 (adequacy satisfied where the interests of the proposed class representatives were not antagonistic to those of the proposed class members); *Darquea v. Jaden Corp.*, 06 Civ. 722 (CLB), 2008 U.S. Dist. LEXIS 17747, at *9 (S.D.N.Y. Mar. 6, 2008) (finding adequacy requirement satisfied where "[a]ll claims alleged arise from the same wrongful conduct" and plaintiffs' interests in a recovery were "similar to the [interests of] the proposed class").

Indeed, given the host of legal and factual issues that are common to the Class, there can be no doubt that the claims asserted by the Lead Plaintiff and those asserted by the Class are so interrelated that the interests of the Class will be fairly and adequately protected by the Lead Plaintiff.  PSERS, for example, made purchases of BofA common stock that spanned virtually the entire Class Period, from beginning to end, and also purchased BofA's CES in that offering. *See* Exhibit A to Rosen Decl.  As a result, notwithstanding any changes in market conditions or BofA disclosures that may have occurred over the course of the Class Period, PSERS is ideally suited to pursue claims on behalf of the entire Class, and its interests in pursuing those claims are aligned with the interests of Class members generally.

As to the second prong of the adequacy requirement, Lead Plaintiff has retained counsel highly experienced in securities class action litigation to prosecute its claims and the claims of the Class.  Barrack, Rodos & Bacine has extensive experience litigating securities law class actions on behalf of injured investors and has obtained some of the most significant recoveries in this area of the law.  *See* Rosen Decl., Ex. C (firm resume of Barrack, Rodos & Bacine).  There should be no legitimate dispute that Lead Counsel is qualified, experienced, and capable of prosecuting this litigation on behalf of the Class.  *See Saddle Rock Partners Ltd. v. Hiatt*, 96 Civ.

9474 (SHS), 2000 U.S. Dist. LEXIS 11931, at *17 (S.D.N.Y. Aug. 21, 2000) (adequacy satisfied where plaintiff's counsel has significant experience in complex securities actions).  Thus, Rule 23(a)(4)'s adequacy requirement is satisfied.

### B.      Rule 23(b)(3) Is Satisfied

In addition to satisfying the prerequisites of Rule 23(a), to qualify for class certification, an action must satisfy at least one of the requirements of Rule 23(b).  *See Lapin*, 254 F.R.D. at 180; *In re Vivendi*, 242 F.R.D. at 83.  Lead Plaintiff seeks certification under Rule 23(b)(3), which provides that a class action may be certified if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

Thus, the Rule 23(b)(3) inquiry into predominance and superiority "trains on the legal or factual questions that qualify each class member's case as a genuine controversy ... [and] tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623; *Bank of America*, 281 F.R.D. at 140.  Rule 23(b)(3) is satisfied by "quintessential securities fraud class action[s]" such as this one because there exists "[a]n enormous group of potential plaintiffs" seeking to recover damages and the focus of this litigation is upon the defendants' conduct and defendants' potential liability. *In re Priceline.com Inc. Sec. Litig.*, 236 F.R.D. 89, 101-02 (D. Conn. 2006); *see also In re Deutsche Telekom*, 229 F. Supp. 2d at 282 ("Courts have recognized that class actions are generally appropriate when plaintiffs seek redress for violations of the securities laws").

Defendants do not contest Lead Plaintiff's assertion that the requirements of Rule 23(b)(3) are satisfied here.

1.      **Issues Common to the Class Predominate Over Issues That Are Not Common to the Class**

Predominance is met "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof."  *In re Vivendi*, 242 F.R.D. at 90 (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).  As the Supreme Court noted in *Amchem Prods.*, "[p]redominance is a test readily met in certain cases alleging ... securities fraud."  521 U.S. at 625 (citing Fed. R. Civ. P. 23, Advisory Committee Notes (1966)); *see also In re Vivendi*, 242 F.R.D. at 90.

Applying these standards, it is clear that common questions of fact and law predominate over individual questions because the central questions relating to Defendants' liability are common to the Class, *e.g.*, whether Defendants made material misrepresentations and/or omissions with the requisite scienter, thereby injuring Plaintiffs and the Class members who purchased BofA securities during the Class Period; and whether the Executive Defendants are controlling persons with respect to the Section 10(b) claims asserted against BofA.  The alleged misrepresentations and misleading statements and omissions in this case were contained in SEC filings, press releases, and other public statements disseminated into the public market by Defendants, which statements and omissions were not fully corrected until the end of the Class Period.  Thus, the common questions of law and fact relating to the Defendants' liability impact all members of the Class and predominate over questions affecting solely individual members. Any slight difference among the claims of putative class members do not predominate over the common issues.  As the Ninth Circuit commented in *Blackie v. Barrack*:

> The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement.  Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of

> conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.…
>
> The availability of the class action to redress such frauds has been consistently upheld … in large part because the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws.

