UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PENNSYLVANIA PUBLIC SCHOOL EMPLOYEES' RETIREMENT SYSTEM, individually and on behalf of all others similarly situated, | : : : : | 11-CV-00733 (WHP) |
| Plaintiff, | : : | |
| v. | : : | CLASS ACTION |
| BANK OF AMERICA CORPORATION, et al., | : : : | JOINT STATUS REPORT CONCERNING DISCOVERY |

Lead Plaintiff, Pennsylvania Public School Employees' Retirement System ("Plaintiff"), and Defendants Bank of America Corporation, Brian T. Moynihan, Charles H. Noski, Kenneth D. Lewis, Neil Cotty and Joe L. Price (collectively "Defendants"), by their counsel, respectfully submit this Joint Status Report concerning discovery.

1.  On July 3, 2014, the Court issued an Order directing the parties to submit a joint status report on September 26, 2014.

2.  The parties have met and conferred concerning the status report, which they understand to focus principally on the status of discovery. The parties have the following to report to the Court.

**A.  Plaintiff's Report:[1]**

  **1.  Document Production.**

   **a. Plaintiff's First Request.** Plaintiff served its first request for production of documents upon Defendant Bank of America Corporation ("BofA") and the

---

[1] Defendants' response follows Plaintiff's Report.

individual Defendants on May 17, 2013. In June, 2013, BofA and the individual Defendants responded to that request.

b. **Plaintiff's Second Request.** Plaintiff served a second request for production of documents upon Defendant BofA on August 21, 2013. On September 23, 2013, Defendant BofA responded to that second request.

c. **The Parties Agree to Rolling Production of Documents.** In order to avoid any unnecessary delay in the production of documents, the parties agreed that Defendants would produce their documents on a rolling basis.

d. **The Deadline for Document Discovery.** The original deadline for substantial completion of document discovery was November 29, 2013. By orders dated December 3, 2013 and January 28, 2104, that deadline was extended to January 31, 2014, and then February 28, 2014, respectively in response to Defendants' requests.

e. **Defendant BofA's Representation to the Court of Substantial Completion of Document Production.** In Defendant BofA's January 24, 2014 letter requesting that the Court make February 28, 2014 the new deadline for substantial completion of discovery, Defendant BofA cited the resolution of "the remaining impasse" on the scope of the review and production of electronically stored information ("ESI"), and represented to the Court that it needed that additional month "to complete a review and production of this magnitude" in order to substantially complete its document production.

f. **Negotiations to Obtain Documents and Privilege and Redaction Logs.** Following Defendant BofA's responses to Plaintiff's discovery requests, the

parties engaged in months of meet and confer sessions concerning what documents Defendants would be willing to produce.  Not surprisingly, the vast majority of documents Defendant BofA ultimately produced to Plaintiff consisted of ESI, such as emails, power point presentations and the like.  The production of ESI was dragged out, particularly as it related to issues regarding MERS.

g. **Large Quantities of Documents Were Not Produced By the Deadline for Substantial Completion.**  As shown below, both the first and second sets of requests for production of documents had been served well in advance of the deadline for substantial completion of discovery, but, as events later demonstrated, Defendant BofA had  not produced significant quantities of documents by the Court-established deadline.  At the outset of the meet and confer sessions, Plaintiff sought to identify custodians who were likely to have relevant documents.  By December 2013, the parties had finalized an agreed-upon set of document custodians whose records would be searched and produced, including the designation of the custodians for the production of Defendant BofA's MERS documents.  In an April 8, 2014 email, Plaintiff informed BoA that it did not produce documents for 11 of the agreed-upon custodians, many of whom dealt with issues related to MERS.  By letter dated June 30, 2014, Plaintiff's counsel noted that Plaintiff has been seeking production of documents from these custodians "*for close to a year*, and while we have been continually promised that the documents would be forthcoming, we are still awaiting these productions.  The resulting delays have impeded

our ability to conduct discovery in an orderly basis….Moreover, without these documents, we are unable to identify certain witnesses that we may want to depose." With respect to MERS, BofA did not begin to produce the majority of its documents until on or about August 1, 2014, five months after the Court's deadline for substantial completion of document discovery, and at least seven months after the parties had agreed upon the selection of the custodians of the MERS documents whose files would be searched for responsive materials. As of this date, Plaintiff is still awaiting production of additional MERS documents from BofA.

