```
     E7USPENC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    PIPEFITTERS LOCAL NO. 636 DEFINED BENEFIT PLAN, et al.,

4                 Plaintiffs,

5            v.                           11 Civ. 733 (WHP)

6    BANK OF AMERICA CORPORATION, et al.,

7                 Defendants.

8    ------------------------------x
                                          New York, N.Y.
9                                         July 30, 2014
                                          10:00 a.m.
10
     Before:
11
                    HON. WILLIAM H. PAULEY III,
12
                                           District Judge
13
                             APPEARANCES
14                           (Via Telephone)

15
     BARRACK, RODOS & BACINE
16        Attorneys for Plaintiff Pennsylvania Public Schools
     BY:  MARK ROSEN
17        JEFFREY GITTLEMAN

18   SKADDEN, ARPS
          Attorneys for Defendant Bank of America
19   BY:  CHRIS MALLOY
          DAVID CARNEY
20
     DAVIS POLK
21        Attorneys for Defendant Cotty
     BY:  BRIAN BURNOVSKI
22
     DEBEVOISE
23        Attorneys for Defendant Lewis
     BY:  ROGER LANDSMAN

24

25                          APPEARANCES
                            (Continued)
```

E7USPENC

DLA PIPER
     Attorneys for Defendant Moynihan
BY:  JOHN M. HILLEBRECHT

DECHERT
     Attorneys for Defendant Noski
BY:  ADAM WASSERMAN

BAKER BOTTS
     Attorneys for Defendant Price
BY:  JULIA GUTTMAN

1           THE COURT:  Good morning.  This is District Judge
2    Pauley.  You are on a speakerphone and a court reporter is
3    present reporting what is being said.  I have your e-mail
4    providing your appearances, which will be noted by the court
5    reporter at the start of the transcript.  I ask that each of
6    you identify yourselves each time you speak for my benefit and
7    for the benefit of the court reporter.
8           I sought a telephone conference with you after
9    receiving the proposed modification to the confidentiality
10   order.  I have some questions about it.  First, I would like to
11   understand from someone, what is the principal purpose of this
12   amendment to the confidentiality order?
13          MR. CARNEY:  Good morning, your Honor.  This is David
14   Carney from Skadden.  The principal purpose of the amendment to
15   the confidentiality order is to satisfy requirements of state
16   laws dealing with the parties' handling of confidential
17   information.  The Gramm-Leach-Bliley Act, the federal law
18   addressing confidential financial information, it does not
19   preempt all 50 state laws in the area.  Some state laws require
20   either notice or court-ordered subpoena to issue in order for
21   nonpublic bar or information to be disclosed outside of the
22   financial institution.
23          The purpose of the protective order amendment -- and
24   its language that has been used in a number of other Bank of
25   America cases, the purpose of the amendment is designed to put

1   aside the notice and the court-ordered subpoena requirements
2   recognizing that the documents that it will be producing will
3   be identified as confidential and the plaintiff presumably will
4   treat them in accordance with the protective order.
5           It is really designed to distress how the parties deal
6   with the production of confidential information.  If we come to
7   a point where confidential information would potentially be
8   disclosed, for example, as an exhibit, we would address that
9   individually or separately as the need arose.
10          THE COURT:  Mr. Carney, can I deem laws of multiple
11  jurisdictions satisfied without even looking to see what the
12  laws of those jurisdictions require?  That is essentially what
13  your stipulation does.
14          MR. CARNEY:  Your Honor, we believe so.  Numerous
15  other courts, including Judge Cote in litigation in the FHA
16  cases has entered substantially similar language.  But this
17  language appears in protective orders in the Bank of America's
18  litigation around security litigation that put their cases in
19  the commercial division than other federal and state cases.
20  There is substantial other precedence for the courts reaching
21  the same conclusion.
22          THE COURT:  In those other stipulations that have been
23  approved by judges, whether in the commercial division or Judge
24  Cote, is there a provision that explicitly prohibits the
25  disclosing parties from providing notice prior to disclosing

1   nonparty borrower information?
2              MR. CARNEY:  Your Honor, the language in this order in
3   paragraph 19 is nearly identical to that in the confidentiality
4   order entered by Judge Cote.  I am looking to pull up --
5              THE COURT:  Under what authority should I explicitly
6   prohibit financial institutions from complying with state law?
7   What is the purpose of that?
8              MR. MALLOY:  Your Honor, this is Chris Malloy, also
9   from Skadden.  I think the state laws that are at issue
10  typically state something along the lines of that the borrower
11  should be given notice that their financial information is
12  going to be used in ways that aren't otherwise contemplated by
13  their financial relationship with a bank, unless the court
14  concludes that such notice should be excused.  Then the idea of
15  this order would be to provide that kind of notice would be
16  excused here.
17             The reason for prohibiting the notice to the
18  borrowers, I think, is principally that if you have -- here we
19  have got potentially thousands and thousands of borrowers that
20  underlie the mortgage loans that are potentially collaterally
21  at issue in some of the issues in this case.
22             I think that the parties shouldn't be sending out
23  notices to these borrowers relating to this litigation in the
24  sense that it would potentially interfere with their
25  relationship was some of the institutions that are at issue and

