UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
                                              :
PENNSYLVANIA PUBLIC SCHOOL          :       CIVIL ACTION NO.
EMPLOYEES' RETIREMENT SYSTEM,       :       11-CV-00733-WHP
individually and on behalf of all others   :
similarly situated,                         :
                                              :       CLASS ACTION
                Plaintiff,                  :
                                              :       **LEAD PLAINTIFF'S**
        v.                                  :       **MEMORANDUM OF LAW**
                                              :       **IN SUPPORT OF MOTION TO**
BANK OF AMERICA CORPORATION, et al., :       **COMPEL DISCOVERY WITH-**
                                              :       **HELD BASED UPON THE**
                Defendants.                 :       **ASSERTION OF THE BANK**
———————————————————————:       **EXAMINATION PRIVILEGE**


**BARRACK, RODOS & BACINE**              **BARRACK, RODOS & BACINE**
A. Arnold Gershon                        Leonard Barrack
William J. Ban                           Mark R. Rosen
Michael A. Toomey                        Jeffrey A. Barrack
425 Park Avenue, 31st Floor              Jeffrey B. Gittleman
New York, NY 10022                       Chad A. Carder
Telephone: (212) 688-0782                Julie B. Palley
Facsimile: (212) 688-0783                2001 Market Street
                                         Philadelphia, PA 19103
                                         Telephone: (215) 963-0600
                                         Fax: (215) 963-0838

# TABLE OF CONTENTS

Page

Table of Authorities ........................................................................................................... ii

INTRODUCTION ...............................................................................................................1

I. THE LIMITED SCOPE AND APPLICATION OF THE PRIVILEGE ............................. 5

   A. The Privilege Belongs Exclusively to the Regulators, not the Bank ................................. 5

   B. The Privilege Does Not Apply to Factual Statements ....................................... 5

   C. Documents Containing Opinions, Analyses or Directives from the Regulators
      Are Not Automatically Exempt from Disclosure ............................................... 6

   D. The Bank's Internal Deliberations and its Response to Regulators Are Not
      Exempt From Disclosure ...................................................................... 7

II. THE COURT SHOULD OVERRIDE ANY QUALIFIED PRIVILEGE HERE ................. 8

   A. The Privilege is Qualified and Can be Overridden........................................... 8

   B. Application of the *Franklin* Factors ........................................................... 9

     1. The Relevance of the Evidence Sought and the Availability of Other Evidence .......... 9

     2. The Seriousness of the Litigation and the Issues Involved........................... 10

     3. Government Interest in the Litigation..................................................... 11

     4. Impact on Future Behavior of Government .............................................. 11

III. THE BANK HAS MADE EXCESSIVE AND UNWARRANTED PRIVILEGE
     CLAIMS.......................................................................................... 12

   A. The Gradual Disclosure of the Full Magnitude and Scope of the Privilege Claims........ 12

   B. A Review of Exemplar Documents Further Supports Plaintiff's Position ................... 14

   C. The Overbroad Assertions of the Bank Examiner Privilege in Recent Depositions ....... 16

IV. PLAINTIFF IS NOT REQUIRED TO GO THROUGH ADMINISTRATIVE
     PROCESSES TO OBTAIN DOCUMENTS IN THE BANK'S POSSESSION ............... 17

CONCLUSION...................................................................................................18

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                          <u>Page(s)</u>

*Federal Hous. Fin. Agency v. JPMorgan Chase & Co.*,
    978 F.Supp.2d 267 (S.D.N.Y. 2013)........................................................................ 1

*Feinberg v. Hibernia Corp.*,
    Civ. A. No. 90-4245, 1993 WL 8620 (E.D. La. Jan. 6, 1993).................................... 7

*Forstmann Leff Assoc., Inc. v. American Brands, Inc.*,
    No. 88 Civ. 4485 (JMC), 1991 WL 168002 (S.D.N.Y. Aug. 16, 1991)........................... 6, 9, 10

*In re Bank One Sec. Litig.*,
    209 F.R.D. 418 (N.D. Ill. 2002)............................................................................ 2

*In re Bankers Trust Co.*,
    61 F.3d 465 (6th Cir. 1995) ................................................................................. 9

*In re Franklin Nat. Bank Sec. Litig.*,
    478 F.Supp. 577 (E.D.N.Y. 1979) ................................................................. *passim*

*In re S.E.C. ex rel. Glotzer v. Stewart*,
    374 F.3d 184 (2d Cir. 2004).............................................................................. 18

*In re Subpoena Served Upon Comptroller of Currency*,
    967 F.2d 630 (D.C. Cir. 1992) ............................................................................ 8

*In re Wells Fargo Residential Mortgage Lending Discrimination Litig.*,
    No. C 08-1930 MMC (JL), 2009 WL 1578920 (N.D. Cal. June 4, 2009)................................. 8

