UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PENNSYLVANIA PUBLIC SCHOOL EMPLOYEES' RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>       v.<br><br>BANK OF AMERICA CORPORATION, et al.,<br>              Defendant. | CIVIL ACTION NO.<br>11-CV-00733-WHP<br><br>CLASS ACTION<br><br>**NON-PARTY THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY WITHHELD BASED ON THE BANK EXAMINATION PRIVILEGE** |

Katherine H. Wheatley
Associate General Counsel

Yvonne F. Mizusawa
Senior Counsel
Board of Governors of the
 Federal Reserve System
20th & C Streets N.W.
Washington, D.C. 20551
(PH) (202) 452-3436
(FAX) (202) 736-5615
Yvonne.f.mizusawa@frb.gov

Filed:  March 23, 2015

TABLE OF CONTENTS

TABLE OF CITATIONS ........................................................................................................ ii

BACKGROUND ................................................................................................................... 1

ARGUMENT ........................................................................................................................ 3

    A.    BofA Properly Withheld the FRB Exemplars on Grounds of Bank Examination
        Privilege ................................................................................................................. 3

        1.    The Bank Examination Privilege ............................................................... 3

        2.    The FRB Exemplars are Covered by The Bank Examination Privilege ..... 4

    B.    The Motion Should be Denied as Premature Because Plaintiff has Failed to
        Exhaust its Administrative Remedies .................................................................. 10

    C.    Plaintiff Has Not Shown Good Cause to Override the Bank Examination
        Privilege ............................................................................................................... 14

        1.    Plaintiff Does Not Meet the First Factor Because the Information It
               Seeks is Not Relevant ............................................................................... 15

        2.    The Court Should Not Overrule the Privilege Because Evidence is
               Available to the Plaintiff From Other Sources ......................................... 20

        3.    The Remaining Three Factors Militate Against Disclosure ..................... 23

CONCLUSION .................................................................................................................... 25

## TABLE OF CITATIONS

**Cases**

*American Savings Bank v. Painewebber Inc.*,
210 F.R.D. 721 (D. Ha. 2001) ................................................................. 11

*Bay Bank v. f/v Order of Magnitude*,
2007 U.S. Dist. LEXIS 16241 (W.D. Wash., March 7, 2007) .................................... 11

*FDIC v. Flagship Auto Center*,
2005 U.S. Dist. LEXIS 9468 (N.D. Ohio, May 13, 2005) ........................................ 11

*FHFA v. HSBC North America Holdings Inc.*,
Nos. 11 Civ. 6189 *et al.*, 2014 U.S. Dist. LEXIS 65662 (S.D.N.Y., May 13, 2014) ........ passim

*FHFA v. JPMorgan Chase & Co.*,
978 F. Supp. 2d 267 (S.D.N.Y. 2013) .............................................. 3, 4, 9

*In re Bank One Securities Litigation*,
209 F.R.D. 418 (N.D. Ill. 2002) ....................................................... 7, 23

*In re Bankers Trust Co.*,
61 F.3d 465 (6th Cir. 1995) ........................................................ passim

*In re Citigroup Bond Litigation*,
2011 U.S. Dist. LEXIS 155715 (S.D.N.Y., Dec. 5, 2011) ................................ 6, 14

*In re CitiMortgage HAMP Litigation*,
No. MDL 11-2274-DSF, 2012 U.S. Dist. LEXIS 169324 (C.D. Cal., June 7, 2012) .............. 11

*In re Countrywide Financial Corp. Sec. Litig.*,
2009 U.S. Dist. LEXIS 120590 (C.D. Cal., Dec. 28, 2009) ................................ 11

*In re Franklin National Bank*,
478 F. Supp. 577 (E.D. N.Y. 1979) ............................................. 8, 14, 23

*In re JPMorgan Chase Mortgage Modification Litigation*,
No. 11-md-02290-RGS, 2012 U.S. Dist. LEXIS 167966 (D. Mass., Nov. 27, 2012) .............. 10

*In re Providian Fin. Corp. Secs. Litig.*,
222 F.R.D. 22 (D.D.C. 2004)...................................................................................... 7, 23

*In re SEC ex rel. Glozner*,
374 F.3d 184 (2d Cir. 2004)........................................................................................ 14

*In re Subpoena Served Upon the Comptroller of the Currency*,
967 F.2d 630 (D.C. Cir. 1992) ............................................................................... passim

*In re Vescio*,
208 B.R. 122 (Bankr. D. Vt. 1997) ............................................................................... 8

*In re: Atlantic Financial Federal Securities Litigation*,
Civ. No. 89-645, 1992 U.S. Dist. LEXIS 2619 (E.D. Pa., Mar. 3, 1992).................................. 9

*Linde v. Arab Bank, PLC*,
No. CV-04-2799 (NG)(VVP), 2009 U.S. Dist. LEXIS 86021
(E.D.N.Y., Sept. 21, 2009)...................................................................................... 3, 5

*Local 703, I.B. of T. Grocery and Food Employees Welfare Fund v. Regions Financial Corp.*,
No. CV 10-J2847-S, Order dated June 13, 2012 at 2 (N.D. Ala.) ............................................. 7

*Merchant's Bank v. Vescio*,
205 B.R. 37 (D. Vt. 1997)........................................................................................... 13

*National Union Fire Ins. Co*. v. *Midland Bancor*,
159 F.R.D. 562 (D. Kan. 1994).................................................................................... 11

*Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*,
603 F.3d 144 (2d Cir. 2010)........................................................................................ 16

*Penn. Public School Employees Retirement Sys. v. Bank of* America,
874 F. Supp. 2d 341 (S.D.N.Y. 2012)...................................... 15, 16, 17, 18, 19, 20

*Penn. Public School Employees Retirement Sys. v. Bank of America*,
No. 11 Civ. 733 (WHP), 2013 WL 1664696 (S.D.N.Y., Apr. 17, 2013) ............................... 18

*Raffa v. Wachovia Corp.*,
242 F. Supp. 2d 1223 (M.D. Fla. 2002) ............................................................................ 11

*Raffa v. Wachovia Corp.*,
2003 WL 21517778  (M.D. Fla. May, 15, 2003)............................................................ 19, 22

*Schreiber v. Society for Sav. Bancorp.,*
  11 F.3d 217 (D.C. Cir. 1993) .............................................................................. 6, 10

*Shirk v. Fifth Third Bancorp,*
  No. 1:05-cv-049, 2008 U.S. Dist. LEXIS 111425 (S.D. Ohio, July 2, 2008) ................... passim

