UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                          :
PENNSYLVANIA PUBLIC SCHOOL               :       CIVIL ACTION NO.
EMPLOYEES' RETIREMENT SYSTEM,            :       11-CV-00733-WHP
individually and on behalf of all others  :
similarly situated,                       :

                                          :       CLASS ACTION
               Plaintiff,                 :
                                          :       **LEAD PLAINTIFF'S REPLY**
        v.                                :       **MEMORANDUM OF LAW**
                                          :       **IN SUPPORT OF MOTION TO**
BANK OF AMERICA CORPORATION, et al.,      :       **COMPEL DISCOVERY WITH-**
                                          :       **HELD BASED UPON THE**
               Defendants.                :       **ASSERTION OF THE BANK**
_____:          **EXAMINATION PRIVILEGE**

**BARRACK, RODOS & BACINE**          **BARRACK, RODOS & BACINE**
A. Arnold Gershon                    Leonard Barrack
William J. Ban                       Mark R. Rosen
Michael A. Toomey                    Jeffrey A. Barrack
Eleven Times Square, 10th Floor      Jeffrey B. Gittleman
New York, NY  10036                  Chad A. Carder
Telephone: (212) 688-0782            Julie B. Palley
Facsimile: (212) 688-0783            2001 Market Street
                                     Philadelphia, PA 19103
                                     Telephone: (215) 963-0600
                                     Fax: (215) 963-0838

**TABLE OF CONTENTS**

**Page**

Table of Authorities ............................................................................................. ii

I.  Plaintiff is Not Required to Apply to and Receive Permission from the Bank
    Regulators to Obtain Documents from Bank of America .......................................... 5

    A.  There is No Exhaustion Requirement Here ..................................................... 5

    B.  Plaintiff's Discovery Requests Do Not Implicate Sovereign Immunity or Threaten
        to Interfere with Government Operations ........................................................ 6

    C.  Regulations Purporting to Retain Government Ownership of Documents in the
        Bank's Possession Do Not Alter the Analysis ................................................ 7

II.  The Privilege Assertions Are Overbroad and Unsupported by the Law .................. 8

    A.  The Proper Approach to Evaluating Privilege Claims ...................................... 8

    B.  Judicial Skepticism of Overbroad Claims that Materials Sought Are Protected or
        Inextricably Intertwined with Opinions ........................................................ 9

III. The Proper Application of the *Franklin* Factors Supports Overriding Any Privilege
     Claim Here ............................................................................................. 12

    A.  The Relevance of the Evidence Sought and the Availability of Other Evidence ........... 12

        1.  The Bank's Unreasonable Relevance Standard ........................................ 12

        2.  Documents Post Dating Disclosures or the End of the Class Period May Be
            Relevant ................................................................................... 14

    B.  The Existence of Contemporaneous Communications with Regulators Does Not
        Rebut Scienter ........................................................................................ 15

    C.  The Settlement with the SEC Does Not Establish Either Defendants' Innocence or
        the Sufficiency of Their Prior Disclosures ................................................... 16

    D.  The Sufficiency of the Exemplars to Demonstrate that the Privilege Should Not Apply
        Here ...................................................................................................... 16

CONCLUSION ............................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                    <u>Page(s)</u>

*American Sav. Bank v. PaineWebber Corp.*,
    210 F.R.D. 721 (D. Hawaii 2001).................................................................... 10

*Avon Pension Fund v. GlaxoSmithKline PLC*,
    343 F.3d App'x 671 (2d Cir. Aug. 24, 2009)................................................ 15, 16

*Borochoff v. GlaxoSmithKline PLC*,
    No. 07 Civ. 5574 (LLS), 2008 WL 2073421 at *8 (S.D.N.Y. May 9, 2008) ......................... 15

*Federal Hous. Fin. Agency v. HSBC North America Holdings Inc.*,
    Nos. 11 Civ. 6189 (DLC), 2014 WL 1909446 (S.D.N.Y. May 13, 2014) (Cote, *J.*)................. 8

*Federal Hous. Fin. Agency v. JPMorgan Chase & Co.*,
    978 F.Supp.2d 267 (S.D.N.Y. 2013) ............................................................ 4, 10, 17

*Federal Trade Comm'n v. Warner Commc'ns, Inc.*,
    742 F.2d 1156 (9th Cir. 1984)....................................................................... 10

*Feinberg v. Hibernia Corp.*,
    Civ. A. No. 90-4245, 1993 WL 8620, *5-6 (E.D. La. Jan. 6, 1993).......................................... 8

*Forstmann Leff Assoc., Inc. v. American Brands, Inc.*,
    No. 88 Civ. 4485(JMC), 1991 WL 168002,*4 (S.D.N.Y. Aug. 16, 1991) ................................ 4

*Hopkins v. U.S. Dep't of Hous. and Urban Dev.*,
    929 F.2d 81 (2d Cir. 1991)........................................................................... 11

*In re Bankers Trust Co.*,
    61 F.3d 465 (6th Cir. 1995), *cert. dismissed*, 517 U.S. 1205 (1996) ........................... 5, 7, 8, 10

*In re Citigroup Bond Litig.*,
    No. 08 Civ. 9522 (SHS), 2011 WL 8210671, *1 (S.D.N.Y. Dec. 5, 2011) (Stein, *J.*) ..... 8, 9, 11

*In re Control Data Corp. Sec. Litig.*,
    No. 3-85-1241, 1988 WL 92085, *3 (D. Minn. Feb. 22, 1988)......................................... 14, 15

