UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PENNSYLVANIA PUBLIC SCHOOL EMPLOYEES' RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>BANK OF AMERICA CORPORATION, et al.,<br><br>　　　　　　Defendants. | CIVIL ACTION NO.<br>11-CV-00733-WHP<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, APPROVAL OF CLASS NOTICE AND SCHEDULING OF FINAL APPROVAL HEARING** |

**BARRACK, RODOS & BACINE**
A. Arnold Gershon
William J. Ban
Michael A. Toomey
Eleven Times Square
640 8th Avenue, 10th Floor
New York, NY 10036
Telephone: (212) 688-0782
Facsimile: (212) 688-0783

**BARRACK, RODOS & BACINE**
Leonard Barrack
Mark R. Rosen
Jeffrey A. Barrack
Jeffrey B. Gittleman
Chad A. Carder
Julie B. Palley
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Fax: (215) 963-0838

## TABLE OF CONTENTS

**Page**

BACKGROUND OF THE LITIGATION .................................................................................... 2

ARGUMENT .................................................................................................................................. 8

    I.    The Proposed Settlement Warrants Preliminary Approval ........................................ 8

        A.    The Proposed Settlement is the Result of Good Faith, Arm's Length ............................................................................................ 10

        B.    The Proposed Settlement Falls Within the Range of Reasonableness and Merits Issuance of Notice and a Hearing on Final Approval ................................................................................. 11

    II.    The Court Should Approve the Form of the Notice and Plan for Providing Notice to the Class and Schedule the Final Approval Hearing ................................................................................................. 13

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ............................................................................................. 9

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) .............................................................................................. 10

*In re Currency Conversion Fee Antitrust Litig.*,
MDL Nos. 1409, M 21-95, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) .................. 8, 14

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) .................................................................................. 11

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ................ 13, 14

*In re Initial Pub. Offering Sec. Litig.*,
243 F.R.D. 79 (S.D.N.Y. 2007) ................................................................................. 10, 11

*In re NASDAQ Market-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................................... 8, 9, 12

*In re PaineWebber Ltd. P'ships Litig.*,
147 F.3d 132 (2d Cir. 1998) .............................................................................................. 8

*In re Prudential Secs. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200 (S.D.N.Y. 2005) ................ 9, 12

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) .............................................................................. 10

*In re Traffic Exec. Ass'n-Eastern R.R.s*,
627 F.2d 631 (2d Cir. 1980) .............................................................................................. 9

*In re Warner Chilcott Ltd. Sec. Litig.*,
No. 06 Civ. 11515(WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ................ 8, 9, 14

*Leung v. Home Boy Rest. Inc.*,
No. 07 Civ. 8779 (RJS) (DFE), 2009 WL 398861 (S.D.N.Y. Feb. 18, 2009) ................. 10

*McReynolds v. Richards-Cantave*,
588 F.3d 790 (2d Cir. 2009) .............................................................................................. 9

| **Cases** | **Page(s)** |
|---|---|

*Morris v. Affinity Health Plan, Inc.*,
   No. 09-cv-1932 (DAB), 2011 WL 6288035 (S.D.N.Y. Dec. 15, 2011) ................................ 9

*Pennsylvania Public School Employees' Retirement System v.*
   *Bank of America Corp.*,
   No. 11 Civ. 00733-WHP ................................................................................... *passim*

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir.), *cert. denied*, 544 U.S. 1044 (2005) .................................... 8, 10

**Statutes**

15 U.S.C. §78u-4(a)(4) ................................................................................................. 12
15 U.S.C. § 78u-4(a)(7) ................................................................................................ 14
15 U.S.C. §§78u-4 *et seq.* ............................................................................................. 1

**Other Authorities**

*Manual for Complex Litigation*,
   Third § 30.41 at 237 (1995) ..................................................................................... 12

**Rules**

Federal Rule of Civil Procedure 23(a) ..................................................................... 5, 6
Federal Rule of Civil Procedure 23(b)(3) ................................................................. 5, 6
Federal Rule of Civil Procedure 23(c)(1)(C) ............................................................... 6
Federal Rule of Civil Procedure 23(c)(3) .................................................................. 13
Federal Rule of Civil Procedure 23(e) ........................................................................ 8