524 F.2d at 902-03 (citations omitted); *see also Green*, 406 F.2d at 294.

While reliance is an essential element of a Rule 10b-5 claim, to the extent Lead Plaintiff relies on allegations of material omissions or half-truths to support its claims, reliance on those omissions or half-truths is presumed. *See In re Dynex*, 2011 U.S. Dist. LEXIS 22484, at *19-21 (citing *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972)). As it relates to securities fraud claims based on omissions or half-truths, "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." *Affiliated Ute*, 406 U.S. at 153-54. As this Court has explained, this is so because, where a defendant's fraud consists primarily of omissions, requiring a plaintiff to show a speculative set of facts to prove reliance (*i.e.*, plaintiff's behavior if omitted material information had been disclosed) places an unrealistic evidentiary burden on that plaintiff. *Smith Barney*, 290 F.R.D. at 47-48.

Here, Lead Plaintiff has alleged, among other things, that Defendants made numerous representations that were highly misleading, in part because they failed to disclose the full set of risks associated with BofA's use of MERS and exposure to repurchase demands. *See generally* ¶¶1-27, 49-292, 300-20. As such, to the extent that Defendants' alleged omissions and half-truths as detailed in the Complaint played a significant and interdependent role in the alleged fraud, the *Affiliated Ute* presumption would apply. *See In re Dynex*, 2011 U.S. Dist. LEXIS 22484, at *19-21.

16

But as this Court has correctly noted, "[t]he distinction between misstatements and omissions is often illusory" because "[a] statement is misleading when it omits the truth." *Smith Barney*, 290 F.R.D. at 47. "Thus, in most securities fraud cases, an affirmative misstatement can be cast as an omission and vice versa," and as such "[d]ifferentiating misstatements from omissions is a futile logomachical exercise." *Id.* In this case, to the extent the claims asserted under Section 10(b) and Rule 10b-5 are based on Defendants' material misstatements rather than omissions, Lead Plaintiff is entitled to rely on the fraud-on-the-market theory, where reliance is also presumed. Lead Plaintiff accordingly is not required to plead any particular plaintiff's or class member's awareness of or reliance on any particular misstatement. *Basic v. Levinson*, 485 U.S. 224, 247 (1988) ("where materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price may be presumed"); *see also In re WorldCom*, 219 F.R.D. at 291-92. A claim of fraud on the market rests on the assumption that market prices of efficiently traded securities reflect all publicly available information, and that reliance on that market price is reasonable. *Id.*; *see also Lapin*, 254 F.R.D. at 182.

Here, Defendants do not contest that the market for BofA's common stock and CES was efficient throughout the Class Period. This is not surprising, given that (1) there were anywhere from approximately 6.4 billion to over 10 billion shares of BofA common stock issued and outstanding during the Class Period; (2) BofA was one of the 30 constituents of the Dow Jones Industrial Average; and (3) BofA stock traded on the New York Stock Exchange ("NYSE"). The fact that BofA common stock, along with BofA CES, traded on the NYSE is important because courts in this Circuit and elsewhere have held that the market for such a security is presumed to be efficient. *See Wagner*, 251 F.R.D. at 119 ("if a security is listed on the NYSE …

17

or a similar national market, the market for that security is presumed to be efficient") (internal quotation omitted); *see also Lapin*, 254 F.R.D. at 183 ("no argument could be made that the New York Stock Exchange is not an efficient market"); *In re DVI Inc. Sec. Litig.*, 639 F.3d 623, 634 (3d Cir. 2011) ("[T]he listing of a security on a major exchange such as the NYSE or the NASDAQ weighs in favor of a finding of market efficiency").

Additionally, Lead Plaintiff has submitted the Golan Decl., which analyzes BofA's common stock and CES under the requisite five factors for determining whether a particular market is efficient as set forth in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989), including: (1) trading volume; (2) coverage by securities analysts; (3) number of market makers; (4) eligibility for S-3 registration; and (5) empirical evidence that the security price reacts to material information. 711 F. Supp. at 1285-91. These *Cammer* factors are widely recognized and have been followed by courts in the Southern District of New York and elsewhere. *See* Golan Decl. at ¶8 n.13; *In re Dynex*, 2011 U.S. Dist. LEXIS 22484, at *11 (citing *Teamsters Local 445 v. Bombardier*, 546 F.3d 196, 204 n.11, 210-11 (2d Cir. 2008)); *In re Pfizer Sec. Litig.*, 282 F.R.D. 38, 53 n.9 (S.D.N.Y. 2012); *Wilkof v. Caraco Pharm. Labs., Ltd.*, 280 F.R.D. 332, 342-43 (E.D. Mich. 2012); *In re Juniper Networks Sec. Litig.*, 264 F.R.D. 584, 591 n.8 (N.D. Cal. 2009). Lead Plaintiff need only show these factors by a preponderance of the evidence. *Bombardier*, 546 F.3d at 202-04.