h. **Defendant BofA Makes Substantial Production of Documents After the February 28, 2014 Deadline.** As of the February 28, 2014 deadline, Defendants had produced 767,516 documents consisting of 6,863,153 pages of material. Subsequent to February 28, 2014, Defendants have produced another 154,403 documents consisting of 1,355,030 pages of material. Out of the more than 1.3 million pages of documents produced since the substantial completion deadline, over half a million pages of documents were produced in the month of August, 2014, and there have been additional productions since that time.

i. **Failure to Produce Prior Deposition Transcripts and Exhibits.** Another problem with Defendants' production of documents involves the belated productions of prior deposition transcripts and exhibits for those deponents. During the course of our meet and confer conferences, Defendants had agreed that certain prior deposition transcripts and exhibits of witnesses noticed for

4

deposition would be produced well in advance of those depositions. However, such prior depositions transcripts and exhibits have not always been produced. For example, in the case of Laura Milleman, a prior transcript was produced, without providing the accompanying exhibits, the night before her deposition.

j. **Productions of Witness Documents After Depositions Have Taken Place.** Defendants have produced tens of thousands of pages of documents, and in one case hundreds of thousands of pages, for witnesses who were already deposed, *after* their depositions. Examples of document productions made from custodian files of witnesses after the witnesses had been deposed include:

   i. Martin (88,246 pages);
   ii. Chen (202,841 pages);
   iii. Simantel (59,236 pages); and
   iv. Milleman (9,037 pages).

k. **Withholding and Redactions of Documents.** In the course of Defendant BofA's document production, massive quantities of documents have been redacted or completely withheld from production. On July 11, 2014, five months after the substantial completion deadline, Defendant BofA produced its first series of privilege logs. The logs amount to approximately 15,000 pages, including one log of more than 13,000 pages. These logs identify approximately 90,000 documents withheld or redacted on grounds of various asserted privileges. The late production of these logs has hindered Plaintiff's

ability to understand the nature of redactions, the particular grounds Defendant BofA has employed in withholding and redacting documents, and whether BofA's protocol for doing so is appropriate.  Plaintiff has engaged in, and is continuing to engage in, a series of meet and confer sessions with BofA's counsel concerning the withholding and redaction of documents and the logs that BofA's counsel provided concerning withheld and redacted documents in an effort to eliminate or narrow the areas of dispute.

2. **Scheduling and Conducting Depositions.**

   a. **Attempts to Cooperate.**  Plaintiff has endeavored to cooperate with Defendants in scheduling depositions at dates that are mutually convenient for the parties and the witnesses.  Plaintiff first asked Defendants on April 22, 2014 to produce certain named witnesses for deposition in late May or early June, and gave defense counsel a list of their second wave of requested deponents on May 9, 2014.  Plaintiff's counsel wrote again to Defendant BofA's counsel (who advised Plaintiff's counsel that they represented each deponent) on May 21, 2014, stating that a month had passed and no dates had been provided for any depositions.

   b. **Plaintiff Provides List of Proposed Deponents.** On July 14, 2014, Plaintiff's counsel provided defense counsel with a non-exhaustive list of 23 additional depositions that they wanted to conduct, and the approximate order in which they wanted to take them, and asked for defendants' voluntary cooperation scheduling the depositions.  Despite repeated follow up requests, Defendants initially failed to provide deposition dates for a significant number of the 23

witnesses. On September 15, 2014, Plaintiff advised BoA that it intended to take depositions of five additional witnesses, whose documents were just recently produced, and asked for convenient dates for these depositions. It was only after Plaintiff gave Defendants a draft on this joint status report on Friday, September 19, 2014, which stated that it "is awaiting dates for depositions of approximately 18 witnesses, all of which need to be scheduled in the next three months," that BofA responded to Plaintiff's request. BofA then offered dates and locations for ten requested deponents, and stated that they should have dates for additional deponents shortly. This left Plaintiff with a total of nine requested witnesses from the July 14th list, including four of the five executive defendants, whose depositions still need to be arranged (as well as additional witnesses whose depositions Plaintiff may notice in the future after reviewing documents produced by Defendants and non-parties).