1  things like that.  Obviously, if there is a specific need to
2  contact a specific borrower, that is something that the
3  plaintiffs or the defendants could approach the court with
4  respect to.
5          THE COURT:  Prohibiting financial institutions from
6  complying with state law strikes me as undermining the basic
7  principal of federalism.  Does it strike you that way,
8  Mr. Malloy?
9          MR. MALLOY:  Well, I don't think that this provision
10 would, for example, prohibit Bank of America from communicating
11 with borrowers on Bank of America loans.
12         THE COURT:  No.  It says --
13         MR. MALLOY:  I don't think this would be prohibiting
14 the parties from complying with a state law.  The state law
15 says that a borrower has to be notified before financial
16 information is disclosed, unless the court concludes that that
17 notice isn't required.  Here, we think this is a compelling
18 case that the notice shouldn't be required because there is a
19 protective order here and this litigation doesn't necessarily
20 involve the borrower or the borrower's information directly, it
21 is more how Bank of America and the other defendants dealt with
22 that information internally.  I don't think this is interfering
23 with any financial institution's compliance with state law.
24 Obviously, to the extent that, if that became an issue, that is
25 something that any of the parties here can come back to the

1  court for relief from.

2  THE COURT: I am looking at the third line on the
3  second page of the proposed paragraph 19, in addition to the
4  confidentiality order. It reads in part, "Disclosing parties
5  are explicitly prohibited from providing such notice in this
6  action."

7  While I may agree with you that there shouldn't be a
8  need for disclosure, what authority is there for me to
9  explicitly prohibit disclosing parties from providing such
10  notice?

11  MR. MALLOY: Well, your Honor has authority to govern
12  the parties before the court. And, here, the issue would be,
13  in effect, you're prohibiting the parties before this court
14  right now from communicating with what is arguably confidential
15  information, which is that some issue concern that a borrower's
16  loan has become part of this litigation.

17  Are you directing the parties before you from
18  communicating with that borrower, obviously, without obtaining
19  further relief from the court

20  THE COURT: But that is not what that says. That is
21  not what that says. Disclosing parties are nonparties to this
22  case, aren't they? Isn't that what this is about?

23  MR. CARNEY: I apologize, I don't have the rest of the
24  order in front of me. The definition of disclosing parties.
25  Disclosing parties are the parties to the litigation. So Bank

1  of America, for example, in our particular situation, is
2  producing these documents.
3          THE COURT:  Did Judge Cote expressly approve that
4  provision?
5          MR. CARNEY:  I am pulling up Judge Cote's order.  Give
6  me one moment.
7          I am just try to match up the two.  The language in
8  Judge Cote's order, I think the similar spot where you are, To
9  the extent that any borrower party information law requires
10 that any person or entity be notified prior to disclosure of
11 nonparty borrower information, where such notice is prohibited
12 by court order, the court directs that, in the view of the
13 protection provided for the information disclosed, it is
14 ordered that the following documents be produced.  Producing
15 parties are explicitly prohibited from providing such notices
16 in the action, provided however that this order shall not
17 prohibit any producing party from contacting any person or
18 entity for any other person.
19         THE COURT:  All right.
20         MR. CARNEY:  I think that is substantially similar,
21 but not verbatim, your Honor.
22         THE COURT:  It is not verbatim, but it is certainly
23 analogous.
24         Look, unless you have got something further to offer
25 to me, I will approve the stipulation, but not that last

1  sentence beginning with "to the extent," the penultimate
2  sentence.  I am not going to prohibit parties from complying
3  with state law.  I am prepared to say it is not necessary, but
4  I am not going to prohibit them.  I think that it is an affront
5  to federalism.  I don't know how anyone can say that there
6  should be a blanket prohibition with complying without knowing
7  what those state laws are.
8       MR. WASSERMAN:  Your Honor, this Adam Wasserman of
9  Dechert.  While I am much less informed on the specific issues
10 here, I would note that to the extent there is a federalism
11 concern, the way the language reads is that, to the extent any
12 nonparty borrower information law requires that it be notified
13 absent the court order.  The way that I read this on its face
14 is that the prohibition would be consistent with the state
15 laws, given that the state laws themselves would, in fact,
16 contemplate such an order from the court.
17      Again, I am much less familiar with these statutes
18 than Skadden or others, but taking a look at the language on
19 the face, perhaps that may address some of the federalism
20 concerns.
21      THE COURT:  In light of the colloquy that we have had
22 here, if you want to provide me, Mr. Carney, with some further
23 memorandum on this point, I will be glad to take a look at it.
24      MR. CARNEY:  Your Honor, we will do that.  The parties
25 will confer about amendments to that sentence that achieve the

E7USPENC

1  same goals that were designed while addressing your Honor's
2  concerns articulated today.
3          THE COURT:  Thank you very much, everyone.  While we
4  are all on the phone together, anything else?
5          MR. CARNEY:  Your Honor, not at this time.
6          THE COURT:  Have a good morning.  Take care.
7          MR. CARNEY:  Thank you.
8          MR. MALLOY:  Thank you, your Honor.
9                              - - -