*In re Wells Fargo Residential Mortgage Lending Discrimination Litig.*,
    No. M:08–CV–1930 MMC, 2009 WL 8139976 (N.D. Cal. Aug. 17, 2009)............................... 8

*Lundy v. Interfirst Corp.*,
    105 F.R.D. 499 (D.D.C. 1985).............................................................................. 7

*Marketing Investors Corp. v. New Millennium Bank*,
    Civil Action No. 3:11-CV-1696-D, 2012 WL 1357502 (N.D. Tex. April 16, 2012)................. 3

*Merchants Bank v. Vescio*,
    205 B.R. 37 (D. Vt. 1997)................................................................... 3, 5, 17, 18

*Moore-McCormack Lines, Inc. v. I.T.O. Corp.*,
    508 F.2d 945 (4th Cir. 1974) ............................................................................... 6

**Cases**                                                                       **Page(s)**

*Principe v. Crossland Sav., FSB*,
   149 F.R.D. 444 (E.D.N.Y. 1993) ................................................................... *passim*

*Resolution Trust Corp. v. Deloitte & Touche*,
   145 F.R.D. 108 (D. Colo. 1992) ............................................................................ 3

*Schreiber v. Society for Sav. Bankcorp Inc.*,
   11 F.3d 217 (D.C. Cir. 1993) ................................................................... 3, 7, 8, 9

*Sharkey v. J.P. Morgan Chase & Co.*,
   No. 10 Civ. 3824, 2013 WL 2254553 (S.D.N.Y. May 22, 2013) .............................. 5

*Vescio v. Merchants Bank*,
   208 B.R. 122 (D. Vt. 1997) ................................................................................... 5

*Wultz v. Bank of China Ltd.*,
   No. 11 Civ. 1266(SAS), 2013 WL 1453258, *11 (S.D.N.Y. April 9, 2013) ..................... *passim*

**Rule**

Rule 34 of the Federal Rules of Civil Procedure ..................................................... 3, 17

Lead Plaintiff Pennsylvania Public School Employees' Retirement System ("Lead Plaintiff") moves to compel Defendant Bank of America Corporation ("BoA") to provide discovery in the form of documents that have been withheld, redacted, or clawed back, and testimony in light of deposition questions that witnesses have been instructed not to answer, based upon BoA's unjustified assertion of the Bank Examination Privilege ("BEP" or "the privilege").

## INTRODUCTION

As will be shown below, experienced courts have usually approached assertions of the BEP seeking to shield all communications with federal regulators, and even purely internal communications referring to those regulators and their concerns, with more than a grain of salt.[1] First, they point out the undisputed fact that the privilege belongs to the regulator, not the banks,[2] even though bankers themselves are often quite anxious to hide behind the skirts of the regulators in pressing claims of privilege.  Second, while the regulators often have a close, and on the personal level, quite cordial relationship with the bankers with whom they interact on a frequent basis, upon cooler reflection, the regulators themselves are often far less passionate than the bankers they regulate about the need to prevent *any and all* disclosures of communications,

---

[1] *See, e.g., Principe v. Crossland Sav., FSB*, 149 F.R.D. 444, 450 (E.D.N.Y. 1993) ("it should be noted that an overwhelming majority of courts that have considered the disclosure of reports of bank examiners have ruled in favor of their production").  Notably, in other recent litigation in this Court, BoA (represented by other counsel) and BoA's current counsel, Skadden (representing other defendants), both urged the Court *not* to recognize the privilege when it was asserted by the Federal Housing Finance Agency when it was acting as the conservator of two Government Sponsored Entities, the Federal National Mortgage Association ("Fannie Mae"), and the Federal Home Loan Mortgage Corporation ("Freddie Mac").  In a comment that may reflect the true motivations behind the bank's assertion of the BEP, Judge Cote observed, "the defendants themselves invoke the bank examination privilege numerous times in this litigation over communications with bank regulators in connection with the same class of mortgage related activities over which FHFA is attempting to assert the privilege here."  *Federal Hous. Fin. Agency v. JPMorgan Chase & Co.*, 978 F.Supp.2d 267, 275 (S.D.N.Y. 2013).

[2] *See infra* at 5.

1

particularly the bankers' internal deliberations, years after those communications took place, especially in matters vested with a strong public interest, including securities litigation.[3]

If we have learned anything from the history of the past several years, it is that the financial crisis was precipitated, in large measure, by the irresponsible conduct of bankers. More than one observer has noted that bankers often ignored, downplayed, or even tried to intimidate their regulators,[4] who have been characterized by some as "captive" agencies.[5] And while discovery may show that the regulators were, or were not, insufficiently vigilant in trying to hold those bankers' feet to the fire, this background only magnifies the importance of disclosing the materials at issue here.