*Wultz v. Bank of China*,
  11 Civ. 1266 (SAS), 2013 U.S. Dist. LEXIS 51181 (S.D.N.Y., Apr. 9, 2013) ................ 13, 24

*Wultz v. Bank of China*,
  241 F.R.D. 42 (S.D.N.Y., 2013) ........................................................................ 13

**Statutes**

12 U.S.C. §§ 1844, 248(a), 325 ........................................................................... 1

**Regulations**

12 C.F.R. § 261.2(c)(2) ................................................................................... 10

12 C.F.R. § 261.20(g) .................................................................................... 10

12 C.F.R. § 261.22(b) ................................................................................ 11, 12

12 C.F.R. § 261.22(c)(i) ................................................................................. 11

Pursuant to the Court's January 22, 2015 Order (Dkt #279) ("Jan. 22 Order"), non-party the Board of Governors of the Federal Reserve System (the "Board") respectfully files this Opposition to lead plaintiff's Motion to Compel Discovery withheld Based Upon the Bank Examination Privilege, filed February 23, 2015 (Dkt # 291) ("Motion").  As set forth below, the Federal Reserve documents plaintiff has moved to compel from defendant Bank of America Corp. ("BofA"), are protected from discovery by the bank examination privilege.  The Motion should be denied as premature because the plaintiff has not exhausted administrative remedies or, in the alternative, because plaintiff has not shown good cause to override the privilege.

## BACKGROUND

The Board is a federal agency authorized by law to regulate and examine bank holding companies and state-chartered banks that are members of the Federal Reserve System, 12 U.S.C. §§ 1844, 248(a), 325.  The Board is the primary federal banking regulator for BofA, a financial holding company headquartered in Charlotte, NC.  The Board's regulation of BofA is carried out primarily by the Federal Reserve Bank of Richmond ("FRB Richmond") through delegated authority.  BofA's primary bank subsidiary, Bank of America National Association, is a national bank supervised by the Office of the Comptroller of the Currency ("OCC").

Plaintiff filed its Amended Consolidated Class Action Complaint against BofA on August 13, 2012 (Dkt #158) ("Complaint") alleging violations of the securities laws stemming from BofA's alleged purposeful concealment of its reliance on Mortgage Electronic Registration Systems, Inc. ("MERS") and attendant exposure to billions of dollars of loan repurchase claims arising from the sale of mortgage-backed securities ("MBS").

As a result of a dispute between the parties relating to BofA's withholding of documents on the basis of the bank examination privilege, the Court issued the Jan. 22 Order requiring defendants to produce to the plaintiff a log of all documents withheld or redacted based on the assertion of that privilege.  The Jan. 22 Order permitted each party, within five business days after receipt of the log, to designate no more than 25 documents as exemplars of the contents of the logs.  *Id.* at 2.  The Order invited the Board and the OCC, and other applicable regulators, to advise the parties of their position on the applicability of the bank examination privilege to the exemplars and to submit a response, including "any response to this Order and the procedures contemplated herein."  *Id*.

Counsel for Bof A provided the Board with the parties' designations of exemplars, and subsequently provided the Board with unredacted copies of the six exemplars relating to the Board (the "FRB Exemplars").[1]  *See* Declaration of Yvonne F. Mizusawa, executed March 23, 2015 ("Mizusawa Decl.), ¶ 3.  As of the date of this filing, plaintiff had not filed an administrative request with the Board for access to the FRB Exemplars or any other confidential supervisory information of the Board in BofA's possession for use in this litigation.  *Id.*, ¶ 4.

As described below, the FRB Exemplars are protected from disclosure by the bank examination privilege, plaintiff has failed to exhaust its administrative remedies, and no good cause exists in this case to override the privilege.  Accordingly, plaintiff's Motion should be denied.

---

[1] Of the 50 exemplars designated for the Court's consideration, the plaintiff designated one involving the FRB, and BofA designated five.

2

**ARGUMENT**

**A.  BofA Properly Withheld the FRB Exemplars on Grounds of Bank Examination Privilege**

**1.  The Bank Examination Privilege**

Contrary to plaintiff's claim that the bank examination privilege "is limited in both its scope and application,"[2] federal courts have long recognized a qualified privilege for communications between a bank and its regulators.  *In re Subpoena Served Upon the Comptroller of the Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992); *In re Bankers Trust Co.*, 61 F.3d 465, 471 (6th Cir. 1995).  "[T]he bank examination privilege is a qualified privilege that protects communications between banks and their examiners in order to preserve absolute candor essential to the effective supervision of banks."  *Linde v. Arab Bank, PLC*, No. CV-04-2799 (NG)(VVP), 2009 U.S. Dist. LEXIS 86021 at *7 (E.D.N.Y., Sept. 21, 2009); *see also Bankers Trust*, 61 F.3d at 471.  The privilege is "firmly grounded in practical necessity."  *Shirk v. Fifth Third Bancorp,* No. 1:05-cv-049, 2008 U.S. Dist. LEXIS 111425, at *7 (S.D. Ohio, July 2, 2008).  "Courts have justified the privilege because of the distinctively continuous and informal process of bank regulation, which especially requires candor from regulated entities."  *FHFA v. JPMorgan Chase & Co.,* 978 F. Supp. 2d 267, 273 (S.D.N.Y. 2013).  Another "undoubtedly important justification for the privilege is the financial system's sensitivity to public questioning of bank soundness."  *Id.*  The court in *JP Morgan Chase* observed:

> Bank safety and soundness supervision is an iterative process of comment by the regulators and response by the bank. The success of the supervision therefore depends vitally upon the quality of communication between the regulated banking firm and the bank regulatory agency.  This relationship is both extensive

---

[2] Lead Plaintiff's Memorandum of Law in Support of Motion to Compel Discovery, filed February 23, 2015 (Dkt # 292) ("Pl. Mem.") at 5.

3

> and informal . . . in the sense that it calls for adjustment, not adjudication. . . .
> These conditions simply could not be met as well if communications between the
> bank and its regulators were not privileged.

*Id.* (quoting *In re Subpoena,* 967 F.2d at 633).