*In re Franklin Nat'l Bank Sec. Litig.*,
    478 F.Supp. 577 (E.D.N.Y. 1979).................................................................. 4, 9, 10, 11

*In re Providian Fin. Corp. Sec. Litig.*,
    222 F.R.D. 22 (D.D.C. 2004) .................................................................... 10, 11, 14

**Cases**                                                                                            **Page(s)**

*In re S.E.C. ex rel. Glotzer v. Stewart*,
    374 F.3d 184 (2d Cir. 2004) .................................................................................. 3, 5

*In re Subpoena Served Upon Comptroller of Currency*,
    967 F.2d 630 (D.C. Cir. 1992) ................................................................................ 10

*In re Wells Fargo Residential Mortg. Lending Discrimination Litig.*,
    2009 WL 1578920, *4 (N.D. Cal. June 4, 2009), *vacated on other grounds*,
    2009 WL 8139976 (Aug. 17, 2009) ......................................................................... 9

*Local 703, I.B. of T. Grocery and Food Employees Welfare Fund v. Regions Fin. Corp.*,
    No. CV 10-J-2847-S (N.D. Ala. June 13, 2012) .................................................... 11

*Lundy v. Interfirst Corp.*,
    105 F.R.D. 499, 502 n.3 (D.D.C. 1985) .................................................................. 9

*Marketing Investors Corp. v. New Millennium Bank*,
    Civil Action No. 3:11-CV-1696-D, 2012 WL 1357502, *4-7 (N.D. Tex. April 16, 2012),
    *aff'd in relevant part*, 2012 WL 2900606 (June 5, 2012) .......................................... 7

*Merchants Bank v. Vescio*,
    205 B.R. 37 (D. Vt. 1997) ............................................................................. 5, 7, 8

*Moore-McCormack Lines, Inc. v. I.T.O. Corp.*,
    508 F.2d 945 (4th Cir. 1974) ................................................................................ 11

*Principe v. Crossland Savings, FSB*,
    149 F.R.D. 444 (E.D.N.Y. 1993) ..................................................................... 2, 8, 10

*Raffa v. Wachovia Corp.*,
    No. 8:02-CV-1443-T-27EAJ, 2003 WL 21517778, *4 (M.D. Fla. May 15, 2003) ................ 14

*Resolution Trust Corp. v. Deloitte & Touche*,
    145 F.R.D. 108 (D. Colo. 1992) .............................................................................. 7

*Schreiber v. Society for Sav. Bancorp, Inc.*,
    11 F.3d 217 (D.C. Cir. 1993) ......................................................................... 2, 4, 8

*Seafirst Corp. v. Boyd*,
    No. C83-771R, 1985 WL 188558 (W.D. Wash. Aug. 29, 1985) .................................... 9

*Sharkey v. J.P.Morgan Chase & Co.*,
    No.10 Civ. Civ. 3824, 2013 WL 2254553 *1 (S.D.N.Y. May 22, 2013)(Sweet, *J.*) ................ 8

**Cases**                                                                                       **Page(s)**

*Shirk v. Fifth Third Bancorp.*,
    No. 1:05-cv-049, 2008 WL 2661955, *3 (S.D. Ohio July 2, 2008) ..................................... 9, 14

*Southern Ry. Co. v. King*,
    217 U.S. 524, 30 S.Ct. 594, 54 L.Ed. 868 (1910) .................................................................. 10

*Wultz v. Bank of China Ltd.*,
    No. 11 Civ. 1266(SAS), 2013 WL 1453258, *6 (S.D.N.Y. April 9, 2013) ...................... *passim*

Lead Plaintiff respectfully submits this memorandum in reply to the memoranda from Defendant Bank of America Corporation ("BoA" or "the bank"), as well as the submissions from the Office of the Comptroller of the Currency ("OCC"), Federal Deposit Insurance Corporation ("FDIC"), and the Board of Governors of the Federal Reserve System ("Federal Reserve") (collectively "the agencies"), all in opposition to Plaintiff's motion to compel discovery from BoA concerning the bank examination privilege ("BEP" or "the privilege").[1]  Because BoA's memorandum provides the greatest exposition of their arguments, Lead Plaintiff will focus its reply on those arguments, and then address the agencies' positions to the extent that they offer additional rationalizations for their opposition to this discovery.[2]

BoA's memorandum reflects an effort to obscure the issue presented to the Court and the overwhelming authority supporting Plaintiff's motion.  BoA ignores, or distorts, the holdings from numerous courts within the Second Circuit supporting Plaintiff's position.  In so doing, BoA seeks to create the misleading impression that it was perfectly appropriate to withhold or redact over 30,000 documents based upon claims under the BEP.[3]  This is plainly incorrect,

---

[1] Pursuant to this Court's January 22, 2015 Order, Lead Plaintiff provided a copy of its opening memorandum and the Court's Order with its invitation to respond to the motion to five government departments or agencies BoA identified as having had communications subject to the privilege.  Only three agencies, OCC, FDIC and Federal Reserve, have elected to make submissions in response.

[2] While BoA purports to be merely asserting the privilege as a placeholder for the benefit of the agencies, the agencies have at least partially broken ranks with BoA.  The submission from the FDIC states "the FDIC does not assert the bank examination privilege to shield from disclosure purely factual, non-supervisory information.  ***Similarly, the FDIC does not invoke the privilege to protect documents that the bank generated internally for its own business purposes but frequently furnishes to the regulators.***"  FDIC Letter at 2 (emphasis added).  As Lead Plaintiff has pointed out in its Opening Mem. at 4, the bank's internal documents generally constitute over 95% of all of the documents listed on BoA's privilege log.