**Regulations**

Private Securities Litigation Reform Act of 1995 ................................................ 1, 14
Securities Act of 1933 ................................................................................................... 3
Securities Exchange Act of 1934 .................................................................................. 3

**Newspapers**

*PR Newswire* ......................................................................................................... 13, 14
*Wall Street Journal* ............................................................................................... 13, 14

The Court-appointed Lead Plaintiff, the Commonwealth of Pennsylvania, Public School Employees' Retirement System ("PSERS" or "Lead Plaintiff"[1]), on behalf of itself and the Class, respectfully submits this memorandum of law in support of its motion seeking preliminary approval of the settlement reached with all Defendants, approval of the proposed notice, and scheduling of the final approval hearing.

After extensive investigation and discovery, including the review of over 8 million pages of documents and the depositions of 34 fact witnesses, as well as three arm's length in-person mediation sessions, spanning more than ten months, facilitated by former United States District Judge Layn R. Phillips (Ret.), Lead Plaintiff and Defendants have agreed to settle all claims against the Defendants that are based upon, arise out of, or relate to those asserted in this Action in exchange for a payment of $335,000,000. The terms of the Settlement are set forth in the Stipulation and its accompanying exhibits.

Lead Plaintiff's Motion seeks an order: (i) preliminarily approving settlement of the claims against Defendants in the Action, as set forth in the Stipulation; (ii) approving the form, substance and requirements of the proposed Notice and Summary Notice and Claim Form, appended as Exhibits 1, 2, 3 and 4 to the proposed Preliminary Approval Order submitted herewith, and the means and methods for disseminating notice, which comport with all requirements of due process and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §§78u-4 *et seq.*; and (iii) scheduling a hearing at which final approval of the Settlement, the proposed plan of allocation, and a request for an award of attorneys' fees and

---

[1] All capitalized terms not otherwise defined herein have the same meanings as set forth in Paragraph 1 of the Stipulation and Agreement of Settlement (the "Stipulation"), dated March 11, 2012.

expenses to Lead Counsel and reimbursement of expenses of the Lead Plaintiff, may be considered.

The proposed cash settlement of $335 million represents a substantial monetary benefit for the Class, and is one of the largest class settlements relating to the conduct of financial institutions in allegedly concealing significant financial vulnerabilities arising from the sale of billions of dollars of mortgage-backed securities.[2] The Settlement was reached at a time when the Parties understood the strengths and weaknesses of their respective positions. Lead Plaintiff believes that the proposed Settlement is an excellent result that is in the best interests of the Class, providing an immediate monetary benefit to the Class. The Settlement must also be considered in the context of the risk that protracted and contested litigation, including dispositive motion practice, trial and likely appeals, could result in a lesser recovery from Defendants or no recovery at all.

## BACKGROUND OF THE LITIGATION

Beginning on February 2, 2011, a number of class actions alleging violations of federal securities laws by Defendants were filed in this Court.

On June 20, 2011, the Court entered an order to consolidate the actions and refer to them collectively as *Pennsylvania Public School Employees' Retirement System v. Bank of America Corporation, et al.*, No. 11 Civ. 00733-WHP. The order also appointed PSERS as Lead Plaintiff and Barrack, Rodos & Bacine as Lead Counsel.

---

[2] This Court has previously noted that, at the preliminary approval stage, plaintiff does not face a high hurdle in showing that a settlement amount falls within a reasonable range. "'[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery,'" *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, M-21-95, 2006 WL 3247396, *6 (S.D.N.Y. Nov. 8, 2006) (Pauley, J.), *quoting In re Ionosophere Clubs, Inc.*, 156 B.R. 414, 427 (S.D.N.Y. 1993). *See also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455, n. 2 (2d Cir. 1974) (same).