As shown below, each of these five relevant factors used in assessing market efficiency confirm that the market for BofA's common stock and CES was efficient throughout the Class Period. As such, Lead Plaintiff is entitled to the fraud-on-the-market presumption of reliance.

### i.       Trading Volume

In evaluating this factor, there is a strong presumption of market efficiency when at least 2% of a company's outstanding stock shares are traded on a weekly basis, and there is a substantial presumption of market efficiency where 1% of a company's outstanding shares are traded on a weekly basis.  *Cammer*, 711 F. Supp. at 1286, 1293; *see also In re Dynex*, 2011 U.S. Dist. LEXIS 22484, at *12; Golan Decl. at ¶14.  During the Class Period, BofA's common stock traded regularly and actively, averaging 258.9 million shares traded daily, which constituted an average weekly turnover of 15.94%.  Golan Decl. at ¶¶14-16.  Likewise, BofA's CES traded regularly and actively, averaging 18.7 million shares traded daily, which constituted an average weekly turnover of 7.17% of BofA's CES outstanding.  *Id*. at ¶¶14-15, 17.

This factor thus presents a strong indicator that BofA's common stock and CES traded efficiently during the Class Period.

### ii.       Analyst Coverage

"Extensive coverage by securities analysts likewise indicates market efficiency, since the price of a company's security is often affected by analysts' reports of information learned through their own investigation and analysis."  *In re DVI, Inc. Sec. Litig.*, 249 F.R.D. 196, 209 (E.D. Pa. 2008), *aff'd*, 639 F.3d 623 (3d Cir. 2011); *see also* Golan Decl. at ¶19 (citing *Cammer*, 711 F. Supp. at 1286).  During the Class Period there was an abundance of analyst coverage of BofA, by at least 19 separate equity analysts with at least 238 published analyst reports throughout the Class Period.  Golan Decl. at ¶21 and Exhibit 3.  In addition to this extensive analyst coverage, there was also significant news coverage of BofA throughout the Class Period, with thousands of articles published about the Company during that time in addition to 153 BofA SEC filings available online at EDGAR at no out-of-pocket cost, ensuring that information about

BofA was readily available to market participants. *Id*. at ¶22. Finally, a review of public sources reveals that institutional investors held, on average, 63.2% of the outstanding shares of BofA common stock during the Class Period, or well over a majority of those shares. *Id*. at ¶23 and Exhibit 4.[3] These undisputed facts provide further support that BofA's common stock and CES traded efficiently during the Class Period. *See In re DVI*, 249 F.R.D. at 209-10 (finding common stock traded efficiently where company was covered by three analysts).

### iii.     Market Makers

"The SEC defines a 'market maker' as 'a dealer who, with respect to a particular security, (i) regularly publishes bona fide, competitive bid and offer quotations in a recognized interdealer quotation system; or (ii) furnishes bona fide competitive bid and offer quotations on request; and (iii) is ready, willing and able to effect transactions in reasonable quantities at his quoted prices with other brokers or dealers.'" *In re Dynex*, 2011 U.S. Dist. LEXIS 22484, at *15 n.1 (quoting *Bombardier*, 546 F.3d at 206)). The existence of market makers ensures completion of the market mechanism, as these individuals react swiftly to company news and reported financial results by buying or selling stock and driving it to a changed price level. *Cammer*, 711 F. Supp. at 1286-87; *see also* Golan Decl. at ¶24.

---

[3]      This level of institutional investor ownership during the Class Period further supports the ability and adequacy of PSERS – itself a large public pension fund – to represent the Class. The PSLRA was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, among other reasons, institutional investors and other class members with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." H.R. Conf. Rep. No. 104-369, at 33, 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733; *see also Ferrari v. Impath, Inc.*, Consol. No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *10 (S.D.N.Y. July 20, 2004) (stating that institutional investors are the type of lead plaintiff that Congress wanted to encourage to participate in the litigation of these actions and exercise control over the selection and actions of plaintiff's counsel); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998) (noting the PSLRA encourages institutional investors to take a role in securities class actions).