c. **Depositions of Defense Witnesses to Date.** As of the date of this joint status report, Plaintiff has conducted nine depositions of present or former employees of Defendant BofA, and has scheduled or subpoenaed eight additional depositions.

d. **Deposition of Plaintiff's Witnesses to Date**. Defendants have deposed two designees of the Plaintiff, and have asked for the depositions of five individuals whom Defendants believe to be confidential witnesses ("CWs"). As of the date of this report, Plaintiff has produced for deposition two of the CWs identified by Defendants, and is working to secure dates when two other CWs are available to be deposed. Plaintiff also advised Defendants that the

fifth individual Defendants identified is not a CW and that Plaintiff is not in a position to secure his voluntary appearance for deposition. Even though Defendants never formally requested the CWs to produce any documents they possessed, about one week prior to the deposition of one of the CWs, Plaintiff's counsel was provided for the first time with the only document that CW had, and Plaintiff's counsel promptly produced that document to Defense counsel prior to his examination. The second CW who was deposed had provided no document to Plaintiff's counsel.

3. **Failure to Timely Respond to Meet and Confer Communications Concerning Depositions.** Plaintiff's counsel have engaged in a lengthy series of telephone calls and written correspondence with Defendant BofA's counsel to try to resolve discovery issues, going back to 2013, and participated in extensive meet and confer sessions concerning what Defendants would be willing to produce. Unfortunately, Defendant BofA did not timely respond to a number of Plaintiff's communications seeking to resolve discovery issues that have arisen at various depositions, which were followed up in subsequent correspondence, including the following:

    a. **Requests from Kathryn Martin Deposition.** On June 24, 2014, Kathryn Martin, a current BofA employee, testified about file request reports and indicated that they would have been saved on internal shared drives. At the deposition, counsel for Defendant BofA stated that he did not know whether all of those reports had been produced and agreed to look into this. Plaintiff sent a follow up letter on July 9, 2014 asking Defendant BofA's counsel whether all of those reports had been produced, and to either provide the Bates range of their production or to promptly produce any reports that had not yet

been provided. No response to that request was received until the eve of filing this joint status report, when on September 23, 2014, BofA's counsel reported "[w]e have been unable to ascertain the specific document(s)" about which Ms. Martin had some recollection and therefore "cannot produce the additional document(s) in response to Plaintiff's request or confirm that the document(s) appear in the previous production."

b. **Requests from Cynthia Simantel Deposition.** In the deposition of Cynthia Simantel on July 17, 2014, the witness testified about "playbook" documents that were given to BofA personnel who deal with BofA counterparties on repurchases. By letter dated July 23, 2014, Plaintiff's counsel asked Defendant BofA's counsel to advise whether there were any playbook documents that were not produced and, if so, to promptly produce them. Again, no response was provided to that July 23rd request until September 23rd, when, two months after Ms. Simantel's deposition, BofA asserted, for the first time, that the requested document was privileged and "[t]o the extent this document is not logged, it will be logged promptly."

c. **Requests from Laura Milleman Deposition.** By letter dated August 15, 2014, Plaintiff's counsel wrote to Defendant BofA's counsel when Plaintiff learned at the deposition of Laura Milleman on August 8, 2014, that she kept certain hard copy files in her possession that would include documents responsive to Plaintiff's document requests. Plaintiff's counsel discovered that, despite the parties' prior agreement that such hard copy files would be searched and the relevant documents produced for each custodian, Defendant

BofA's counsel had not produced any of those documents. Based upon this disclosure in the course of the deposition of Ms. Milleman, Plaintiff's counsel requested that Defendant BofA's counsel inquire of each custodian, including prior deponents, whether they kept hard copy files and, if so, to immediately produce any responsive documents from those files. No response was received to that letter until September 23rd, when BofA's counsel stated "[w]ith respect to deponents prior to Laurie Milleman's testimony (Brad Weber, Kathryn Martin, Scott Kurzban and Elizabeth Chen), there are no hardcopy documents to produce," Ms. Simantel "believes that she has no hardcopy documents, but we have asked that she do additional diligence to confirm that," and "for deponents subsequent to Ms. Milleman's testimony up to Mr. Solomon, we have advised about hardcopy documents."