Likewise, as Lead Plaintiff will demonstrate below, there is no reason here to defer to what may be a knee-jerk reaction of some agencies seeking to require private litigants, like the Lead Plaintiff representing the certified class here, to make a request for these materials under those agencies' regulatory processes, rather than utilizing the established discovery procedures authorized by the Federal Rules of Civil Procedure. Indeed, the case law is clear, particularly

---

[3]  *See, e.g., In re Bank One Sec. Litig.*, 209 F.R.D. 418, 422 (N.D. Ill. 2002) (OCC waived the bank examination privilege for any documents created by accounting firm or bank).

[4]  *See Wultz v. Bank of China Ltd.*, No. 11 Civ. 1266(SAS), 2013 WL 1453258, *11 (S.D.N.Y. April 9, 2013) (Scheindlin, J.) (discussing report concerning conduct of another bank where the OCC Examiner-In-Charge told a congressional subcommittee that it was very common for the bank to push back on examiner findings and recommendations, recalling one instance in which bank executives even yelled at OCC examiners and called them stupid).

[5]  *Wultz*, 2013 WL 1453258, n. 102, *quoting* Gillian E. Metzger, *Federalism and Federal Agency Reform*, 111 Colum. L. Rev. 1, 27 (2011) (observing "the OCC [was] repeatedly characterized as an agency captured by the entities it was charged with regulating, the classic example of agency failure").

within the Second Circuit, that there is no such requirement when a party seeks discovery *from the banks themselves*, rather than the regulators.[6]

Based upon Lead Counsel's reviews of redacted documents, as well as the few glimpses Lead Plaintiff has been afforded of the bankers' interactions with the regulators, it appears that these communications likely constitute some of the best, contemporaneous evidence of both the facts as they were occurring and the defendants' scienter in making the misrepresentations and material omissions about the health of this important financial institution. This point was driven home by a decision of the D.C. Circuit involving the assertion of the BEP in the context of a securities action:

> the plaintiff asserts in the underlying litigation that Bancorp's officers knowingly misrepresented the institution's true financial condition. An inconsistency between Bancorp's own records – which are indeed available from the institution – and the information it provided to the bank examiners could be relevant to the officers' scienter with respect to the alleged misstatements; in their communications with the bank examiners, the officers might have evidenced (or gained) an awareness of Bancorp's true financial state at the same time that they were presenting the public with a rosier picture.

*Schreiber v. Society for Sav. Bankcorp Inc.*, 11 F.3d 217, 178 (D.C. Cir. 1993). Judge Weinstein similarly reasoned:

---

[6] As Judge Scheindlin explained, "neither the OCC nor [the bank] cite any precedent for concluding that the OCC may promulgate regulations under the Housekeeping Statute that limit a federal court's ability to order *private litigants* to produce documents under the Federal Rules of Civil Procedure." *Wultz*, 2013 WL 1453258 at *6 (emphasis in original); *Merchants Bank v. Vescio*, 205 B.R. 37, 41 (D. Vt. 1997) (regulations purporting to require private litigants to go through administrative procedures to secure documents from banks "conflict with Rule 34 of the Federal Rules of Civil Procedure."). *See also Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 111 (D. Colo. 1992) ("The issue is not whether Rule 34 requires production, but rather whether the Rules of Civil Procedure governing discovery in federal courts can be abrogated by agency regulations. Those courts which have considered this issue have uniformly answered the query in the negative.") *Marketing Investors Corp. v. New Millennium Bank*, Civil Action No. 3:11-CV-1696-D, 2012 WL 1357502, *6 (N.D. Tex. April 16, 2012) ("it appears that Congress did not empower the FDIC to prescribe regulations that direct a party to deliberately disobey a subpoena or other legal process requiring the production of information.").

> Even were the government's case for shielding its documents more persuasive, the interests of the litigants and the public in disclosure are much more compelling. Accurate judicial factfinding is predominant. This factor is powerful in a situation like that presented here, where no satisfactory alternative source of information exists. The Examination Reports provide a unique and objective contemporaneous chronicle of the financial decline of [the bank]; no satisfactory substitute exists.

*In re Franklin Nat. Bank Sec. Litig.*, 478 F.Supp. 577, 586 (E.D.N.Y. 1979) (Weinstein, J.) (internal citation omitted); *see also Principe*, 149 F.R.D. at 449 (in securities fraud action, the bank examination reports, which were provided by the agency to senior management, "are relevant to the individual defendants' knowledge of [the corporation's] problems and the alleged misrepresentation and breach of fiduciary duty at issue … [and] are potentially relevant to providing defendants' scienter"). It is for this reason that Lead Plaintiff concluded that this dispute, more than many other disagreements that arose during the course of discovery, called out for judicial action.