As plaintiff concedes, Pl. Mem. at 5, the privilege belongs to the government agencies that conduct bank examinations. *Bankers Trust,* 61 F.3d at 472. The privilege "accords agency opinions and recommendations and banks' responses thereto protection from disclosure." *Id.,* at 471. The privilege may be overridden "if good cause is shown." *Id.*; *see also JP Morgan Chase,* 978 F. Supp. 2d at 279. Good cause has been found where disclosure is necessary "to promote 'the paramount interest of the Government in having justice done between litigants,' … to 'shed light on alleged government malfeasance,' … or in other circumstances 'when the public's interest in effective government would be furthered by disclosure.'" *In re Subpoena*, 967 F.2d at 634 (internal citations omitted).

### 2. The FRB Exemplars are Covered by The Bank Examination Privilege

Only six of the 50 exemplars designated by the parties involved the Board's information. Exemplar PE18[3] is a confidential regulatory communication from FRB Richmond to BofA. Exemplars DE14, DE16, DE17 and DE19 are internal BofA documents discussing confidential supervisory information of the Board and other banking regulators. Finally, Exemplar DE23 is a letter from BofA to FRB Richmond responding to FRB Richmond's supervisory findings.

All of these exemplars relate intimately to the supervision process, and their disclosure would reveal the very types of communications that the bank examination privilege is designed

---

[3] An index identifying the exemplars by number is attached as Exh. B to the Declaration of Scott D. Musoff filed in Support of Defendant's Response to Plaintiff's Motion (Dkt #296).

to protect.  The exemplars describe FRB Richmond's specific regulatory findings regarding BofA, BofA's actions to prepare for meetings with regulators where their findings will be discussed or to provide written responses to regulators' findings, and actions BofA took and agreed to take in response to regulators' requests.

These documents are thus protected from disclosure by the bank examination privilege. *See Bankers Trust,* 61 F.3d at 471 (privilege protects "agency opinions and recommendations and banks' responses thereto"); *FHFA v. HSBC North America Holdings Inc.*, Nos. 11 Civ. 6189 *et al.*, 2014 U.S. Dist. LEXIS 65662 at *9 (S.D.N.Y., May 13, 2014) (documents sent by a regulated entity to a bank regulator "that reflect recommendations of items to be discussed at a joint meeting," "provid[ing] narrative answers to [the regulator's] questions" and providing "qualitative reviews of [the regulated entities'] operations or directions as to the conduct of future operations" were properly withheld under the bank examination privilege); *Linde*, 2009 U.S. Dist. LEXIS 86021 at *9 ("plaintiffs are not entitled to know … the content of any of the requests – written or oral – made by the OCC in the course of their review …").

Contrary to plaintiff's argument, Pl. Mem. at 5, these documents contain opinion, not fact, and are therefore well within the purview of the privilege.  A review of the six FRB Exemplars leaves no doubt that these documents reveal precisely the type of "iterative process of comment … and response" that the bank examination privilege was designed to protect.  *In re Subpoena,* 967 F.2d at 633.  For example, Exemplar DE16 lists specific regulatory topics discussed at a meeting among BofA and its regulators, including the FRB, on a specific date. Exemplar DE19 contains a detailed discussion of specific supervisory issues raised by the FRB and other regulators during examinations of BofA, and BofA's progress in responding to those

5

issues.  Exemplar DE23, a letter from BofA to FRB Richmond responding to supervisory issues, lists specific areas of BofA's operations that were examined by FRB Richmond and BofA's progress in addressing the issues raised in that examination.

Far from being merely "factual" material, the FRB Exemplars show the regulators' selection of specific areas of BofA's operations to review, and BofA's responses, and are the essence of "agency opinions and recommendations and banks' responses thereto" protected by the bank examination privilege.  *Bankers Trust,* 61 F.3d at 471; *see also Shirk,* 2008 U.S. Dist. LEXIS 111425 at **5-6, 11 ("examination reports and communications leading up to the Written Agreement, and plans, reports, and recommendations that Fifth Third was required to prepared pursuant to the Written Agreement" are not purely factual and are protected by bank examination privilege); *In re Bank One Securities Litigation,* 209 F.R.D. 418, 427 (N.D. Ill. 2002) (determining, upon *in camera* review, that bank examination reports and memorandum created by the OCC "predominantly contain opinions and or recommendations as opposed to facts … [and that] factual and deliberative components are demonstrably intertwined" in the documents).

Thus, as several courts have found, factual information is inextricably intertwined with opinion in the FRB Exemplars, and purely factual information cannot meaningfully be segregated.  This was the conclusion of another district court in this district in a recent opinion which held "[d]ocuments that 'contain[] factual material that cannot practically be segregated and released' fall with the [bank examination] privilege's ambit."  *HSBC,* 2014 U.S. Dist. LEXIS 65662 at *8 (quoting *Schreiber v. Society for Sav. Bancorp.,* 11 F.3d 217, 222 (D.C. Cir. 1993)); *see also In re Citigroup Bond Litigation,* 2011 U.S. Dist. LEXIS 155715 at *8 (S.D.N.Y., Dec. 5, 2011) (regulators have the burden of showing "'that the deliberative portions cannot be redacted

from the documents' to allow production of the factual material.") (quoting *In re Providian Fin. Corp. Secs. Litig.*, 222 F.R.D. 22, 26 (D.D.C. 2004) (citing *Schreiber*, 11 F.3d at 220)).

The district court in *Shirk* reached a similar conclusion when confronted with a similar demand for confidential bank regulatory documents.  Following *in camera* inspection, the court found that the 1528 pages of bank regulatory documents were "not purely factual in nature. Indeed, factual and deliberative information is largely inextricably intertwined in the documents. And the mixture of facts and deliberative indications is not amenable to being segregated." *Shirk*, 2008 U.S. Dist. LEXIS 111425, at *4, *11.

In another recent, similar securities class action lawsuit filed by a bank's shareholders, a district court in Alabama, upon *in camera* inspection of 3,189 pages of confidential Federal Reserve supervisory documents, rejected a similar claim that the documents were "purely factual." *Local 703, I.B. of T. Grocery and Food Employees Welfare Fund v. Regions Financial Corp.,* No. CV 10-J2847-S, Order dated June 13, 2012 at 2 (N.D. Ala.) (Mizusawa Decl., Exh. 1).  Similarly, here, any factual elements cannot meaningfully be separated from opinion in the FRB Exemplars.

Moreover, the plaintiff has access to the raw factual information needed for its case through discovery of BofA's non-privileged internal business records, testimony, and non-privileged discovery from third parties, and does not need to glean factual information from bank examination materials.  *See In re Bank One Sec. Litig.,* 209 F.R.D. 418, 428 (N.D. Ill. 2002) ("[p]laintiffs have been provided with the raw factual materials underlying these [examiner] opinions" and therefore are not entitled to production of bank examination information).