[3] If anything, this number underestimates the total number of documents withheld because it excludes documents withheld based upon the assertion of both the BEP and some other objection.

especially because over 95% of those materials were not communications between the agencies and the bank, but instead reflected purely internal deliberations about how to deal with the agencies' often critical observations at the same time BoA was deciding what, if anything, to disclose to the investing public about its deteriorating situation.  Similarly, its suggestion that it complied with the law governing the application of the qualified BEP by, wherever possible, redacting only the portions of the BEP documents containing opinions, rather than facts, is belied by the incontrovertible fact that the documents that were redacted, rather than withheld in their entirety, constitute less than 15% of all the documents at issue.  Surely a larger portion of the more than 30,000 documents, including the lion's share of the internal communications, contain more than just agency expressions of opinion,[4] which, of course, may also be subject to discovery when the Court decides to override any qualified privilege claim.

Likewise, the argument that Lead Plaintiff, which is seeking the production of documents exclusively from BoA, and not from any government regulator, is required to make a request to the agencies, pursuant to their internal regulations – the so called *Touhy* regulations –  for these documents, including the documents that never were received from or sent to the agencies that make up over 95% of the materials at issue, has absolutely no support from any court in the Second Circuit.  As Judge Scheindlin explained in *Wultz v. Bank of China Ltd.*, No. 11 Civ. 1266(SAS), 2013 WL 1453258, *6 (S.D.N.Y. April 9, 2013), in making short shrift of the argument that the adoption of regulations purporting to prohibit a bank from producing documents can trump the procedures for discovery from private parties under the Federal Rules:

---

[4] *See Schreiber v. Society for Sav. Bancorp, Inc.*, 11 F.3d 217, 221 (D.C. Cir. 1993) ("every court that has examined the nature of bank examination reports thus far has found them to be at least partly factual."); *Wultz v. Bank of China Ltd.*, No. 11 Civ. 1266(SAS), 2013 WL 1453258, *7 & n. 71 (S.D.N.Y. April 9, 2013); *Principe v. Crossland Savings, FSB*, 149 F.R.D. 444, 448 (E.D.N.Y. 1993).

there is a dispute between the Circuits regarding the extent of a federal court's power to order *a federal agency* to produce documents in contravention of the procedures laid out in the agency's *Touhy* regulations.  But neither the OCC nor [the bank] cite any precedent for concluding that the OCC may promulgate regulations under the Housekeeping Statute that limit a federal court's ability to order *private litigants* to produce documents under the Federal Rules of Civil Procedure.  [The bank] is not covered by the OCC's sovereign immunity, nor may the OCC extend the shelter of its immunity to [the bank] through regulations promulgated under a statute intended to deal with internal housekeeping matters.  When a federal court, after duly considering the bank examination privilege, orders a bank to produce non-public OCC information under the bank's control, the sovereign is not "compelled to act," nor is there any risk of the federal government being turned into a "'speakers' bureau for private litigants.'" (emphasis in original).

Nothing in the Second Circuit's decision in *In re S.E.C. ex rel. Glotzer v. Stewart*, 374 F.3d 184 (2d Cir. 2004), compels a different conclusion.  In fact, *Wultz* extensively cites *Glotzer* in concluding that a plaintiff is not required to apply to the agencies, and exhaust their administrative procedures, to secure documents from private parties, *see Wultz*, 2013 WL 1453258 at *6 & nn. 57-58, and no reported case has construed *Glotzer* as supporting the proposition that private parties seeking discovery from banks relating to their interactions with regulators must proceed by administrative application to, and depend upon the decision by, the regulators as to whether the banks should provide that discovery.

BoA also claims that plaintiff asserts "without an iota of evidence that [the regulators] are 'captive' to the Bank."  BoA Mem. at 2.  Hardly.  No less an authority than Sheila Bair, the former chair of the FDIC, wrote that "the deeper I got into interagency discussions, the more convinced I became that the OTS and OCC generally took whatever positions were advantageous to their larger institutions."  Sheila Blair, *Bull by the Horns: Fighting to Save Main Street from Wall Street and Wall Street from Itself* 41 (2012), quoted in *Wultz*, 2013 WL 1453258 at n. 102.

It is not surprising, of course, that defendants and the agencies would prefer to avoid all of these documents from seeing the light of day.  Seeing BoA's confidential communications with the regulators – which they assumed would never be publicly disclosed – and their day-by-day internal deliberations about how to deal with the regulators' concerns, at the same time defendants were facing rapidly increasing representations and warranties claims threatening to weaken the bank, would tend to undermine defendants' assertions that they made no false or materially misleading public statements and that they could not have acted with the requisite scienter in making those statements.   Instead, like a cockpit flight recorder, these records function, among other things, as a nearly contemporaneous record of what was going on, what BoA knew and when it knew it.  As the D.C. Circuit explained:

> An inconsistency between [the bank's] own records – which are indeed available from the institution – and the information it provided to the bank examiners could be relevant to the officers' scienter with respect to the alleged public misstatements; in their communications with the bank examiners, the officers might have evidenced (or gained) an awareness of [the bank's] true financial state at the same time that they were presenting the public with a rosier picture.