2

On September 23, 2011, Lead Plaintiff filed the Consolidated Class Action Complaint (the "Complaint"), which alleged that Defendants violated Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 ("1933 Act Claims") and/or Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 ("1934 Act Claims") and asserted claims on behalf of all persons or entities who purchased or otherwise acquired either common stock or Common Equivalent Securities of Bank of America Corporation ("BoA") during the Class Period, from February 27, 2009, through October 19, 2010, and who allegedly suffered damages as a result.

On January 11, 2012, Defendants moved to dismiss the Complaint. On February 15, 2012, Lead Plaintiff filed its opposition papers and, on March 2, 2012, Defendants filed reply papers. On March 28, 2012, the Court heard oral argument on Defendants' motions, and on July 11, 2012, the Court issued an Opinion and Order granting in part and denying in part Defendants' motions to dismiss. The Court's July 11, 2012 Order (1) denied BoA's motion to dismiss the 1934 Act Claims asserted against BoA; (2) granted, without prejudice, the Executive Defendants' motions to dismiss the 1934 Act Claims asserted against them; and (3) granted, with prejudice, all motions to dismiss the 1933 Act Claims asserted in the Complaint. As a consequence of the Court's July 11, 2012 Order, all claims against the Director Defendants, the Underwriter Defendants and PwC were dismissed with prejudice.

On July 25, 2012, BoA moved for reconsideration of the Court's July 11, 2012 Order to the extent it sustained Lead Plaintiff's 1934 Act Claims or, in the alternative, to certify the Court's decision for interlocutory review, pursuant to 28 U.S.C. §1292(b). On August 13, 2012, Lead Plaintiff filed its opposition memorandum, and also filed an amended consolidated class action complaint (the "Amended Complaint"). On August 23, 2012, BoA filed its reply memorandum in support of its motion for reconsideration or certification for interlocutory

3

appeal. On August 28, 2012, the Court denied BoA's motion for reconsideration or for certification for interlocutory appeal.

On November 5, 2012, the Executive Defendants moved to dismiss the Amended Complaint. On November 21, 2012, BoA filed its answer to the Amended Complaint. BoA denied the claims and asserted a number of affirmative defenses. On December 12, 2012, Lead Plaintiff filed its opposition memorandum to the Executive Defendants' motion to dismiss the Amended Complaint. On December 21, 2012, the Executive Defendants filed their reply memorandum in support of their motion to dismiss the Amended Complaint. Following oral argument, on April 17, 2013, the Court denied in part the Executive Defendants' motion to dismiss the Amended Complaint.

On May 1, 2013, Defendant Brian T. Moynihan moved for reconsideration of the Court's Order denying the Executive Defendants' motion to dismiss the Amended Complaint. On May 20, 2013, Lead Plaintiff filed its opposition memorandum to Mr. Moynihan's motion for reconsideration. On May 31, 2013, Mr. Moynihan filed his reply memorandum in support of his motion for reconsideration. On June 12, 2013, the Court denied in part Mr. Moynihan's motion for reconsideration.

On June 17, 2013, the Executive Defendants filed their answers to the Amended Complaint. The Executive Defendants denied the claims and asserted a number of affirmative defenses.

Fact discovery in the Action commenced in or around August 2013. During the course of fact discovery, the parties collectively produced more than 8 million pages of documents and conducted 34 fact depositions.