BofA's common stock and CES both traded on the NYSE, which, as noted above, provides a powerful presumption that the securities traded in an efficient market, as the NYSE is one of the largest and most liquid securities exchanges in the world with billions of shares traded each day. Golan Decl. at ¶¶25-26 and n.26. Stocks trading on the NYSE trade under the supervision of a NYSE specialist, a leading and most important market maker for NYSE stocks, and there were at least 450 firms that brokered BofA securities during the Class Period. *Id*. at ¶¶26-27. The significant number of market makers provides further substantial support for the conclusion that these BofA securities traded efficiently during the Class Period. *Id.*

### iv.        S-3 Registration Eligibility

The court in *Cammer* recognized that a company's ability to file a Form S-3 Registration Statement is important to an analysis of market efficiency because, due to SEC restrictions on S-3 registration, only the largest and most well-known companies are able to do so. *See Cammer*, 711 F. Supp. at 1271 n.5, 1287. Here, not only was BofA eligible to undertake S-3 registration, but BofA filed a Form S-3ASR automatic shelf registration statement for use by well-known seasoned issuers during the Class Period on April 20, 2009. Golan Decl. at ¶¶28-31. As such, this factor similarly provides significant support that BofA's common stock and CES traded efficiently during the Class Period. *Id.*

### v.        Price Reaction To Unexpected, Material Disclosures

Evidence that unexpected corporate events or financial releases cause an immediate response in the price of a security has been considered the "essence of an efficient market and the foundation for the fraud on the market theory." *In re Dynex*, 2011 U.S. Dist. LEXIS 22484, at *15-16 (quoting *Bombardier*, 546 F.3d at 207-08). Here, reactions of BofA's common stock and CES to new, material information also support Lead Plaintiff's assertion that the market for

21

these BofA securities operated efficiently during the Class Period.  Golan Decl. at ¶35.  The

Golan Decl. examines BofA common stock movements in reaction to news events on a series of

six dates spanning the Class Period, factoring out other market and industry factors, and shows

that significant, company-specific news on those dates caused statistically significant price

reactions in the price of BofA common stock at the 95% confidence level.  *Id*. at ¶¶36-60.

Specifically, BofA-specific information caused statistically significant changes in BofA's

common stock price on March 9, 2009 (*id*. at ¶¶37-41); June 11, 2009 (*id*. at ¶¶42-45);

December 3, 2009 (*id*. at ¶¶46-50); February 17, 2010 (*id*. at ¶¶51-53);[4] July 16, 2010 (*id*. at

¶¶54-56); and October 19, 2010 (*id*. at ¶¶57-60).

     In sum, an analysis of the *Cammer* factors shows that BofA's common stock and CES

traded efficiently throughout the Class Period, entitling Lead Plaintiff to the fraud-on-the-market

presumption of reliance.  These analyses, combined with the fact that for purposes of this class

motion Defendants do not contest the efficiency of the market for BofA's common stock and

CES, demonstrate that the element of reliance does not pose an obstacle for class certification

with regard to BofA's common stock and CES.

## 2.    A Class Action Is the Best Method of Trying This Case

     The second requirement of Rule 23(b)(3) is "that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

23(b)(3); *In re WorldCom*, 219 F.R.D. at 304.  Here, Defendants do not contest that class action

treatment is clearly superior to any other method for the fair and efficient adjudication of the

controversy.  Rule 23(b)(3) sets forth the following factors to be considered in making a

"superiority" determination:

---

[4]    As noted in the Golan Decl., the market price of BofA's CES moved in tandem with the
common stock on February 17, 2010 – when the CES were outstanding – providing further proof
of the efficient trading of both the common stock and CES.  *Id.* at ¶¶12, 53 n.53 and Exhibit 2.

(A)     the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)     the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)     the likely difficulties in managing a class action.

Fed. R. Civ. P. 23 (b)(3); *In re Vivendi*, 242 F.R.D. at 91; *In re WorldCom*, 219 F.R.D. at 304.

Class actions are particularly well-suited to resolution of securities fraud cases.  *In re Vivendi*, 242 F.R.D. at 91 (citing cases); *Darquea*, 2008 U.S. Dist. LEXIS 17747, at *14 (securities suits "easily satisfy the superiority requirement"); *In re Deutsche Telekom*, 229 F. Supp. 2d at 282 (class actions "are generally well-suited to securities fraud cases such as this one because they avoid the time and expense of requiring all class members to litigate individually"). As Judge Cote noted in *In re WorldCom,* "should shareholders and bondholders file their own individual lawsuits, such suits would risk disparate results, threaten to increase the costs of litigation for all parties exponentially, pose an enormous burden for courts throughout the land, and encourage a race to judgment to obtain the limited funds that are available to fund any recovery that plaintiffs may win here." 219 F.R.D. at 304.  Further, "[f]ew individuals could even contemplate proceeding with this litigation in any context other than through their participation in a class action, given the expense and burden that such litigation would entail." *Id*. at 304.