4. **Delay in All Aspects of Discovery.** Plaintiff's counsel sincerely appreciates, and believes that it has reciprocated, the courtesy and professionalism displayed by Defendants' counsel in the parties' interactions. From the time Defendants' served their responses to Plaintiff's first set of document requests in June 2013 through the present day, Plaintiff's counsel has continually engaged Defendants' counsel in an attempt to address any legitimate concerns, repeatedly narrowed or limited document requests, both in terms of the time period covered and the selection of the custodians whose documents would be searched, and otherwise tried to resolve discovery issues in the spirit of cooperation envisioned by the rules of procedure without the intervention of the Court. However, over the past few months it has become apparent, as noted above, that the discovery process has been delayed and Plaintiff believes there is now a

significant risk that fact discovery will not be completed by the current December 31, 2014 deadline.

**B.      Defendants' Report**.

It has become apparent that Plaintiff is attempting to use its submission to obtain some sort of perceived leverage on the eve of mediation and mischaracterizes the state of the discovery record.  The undisputed fact is that Defendants have undertaken massive discovery efforts, incurring tremendous costs in both time and money, without a single discovery dispute having been raised with the Court.  Plaintiff's representation of discovery misconstrues what has been an extraordinary effort on the part of Defendants to respond to onerous discovery requests.  Defendants have produced more than 8 million pages of documents from over 70 custodians, brought in nine witnesses to testify and have provided dates for at least another 16 witnesses.  The scope of discovery provided by Defendants, based on allegations similar to those the SEC settled for $20 million on non-scienter based claims, truly says something about the Defendant's willingness to work and cooperate with Plaintiff.  Defendants have produced far more than one would expect in a case of this kind.  Plaintiff's unfounded complaints notwithstanding, they have been provided with an extraordinary amount of information in the discovery process, Defendants have actively communicated with Plaintiff, gone to exceptional lengths to satisfy Plaintiff's overly broad requests and have substantially met all of the deadlines agreed to between the parties.  Plaintiff even acknowledges that Defendants met the February 28, 2014 deadline for substantial completion of document discovery, producing 84% of responsive materials by that time (6.9 million pages out of a total production of 8.2 million pages).[2]

---

[2] And much of the documents produced after the February deadline was the result of resolving disputes over additional discovery.

11

This is the third status report being filed with the Court.  The most recent one was submitted on June 27, 2014, and was followed by a teleconference with the Court on July 30, 2014, on which the Court asked whether anyone had any other matters to bring to the Court's attention.  Plaintiff did not raise any of the concerns raised in this Status Report, despite that many of the issues Plaintiff is now raising predate that report and call.  To the contrary, in prior communications with the Court, Plaintiff's counsel has extolled the professionalism and cooperation of Defendants' counsel and recognized the tremendous efforts being taken by Defendants and their counsel.

In preparing for this submission, Defendants reached out to Plaintiff with the belief that the parties would be submitting a similar report to the last one.  In response, Plaintiff never said that there were outstanding issues they wanted to raise with the Court.  Instead, Plaintiff asked only to submit the report a few days early (because of Rosh Hashanah), and noted that it wanted to describe the discovery that has taken place thus far in detail because of concerns about completing fact discovery by the existing deadline—without suggesting that these concerns were the result of failures by Defendants.

Any delays in discovery have been caused by Plaintiff's extremely broad requests.  As we have tried to explain to Plaintiff on multiple occasions, such broad requests were not necessary, and it has taken an inordinate amount of time and resources to comply with them.  Defendants have produced more than 8 million pages of documents from over 70 custodians.  Defendants have already produced 9 witnesses for a total of more than 37 hours of total

testimony, and have scheduled 16 additional witnesses. We are also in the process of scheduling another 7 witnesses. (Plaintiff has withdrawn its requests for at least three depositions.)[3]

It has now become apparent that, as far as the merits are concerned, discovery is not going as Plaintiff anticipated. In fact, the first so-called confidential witness to be deposed (CW-5) has conceded that he does not have any first-hand knowledge regarding the Class Period allegations based on information that he provided. Nor could he have such knowledge as he was not even an employee during the Class Period, a fact that Plaintiff knew or should have known but did not include in the Complaint. And just yesterday, another confidential witness was deposed, and also disavowed the allegations attributed to him.