This conclusion is further borne out by an examination of the nature of the privilege claims asserted by BoA here. After BoA repeatedly sought to persuade Lead Plaintiff that the BEP claims ought to be reviewed and discussed with BoA's counsel on a document-by-document basis, BoA reluctantly disclosed that there were ***over 30,000*** documents withheld based upon its BEP claims – which would have made any document-by-document review impossible – and that ***over 95%*** of those claims were ***not*** for communications coming from the regulators, but instead were for ***internal communications or deliberations among solely BoA personnel*** discussing how to deal with the regulators' concerns. The overbreadth of BoA's privilege assertions is even more startling in light of the fact that Lead Plaintiff has found no

authority holding that a bank's exclusively internal discussions concerning how to deal with the regulators fall within the proper scope of the privilege.[7]

## I.      THE LIMITED SCOPE AND APPLICATION OF THE PRIVILEGE

As Lead Plaintiff will demonstrate below, the law is well established in the Second Circuit that the BEP is limited in both its scope and application.

### A.      The Privilege Belongs Exclusively to the Regulators, not the Bank

The law is clear that the BEP belongs solely to the regulatory agency, and it is each regulatory agency that must assert, and has the burden of establishing, that privilege.  *Wultz,* 2013 WL 1453258 at *4-6 (internal quotation marks omitted); *Sharkey v. J.P. Morgan Chase & Co.*, No. 10 Civ. 3824, 2013 WL 2254553 (S.D.N.Y. May 22, 2013) (Sweet, J.); *Merchants Bank v. Vescio*, 205 B.R. at 42.  Thus, if, and to the extent, that a regulator fails to either (a) affirmatively assert; or (b) prove the applicability of the privilege with respect to a document, no party – in this case BoA – can independently object to discovery on this basis.

### B.      The Privilege Does Not Apply to Factual Statements

The courts have consistently held that purely factual material, including factual contents of bank examination reports, falls outside the BEP, and any banking regulatory agencies that wish to assert the privilege has the burden of persuading the court that ***both***: (1) the sought after materials it seeks to withhold are deliberative rather than factual; ***and*** (2) the deliberative portions cannot be redacted from the documents.  *Id*.; *Vescio v. Merchants Bank*, 208 B.R. 122, 127 (D. Vt. 1997).  The courts have cautioned that a bank examiner's comments may not be deemed opinions that could be protected from disclosure, but rather "are factual statements by a first hand observer of the bank." *In re Franklin Nat. Bank Sec. Litig.*, 478 F.Supp. at 585.  And

---

[7] *See* discussion *infra* at 7-8.

while "some of the examiner's comments contain less of this factual component than others, and thus perhaps deserve protection by the privilege," the exceptions can be "both trivial and harmless" and thus not justify "the effort necessary to weed them out."  Judge Weinstein further noted, "Moreover, cutting a phrase here and there would make the document difficult to read and almost impossible to evaluate fairly," as partial suppression "will distort the tenor of the document." *Id., quoting Moore-McCormack Lines, Inc. v. I.T.O. Corp.*, 508 F.2d 945, 949 (4th Cir. 1974).

### C.  Documents Containing Opinions, Analyses or Directives from the Regulators Are Not Automatically Exempt from Disclosure

The courts have held that they may order that even the portion of a bank examiner's report that contains opinions, analysis and deliberations of the agency, including the section written by the Office of the Comptroller of the Currency ("OCC") entitled the Matters Requiring Attention ("MRAs") be disclosed where that is relevant to the issue of defendants' scienter. *Wultz*, *supra* at *8.  Moreover, comments of a bank examiner will not be considered "opinion" protected from disclosure where they really constitute factual statements by a first-hand observer. *Franklin*, 478 F.Supp. at 583.  As Judge Weinstein explained, "[m]ost of the statements that the government characterizes as expressions of opinion could, as well, be characterized as 'shorthand' statements of fact." *Franklin*, 478 F.Supp. at 584.  And courts have found this principle applicable where, as here, plaintiffs seek the documents as potentially relevant to prove scienter in an action for securities fraud against a corporation and its officers and directors. *Principe*, 149 F.R.D. at 449; *see Forstmann Leff Assoc., Inc. v. American Brands*, *Inc.*, No. 88 Civ. 4485 (JMC), 1991 WL 168002, *4 (S.D.N.Y. Aug. 16, 1991) (in deciding whether to override qualified privilege, court considers fact that "there is no other available means for [litigants] to determine whether [bank] examiners warned [adverse parties] of the

risks"); As Judge Scheindlin concluded, "opinions, analysis, and deliberations communicated by the OCC to [the bank] are themselves relevant to the issue of scienter," and, therefore, the court may order them to be disclosed. *Wultz*, *supra* at *8-11; *see Schreiber v. Society for Sav. Bancorp, Inc.*, 11 F.3d at 222 ("inconsistency between Bancorp's own records – which are indeed available from the institution – and the information it provided to the bank examiners could be relevant to the officers' scienter" in underlying securities class action).