7

The bankruptcy court's opinion in *In re Vescio,* 208 B.R. 122, 128 (Bankr. D. Vt. 1997), cited by the plaintiff, does not warrant a different result. *See* Pl. Mem. at 5. In that case, the bankruptcy court found that Federal Reserve Bank examination ratings, inspection findings, and a bank's current status and history of compliance with Federal Reserve requirements are matters of "fact" and not opinion. 208 B.R. at 128-29. The Board respectfully suggests that that court's findings are contrary to the weight of authority in this area.[4] *See, supra,* pp. 6-7. The *Vescio* court's findings that regulatory reports, ratings, and a bank's responses are factual essentially vitiates the privilege, which has been widely recognized by the courts. *Id*. Moreover, it cannot seriously be argued that in assigning an examination rating or identifying a matter of concern, a bank examiner is not expressing his or her "opinion" rather than stating a fact. To the extent that the *Vescio* case ignores this, the result is not logical or well-reasoned, and the Board respectfully suggests that that its reasoning should not be adopted here.

Finally, plaintiff's argument that a claim of bank examination privilege is "most suspect" when applied to internal BofA emails, presentations, memoranda and similar documents is incorrect as a matter of law and makes no practical sense. Pl. Mem. at 7. An examination of Exemplars DE14, DE16, DE17 and DE19 shows that these internal BofA documents set out the regulators' concerns, and the bank's responses thereto, just as clearly as an actual bank examination report or supervisory letter. Plaintiff offers no plausible reason why the recommendations in a bank examination report would be privileged, yet an internal bank

---

[4] Similarly, the statement in *In re Franklin National Bank*, 478 F. Supp. 577, 585 (E.D.N.Y. 1979), quoted in Pl. Mem. at 5, that a bank examiner's comments are not opinions "but factual statements by a first hand observer of the bank," are contrary to more recent case law on the issue. *See, supra,* pp. 6-7.

memorandum conveying those recommendations to bank management or discussing how to respond to them would not.  Indeed, adoption of plaintiff's position regarding internal documents would defeat the purpose of the bank examination privilege, which is to safeguard "the distinctively continuous and informal process" of communication between a bank and its regulators.  *JPMorgan Chase*, 978 F. Supp. 2d at 273.  To maintain this free flow of communications, banks must be free to discuss internally the regulators' concerns and to weigh various options, which could not occur if banks believed that their internal documents discussing examiners' recommendations and their responses were not protected from discovery.  As the court held in *In re: Atlantic Financial Federal Securities Litigation*, Civ. No. 89-645, 1992 U.S. Dist. LEXIS 2619 (E.D. Pa., Mar. 3, 1992):

> Plainly, to prohibit disclosure only of those materials generated by the [regulator] as a result of the examination while allowing discovery of responsive documents prepared by the financial institution would circumvent the objective of the regulation – to protect the confidentiality of the examination process.

*Id.* at *15.

Disclosure of these internal documents would also impinge on another "important justification" for the privilege – "the financial system's sensitivity to public questioning of bank soundness."  *JP Morgan Chase,* 978 F.Supp.2d at 273.  Disclosure of internal documents that identify and discuss supervisory concerns could easily be misunderstood by the public, leading to unwarranted concerns about a bank's financial well-being.  Thus, the Court should reject plaintiff's argument that BofA's internal documents reflecting supervisory concerns are not protected by the privilege.[5]

---

[5] Under the Board's regulations, "[c]onfidential supervisory information does not include documents prepared by a supervised financial institution for its own business purposes and that

**B.  The Motion Should be Denied as Premature Because Plaintiff has Failed to Exhaust its Administrative Remedies**

Plaintiff's failure to exhaust administrative remedies provides a separate basis for denial of its Motion.  Contrary to plaintiff's argument, the fact that BofA, and not the Board, holds the privileged information does not relieve plaintiff of its obligation to follow the Board's regulations regarding seeking privileged material.  *See* Pl. Mem. at 2-3 and n.6.  The Board's regulations provide that, even in the hands of a regulated financial institution such as BofA, bank examination reports and other confidential supervisory information "remain the property of the Board," and the regulated entity may not disclose them "without the prior written permission of the Board's General Counsel …."  12 C.F.R. § 261.20(g).  The D.C. Circuit has upheld these regulations, finding that reports and records gathered or created by a federal bank regulatory agency in the course of performing its regulatory duties "are deemed the records of the agenc[y]" and thus, are available "only with the permission of the agenc[y]."  *Schreiber,* 11 F.3d at 222 (citing Board's regulations).  Relying on these and similar regulations of other banking agencies, federal courts have widely denied motions to compel discovery of bank examination materials in the possession of regulated financial institutions where litigants have failed to exhaust administrative remedies.[6]

The Board's regulations enable a litigant, such as the plaintiff, to seek access to confidential supervisory information for use in litigation.  These regulations require the litigant

_____

are in its possession."  12 C.F.R. § 261.2(c)(2).  FRB Exemplars DE14, DE16, DE17 and DE19 were not prepared for BofA's "own business purposes," but rather in response to regulatory comments, and fall within the bank examination privilege, as shown above.

[6] *See In re JPMorgan Chase Mortgage Modification Litigation*, No. 11-md-02290-RGS, 2012 U.S. Dist. LEXIS 167966 at *6 (D. Mass., Nov. 27, 2012) ("[p]laintiffs may not move to compel the production of privileged examination information until they have first contacted the agency

10

to submit a written request identifying the information sought, the relationship of the information to the issues in the litigation, the requester's need for the information, the reason it cannot be obtained from another source, and to commit to obtaining an appropriate protective order.  12 C.F.R. § 261.22(b).  Armed with this information, and having reviewed responsive documents provided by the bank, the Board can make a reasoned decision whether the requester "has shown a substantial need for confidential supervisory information that outweighs the need to maintain confidentiality," 12 C.F.R. § 261.22(c)(i), in other words, whether to waive or assert the privilege with respect to particular documents.