*Schreiber*, 11 F.3d at 222.  In short, as Judge Weinstein observed in his landmark decision[5] in *In re Franklin Nat'l Bank Sec. Litig.*, 478 F.Supp. 577, 586 (E.D.N.Y. 1979), "Examination Reports provide a unique and objective contemporaneous chronicle of the financial decline of [the bank]; no satisfactory substitute exists."[6]

After separating the wheat from the chaff, it should be clear that the assertion of the privilege is unwarranted under both the law and the facts in this case and, in any event, the

---

[5] As one of the cases BoA relies upon noted, *Franklin*'s approach has been "adopted by at least three Circuits," *Federal Hous. Fin. Agency v. JPMorgan Chase & Co.*, 978 F.Supp.2d 267, 279 (S.D.N.Y. 2013) (Cote, *J.*), and Lead Plaintiff is not aware of any circuit courts that have rejected its analysis.

[6] *See also Forstmann Leff Assoc., Inc. v. American Brands, Inc.*, No. 88 Civ. 4485(JMC), 1991 WL 168002,*4 (S.D.N.Y. Aug. 16, 1991) ("there is no other available means for defendants to determine whether OTS examiners warned plaintiffs of the risks of investing in junk bonds.")

privilege claims cannot justify withholding documents that reflect purely internal deliberations relating to the regulators' concerns.

I.   **Plaintiff is Not Required to Apply to and Receive Permission from the Bank Regulators to Obtain Documents from Bank of America**

A.   **There is No Exhaustion Requirement Here**

The bank misstates the law when it says that under the Second Circuit's decision in *In re S.E.C. ex rel. Glotzer, supra,* "Plaintiff must exhaust the administrative procedures of the relevant regulators before bringing a motion to compel production of documents covered by the BEP." BoA Mem. at 2.  This is simply not an accurate statement of either the issue presented or the holding in that decision.  Rather, the Second Circuit explained in *Glotzer* that it was addressing the question "whether the APA's administrative exhaustion requirement, 5 U.S.C. § 704, applies to a motion to compel *a government agency* to comply with a subpoena," and the Second Circuit ruled "we hold that a party seeking judicial review of *an agency's non-compliance* with a subpoena must first exhaust his or her administrative remedies pursuant to APA § 704." 374 F.3d at 187, 192 (emphasis added).  Nothing in *Glotzer* supports BoA's argument for deference to agency decision-making concerning disclosures to be made by the bank to private parties in litigation.  Any legitimate interest the regulators may have in the disclosure of these materials here is fully addressed by this Court's January 22, 2015 Order, which mandated that each interested agency be given both notice of this proceeding and an opportunity to be heard.[7]

---

[7] BoA's suggestion, BoA Mem. at 8, n.2, that this Court should disregard the decisions of other courts in the Second Circuit in *Merchants Bank v. Vescio*, 205 B.R. 37, 40 (D. Vt. 1997), and *In re Vescio*, 208 B.R. 122, 126-127 (Bankr. D. Vt.), because they cite to the Sixth Circuit's decision in *In re Bankers Trust Co.*, 61 F.3d 465, 470 (6th Cir. 1995), *cert. dismissed*, 517 U.S. 1205 (1996), misses the point.  *Bankers Trust*, like *Wultz* which cites it, held that "Congress did not empower [the agency] to prescribe regulations that direct a party to deliberately disobey a court order, subpoena or other judicial mechanism requiring the production of information"

Moreover, any suggestion that the motion is premature because Lead Plaintiff could have applied to the agencies, which would have entertained an administrative application for these materials with an open mind, has been effectively rebutted by the agencies' own responses here. With the notable exception of the FDIC, which has relatively few documents at issue, the agencies that have responded to the motion have asserted that the privilege should be upheld as to all or virtually all of the documents at issue.

### B.   Plaintiff's Discovery Requests Do Not Implicate Sovereign Immunity or Threaten to Interfere with Government Operations

BoA has no basis for its argument that compelling a private party to produce documents concerning bank examinations would somehow violate the principle of sovereign immunity because, BoA claims, such an order could serve to restrain the government from acting or compel it to act.  BoA Mem. at 10-11.  As Judge Scheindlin explained, "[w]hen a federal court, after duly considering the bank examination privilege, orders a bank to produce non-public OCC information under the bank's control, the sovereign is not compelled to act, nor is there any risk of the federal government being turned into a speakers' bureau for private litigants." *Wultz*, 2013 WL 1453258 at *6 (footnotes and internal quotation marks omitted).

The mere disclosure of communications with, or about, the bank regulators, which took place several years ago is not going to restrain the government from acting.  The Court does not need to take plaintiff's word for this.  One of those regulators, the Federal Reserve, has already disclosed the minutes of its private meetings that took place around the same time dealing with

---

because "[s]uch a regulation is plainly inconsistent with Rule 34 and cannot be enforced." Where the Sixth Circuit in *Bankers Trust* differs from the Second Circuit is in its treatment of subpoenas to government regulators.  *See Wultz*, 2013 WL 1453258 at *2. There is no disagreement between the Sixth Circuit and the case law in the Second Circuit, including *Wultz*, *Merchants Bank*, and *Vescio*, which all hold that discovery to private parties is governed by the Federal Rules of Civil Procedure and is not dependent upon the regulations and administrative decisions of the regulators.

the unprecedented challenges it was facing at the height of the financial crisis, apparently without any fear that this disclosure was going to deter the agency's leadership or staff from taking appropriate action now or in the future. This certainly suggests that regulators will not be deterred from sharing candid observations or taking appropriate action by the prospect that their communications may someday be disclosed in civil litigation.[8]