On July 30, 2013, the Court issued an Order concerning class certification which established a schedule for filing of materials with respect to the class certification motion and directed, *inter alia*, that the parties submit a joint report regarding the proposed class certification motion by October 31, 2013. Following the Court's July 30, 2013 Order, the parties conferred concerning the elimination or narrowing of issues relating to the class certification motion, and agreed that Defendants, subject to reserving certain rights, would not contest the efficiency of the market for BoA common stock or Common Equivalent Securities during the Class Period, that the Class satisfies the numerosity and commonality requirements of Federal Rule of Civil Procedure 23(a), and the predominance and superiority requirements of Federal Rule of Civil Procedure 23(b)(3). On November 15, 2013, Lead Plaintiff moved for certification of a class of all persons or entities who purchased or otherwise acquired either BoA's common stock or Common Equivalent Securities during the class period of February 27, 2009 through October 19, 2010, and who allegedly suffered damages as a result (the "Class"). Excluded from the Class are: (i) Defendants; (ii) members of the immediate family of each of the Executive Defendants; (iii) any person who was an executive officer and/or director of BoA during the Class Period; (iv) any entity that served as an underwriter for BoA's offering of Common Equivalent Securities; (v) any person, firm, trust, corporation, officer, director, or any other individual or entity in which any Defendant has a controlling interest or that is affiliated with any of the Defendants; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.[3] Subsequent to the November 15, 2013 filing of Lead Plaintiff's class certification motion, on December 4, 2013, counsel for BoA and the Executive Defendants conducted the deposition of two designees of Lead Plaintiff and examined them

---

[3] The Stipulation of Settlement provides "For the sake of clarity, the exclusions from the Class do not include Investment Vehicles."

5

concerning, *inter alia*, Lead Plaintiff's qualifications to represent the Class. On December 13, 2013, BoA and the Executive Defendants filed a letter setting forth their reservation of certain rights and advising the Court and Lead Plaintiff, *inter alia*, that "at this time, Defendants do not intend to contest that PSERS's 'claims or defenses … are typical of the claims or defenses of the class' and that PSERS can 'fairly and adequately protect the interests of the class.'" Subsequently, the parties filed a Stipulation to the certification of the Class, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3), and on February 14, 2014, the Court issued an Order approving that Stipulation and certifying the Class sought by PSERS in its motion, certifying PSERS as the Class Representative, and appointing PSERS's counsel, Barrack, Rodos & Bacine, as Class Counsel under Federal Rule of Civil Procedure 23(g), all subject to the parties' reservation of their rights to move to alter or amend the Court's Order certifying the Class pending final judgment in this action pursuant to Federal Rule of Civil Procedure 23(c)(1)(C).

In or about April 2014, Lead Plaintiff and BoA agreed to participate in a mediation of the Action before the Honorable Layn R. Phillips, a former federal district court judge in the United States District Court for the Western District of Oklahoma. In advance of the mediation, Lead Plaintiff and BoA made several detailed submissions to Judge Phillips. On October 2, 2014, Judge Phillips conducted a mediation session in New York City attended by representatives of Lead Plaintiff, BoA and their respective counsel. This mediation did not result in an agreement to resolve the Action. Another mediation before Judge Phillips was held on February 27, 2015. In advance of this mediation, Lead Plaintiff and BoA made further written submissions to Judge Phillips. This mediation also did not result in an agreement to resolve the Action. Then, a third mediation was held before Judge Phillips on August 12, 2015. In advance of this mediation session, Lead Plaintiff and BoA made further written submissions to Judge Phillips. Counsel for

Lead Plaintiff and BoA communicated directly with each other following the second mediation session and agreed to narrow the range for a possible negotiated settlement.

At the conclusion of the mediation session on August 12, 2015, counsel for BoA and Lead Counsel, on behalf of their respective clients, accepted a mediator's proposal from Judge Phillips to settle and release all claims asserted in the Action in return for a cash payment by BoA of $335 million for the benefit of the Class, subject to the execution of this Stipulation of Settlement and related papers, and approval of the proposed settlement by the Court.

Prior to agreeing to the mediator's proposal, Lead Plaintiff and Lead Counsel conducted an in-depth investigation of the claims and underlying events relating to the Action. This investigation included, among other things, review and analysis of: (i) publicly available information concerning the Defendants, including newspaper articles, online publications, analyst reports, and commentary; (ii) regulatory filings made by Defendants with the United States Securities and Exchange Commission ("SEC"), including Registration Statements and Prospectuses; and (iii) securities analysts' reports, public statements, media reports, and court records. Lead Plaintiff's and Lead Counsel's investigation further included: (iv) reviewing over 8 million pages of documents and conducting 34 fact depositions; (v) identifying, retaining and working with experts in the fields of accounting, economics, and mortgage recording and securitization to analyze relevant information and assess the strengths and weaknesses of the case; and (vi) meeting and conferring with Defendants and their counsel, and participating in the mediation process, which further brought into focus the strengths and weaknesses of the liability, loss causation and damages aspects of the case.