As a result, a class action is not simply the best method but also is the only practicable method to resolve most class disputes - including this one - where any individual recovery could be relatively small and the burden of bringing suit relatively large.  *See*, *e.g.*, *Darquea*, 2008 U.S. Dist. LEXIS 17747, at *14 (stating that most violations of the federal securities laws "inflict

economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible").  Indeed, the alternatives to a class action are either no recovery for thousands or tens of thousands of purchasers of BofA securities or a multiplicity of suits resulting in the inefficient administration of litigation that follows in its wake.  *See, e.g., Cromer Fin. Ltd. v. Berger,* 205 F.R.D. 113, 133 (S.D.N.Y. 2001). Considerations of public policy, judicial economy, and access to justice thus underscore the superiority of the class action in this case.

For the reasons stated above, this action is appropriate for class certification.

## C.    Lead Counsel Should be Appointed Class Counsel

Lead Plaintiff also requests that this Court appoint Barrack, Rodos & Bacine as Class Counsel in accordance with Fed. R. Civ. P. 23(g).  In appointing Class Counsel, the court must consider (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Barrack, Rodos & Bacine has an abundance of complex litigation experience, including numerous successful securities class actions.  *See* Exhibit C to Rosen Decl. (firm resume of Barrack, Rodos & Bacine).  Further, Barrack, Rodos & Bacine has already undertaken a vigorous prosecution of this action, including conducting an initial, extensive investigation of the claims, filing the initial consolidated complaint and current operative Complaint, defeating Defendants' motions to dismiss, defeating Defendants' motions for reconsideration of the Court's Orders on the dismissal motions, issuing comprehensive document requests to the Defendants, issuing discovery requests via subpoenas to numerous third parties, conducting numerous meet and confer sessions with counsel for Defendants and other non-parties, reviewing countless pages of

documents produced thus far by Defendants and non-parties, responding to the Defendants' document requests addressed to Lead Plaintiff, producing documents of Lead Plaintiff, and pursuing class certification.

Through these efforts, Barrack, Rodos & Bacine has demonstrated its commitment to this action and has invested, and will continue to invest, the vast resources necessary to litigate the case to a successful conclusion. Accordingly, under the considerations identified in Rule 23(g)(1), Lead Counsel has demonstrated that it is qualified for appointment as Class Counsel.

## III.    CONCLUSION

For the reasons stated herein, Lead Plaintiff respectfully requests that the Court certify this action as a class action pursuant to Rules 23(a) and (b)(3), certify Lead Plaintiff as the representative of the Class, and further certify Barrack, Rodos & Bacine as Class Counsel, as sought in Lead Plaintiff's proposed form of Order.

Dated:  November 15, 2013                              Respectfully submitted,

                                                       **BARRACK, RODOS & BACINE**
                                                       A. Arnold Gershon
                                                       William J. Ban
                                                       Michael A. Toomey
                                                       425 Park Avenue, 31st Floor
                                                       New York, NY 10022
                                                       Telephone: (212) 688-0782
                                                       Facsimile: (212) 688-0783

                                                                -and-

**BARRACK, RODOS & BACINE**

By:   /s/ Mark R. Rosen
Leonard Barrack
Mark R. Rosen
Jeffrey A. Barrack
Jeffrey B. Gittleman
Chad A. Carder
Julie B. Palley
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Fax: (215) 963-0838

*Attorneys for Lead Plaintiff Pennsylvania
Public School Employees' Retirement
System and Lead Counsel for the Class*

Michele Ferencz
Chief Counsel
Steven Skoff
Assistant Counsel
Pennsylvania Public School Employees'
    Retirement System
5 North Fifth Street, 5th Floor
Harrisburg, PA  17101
Telephone:  (717) 720-4912
Fax:  (717) 783-8010

Sarah Yerger
Senior Deputy Attorney General
Civil Litigation Section
Office of Attorney General
15th Floor Strawberry Square
Harrisburg, PA  17120
Telephone:  (717) 705-2503
Fax:  (717) 772-4526

*Attorneys for Lead Plaintiff
Pennsylvania Public School Employees'
Retirement System*