Defendants' responses to Plaintiff's above assertions include, but are not limited to, the following:

- <u>Substantial Completion of Document Discovery (item A.1.g)</u>: Plaintiff's report omits much of the history of discussion between Plaintiff and counsel for Bank of America, including that it was the reason for much of the delay. The length of and delays in discovery have been caused by Plaintiff's extremely broad requests, requiring substantial meet and confers. As to the issue of MERS custodians, during 2013 negotiations on the scope of ESI discovery, Defendant Bank of America made a proposal that five custodians who appear in the April 8, 2014 email be considered the "MERS custodians" (Lance Bell, Jefferson Davis, Tim Forest, Sharon Mason and Mark Ulmer), and sought confirmed agreement on the custodian list. Prior to April 8, 2014, we never received a definitive response from Plaintiff on the set of MERS custodians. After further meet-and-confer

---

[3] Plaintiff's implication that Defendants only provided deposition dates in response to the draft status submission is a further mischaracterization. Not only was Plaintiff well aware that we were in the process of obtaining dates, including from many former employees, but Plaintiff only added this attack *after* receiving our draft submission.

sessions, Plaintiff agreed that a production by August 1, 2014 would be satisfactory. Defendant Bank of America met this deadline. With respect to three custodians, there was thereafter a disagreement about the scope of a prior agreement, which was subsequently resolved, and the Bank produced the agreed-upon documents for the agreed-upon custodians by the agreed-upon date with Plaintiff, which was one month after the submission of the previous written status report and two days after the most recent court appearance where Plaintiff did not raise any concerns.[4]

- Deposition Scheduling (*e.g.*, items A.2.a and A.2.b): As of the end of September, Plaintiff will have taken depositions of nine current or former Bank employees. Defendants have proposed dates for an additional 16 current or former employees during October and November. Plaintiff has asked for the depositions of the five executive defendants during the month of December. We do not anticipate any issues with respect to setting dates in December for these witnesses. What remains are proposed dates for one current and three former employees. We believe that these dates can be scheduled before the end of the year.

- Confidential Witnesses (item A.2.d): On July 10, 2014, counsel for the Bank requested deposition dates for confidential witnesses. Plaintiff's counsel has represented that all confidential witnesses are its clients. To date, Plaintiff has provided deposition dates for only two confidential witnesses. (One confidential witness is not a former Bank employee, and the Bank has been unable to identify him with sufficient specificity for Plaintiff to confirm his identity or schedule his

---

[4] While there are remaining documents to produce for these custodians, these are documents that were subject to further privilege analysis and will be produced either in their entirety (because no privilege will be claimed) or in redacted form. The documents should be produced by September 25, a few days after the parties' agreed–upon date.

14

deposition. Plaintiff has refused to identify him or any other confidential witness whom, based on limited information in the Complaint, the Bank cannot identify.) Also, it is noteworthy that, for one witness, Plaintiff, only a few days before the deposition earlier this month, produced a single document responsive to Bank of America's document requests served more than a year ago.[5]

- Follow Up Requests From Depositions: Plaintiff's report lists various items stemming from requests made at recent depositions. With respect to item A.3.a, the witness, who would be best positioned to identify the document(s), conducted a diligent search and was not able to locate the "ad hoc analysis" which the witness recalled not "having any specific name." We have been unable to ascertain the specific document(s) about which the witness had some recollection of something that may have been created years ago. Accordingly, we cannot produce the additional document(s) in response to Plaintiff's request or confirm that the document(s) appear in the previous productions.

- With respect to item A.3.b, the identified document is privileged. To the extent that it does not already appear on any privilege log, it will be logged.

- With respect to item A.3.c, the requested documents will be produced promptly. The witness testified that the hardcopy documents were print outs of documents that would have already been produced in her custodial ESI. Since this deposition, the Bank has communicated with Plaintiff to confirm whether there are custodial hardcopy documents for certain upcoming deponents, so it is inaccurate to say that the Bank has not responded to this request. The Bank also

---

[5] There may also be disputes related to these that may need to be raised with the Court.

has notified Plaintiff that for prior deponents there are no hardcopy documents to produce.