### D.     The Bank's Internal Deliberations and its Response to Regulators Are Not Exempt From Disclosure

The greatest impact of this motion is likely to be upon neither documents sent from the regulators to  BoA (on Privilege Log A), nor documents sent from BoA to the regulators (Log B).  Instead, we now known that over 95% of the documents BoA redacted or withheld were documents on Log C, such as internal emails, presentations, memoranda and other similar documents that were never shown to the regulators.  It is on this point where any privilege claim is most suspect.  Documents reflecting the responses of the bank, and the internal deliberations that preceded them, are likely to reflect both the executives' knowledge and resulting scienter, and should not be protected from disclosure.  *Feinberg v. Hibernia Corp.*, Civ. A. No. 90-4245, 1993 WL 8620, *6 (E.D. La. Jan. 6, 1993) (bank ordered to disclose to plaintiff all of its internal memoranda commenting upon the OCC and Federal Reserve examinations) [8]; *Lundy v. Interfirst Corp.*, 105 F.R.D. 499, 502, n.3 (D.D.C. 1985) (documents submitted by private corporation to regulator not privileged).  As one Court explained:

---

[8] *Feinberg* added that the sole exception to that ruling is that where a such an internal document "contain[s] *verbatim recitations* of the report [such documents] be produced to the Court for an *in camera* inspection."  *Feinberg v. Hibernia Corp.*, 1993 WL 8620, *6 (E.D. La. Jan. 6, 1993) (emphasis in original).  Just so there was no dispute as to the thrust of the *Feinberg* court's ruling, the opinion added "However, any other responsive documents that were not prepared, possessed or otherwise controlled by the federal agencies must now be disclosed to the plaintiff."

> Wells Fargo created these documents, not the OCC.  The mere fact that Wells
> created the documents as part of its compliance with a regulatory scheme does not
> make them OCC documents.  They were not created *by* the OCC, even if they
> may have been created *for* the OCC.  Accordingly they are not privileged under
> the bank examiner privilege.

*In re Wells Fargo Residential Mortgage Lending Discrimination Litig*., No. C 08-1930 MMC

(JL), 2009 WL 1578920, *4 (N.D. Cal. June 4, 2009) (emphasis in original; internal citation

omitted).[9]  Moreover, Lead Plaintiff has found no authority suggesting that internal deliberations

or communications among bank personnel discussing whether or how they should respond to

regulators is protected by the BEP.

## II.    THE COURT SHOULD OVERRIDE ANY QUALIFIED PRIVILEGE HERE

### A.    The Privilege is Qualified and Can be Overridden

The courts are also clear that BEP is only a qualified privilege.  *See, e.g., Schreiber v.

Society for Sav. Bancorp, Inc.*, 11 F.3d at 220.  Thus, even if documents might otherwise fall

within the scope of the BEP, a court may override the asserted privilege if the requesting party

demonstrates good cause "where necessary to promote the paramount interest of the Government

in having justice done between litigants."  *In re Subpoena Served Upon Comptroller of

Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992) (internal quotation marks omitted).  It is precisely

this objective of "[a]ccurate judicial factfinding" that specifically led Judge Weinstein to rule

that the plaintiffs in a securities case had met their obligation of showing that the qualified

privilege should be overridden.  *In re Franklin Nat. Bank Sec. Litig.*, 478 F.Supp. at 586.

---

[9] On appeal to the District Judge, plaintiff was ordered to give notice to the OCC to give the
regulator an opportunity to assert and defend the privilege, *In re Wells Fargo Residential
Mortgage Lending Discrimination Litig*., No. M:08–CV–1930 MMC, 2009 WL 8139976 (N.D.
Cal. Aug. 17, 2009).  Pursuant to this Court's Order, Lead Plaintiff is providing such notice here
by serving a copy of its motion and memorandum (along with the Court's Order) upon all of the
interested regulators.

Judge Scheindlin explained that in determining whether to override the asserted privilege, the courts apply a multi-factor test established by Judge Weinstein in *Franklin*, 478 F.Supp. at 583. This test has been repeatedly followed by courts within the Second Circuit, *see Wultz*, *supra* at *4; *Principe*, 149 F.R.D. at 447-48; *Forstmann*, 1991 WL 168002 at *3, and elsewhere, *see Schreiber v. Society for Sav. Bancorp, Inc.*, 11 F.3d at 220-21; *In re Bankers Trust Co.*, 61 F.3d 465, 471-72 (6th Cir. 1995).

### B.   Application of the *Franklin* Factors

The *Franklin* court provides a non-exhaustive list of factors that may be considered in determining whether a qualified privilege should be overridden:

> In this balancing of competing interests, some of the factors that assume significance are (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Franklin*, 478 F.Supp. at 583 (internal citations omitted).

Even a cursory application of these elements should suffice to demonstrate that any qualified privilege should be overridden here.