Although the plaintiff concedes that the bank examination privilege belongs exclusively to the regulators, Pl. Mem. at 5, plaintiff fails to acknowledge that the process by which the regulators assert the privilege, and defend their assertion, would quickly become unworkable if

---

that holds the privilege and followed the agency's procedures for obtaining information"); *In re CitiMortgage HAMP Litigation*, No. MDL 11-2274-DSF, 2012 U.S. Dist. LEXIS 169324 (C.D. Cal., June 7, 2012) ("[p]laintiffs here have not yet sought the responsive documents from the OCC, and therefore their request that the Court balance the interests involved in production is premature"); *In re Countrywide Financial Corp. Sec. Litig.,* 2009 U.S. Dist. LEXIS 120590 at *4 (C.D. Cal., Dec. 28, 2009) ("[p]laintiffs must first exhaust all administrative procedures and submit requests to use the documents in this litigation to the FRB and OCC …"); *Bay Bank v. f/v Order of Magnitude,* 2007 U.S. Dist. LEXIS 16241 at *8 (W.D. Wash., March 7, 2007) ("[b]ecause Defendants have not attempted to use the procedure outlined in the regulations [of the FDIC] … their Motion to Compel is Denied"); "); *FDIC v. Flagship Auto Center*, 2005 U.S. Dist. LEXIS 9468 at *18 (N.D. Ohio, May 13, 2005) (denying motion to compel production of bank examination materials where "[d]efendants have failed to demonstrate that they made an administrative request to the Board for documents"); *Raffa v. Wachovia Corp.*, 242 F. Supp. 2d 1223, 1225 (M.D. Fla. 2002) (directing plaintiffs to use OCC administrative procedures for access to confidential supervisory documents); *American Savings Bank v. Painewebber Inc.*, 210 F.R.D. 721, 722 (D. Ha. 2001) (litigants seeking to compel production of unpublished OTS documents would first be required to use the procedures set forth in the OTS's regulations); *National Union Fire Ins. Co.* v. *Midland Bancor*, 159 F.R.D. 562, 572 (D. Kan. 1994) ("[c]ourts simply deny motions to compel information exempted from disclosure by [Board and FDIC] regulations when the moving party has not completed the procedures outlined in the regulations for obtaining such information").

litigants are allowed to bypass the administrative process.  Not only does the failure to exhaust deprive the agencies of the opportunity to review potentially privileged documents in a bank's possession, but it deprives the agencies of the information that they need -- such as the relevance of the information to the case and the existence of an adequate protective order -- to make an informed decision regarding whether to waive the privilege.  Indeed, plaintiff's model, by which litigants may bypass administrative agencies and go straight to the courts, easily could result in courts' being required to pass on the privilege of documents for which the agencies might not have asserted the privilege in the first place.

Although the Court's use of the sampling procedure in this case, and the invitation for agency briefs, is helpful, it is not a substitute for administrative exhaustion.  Not only has the Board been deprived of a detailed description of the materials plaintiff is seeking and the other information required by its regulations, 12 C.F.R. § 261.22(b), but it has been given access to only a very small sampling -- chosen by the parties -- of potentially privileged documents. Given that the plaintiff had notice as early as the summer of 2014 that some documents in BofA's possession were likely covered by the Board's bank examination privilege, there is simply no good excuse for the plaintiff's failure to exhaust.  *See* Parties' Joint Letter to the Court, dated Dec. 22, 2014 (Dkt #275), at 4.

Plaintiff's argument that "within the Second Circuit, that there is no such [exhaustion] requirement when a party seeks discovery *from the banks themselves*, rather than the regulators," Pl. Mem. at 3, not only misinterprets the caselaw, but ignores the great weight of authority holding that administrative exhaustion is a prerequisite to judicial relief in cases involving bank examination privilege.  *See*, *supra*, pp. 10-11, n. 6.  For example, plaintiff's reliance on

*Merchant's Bank v. Vescio*, 205 B.R. 37, 41 (D. Vt. 1997) is misplaced because that decision misread the Sixth Circuit's opinion in *Bankers Trust* as dispensing with the exhaustion requirement, when it did not.  Pl. Mem. at 3 n. 6.  Relying on *Bankers Trust,* the *Vescio* court held "the Federal Rules of Civil Procedure necessarily prevail over mere 'housekeeping' rules such as [the Board's] federal regulations."  205 B.R. at 41.  What the *Vescio* court failed to realize was that the Sixth Circuit had no occasion to consider the exhaustion requirement in *Bankers Trust*.  The plaintiff in that case "had made a written request to the Federal Reserve Board, pursuant to [the Board's] regulations, for the documents in question" prior to seeking judicial intervention.  *Bankers Trust*, 61 F.3d at 468.  Thus, the exhaustion requirement had been satisfied and was never at issue in *Bankers Trust*.

Similarly, plaintiff's reliance on the district court's opinion in *Wultz v. Bank of China*, 11 Civ. 1266 (SAS), 2013 U.S. Dist. LEXIS 51181 at *26 (S.D.N.Y., Apr. 9, 2013) (*"Wultz I"*) is misplaced.  Pl. Mem. at 2-3 and n. 6.  In its opinion on reconsideration of *Wultz I*, the court cited numerous cases requiring exhaustion of administrative remedies where bank examination materials were sought from a regulated financial institution, and held "[i]t gives this Court pause that plaintiffs have cited no opinions in which a court compelled a private party to produce non-public OCC materials that would have required a *Touhy* request to obtain from the OCC."  *Wultz v. Bank of China*, 241 F.R.D. 42, 47 n.31 (S.D.N.Y., 2013) (*"Wultz II"*); *see also* Defendant's Response to Plaintiff's Motion to Compel ("Def. Mem.") (Dkt #295) at 9-10 (discussing *Wultz I and II*).  The court went on to deny reconsideration based on the perceived lack of controlling authority in the Second Circuit. *Wultz II* at 47 n. 3.  However, the Second Circuit *has* expressly held that administrative exhaustion is required before bringing an action in federal court to

compel production of non-public agency information.  In *In re SEC ex rel. Glozner*, 374 F.3d 184, 191 (2d Cir. 2004), discussed at Def. Mem. at 8-9, the Second Circuit held that the district court lacked subject matter jurisdiction to consider a motion to compel production of non-public SEC information where the requester had failed to comply with the agency's administrative procedures, stating that "SEC regulations plainly require a litigant in Stewart's position to navigate administrative channels before bringing an action in federal court to enforce a subpoena." 374 F.3d at 188.  The same principles apply here.  Because the plaintiff failed to file an administrative request for access to the Board's confidential supervisory information in BofA's possession, the Court should deny plaintiff's Motion pending exhaustion of those administrative remedies.