### C. Regulations Purporting to Retain Government Ownership of Documents in the Bank's Possession Do Not Alter the Analysis

BoA also argues, relying exclusively upon cases from outside of the Second Circuit, that the Court should not compel the production of BEP materials, including even documents reflecting purely internal deliberations at BoA that were never in the regulators' possession, because those documents remain the legal property of the regulators, regardless of the fact that they are in the bank's possession. BoA Mem. at 11. However, this approach to the discoverability of the bank examination materials has been rejected by courts in the Second Circuit and elsewhere. *Merchant Bank v. Vescio*, 205 B.R. 37, 41 (D. Vt. 1997); *In re Bankers Trust Co.*, 61 F.3d at 469; *Marketing Investors Corp. v. New Millennium Bank*, Civil Action No. 3:11-CV-1696-D, 2012 WL 1357502, *4-7 (N.D. Tex. April 16, 2012), *aff'd in relevant part*, 2012 WL 2900606 (June 5, 2012); *Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110 (D. Colo. 1992). As *Bankers Trust* explained:

> federal courts have consistently held that documents are deemed to be within the "possession, custody or control" for purposes of Rule 34 if the party has *actual* possession, custody or control, or has the legal right to obtain the documents on demand. Thus, legal ownership of the document is not determinative. It necessarily follows, then, that parties in possession of documents forwarded to

---

[8] Likewise, any concern expressed by the agencies about protecting the financial institutions from the public's misinterpretation of these communications can be adequately addressed by the existing confidentiality order. Moreover, it is hard to imagine how *any* disclosure of what was communicated several years ago could possibly pose a present threat to this, or any other financial institution.

> them by a federal agency have "possession, custody or control" within the
> meaning of Rule 34, notwithstanding the fact that the agency by regulation retains
> ownership and restricts disclosure.

61 F.3d at 469 (emphasis in original; internal citations omitted).  Thus, the argument that BoA

cannot be compelled to produce these documents pursuant to Rule 34 of the Federal Rules of

Civil Procedure because the regulators "own" the documents in the bank's possession should be

rejected.

**II.  The Privilege Assertions Are Overbroad and Unsupported by the Law**

      **A.     The Proper Approach to Evaluating Privilege Claims**

Plaintiff demonstrated in its opening memorandum of law that courts take a two-step

approach in evaluating privilege claims under the BEP.  *See* Opening Mem. at 5-8.

First, because the BEP is a limited, qualified privilege that belongs to the agencies, not

the bank, the courts narrow the matters that may be potentially subject to its protection, and the

burden is placed upon the agencies to uphold any such privilege claim, *In re Citigroup Bond*

*Litig.*, No. 08 Civ. 9522(SHS), 2011 WL 8210671, *1 (S.D.N.Y. Dec. 5, 2011) (Stein, *J.*); *Wultz*,

2013 WL 1453258 at *4.  Pursuant to these principles, the privilege does not apply to the factual

portion of any communications, *Federal Hous. Fin. Agency v. HSBC North America Holdings*

*Inc.*, Nos. 11 Civ. 6189(DLC), 2014 WL 1909446 (S.D.N.Y. May 13, 2014) (Cote, *J.*); *Sharkey*

*v. J.P.Morgan Chase & Co.*, No.10 Civ. Civ. 3824, 2013 WL 2254553 *1 (S.D.N.Y. May 22,

2013)(Sweet, *J.*); *Merchants Bank*, 205 B.R. at 42; *Vescio*, 208 B.R. at 127-128; *Principe*, 149

F.R.D. at 448; *Schreiber*, 11 F.3d at 220-221; *Bankers Trust*, 61 F.3d at 47.  In addition, the

privilege does not apply to internal documents created by the bank, *Feinberg v. Hibernia Corp.*,

Civ. A. No. 90-4245, 1993 WL 8620, *5-6 (E.D. La. Jan. 6, 1993)[9]; *Wultz*, 2013 WL 1453258 at

---

[9] The sole exception to this ruling in *Feinberg* requiring the bank to "disclose all of its internal
memoranda commenting upon the OCC and Federal Reserve examinations," was for "those

*5- 6; *Shirk v. Fifth Third Bancorp*., No. 1:05-cv-049, 2008 WL 2661955, *3 (S.D. Ohio July 2, 2008).[10]  Thus, in the first step of the court's BEP analysis, the burden is placed upon the agencies to show that the sought after material is deliberative, not factual, and that the deliberative portion of the documents cannot be redacted to allow the production of the factual material.[11] *Citigroup Bond Litig*., 2011 WL 8210671 at *1.

The second step is to apply to the *Franklin* factors[12] to determine whether any qualified privilege should be overridden.

### B.    Judicial Skepticism of Overbroad Claims that Materials Sought Are Protected or Inextricably Intertwined with Opinions

BoA attempts to discredit the *Franklin* analysis by asserting that "Plaintiff relies on a nearly 40-year-old precedent to suggest that most opinions are really facts and that, even where opinions are found, it is too cumbersome to protect even those privileged portions," and by

---

[internal documents] that contain verbatim recitations of the report," which were to be produced for *in camera* inspection.