Following the Parties' agreements in principle, the Parties proceeded to formalize the agreements to resolve the Action in the Stipulation and exhibits thereto. Accordingly, at the time

the Stipulation was executed, Lead Plaintiff and Lead Counsel had a thorough understanding of the strengths and weaknesses of the Plaintiffs' claims and Defendants' potential defenses. In light of (i) the Settlement's substantial benefits (including the payment of $335 million for the benefit of the Class); (ii) the cost and risks of continuing the litigation against the Defendants through trial and appeals; (iii) that the proposed Settlement resulted from arm's length negotiations assisted by an experienced and respected mediator; and (iv) the approval of the Settlement by the Court-appointed Lead Plaintiff, it is respectfully submitted that the Settlement warrants the Court's preliminary approval in order that notice can be provided to the Class.

## ARGUMENT

### I. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) requires judicial approval for any settlement or compromise of claims certified to proceed on a class-wide basis. This Court has previously noted that "there is a 'strong judicial policy in favor of settlements, particularly in the class action context.'" *In re Platinum and Palladium Commodities Litig.*, No. 10cv3617, 2014 WL 3500655, *11 (S.D.N.Y. July 15, 2014) (Pauley, J.), *quoting In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998); *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515(WHP), 2008 WL 5110904, *1 (S.D.N.Y. Nov. 20, 2008) (Pauley, J.) ("The settlement of complex class action litigation is favored by the Courts"), *citing Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir.), *cert. denied*, 544 U.S. 1044 (2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy") (internal quotation marks and citation omitted).

The Court "must determine whether the terms of the proposed settlement warrant preliminary approval .... [by] mak[ing] a 'preliminary evaluation' as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, MDL Nos. 1409, M 21-95, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (Pauley, J.) (citation omitted); *see also Wal-Mart Stores*, 396 F.3d at 116; *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted."). While a complete analysis of the nine factors identified by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d at 463, is required for *final* approval, at the preliminary approval stage, the Court is only required to find that the proposed settlement falls "'within the range of possible approval.'" *In re Warner Chilcott*, 2008 WL 5110904 at *2, *quoting In re Prudential Secs. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 2005).

This Court explained that in determining whether a proposed settlement is fair, reasonable and adequate, it considers the negotiating process leading up to the settlement to determine the procedural, as well as the substantive fairness, of the proposed settlement. *In re Platinum and Palladium Commodities Litig.*, 2014 WL 3500655 at *11, *citing McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009). This Court in *Platinum and Palladium Commodities* added:

> Preliminary approval, at issue here, "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness," *In re Traffic Exec. Ass'n-Eastern R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980). A district court should preliminarily approve a proposed settlement which "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not

9

> improperly grant preferential treatment to class representatives or segments of the class and falls with the reasonable range of approval." *In re NASDAQ*, 176 F.R.D. at 102.

*Id.* *See also Morris v. Affinity Health Plan, Inc.*, No. 09-cv-1932 (DAB), 2011 WL 6288035, *2 (S.D.N.Y. Dec. 15, 2011) ("If, after a preliminary evaluation of the proposed settlement, the court finds that it 'appears to fall within the range of possible approval,' the court shall order that the class members receive notice of the settlement.") (citation omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. at 209 ("The Court's function now is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.") (internal quotation marks omitted); *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) ("If the court preliminarily approves the settlement, it then must direct the preparation of notice informing class members of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing.").