Recognizing that discovery issues can be challenging, we have consistently communicated to Plaintiff a willingness to undertake reasonable efforts to make sure that it has the discovery that it reasonably seeks and to ensure that it is not prejudiced by issues within our control that arose during the discovery process.  We stand by this willingness.

Dated:  September 24, 2014                               Respectfully submitted,

|     /s/ Mark R. Rosen |     /s/ Scott D. Musoff |
|---|---|
| A. Arnold Gershon (agershon@barrack.com) <br> William J. Ban (wban@barrack.com) <br> Michael A. Toomey (mtoomey@barrack.com) <br> BARRACK, RODOS & BACINE <br> 425 Park Avenue, 31st Floor <br> New York, New York  10022 <br> (212) 688-0782 <br><br> Leonard Barrack (lbarrack@barrack.com) <br> Mark R. Rosen (mrosen@barrack.com) <br> Jeffrey A. Barrack (jbarrack@barrack.com) <br> Jeffrey B. Gittleman (jgittleman@barrack.com) <br> Chad A. Carder (ccarder@barrack.com) <br> Julie B. Palley (jpalley@barrack.com) <br> BARRACK, RODOS & BACINE <br> 3300 Two Commerce Square <br> 2001 Market Street <br> Philadelphia, PA  19103 <br> (215) 963-0600 <br><br> *Attorneys for Lead Plaintiff Pennsylvania Public School Employees' Retirement System* | Jay B. Kasner (jay.kasner@skadden.com) <br> Scott D. Musoff (scott.musoff@skadden.com) <br> SKADDEN, ARPS, SLATE, <br>     MEAGHER & FLOM LLP <br> Four Times Square <br> New York, New York  10036 <br> (212) 735-3000 <br><br> Paul J. Lockwood <br> (paul.lockwood@skadden.com) <br> SKADDEN, ARPS, SLATE, <br>     MEAGHER & FLOM LLP <br> One Rodney Square <br> P.O. Box 636 <br> Wilmington, Delaware 19899 <br> (302) 651-3000 <br><br> *Attorneys for Defendant Bank of America Corporation* |

  /s/ Jeffrey David Rotenberg
Patrick J. Smith (patrick.smith@dlapiper.com)
Jeffrey David Rotenberg
(jeffrey.rotenberg@dlapiper.com)
John Michael Hillebrecht
(john.hillebrecht@dlapiper.com)
DLA PIPER US LLP (NY)
1251 Avenue of the Americas
New York, New York  10020
(212) 335-4500

*Attorneys for Defendant Brian T. Moynihan*


  /s/ Adam Jay Wasserman
Adam Jay Wasserman
(adam.wasserman@dechert.com)
Robert Jeffrey Jossen
(robert.jossen@dechert.com)
Katherine Keely Rankin
(keely.rankin@dechert.com)
DECHERT LLP
1095 Avenue of the Americas
New York, New York  10036-6797
(212) 698-3500

*Attorneys for Defendant Charles H. Noski*


  /s/ Ada Fernancez Johnson
Colby A. Smith (casmith@debevoise.com)
Ada Fernandez Johnson
(afjohnso@debevoise.com)
DEBEVOISE & PLIMPTON (DC)
555 13th Street, N.W.
Washington, D.C.  20004
(202) 383-8000

*Attorneys for Defendant Kenneth D. Lewis*

17

    /s/ Brian Marc Burnovski
Lawrence Jay Portnoy (portnoy@dpw.com)
Brian Marc Burnovski
(brian.burnovski@dpw.com)
Charles S. Duggan (charles.duggan@dpw.com)
DAVIS POLK & WARDWELL L.L.P.
450 Lexington Avenue
New York, New York  10017
(212) 450-4000

*Attorneys for Defendant Neil Cotty*


    /s/ Richard B. Harper
Richard B. Harper
(Richard.harper@bakerbotts.com)
BAKER BOTTS LLP (NY)
30 Rockefeller Plaza
44th Floor
New York, New York  10112
(212) 408-2675

Julia Guttman (julia.guttman@bakerbotts.com)
BAKER BOTTS LLP (DC)
1299 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
(202) 639-7700

*Attorneys for Defendant Joe L. Price*