### 1.   The Relevance of the Evidence Sought and the Availability of Other Evidence

As suggested in *Schreiber*, 11 F.3d at 178; *Franklin*, 478 F.Supp. at 586; and *Principe*, 149 F.R.D. at 449, the information withheld by assertions of the BEP concerns the very issues that lie at the heart of this dispute. Here the regulators were first hand witnesses to the precise details of BoA's deteriorating conditions, and were likely to have observed the rise of the very matters that were not adequately disclosed to investors during the Class Period. The matters at issue include: the fact that outstanding loans frequently failed to comply with the representations and warranties that had been made when those loans were packaged and sold to investors as

9

Mortgage-Backed Securities ("MBS"); the inability of BoA to keep up with loan defaults and to process foreclosure claims on an accurate and timely basis, including massive problems with lost or missing records caused by BoA's reliance upon MERS; the use of "robo signers" who executed sworn affidavits in connection with the foreclosures that falsely swore, under penalty of perjury, that they had *personal* knowledge of the facts set forth in those affidavits that were required to process the foreclosures; the use of foreclosure mills that improperly executed paperwork and otherwise engaged in improper conduct; and the rapid acceleration in the assertion of claims for breaches of representations and warranties by counter-parties.

Documents from the regulators either pointing out these facts or asking defendants about them (encompassed by Privilege Log A), as well as defendants' internal communications about these issues (Privilege Log C) and their responses to the regulators (Privilege Log B), are all likely to be the best, and in some instances, the only source of documents establishing regulators warned Defendants about these matters, and whether these actions were inconsistent with their public statements and material omissions. *See Forstmann*, 1991 WL 168002 at *4 ("there is no other available means for defendants to determine whether the OTS examiners warned plaintiffs of the risks of investing in junk bonds.").

### 2.    The Seriousness of the Litigation and the Issues Involved

The seriousness of the litigation is clear.  This is an action brought not for one plaintiff but for a certified class consisting of all persons who purchased BoA's securities during a 20 month period and sustained injuries as a result of Defendants' violation of the federal securities laws.  Securing proof of the facts as they contemporaneously occurred, and Defendants' scienter in failing to tell the truth about these material events to the investing public, is certainly an important interest to be vindicated.  *See Franklin*, 478 F.Supp. at 586 (accurate judicial fact-finding is a predominant consideration).

### 3.     Government Interest in the Litigation

Because the government is not a party to this litigation, *Franklin*'s fourth factor has no applicability here.  However, this has not stopped courts within this Circuit from overruling assertions of  the privilege.  *See, e.g., Principe*, *supra* (private action for fraud against directors and officers of failed bank); *Wultz*, *supra* (action by victims of terrorism against foreign bank).

### 4.     Impact on Future Behavior of Government

The final *Franklin* factor asks whether disclosure of some of all of the documents subject to the assertion of the BEP will cause government employees to become more timid in the future if they know that their communications with the banks can be disclosed.  Judge Scheindlin considered and downplayed this factor in her analysis of the BEP, explaining:

> While the public interest in candor is a serious concern, it is present in every case involving the bank examination privilege – and yet the privilege remains qualified, not absolute.  There must be cases in which the other factors discussed above outweigh the public interest in candor between banking regulators and banks.  I conclude this is one such case.  The relevance of the non-factual portions of the OCC"s Communications, the lack of adequate substitutes, and in particular the seriousness of the litigation and the role of the government in passing the [statute], outweigh the risk of a chilling effect.

*Wultz*, 2013 WL 1453258 at *9.

Furthermore, the short answer to this concern is that courts have repeatedly rejected or overridden BEP claims and that this has not had a noticeably adverse impact upon the conduct of bank regulators.  If such disclosure does have any impact, it could provide a greater incentive for regulators to avoid the pressure to acquiesce to the bankers' reckless course of conduct.  An awareness that if the regulators fail to vigorously enforce their duties that it could someday come to light, would, if anything, lead to more effective regulation of the banks.

Moreover, as discussed at the pre-motion conference, the regulators themselves, such as the United States Department of Housing and Urban Development, have already published

reports of investigations highly critical of BoA.[10]  Thus, requiring BoA to produce documents relating to its communications with, and internal discussions concerning those regulators, would not impact on the government's future behavior in this regard.

In addition, insofar as Defendants are seeking to use the "limited" nature of the government fines or penalties against them as somehow an indication that they have been exonerated or that the egregiousness of their misconduct has been exaggerated, Lead Plaintiff should be entitled to see the fully panoply of Defendants' interactions with government regulators, which could shed a very different light on their conduct.

### III.   THE BANK HAS MADE EXCESSIVE AND UNWARRANTED PRIVILEGE CLAIMS

#### A.   The Gradual Disclosure of the Full Magnitude and Scope of the Privilege Claims

The true magnitude of BoA's assertions of the privilege has only gradually come to light.[11]  As recently as the pre-motion conference the Court conducted on January 16, 2015, counsel for BoA sought to downplay the significance of these materials when he said that the privilege logs contained "a few thousand entries asserting the bank examiner privilege."  Hearing Tr. at 3.  When the Court sought to pin down BoA's counsel by asking approximately how many documents there were where the only privilege asserted was the BEP, BoA's counsel replied "[p]robably between six and 10,000."  Hearing Tr. at 21.