### C.  Plaintiff Has Not Shown Good Cause to Override the Bank Examination Privilege

In the alternative, plaintiff's Motion should be denied because plaintiff has shown no good cause to override the privilege.  In balancing the competing interests of a litigant and the government in production of bank examination materials, the courts have traditionally taken five factors into account: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the "seriousness" of the litigation; (4) the role of the government; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.  *Bankers Trust*, 61 F.3d at 472; *In re Subpoena*, 967 F.2d at 634; *Franklin*, 478 F. Supp. at 583.  It is the "requesting party['s burden to] demonstrate[] 'good cause'" to override the privilege.  *In re Citigroup Bond,* 2011 U.S. Dist. LEXIS 155715 at *10. As shown below, an analysis of the five factors weighs strongly against production of the FRB Exemplars to the plaintiff.

14

### 1. Plaintiff Does Not Meet the First Factor Because the Information It Seeks is Not Relevant

Here, plaintiff cannot meet the first and most important factor -- relevance -- because the FRB Exemplars have nothing to do with the issues in this lawsuit.  Plaintiff provides little in the way of argument on the issue of relevance, and, having bypassed the administrative process, the Board is left largely to guess why the broad array of privileged documents and testimony it seeks from BofA has any bearing on the issues in this lawsuit.  Plaintiff alludes to the issue of "the defendants' scienter in making the misrepresentations and material omissions about the health of this important financial institution," Pl. Mem. at 3, and states "[d]ocuments from the regulators either pointing out [matters allegedly not disclosed to investors] or asking defendants about them …. are likely to be the best and, in some instances, the only source of documents establishing *regulators warned Defendants about these matters,* and whether these actions were inconsistent with their public statements and material omissions."  *Id.* at 10 (emphasis supplied).  Plaintiff thus appear to be seeking the FRB Exemplars as proof of scienter.

However, an examination of plaintiff's Complaint reveals no basis for plaintiff's relevance claims.  Plaintiff's securities fraud action against BofA and certain executive defendants was brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b–5.  Complaint, ¶¶ 28-29.  Plaintiff's Section 20(a) claims against the individual defendants are based on the underlying primary Section 10(b) violations.[7] *Penn. Public School Employees Retirement Sys. v. Bank of* America, 874 F. Supp. 2d 341, 368

---

[7] In *BofA I*, the Court held that plaintiff's Section 11 claims were time-barred, and as a result there was no "underlying primary violation" for its Section 15 claims, and those claims were dismissed with prejudice.  874 F. Supp. 2d at 367-69.

(S.D.N.Y. 2012) ("*BofA I*").  The gravamen of plaintiff's claims is that during the class period, which runs from February 27, 2009 through October 19, 2010 (the "Class Period"), defendants made a series of materially false and misleading statements regarding BofA's reliance on MERS to process and track BofA's interest in mortgage loans and failed to disclose its exposure to billions of dollars in repurchase claims stemming from what defendants allegedly knew were faulty mortgages securitized and sold in the marketplace as residential MBS.  Complaint, ¶¶ 1, 165.  The Complaint alleges that, throughout the Class Period, defendants failed to disclose this information in SEC filings, press releases, and earnings calls, rendering those disclosures misleading.  *BofA I*, 874 F. Supp. 2d at 350.  The Complaint alleges that BofA's filings were false because defendants represented that BofA maintained effective disclosure controls and procedures and effective internal controls over financial reporting, when it allegedly did not.  *Id.*  Plaintiff further alleges that BofA violated generally accepted accounting principles ("GAAP") and SEC regulations, and that the alleged failure to comply with GAAP rendered those filings presumptively misleading.  *Id.*

To state a claim for relief under Section 10(b) and Rule 10b–5, plaintiff must allege "'(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'"  *BofA I*, 874 F. Supp. 2d at 351 (quoting *Pac. Inv. Mgmt. Co. v. Mayer Brown LLP,* 603 F.3d 144, 151 (2d Cir. 2010)).

It is plain from the allegations of the Complaint and the Court's opinions that BofA's communications with its regulators, and internal BofA documents discussing regulatory communications, are not the "best, contemporaneous evidence" of scienter, as plaintiff claims.

16

Pl. Mem. at 3.  Indeed, BofA's communications with its banking regulators are not alleged to be *even one source* of defendants' alleged knowledge that their statements were false and misleading.  *See* Def. Mem. at 18.  To the contrary, the Complaint does not mention BofA's communications with banking regulators, or the Federal Reserve,[8] *at all*, nor does the Complaint describe BofA's communications with its regulators as a source of knowledge of wrongdoing. Rather, by way of example, the Complaint alleges that corporate defendant BofA was aware of serious problems in its ability to foreclose on mortgages as a result of adverse decisions in state foreclosure proceedings, ¶ 69; as a result of BofA audits and compliance reviews which revealed that amortization data for the mortgage loans were suspect, ¶¶ 100-105; and through BofA's own internal servicing system that enabled it to monitor the deteriorating performance of the securitizations, ¶ 107.  None of these allegations rely in any way on the regulators as a source of BofA's knowledge of serious problems in its mortgage portfolio.

Moreover, in the *BofA I* opinion, the Court found that plaintiff's allegations were sufficient to meet the scienter requirements as to the corporate defendant, BofA, without any mention of Federal Reserve communications.  In particular, the Court found that plaintiff's allegations that a BofA vice president and assistant vice president signed false affidavits

---

[8] Paragraph 26 of the Complaint alleges "[o]n October 18, 2010, a group of private MBS investors, including the Federal Reserve Bank of New York [("FRBNY")], wrote a letter to BAC demanding that BAC repurchase $47 billion worth of Countrywide-issued residential MBS.  *See also* Complaint, ¶ 144.  That letter, which was widely publicized, was sent in the FRBNY's capacity as managing member of the investment vehicles known as Maiden Lane, LLC; Maiden Lane II and Maiden Lane III, and not in a supervisory capacity.  *See* http://dealbook.blogs.nytimes.com/2010/10/19/new-york-fed-urges-bofa-to-buy-back-loans/ This is apparent not only from the Complaint's reference to the FRBNY as a "private MBS investor," *id.*, ¶¶ 26, 144, but from the fact that BofA was regulated by FRB Richmond, not the FRBNY; thus, FRBNY did not have supervisory correspondence with BofA.

representing that they personally reviewed hundreds of loan files, when they hadn't, suggested that BofA knew that it or Countrywide Financial Corp. ("Countrywide") (which was acquired by BofA in 2008) had not properly transferred or assigned mortgages (Complaint, ¶ 83), raised a strong inference of scienter.  874 F. Supp. 2d at 363 and 371.  The Court further found that plaintiff's allegations that BofA's senior managers reviewed an audit report indicating serious errors in amortization schedules raised a strong inference of scienter (Complaint, ¶ 120), as did plaintiff's allegations concerning BofA's knowledge of repurchase claims, as shown, for example, by a letter to the Financial Crisis Inquiry Commission ("FCIC") summarizing the negative effects from BofA's over emphasis on generating loans for securitization without due regard to prudent lending (Complaint, ¶ 101).  *Id.* at 363-64 and 371.  None of these allegations are in any way dependent on BofA's supervisory communications with the Federal Reserve.