[10] While Lead Plaintiff has identified a number of cases that hold that communications from a financial institution to the regulators are not covered by the privilege, *Lundy v. Interfirst Corp.*, 105 F.R.D. 499, 502 n.3 (D.D.C. 1985); *Seafirst Corp. v. Boyd*, No. C83-771R, 1985 WL 188558 (W.D. Wash. Aug. 29, 1985); *In re Wells Fargo Residential Mortg. Lending Discrimination Litig*., 2009 WL 1578920, *4 (N.D. Cal. June 4, 2009), *vacated on other grounds*, 2009 WL 8139976 (Aug. 17, 2009), BoA has cited others that extend the qualified privilege to the financial institution's response.  However, it is not necessary for the Court to resolve the legal question whether the qualified BEP *might* apply to BoA's responses to the regulators, because, as shown in Opening Mem. at 8-12, and *infra* at 12-17, applying the second step of the two step analysis, the *Franklin* factors favor overriding any privilege claim here.

[11] In fact, the Federal Reserve cites *In re Citigroup Bond Litig*., 2011 U.S. Dist. LEXIS 155715 at *8 (S.D.N.Y. Dec. 5, 2011), for the proposition that the burden is placed upon the regulators to show that any protected portion of the documents cannot be redacted.  Federal Reserve Mem. at 6-7.

[12] These factors are: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable."  *Franklin*, 478 F.Supp. at 583 (internal citations omitted).

suggesting "it has clearly been supplanted by numerous decision recognizing that the importance

of the BEP may require withholding whole documents and applying redactions when

necessary."[13] BoA Mem. at 16, n.10.  There are at least two reasons why BoA is mistaken.

*First*, as noted by Judge Cote in *Federal Hous. Fin. Agency v. JPMorgan Chase*, 978

F.Supp.2d at 279, *Franklin* has been adopted by three Circuit Courts, *Bankers Trust*, 61 F.3d at

471-472; *In re Subpoena Served Upon Comptroller of Currency*, 967 F.2d 630, 634 (D.C. Cir.

1992); *Federal Trade Comm'n v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984),

as well as numerous district courts inside this Circuit, *Wultz*, 2013 WL 1453258 at *8; *Federal

Housing Fin. Agency v. JPMorgan Chase*, 978 F.Supp.2d at 279; *Principe, FSB*, 149 F.R.D. at

447-448, and elsewhere, including many of the decisions BoA cites in its memorandum, *In re

Providian Fin. Corp. Sec. Litig.*, 222 F.R.D. 22, 26 (D.D.C. 2004); *American Sav. Bank v.

PaineWebber Corp.*, 210 F.R.D. 721, 723 (D. Hawaii 2001).

*Second*, the Second Circuit itself has repeatedly stressed the need to segregate

discoverable factual observations from privileged materials and suggested that the courts should

---

[13] In fact, *Franklin* builds upon a much more longstanding principle when it states:

> Examination of the examiner's actual comments … reveals that no such crisp
> distinction can be drawn between "opinion" and "fact."  The wisdom of this
> observation has already been firmly acknowledged in the context of other areas of
> the law ….  The problem, as Justice Holmes observed, was that statements of
> conclusion often only collect and summarize statements of fact: such a "statement
> may be called a conclusion, but it is a conclusion of fact, just as that statement
> that a certain liquid was beer is a conclusion of fact from certain impressions of
> taste, smell and sight." *Southern Ry. Co. v. King*, 217 U.S. 524, 538, 30 S.Ct. 594,
> 54 L.Ed. 868 (1910) (Holmes, J., dissenting).

*Franklin*, 478 F.Supp. at 583-584.  Judge Weinstein further noted after reviewing the
comments in the bank examination reports in that case that "[m]ost of the statements that
the government characterizes as expression of opinion could, as well, be characterized as
'shorthand' statements of fact." *Franklin,* 478 F.Supp. at 584.

not accept "conclusory" assertions or sweeping claims that they are inextricably intertwined.

*See, e.g.*, *Hopkins v. U.S. Dep't of Hous. and Urban Dev.*, 929 F.2d 81, 85-86 (2d Cir. 1991).

All of this should indicate that the Court should approach claims that the factual contents

of the BEP documents are inextricably intertwined with expressions of opinion with a healthy

degree of skepticism,[14] and none of the cases that BoA cites, BoA Mem. at 16-17, support a

different approach.  In fact, one of those decisions BoA cites specifically notes, "[i]f the OCC

demonstrates that the factual and privileged material is 'inextricably linked, then the court must

determine whether the privilege … should be overridden for cause and the documents

produced,'" *In re Providian Fin. Corp. Sec. Litig.*, 222 F.R.D. 22, 26 (D.D.C. 2004), *quoting In*

*re Subpoena Served upon the Comptroller of the Currency (Fleet)*, 967 F.2d at 634.  And another

one also cites *Providian* for the proposition that the agencies have the burden of demonstrating

that the protected portions cannot be redacted from the materials to allow for the production of

the factual materials.[15]  *In re Citigroup Bond Litig.*, 2011 WL 8210671 at *1.  Likewise, The

Federal Reserve cites an order in *Local 703, I.B. of T. Grocery and Food Employees Welfare*

*Fund v. Regions Fin. Corp.*, No. CV 10-J-2847-S (N.D. Ala. June 13, 2012), as rejecting the

proposition that certain documents should be produced because they were "purely factual."    In

---

[14] The OCC states that it "asserts the bank examination privilege as to any factual material withheld or redacted in the Exemplars because it is inextricably intertwined with the agency's opinions and recommendations such that extracting it is impractical." OCC Mem. at 15.  Yet it admits elsewhere that out of the 40 exemplars it reviewed, it identified seven documents which "the OCC believes contain segregable, non-privileged information." OCC Mem. at 8, n. 10.  That certainly supports Lead Plaintiff's assertion that BoA has excessively withheld responsive information here.