### A. The Proposed Settlement Is the Result of Good Faith, Arm's Length Negotiations

A presumption of fairness applies to a proposed class settlement that is the result of arm's length negotiations between counsel knowledgeable in complex class litigation. *Wal-Mart Stores*, 396 F.3d at 116; *see also Leung v. Home Boy Rest. Inc.*, No. 07 Civ. 8779 (RJS) (DFE), 2009 WL 398861, *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval is appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties ..."); *see In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (class action settlement enjoys "presumption of correctness" when it is product of arm's length negotiations conducted by experienced, capable counsel). Here, the Settlement is the product of rigorous arm's length negotiations over a span of more than eight months, with an experienced mediator, by sophisticated parties and their counsel who

prosecuted this Action for nearly five years. As such, the parties and their counsel were well-informed of the issues in the Action, and were further experienced in complex securities litigation.

These factors further support approval of the Settlement. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 576 (the use of an experienced mediator "in the settlement negotiations strongly supports a finding that they were conducted at arm's length and without collusion."); *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (approving settlement negotiated with the assistance of retired Judge Phillips and referring to him as "one of the most prominent and highly skilled mediators of complex actions").

The Settlement was reached only after completion of: (1) Lead Plaintiff's initial pre-filing factual investigation; (2) Lead Plaintiff's analysis of BoA's public filings and public statements; (3) Lead Plaintiff's review of news articles and analyst reports concerning BoA; (4) interviewing several confidential witnesses in connection with drafting the Complaint; (5) exhaustive briefing of Defendants' motions to dismiss and for reconsideration; (6) the review and analysis of over 8 million pages of documents produced by Defendants; (7) consultations with experts on loss causation, damages, and accounting; (8) the depositions of 34 fact witnesses; and (9) multiple mediation sessions facilitated by Judge Phillips. Thus, the Settlement was not achieved until the Parties had sufficient familiarity with the issues in the case to evaluate its merits and agree on a settlement figure that was acceptable to Defendants and reasonable, fair and adequate to the Class.

**B.     The Proposed Settlement Falls Within the Range of Reasonableness and Merits Issuance of Notice and a Hearing on Final Approval**

11

The terms of the proposed Settlement here are clearly "within the range of possible approval." *Initial Pub. Offering*, 243 F.R.D. at 87. Although Lead Plaintiff and Lead Counsel believe that the claims asserted in the Action against the Defendants are meritorious, continued litigation posed the real risk that following a trial, a lesser recovery (or no recovery at all) would result. Defendants would likely continue to argue, *inter alia*, that the statements made in BoA's public filings were not materially false and misleading, and that in any event, the losses suffered by Plaintiffs and the members of the Class were not caused by the alleged misrepresentations and omissions. Each of these issues involves complex legal and factual questions, and there remains a significant risk that a jury might agree with the Defendants on one or more of these issues.

In the absence of a Settlement, the Parties would present factual and expert testimony on each of the issues, and there is risk that the Court or jury would resolve the inevitable "battle of the experts" against Lead Plaintiff and the Class. There was also a risk that Defendants could seek decertification of the Class. Thus, the substantial payment of $335 million, when viewed in the context of these risks and the uncertainties involved with any litigation, and the likelihood that taking the case to trial would require many months or even years of additional litigation and expenses for the Class, including appeals, makes the Settlement a strong result for the Class.

As further indicia of its reasonableness, the Settlement exhibits none of the "obvious deficiencies" that could justify denying preliminary approval. *NASDAQ*, 176 F.R.D. at 102. In all respects, the terms embodied in the Stipulation are customary in nature. Specifically, Lead Plaintiff's recovery from the Settlement Fund will be determined according to precisely the same formula as the recoveries of other Class Members, with the exception of any reimbursement to the Lead Plaintiff of the costs incurred in representing the Class and so approved by the Court, as contemplated by 15 U.S.C. §78u-4(a)(4). *See NASDAQ*, 176 F.R.D. at 102 (settlement may be

…

approved preliminarily where it "does not improperly grant preferential treatment to class representatives or segments of the class"); *Prudential*, 163 F.R.D. at 209 (preliminary approval is appropriate where "preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives …"), *quoting Manual for Complex Litigation*, Third § 30.41 at 237 (1995).