---

[10] A copy of the report from the Office of Inspector General, U.S. Department of Housing and Urban Development entitled "Bank of America Corporation Foreclosure and Class Process Review," is attached as an Exhibit to the Declaration of Mark R. Rosen in support of Lead Plaintiff's Memorandum of Law in Support of Motion to Compel Discovery Withheld Based Upon the Assertion of the Bank Examination Privilege.

[11] Indeed, as discussed at the pre-motion conference, BoA frequently clawed back documents, many based upon the assertion of the BEP, within one or two days of when Lead Plaintiff's counsel had intended to use the documents at witness depositions.

In order to be better able to review and challenge those privilege claims in this motion, Lead Plaintiff proposed, and the Court directed BoA to submit a new log containing only those documents that were withheld or redacted based solely upon the BEP, and that these should be separated into three sub logs: Log A (communications from the regulators to the bank); Log B (communications from the bank to the regulators); and Log C (internal documents reflecting BoA's internal deliberations or communications relating to the regulators).  Hearing Tr. 15, 24.

BoA originally provided this new BEP-only privilege log on February 6, 2015.   Lead Plaintiff then reviewed this BEP-only log and compared it to notices that BoA had sent clawing back various documents, many based solely upon the BEP.  Upon that review, Lead Plaintiff determined that many documents had been clawed back based solely upon the BEP, but were not listed on the new privilege log.

After bringing this to the attention of BoA's counsel, Lead Plaintiff was informed that there were at least 1,400 documents that BoA had withheld or redacted based exclusively upon the BEP that had not appeared on this new BEP-only log.  BoA then promised to provide a new log containing these missing documents and containing all of the requisite information (identifying the senders and recipients of each document, etc.) to permit Lead Plaintiff to review and challenge this privilege claims.  BoA did not finally produce a BEP-only privilege log purportedly listing *all* of the documents and containing *all* of the required descriptive information until after 10 p.m. on February 19, 2015.

A review of that new BEP-only log revealed that BoA listed only **263** documents in Log A (documents from the regulators), **1,052** in Log B (documents from BoA to the regulators, and a whopping **28,715** in Log C (internal discussions within BoA that were never sent to any regulators).  Thus, even a cursory review of this new BEP-only log suggests that BoA has

attempted to use the assertions of privilege primarily to shield its own internal communications –
which courts have not generally recognized as falling within the legitimate scope of the
privilege.  *See generally Wultz*, *supra*.

**B.      A Review of Exemplar Documents Further Supports Plaintiff's Position**

As part of the process for adjudicating the privilege issue, the Court authorized both Lead
Plaintiff and BoA to designate up to 25 documents that were redacted or withheld, and directed
BoA to provide unredacted versions of those documents for the Court's examination.  Inasmuch
as all but one of the exemplars selected by BoA were withheld, rather than redacted, Lead
Plaintiff is unable to comment upon what those documents may show that is relevant to the
disposition of the motion.  However, 15 of the 25 exemplars selected by Lead Plaintiff were for
documents that had been redacted, rather than completely withheld, so it is possible to infer the
sort of information that may have been withheld by BoA based upon its privilege claims.  A few
examples should suffice.  Because the overwhelming majority of the documents covered by
BoA's BEP log fall within Category C – internal communications, the examples cited below also
come from that category.





---

[12] Mr. Sorey was a former BoA employee involved with foreclosures. By the time Lead Plaintiff took his deposition, he had very limited memory of his time at BoA.  This constitutes another illustration why the sought after information may not be obtained from other sources.

█████████████████████████████████████████

███████████████████████████████

These examples should demonstrate that BoA has utilized the privilege claims to prevent disclosure of documents, particularly internal communications from Privilege Log C, that are likely to help establish both relevant facts and defendants' scienter.

### C.    The Overbroad Assertions of the Bank Examiner Privilege in Recent Depositions

As mentioned at the pre-hearing conference, recent depositions of BoA witnesses also demonstrate that it has been taking an overly expansive view of the potential application of the BEP in depositions of present or former BoA employees.  For example, on Nov. 21, 2014, BoA's counsel represented Mr. Ulmer and Bank of America at his deposition.  When Mr. Ulmer was asked about MERS and the reaction of the OCC, Bank of America's counsel announced that it was "going to instruct the witness not to answer questions about communications with the OCC."  Ulmer Tr. 93:10-12.[13]  When plaintiff's counsel followed up by asking "[w]hat communications did you have internally about OCC concerns," Ulmer Tr. 93:13-14 the following exchange took place:

> MR. MALLOY: I'm going to instruct the witness not to answer those questions as well.
>
> MR. GITTLEMAN: So can you explain to me where the limit is on the bank examiner's privilege that you're asserting?
>
> MR. MALLOY: Anything that reflects the inquiries or views of the bank regulators and the bank's response to it.
>
> MR. GITTLEMAN: So any internal discussions about an MRA you're saying are covered by the bank examiner's privilege?
>
> MR. MALLOY: That's my understanding, yes.