Similarly, as to the BofA executive defendants, the Court has found that plaintiff's Complaint (as amended after *BofA I*) sufficiently alleges scienter in ways having nothing to do with supervisory communications with the Federal Reserve.  *Penn. Public School Employees Retirement Sys. v. Bank of America*, No. 11 Civ. 733 (WHP), 2013 WL 1664696 at *1 (S.D.N.Y., Apr. 17, 2013) ("*BofA II*").  In particular, the Court cited a May 13, 2010 letter by BofA's outside counsel to the FCIC "'summariz[ing] the negative effects flowing from BofA's overemphasis on generating loans for securitization without due regard for prudent lending.'"  *Id.* at *2, *see also id.* at *4.  The Court also cited executive defendants' allegedly false certification of compliance with GAAP and SEC regulations despite failing to disclose potential liability from repurchase demands as further evidence of scienter.  *Id.* at *5.  None of these

allegations has anything to do with supervisory communications with regulators in general or the Federal Reserve in particular.

Moreover, one of the FRB Exemplars (PE18), and possibly many other of the privileged communications plaintiff is seeking, *see* Def. Mem. at 7, 19, is dated after the Class Period ended on October 19, 2010.  This post-Class Period confidential information has no bearing on whether defendants made materially false and misleading statements *during* the Class Period, which runs from February 27, 2009 through October 19, 2010, militating against a finding of relevance for this information.  *Shirk,* 2008 U.S. Dist. LEXIS 11425 at *9 (bank examination information found not relevant where "the regulatory documents that plaintiffs are seeking were all initiated and prepared *after* Fifth Third had already disclosed its accounting problems, which [gave] rise to this lawsuit"); *Raffa* v. *Wachovia Corp.*, 2003 WL 21517778 at *4 (M.D. Fla., May 15, 2003) (plaintiff's relevance showing found "speculative and not strong," where OCC supervisory letter "analyzes activities that occurred after the closing of the merger [in question] and does not reveal what Defendant [bank] knew shortly before or at the time …..").

Finally, the FRB Exemplars have no conceivable relevance to the other elements of plaintiff's Section 10(b) or Rule 10b-5 claims.  *See BofA I*, 874 F. Supp. 2d at 351.  Proof of whether defendants' public statements constituted "material misrepresentation[s] or omission[s]" under those provisions of the securities laws necessarily would reside in BofA's non-privileged internal business records, the records of its auditors, and the testimony of officers, directors and employees of those entities.  For example, to prove that defendants "failed to disclose the size of existing repurchase demands made by GSEs and monoline insurers" in its 2008 10-K filing as alleged in ¶ 177 of the Complaint, plaintiff would have to go back to BofA's corporate records to

determine the true size of repurchase demands by GSEs and monoline insurers at the time of the 10-K filing, and compare this information with statements made in the filing.  The opinions of BofA's regulators simply are not relevant to this element of plaintiff's claims.  Nor are regulatory communications relevant to whether there was a connection between the misrepresentation or omission and the purchase or sale of a security, reliance upon the misrepresentation or omission, economic loss, and loss causation, *BofA I*, 874 F. Supp. 2d at 351, proof of which would reside with the plaintiff.  According, plaintiff's demand for regulatory communications is simply a fishing expedition with no relevance to the Complaint, and the privilege should not be overruled.  *HSBC*, 2014 U.S. Dist. LEXIS 65662 at *11 (declining to overrule bank examination privilege where "[t]he documents subject to the privileges have marginal relevance to the litigation…").

### 2.  The Court Should Not Overrule the Privilege Because Evidence is Available to the Plaintiff From Other Sources

The second factor -- the availability of evidence from another source – strongly counsels against overriding the privilege because evidence plaintiff needs to support or refute its claims *is* available from another source, namely, BofA's own internal business records.  Plaintiff argues "[d]ocuments from the regulators … are … likely to be the best, and in some instances, the only source of documents establishing regulators warned Defendants about these matters, and whether these actions were inconsistent with their public statements and material omissions."  Pl. Mem. at 10.  This is a red herring.  While it is generally true that regulatory documents are only available with permission of the regulators, the second factor asks whether evidence *needed to prove plaintiffs' claims* is available from some source other than privileged regulatory

communications.  *Shirk,* 2008 U.S. Dist. LEXIS 111425 at *9 (asking whether "other evidence is available to support or refute plaintiffs' claims").

Contrary to plaintiff's claim that privileged regulatory communications are "the best, and in some instances, the only source" of documents, Pl. Mem. at 10, BofA has represented that plaintiff has "already obtained over eight million pages of documents and taken over 20 depositions."  *See* Def. Mem. at 21.  These documents include "the entirety of [BofA's] production to the SEC during the SEC's investigation into [BofA's] accounting for and disclosure of representation and warranty liability during the same period, as well as the SEC's various comment letters to the Bank on the Bank's public SEC filings."  *Id.*  In addition, BofA "produced millions of pages of documents on top of the reproduction of the SEC production."  *Id.* As BofA has argued, plaintiff "is free to review internal [BofA] documents prepared independent of regulator examinations and question key employees about what they knew and when they knew it, in order to test Plaintiff's allegations."  *Id.*

In addition to this information, the plaintiff also has ready access, as relevant, to documents and testimony of former employees of Countrywide and Merrill Lynch & Co. ("Merrill Lynch"), which also was acquired by BofA in 2008.  Complaint, ¶ 34.  As alleged in the Complaint, "[t]he underwriting decisions made by BAC and its legacy entities [Countrywide and Merrill] reflected the enormous pressure applied by BAC's management to generate an inventory of mortgage loans to feed BAC's securitization business."  *Id.*, ¶ 85.  Documents and testimony from these "legacy entities" is therefore another source of evidence potentially bearing on plaintiff's claims.  Moreover, as is plain from the Complaint, plaintiffs have access not only to BofA's own internal records and depositions of BofA employees, but to former BofA and

Countrywide employees in their capacity as confidential witnesses. *See, e.g.*, Complaint, ¶¶ 68, 74-77, 100-109, 117-119.