[15] Judge Weinstein also noted the problems with redactions, explaining that the exceptions to disclosure can be "both trivial and harmless" and thus not justify "the effort necessary to weed them out," and "cutting a phrase here and there would make the document difficult to read and almost impossible to evaluate fairly," as partial suppression "will distort the tenor of the document." *Franklin,* 478 F.Supp. at 585, *quoting in part Moore-McCormack Lines, Inc. v. I.T.O. Corp.*, 508 F.2d 945, 949 (4th Cir. 1974).

fact, the *Local 703* court did not address that contention, and instead simply ruled that "the majority of the documents in question are privileged …. [and] the remaining documents ... are entirely irrelevant." *Id*. at 3.

### III. The Proper Application of the *Franklin* Factors Supports Overriding Any Privilege Claim Here

Plaintiff spelled out its analysis of the *Franklin* factors in its opening memorandum at 9-12, and will not repeat those points here.  Instead, plaintiff will limit its comments to a few specific arguments raised in opposition to the conclusion that the privilege should be overridden here.

#### A. The Relevance of the Evidence Sought and the Availability of Other Evidence

##### 1. The Bank's Unreasonable Relevance Standard

BoA erects a straw man when it says "Plaintiff fails to explain how *all* of the BEP-protected documents it seeks are relevant to the issues involved in this litigation" and to satisfy its burden Lead Plaintiff "must do more than offer its speculation that all the BEP documents somehow relate to the allegations in this litigation."  BoA Mem. at 18 (emphasis in original). That argument flies in the face of the standards of Rule 26, as no one can, or should be expected to demonstrate the relevance of every single document sought in discovery in advance of its disclosure.

Moreover, without revealing the contents of each of the more than 30,000 documents withheld or redacted, BoA offers no real means for demonstrating their relevance on a document-by-document basis, since most of the entries on its BEP-only privilege log listing documents that were withheld in their entirety simply identify the parties to that document (sender, recipient, etc.) but contain no hint of their substantive contents, other than occasional entries that the document may touch upon an undisclosed bank examination report or similar

item.  Likewise, when entire sections of a document are redacted, it can be impossible to infer

the contents of the redacted portions.  Thus, even if the plaintiff were to attempt a document-by-

document review, there would be no basis for intelligently doing so.[16]

      As a corollary to that argument, BoA states that in *Wultz*, the plaintiff had cited evidence

that the regulator had challenged its practices but "[h]ere, Plaintiff did not even allege regulator

warnings as a basis for scienter."  BoA Mem. at 18.  The answer to such charges is that BoA has

not yet provided such disclosures in this litigation, but there are hints of such criticism in some

plaintiff's exemplars.  For example, ████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████.  Both of these documents are certainly suggestive of the relevance of

these materials and certainly demonstrate that plaintiff has met the requirements of Rule 26.

---

[16] The OCC argues from its review of certain exemplars that the disclosure of purely internal documents – the items listed in Privilege Log C – would result in the disclosure of the substance of the agencies' concerns and thereby compromise their ability to communicate candidly with the banks.  The short answer to its concern is that the revelation, several years after the events in question, of information scarcely imperils candid communications, any more than the fact that almost all government records, even involving the most sensitive national security affairs, are ultimately declassified, prevents government officials from providing candid assessments of the situation. It is also worth noting that another regulator, the FDIC, saw no need for the protection of these purely internal communications.

[17] This document was inadvertently listed as BAC-PPSERS-04-00278604 in Lead Plaintiff's opening memorandum.

### 2.   Documents Post Dating Disclosures or the End of the Class Period May Be Relevant

Next, BoA argues that any document that post dates the end of the class period "cannot reasonably be said to provide notice or demonstrate scienter during the Class Period."  BoA Mem. at 19.  The answer to that is two-fold.  *First*, these documents may be useful for other issues, such as proof of what actually happened, in addition to providing evidence of scienter, so the fact that a document was generated after the close of the class period does not establish that it cannot be relevant or otherwise lead to the discovery of admissible evidence.  *See, e.g., In re Control Data Corp. Sec. Litig.*, No. 3-85-1241, 1988 WL 92085, *3 (D. Minn. Feb. 22, 1988) ("There are numerous instances in securities fraud litigation where post-offering statements, documents, or conduct have been treated as admissible evidence on the issue of scienter, intent, and knowledge.")  *Second*, BoA's broader relevancy argument has been addressed, and effectively refuted in one of the cases BoA cites.  In *Providian*, the OCC had argued that three of the documents plaintiff sought were not written during the class period and therefore plaintiffs had failed to demonstrate their relevance.  In response, plaintiffs stated that the materials were written to address defendants' activities prior to and during the class period and therefore are relevant.  The *Providian* Court agreed with plaintiffs, and "conclude[d] that the origination date of the three documents is not dispositive as to the relevance of the documents because the relevance standard is so broad under the Federal Rules of Civil Procedure."[18] *Providian*, 222 F.R.D. at 25.