Finally, the Settlement was negotiated under the direction and with the direct and substantial involvement of Lead Plaintiff, which had previously served as a lead plaintiff in other securities litigation and whose representative attended, and actively participated in, all of the mediation sessions. This further strengthens the presumption of fairness. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (participation of sophisticated institutional investor lead plaintiffs in settlement process supports approval of settlement).

## II. THE COURT SHOULD APPROVE THE FORM OF THE NOTICE AND PLAN FOR PROVIDING NOTICE TO THE CLASS AND SCHEDULE THE FINAL APPROVAL HEARING

Lead Plaintiff also requests that the Court approve the form and content of the proposed Notice and Summary Notice, as well as the proposed Proof of Claim and Release form. *See* Exhibits 2, 3 and 4 to the proposed Preliminary Approval Order.

As outlined in the Preliminary Approval Order, Lead Plaintiff will notify Class Members of the Settlement by (a) mailing the Notice and Proof of Claim to all Class Members who can be identified with reasonable effort, (b) posting the Notice, Proof of Claim and other Settlement documents on publicly identified websites, and (c) publishing a Summary Notice in the *Wall Street Journal* and over the *PR Newswire*. The Notice will advise Class Members of (i) the pendency of the class action; (ii) the essential terms of this Settlement; (iii) the Plan of

Allocation for distributing the Net Settlement Fund to members of the Class; and (iv) information regarding Lead Counsel's motion for attorneys' fees and reimbursement of litigation expenses. The Notice advises that a Class Member may enter an appearance through counsel if desired, and notes that the Court will exclude from the Class any Class Member who requests exclusion through the procedures set forth and within the deadline set forth in the Notice for doing so. The Notice further describes (1) the binding effect of a judgment on Class Members under Rule 23(c)(3), (2) how to object to the Proposed Settlement, the Plan of Allocation and/or Lead Counsel's fee and expense reimbursement request, and (3) how to make a claim. The Notice further provides specifics on the date, time and place of the Settlement Hearing.

The proposed Preliminary Approval Order further requires Lead Plaintiff to cause the Summary Notice to be published in the *Wall Street Journal* and transmitted over the *PR Newswire*. Lead Counsel will also post a copy of the Notice on the firm's website and on a dedicated settlement website. The form and manner of providing notice to the Class satisfy the requirements of due process, Rule 23, and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), which requires a certified class to receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The manner of providing notice, which includes individual notice by mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *3; *Global Crossing*, 225 F.R.D. at 448-49.

Lead Plaintiff also requests that the Court approve the appointment of Heffler, Radetich & Saitta, as Claims Administrator. Heffler is a nationally recognized notice and claims

14

administration firm, with extensive experience in administering hundreds of securities class actions, which the Court has previously appointed as a claims administrator in another class action. *In re Currency Conversion Fee Antitrust Litig.*, 2006 WL 3253037 at *3. Its staff consists of attorneys, CPAs, IT specialists and other professionals with substantial experience in notice and claims administration.

## CONCLUSION

For all of the foregoing reasons, Lead Plaintiff respectfully requests that this Court: (i) preliminarily approve the Settlement; (ii) approve the form and substance of the proposed forms of Notice and directing that notice be given to prospective members of the Class; (iii) schedule a hearing at which approval of the Settlement, Plan of Allocation and an award of attorneys' fees and litigation expenses to Lead Counsel may be considered; and (iv) grant such additional or different relief as the interests of law, justice or equity may require.

Dated: March 15, 2016

Respectfully submitted,

**BARRACK, RODOS & BACINE**
A. Arnold Gershon
William J. Ban
Michael A. Toomey
425 Park Avenue, 31st Floor
New York, NY 10022
Telephone: (212) 688-0782
Facsimile: (212) 688-0783

-and-

**BARRACK, RODOS & BACINE**

By: /s/ Mark R. Rosen
Leonard Barrack
Mark R. Rosen
Jeffrey A. Barrack
Jeffrey B. Gittleman
Chad A. Carder
Julie B. Palley

3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Fax: (215) 963-0838

*Attorneys for Lead Plaintiff Commonwealth of Pennsylvania, Public School Employees' Retirement System and Lead Counsel for the Class*