---

[13] Copies of the cited pages of Mr. Ulmer's deposition are attached as Exhibit B to the Rosen Declaration.

Ulmer Tr. 93:15 to 94: 1.  Bank of America's counsel further instructed the witness not to answer questions asking "[w]ho raised to you the concerns that the regulators had about MERS," Ulmer Tr. 95:1 to 95:2, and announced "[w]e're not going to get into the bank's response to the OCC"'s inquiry.  I'm drawing the line there." Ulmer Tr. 97:22 to 97:24.

If, as Lead Plaintiff contends, this Court concludes that the qualified BEP privilege should be overridden, or at a minimum, its assertion seriously curtailed, particularly where it is applied to internal communications or deliberations covered by Privilege Log C that were neither sent to nor received from a bank regulator, then the same guidance should govern the conduct of depositions in this matter.

### IV.   PLAINTIFF IS NOT REQUIRED TO GO THROUGH ADMINISTRATIVE PROCESSES TO OBTAIN DOCUMENTS IN THE BANK'S POSSESSION

When the request for the production of documents putatively subject to the BEP is addressed to a private party, rather than to the government regulator, the parties may proceed pursuant to the Federal Rules of Civil Procedure and are *not* required to first make the request to the agency under its regulations.  *Wultz*, *supra* at *6.  Thus, agency regulations purporting to require a party to go through the agency's administrative procedures to request such documents from the agency, and subjecting banks to the possibility of criminal charges for disclosing such information without the agency's authorization, conflict with Rule 34 of the Federal Rules of Civil Procedure, and are unenforceable. *Merchants Bank v. Vescio*, 205 B.R. at 40-41.  As the *Merchants* court explained in a subsequent decision:

> Fed's administrative process is not even an empty formality; it is a total irrelevancy in the instant matter.  The District Court held unequivocally that "the regulations on which the Bank relies are unenforceable in the present case."

*Merchants Bank v. Vescio*, 208 B.R. at 126.[14]

## CONCLUSION

The very weak basis for the assertion of the BEP here was underscored by one court in this district which observed, "it should be noted that an overwhelming majority of courts that have considered the disclosure of reports of bank examiners have ruled in favor of their production." *Principe*, 149 F.R.D. at 450.

Under the facts of this case, Lead Plaintiff respectfully submits that this Court should conclude that the qualified BEP does not exempt from disclosure any documents or testimony regarding any BoA's interactions or communications with its regulatory agencies, and therefore order the production of unredacted copies of all documents on the BEP-only Privilege Log.

In the alternative, if the Court determines that the BEP is applicable to certain matters in this litigation, Lead Plaintiff respectfully submits that Bank of America should still be required to produce, in unredacted form, (1) all statements of fact, rather than opinion, in documents from agencies to BoA (documents covered by the Privilege Log A), (2) all documents that were sent from the bank to the regulators (documents covered by Privilege Log B), and (3) all internal BoA

---

[14] The Second Circuit's decision in *In re S.E.C. ex rel. Glotzer v. Stewart*, 374 F.3d 184 (2d Cir. 2004), does not support a contrary conclusion. In that case, Martha Stewart had issued a subpoena *ad testificandum* to two SEC employees who had interviewed her in connection with the SEC enforcement action and had been designated as witnesses for the prosecution in the criminal case against her. The SEC argued that Stewart had failed to exhaust her administrative remedies under the Administrative Procedure Act and the district court precluded her from bringing a motion to compel enforcement of that subpoena. On mandamus review, the Court of Appeals held that "a party seeking judicial review *of an agency's non-compliance* with a subpoena must first exhaust his or her administrative remedies pursuant to APA § 704." *In re S.E.C. ex rel. Glotzer*, 374 F.3d at 192 (emphasis added). Nothing in that decision suggests that a litigant seeking discovery *from a private party* must proceed through, let alone exhaust, any administrative procedures.

deliberations or communications concerning bank regulators that were never sent to the regulators (documents enumerated in Privilege Log C).

Lead Plaintiff further requests that BoA be ordered not to instruct witnesses not to answer deposition questions concerning the matters for which the Court determines the privilege should not apply.

Dated:  February 23, 2015                 Respectfully submitted,

**BARRACK, RODOS & BACINE**
A. Arnold Gershon
William J. Ban
Michael A. Toomey
425 Park Avenue, 31st Floor
New York, NY 10022
Telephone: (212) 688-0782
Facsimile: (212) 688-0783

-and-

**BARRACK, RODOS & BACINE**


By:___/s/ Mark R. Rosen_____
Leonard Barrack
Mark R. Rosen
Jeffrey A. Barrack
Jeffrey B. Gittleman
Chad A. Carder
Julie B. Palley
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Fax: (215) 963-0838

*Attorneys for Lead Plaintiff Pennsylvania Public School  Employees' Retirement System and Lead Counsel for the Class*

19