As a result, there is simply no good reason why plaintiff must glean information from privileged regulatory communications when the underlying factual information has already been produced, or is being produced, by BofA. *See HSBC*, 2014 U.S. Dist. LEXIS 65662 at *11 (declining to overrule bank examination privilege where "the defendants have already received voluminous discovery from the GSEs"); *Shirk,* 2008 U.S. Dist. LEXIS 111425 at *10-11 (second factor not met where plaintiffs have access to bank's "own internal business records"); *accord Bank One*, 209 F.R.D. at 427 (second factor not met where plaintiffs have access to "raw factual materials underlying [examiners'] opinions"); *Raffa*, 2003 WL 21517778 at *4 (second factor weighs against disclosure where "by examining documents concerning Defendant's banking operations, Plaintiff should have access to the same type of information utilized by bank examiners").

### 3.   The Remaining Three Factors Militate Against Disclosure

The third factor, which looks to the "seriousness of the litigation," is also not met here. Although this action is undoubtedly "serious" to plaintiff and defendants, a securities class action lawsuit between private litigants, for which money damages are the remedy, does not rise to the level of seriousness which would require production of confidential bank examination materials. *See*, *e.g*., *Bankers Trust*, 61 F.3d at 634 n.7 (disclosure of bank examination materials might be warranted in cases seeking to expose "'government malfeasance,'" or where "the government seeks justice between litigants") (internal citations omitted).

For example, the court in *HSBC* found "[i]t is of course true that this litigation is serious in the sense that it is substantial, has implications for our economy, and at times raises significant legal and public policy issues, [however] [t]he focus of the legal claims and defenses … is not on the legality or legitimacy of the conduct of our government."  2014 U.S. Dist. LEXIS 65662 at *11.  Likewise, in *Shirk,* the district court found "although this action is undoubtedly 'serious,' an ERISA action between private litigants, where money damages are the remedy, does not rise to the level of seriousness which would require production of confidential bank examination materials."  2008 U.S. Dist. LEXIS 111425 at *10; *see also Providian*, 222 F.R.D. at 29 ("[w]hile the importance of the policies underlying the federal securities laws cannot be overstated, those policies do not presumptively preempt the policies underlying the bank examination privilege.").

Fourth, as plaintiff concedes, "[b]ecause the government is not a party to this litigation, *Franklin's* fourth factor has no applicability here."  Pl. Mem. at 11.  While plaintiff argues that "this has not stopped courts within this Circuit from overruling assertions of privilege," *id*., plaintiff has not shown that the FRB Exemplars have anything to do with BofA's alleged untrue statements or knowledge of wrongdoing, and they would not, since the Board has no involvement with a company's securities disclosures.  Accordingly, the fourth factor is not met. *Providian*, 222 F.R.D. at 29 (fourth factor relates to whether information would "shed light on alleged government malfeasance" and is not met in private securities litigation); *Bank One*, 209 F.R.D. at 428 (fourth prong not met where OCC was a non-party).

Fifth, disclosure of communications between BofA and its regulators, and internal BofA documents discussing regulatory communications, raises "the possibility of timidity by

23

government employees who will be forced to recognize that their secrets are violable." *Bankers Trust*, 61 F.3d at 472. Plaintiff's musing that disclosure of privileged communications "could provide a greater incentive for regulators to avoid the pressure to acquiesce to the bankers' reckless course of conduct" trivializes this important public policy concern, which has been widely recognized by the courts.[9] Pl. Mem. at 11. A regulator who believes that his comments may be used, perhaps out of context, against a bank in a future private lawsuit may be less candid in his assessments than one who believes that his comments will be used strictly to improve the safe and sound operations of the bank. Likewise, a bank officer or director who believes that his communications with regulators could be used against the bank in a future lawsuit may be less forthcoming than one who is not concerned about the possibility of third-party litigation. The court in *HSBC* recognized that disclosure of privileged regulatory communications hampers effective bank regulation, holding "it is important to the sound functioning of our government and the institutions it oversees that officials and employees whose decision-making is reflected in these documents continue to express their opinions and judgments on financial governance and policy issues freely." 2014 U.S. Dist. LEXIS 65662 at *11; *see also In re Subpoena*, 967 F.2d at 634 ("[b]ecause bank supervision is relatively informal and more or less continuous, so too must be the flow of communication ….").

---

[9] The district court in *Wultz I* did not "downplay" the fifth factor, as plaintiff argues. Pl. Mem. at 11. Rather, the court held that this was "one such case" in which the "other factors," including "[t]he interest of the United States in depriving international terrorist organizations of funding that could be used to kill American citizens," 2013 U.S. Dist. LEXIS 51181 at *39, and the defendant's possible inability "to produce communications with its Chinese banking regulators," outweighed the interest in candor in regulatory communications, which the court acknowledged was "a serious concern." *Id.* at *40.

24

Plaintiff's claim that production would not chill communications between banks and their regulators because "the regulators themselves, such as the United States Department of Housing and Urban Development ["HUD"], have already published reports of investigations highly critical of BofA," is specious.  Pl. Mem. at 11-12.  HUD is not a bank regulator, but rather a U.S. government agency whose mission is "to create strong, sustainable, inclusive communities and quality affordable homes for all."[10]  HUD does not engage in the type of constant, open dialogue with banks that characterizes the bank supervisory process.  *See, e.g., In re Subpoena,* 967 F.2d at 633-34.  Therefore, HUD has no "open" and "free-flowing" communications to protect, and its Inspector General's decision to release its report has no bearing on the fifth factor.

Accordingly, all five factors weigh in favor of the Board and the FRB Exemplars are protected under the bank examination privilege.

## CONCLUSION

For the foregoing reasons, plaintiff's Motion should be denied as premature or, in the alternative, because plaintiff has not shown good cause to override bank examination privilege.

Dated:  March 23, 2015

Respectfully submitted,

/s/ Yvonne F. Mizusawa
Katherine H. Wheatley
Associate General Counsel
Yvonne F. Mizusawa
Senior Counsel
Board of Governors of the Federal Reserve System
20th & C Streets N.W.
Washington, D.C. 20551
Yvonne.f.mizusawa@frb.gov
(PH) (202) 452-3436

---

[10] *See* HUD's website at http://portal.hud.gov/hudportal/HUD?src=/about/mission