---

[18] The OCC's citations on this point, OCC Mem. at 19, do not support a contrary conclusion.  In *Shirk*, 2008 WL 2661955 at *2, the court noted that the sought-after documents were provided between March 2003 and April 2004, "well after the 2001-2002 time when plaintiffs alleged that [the bank] learned of its accounting and internal control problems."  Likewise, in *Raffa v. Wachovia Corp.*, No. 8:02-CV-1443-T-27EAJ, 2003 WL 21517778, *4 (M.D. Fla. May 15, 2003), the court found that the plaintiff's argument for disclosure was weak, based in part upon the fact that the OCC document "analyzes activities that occurred after the closing of the merger

**B.     The Existence of Contemporaneous Communications with Regulators Does Not Rebut Scienter**

Having first suggested that there were no communications with regulators critical of the bank's actions, BoA then takes the opposite position and cites *Borochoff v. GlaxoSmithKline PLC*, No. 07 Civ. 5574(LLS), 2008 WL 2073421 at *8 (S.D.N.Y. May 9, 2008), *aff'd sub nom. Avon Pension Fund v. GlaxoSmithKline PLC*, 343 F.3d App'x 671 (2d Cir. Aug. 24, 2009), to argue that any undisclosed discussions that did take place between BoA and its regulators about its problems would refute any inference of an intent to conceal such concerns from the public. BoA Mem. at 20.  In that case, the developer of Avandia, a new diabetes drug, was sued for securities fraud for failure to disclose that a meta-analysis of its prior studies had shown statistically significant evidence that Avandia caused cardiovascular risks.  However, GlaxoSmithKline ("GSK") argued that the omission was not material because the meta-analyses results were inconclusive and thus GSK had no duty to disclose them.  Moreover, in 2006, during the class period and the year *before* it ended, GSK had publicly disclosed the results of the 42 clinical trials underlying the two meta-analyses. Furthermore, the FDA Commissioner testified before Congress that the FDA had looked about both the meta-analysis and the population-based database study and concluded that "the data are inconsistent and conclusions are not clear." *Borochoff*, 2008 WL 2073421 at *5-6.  It was in that context that the Court stated:

> Allegations of defendants' intent to defraud by suppressing negative data are inconsistent with defendants' disclosure of that data on GSK's website and to the FDA.  GSK disclosed its meta-analyses results to the FDA, *and posted them to its website*, which rebuts any intent to defraud by concealing information.

---

and does not reveal what Defendant knew shortly before or at the time of the merger."  Neither case holds or suggests that any documents that post-date the close of the class period cannot shed light on what defendants knew during the class period.  *See Control Data*, 1988 WL 92085 at *3.

*Borochoff*, 2008 WL 2073421 at *8 (emphasis added), and it was on this basis that the Second Circuit affirmed the dismissal of the GSK complaint, *Avon Pension Fund*, 341 Fed. App'x at 674. Needless to say, there was no contemporaneous public disclosure here, on BoA's website or otherwise.

## C.   The Settlement with the SEC Does Not Establish Either Defendants' Innocence or the Sufficiency of Their Prior Disclosures

BoA argues that it provided plaintiff's counsel with the documents it had previously produced to the SEC, and that the SEC "concluded only that the Bank's disclosures were deficient for two quarters in 2009 and the deficiency was cured in the Form 10-K for 2009" and "Plaintiff cannot explain how this production would be insufficient to provide it evidence regarding the Bank's accounting and disclosure with respect to representation and warranty exposure." BoA Mem. at 21. This argument ignores at least two points. *First*, the resolution of the SEC proceedings were the result of a larger negotiation in which BoA paid nearly $17 billion to settle various claims, and it was in this context that the SEC agreed to these limited findings. *Second*, plaintiff, unlike the SEC, is required to prove scienter so its discovery needs are not the same.

## D.   The Sufficiency of the Exemplars to Demonstrate that the Privilege Should Not Apply Here

Finally, BoA attacks the Court-approved use of 25 exemplars identified by each side as an adequate basis for determining whether the sought after materials should be provided and suggests that these documents cannot be adequately representative of the more than 30,000 documents at issue. BoA Mem. at 3. In doing so, BoA ignores the fact that it did not object to `the proposed order calling for each side to designate 25 documents. Moreover the selection of documents need not be extensive. As Judge Cote directed in dealing with another BEP dispute to which BoA was a party, if the parties were unable to resolve their differences in the meet and

16

confer process, they should select five to ten documents as a basis upon which the Court can rule

upon the dispute. *Federal Hous. Fin. Agency v. JPMorgan Chase & Co.*, 978 F.Supp.2d at 280.

## CONCLUSION

Neither BoA nor any agency has made a convincing case for the recognition of the BEP

here. To the extent this privilege would otherwise apply, plaintiff has demonstrated that its

assertion here should be overridden.


Dated: April 6, 2015                                    Respectfully submitted,


                                                        **BARRACK, RODOS & BACINE**
                                                        A. Arnold Gershon
                                                        William J. Ban
                                                        Michael A. Toomey
                                                        Eleven Times Square, 10th Floor
                                                        New York, NY  10036
                                                        Telephone: (212) 688-0782
                                                        Facsimile: (212) 688-0783

                                                               -and-

                                                        **BARRACK, RODOS & BACINE**


                                                        By:   /s/ Mark R. Rosen
                                                        Leonard Barrack
                                                        Mark R. Rosen
                                                        Jeffrey A. Barrack
                                                        Jeffrey B. Gittleman
                                                        Chad A. Carder
                                                        Julie B. Palley
                                                        3300 Two Commerce Square
                                                        2001 Market Street
                                                        Philadelphia, PA 19103
                                                        Telephone: (215) 963-0600
                                                        Fax: (215) 963-0838

                                                        *Attorneys for Lead Plaintiff Pennsylvania Public
                                                        School  Employees' Retirement System and Lead
                                                        Counsel for the Class*

17